UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:22-cr-00166-BAH |
| : | |
| JOHN GEORGE TODD III, : | |
| : | |
| Defendant. : | |

MOTION IN LIMINE REGARDING
AUTHENTICATION OF PUBLICLY AVAILABLE VIDEO EVIDENCE

The United States of America, by and through the United States Attorney for the District of Columbia, hereby submits the following motion *in limine* regarding the authentication of publicly available video evidence at trial.

BACKGROUND

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope. Much of the event was recorded on video, including surveillance footage captured by the U.S. Capitol Police ("USCP") cameras, by Metropolitan Police Department ("MPD") body-worn cameras ("BWC"), and by cameras and cellphones carried by journalists and by rioters. The government's case at trial will rely in part on USCP camera footage to prove the defendant's specific conduct and the greater context in which it took place. Should the defendant not stipulate to the authenticity of this footage, the government will call an appropriate witness at trial.[1] But the government may also introduce footage from videos taken by other rioters or by journalists; for this set of video evidence, the government seeks a pretrial ruling on authenticity.

---

[1] Counsel for defendant and the government have conferred on stipulations. Counsel for defendant could not affirmatively state what, if any, stipulations defendant could agree upon until counsel for defendant can confer with defendant.

1

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(3), (4).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in

evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'" (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of

3

authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

## ANALYSIS

At trial, the government intends to offer in evidence video clips from the USCP cameras and MPD BWC, as well as from other sources, including footage captured by other individuals

present in the vicinity of and inside the Capitol building on January 6, 2021. Many of the videos were obtained through open-source means and are publicly available. For any such videos, the government will establish authenticity by asking the jury to compare it with other, authenticated exhibits, in particular, to USCP camera footage and in some instances MPD BWC. Fed. R. Evid. 901(3). This footage will confirm that such videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and in some cases depicting events and sounds that were not captured by the USCP camera or MPD BWC. In addition, the distinctive features of the interior and exterior of the Capitol building and grounds and of the other individuals depicted in the footage will help authenticate the videos. *Id*. at 901(4).

For example, a video taken by an individual clearly shows the lower level of the West Front of the Capitol building and the metal scaffolding constructed for the inauguration.



Figure 1.

At approximately 5:01 of the video the defendant can be seen walking through the crowd carrying a Trump flag as others chanted "USA! USA!" The defendant wore a red Make America Great Again sweatshirt; a knitted cap; and a multicolored backpack (the shoulder harness is visible) partially obscured by another Trump flag. Figures 1-1. The government later recovered the multicolored backpack when agents executed a search warrant at defendant's residence.



Figure 1-1.

In a video taken by another individual on the Upper West Terrace, a group of rioters stream into the Capitol through the Central Door on the Upper West Terrace as the alarm from the breached door blares. At approximately 03:23 minutes of the video, defendant walked up the stairs. The inauguration platform and blue colored steps are visible behind him. Figure 2.



Figure 2.

In a 12-second video taken by another individual, defendant, at 0:08 seconds stood near the Central Door on the Upper West Terrace. Figure 3. As depicted in Figures 4-5, at 2:44 p.m., USCP CCTV footage show defendant entered the Capitol through the Central Door and from there walked through a hallway that accessed the Rotunda. Figures 4-5.



Figure 3.



Figure 4.



Figure 5.

The government also intends to introduce into evidence multiple USCP CCTV and BWC footage through law enforcement witness testimony and/or stipulations to show defendant was present in the Rotunda and while in the Rotunda confronted law enforcement officers. Figures 6-11. For example, Figure 6 is a screen capture of defendant walking in the Rotunda.



Figure 6.

Figure 7 depicts defendant and others confronting law enforcement officers.



Figure 7.

Figure 8 is a publicly available video watermarked, "Gettyimages." Many rioters depicted in the video are distinctive in appearance.



Figure 8.

Between 01:29 and 02:26 minutes of the Gettyimages video, rioters, including a tall man wearing a black puffy jacket and draped in an American flag and a woman wearing a red jacket and red knit hat and others, scuffle with the officers. Figure 8. At 02:13 minutes of the video defendant, the tall man, and the woman are visible. Figure 8. At approximately 02:26 of the video, defendant is visible screaming at the officers. Figure 9. Body worn camera footage from at least two MPD officers recorded this confrontation at 2:58 p.m. from different angles as it was ongoing. Figures 10-11. The defendant, the tall man, and the woman are visible at 2:59 p.m. of the BWC recordings. Figures 10-11.



Figure 9.



Figure 10.



Figure 11.

The distinctive appearance of defendant and of some rioters, and the unique features of the Rotunda interior as captured in the USCP CCTV and MPD BWC footage act as connective elements present in the Gettyimages video and demonstrates the authenticity of the Gettyimages video. The government intends to introduce other publicly available footage of the Capitol interior and exterior at trial in the same manner.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the government's video evidence from non-UCSP sources satisfies the authenticity requirement of Fed. R. Evid. 901.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By: /s/ Michael G. James
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530