UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>)<br>v.                                          )<br>                                             )       Criminal No. 1: 22-cr-166 (MAU)<br>JOHN GEORGE TODD III        )<br>                                             )<br>Defendant                  )<br>                                             ) | |

**TODD'S MOTION TO DISMISS SUPERCEDING INDICTMENT**

Now Comes the Defendant, Mr. John George Todd III, ("Todd"), by and through undersigned counsel, with this motion to dismiss the superceding indictment (ECF# 133).

Mr. Todd submits that no plausible legal theory could support a prosecution of Mr. Todd for "assault" or "assault with a deadly and dangerous weapon" or assault causing "bodily injury" pursuant to 18 U.S.C. Section 111. Additionally, the superceding indictment (1) violates the law of the case, (2) was filed vindictively, to punish and retaliate against Todd and his attorneys for refusing to plead guilty, and (3) is part of a systematic, unconstitutional, culture, policy, and practice by the government with respect to January 6th cases being prosecuted in the U.S. District Court for the District of Columbia.

**BACKGROUND**

1

Defendant Todd was first arrested and charged in this case more than eighteen months ago (May 12, 2022). Todd was charged with standard misdemeanors for entering and remaining in a restricted area, disorderly conduct in the U.S. Capitol, and picketing, demonstrating, and parading in the U.S. Capitol. As with many January 6 ("J6") misdemeanor cases, prosecutors offered a plea offer in which the United States offered to dismiss all but one misdemeanor count (disorderly conduct) if Todd would plead guilty to that count.

Mr. Todd rejected the plea offer, exercising his constitutional right to go to trial. Now-with less than two weeks to go before Todd's misdemeanor trial (scheduled for December 15), the Government claims it has identified or discovered a new camera angle showing an officer who needed medical attention for a cut on his finger or palm, stemming from the officer's unlawful breaking of Mr. Todd's fiberglass flag stick. This supposedly newly discovered camera angle supports a new 20-year felony charge, according to the government.

**THE NEW "ASSAULT CAUSING BODILY INJURY" CHARGE VIOLATES THE LAW OF THE CASE AND MUST BE DISMISSED AS BOTH VINDICTIVE, UNTIMELY, AND IN VIOLATION OF COURT ORDERS.**

1. **This new superceding charge is untimely and violates this Court's previous orders.**
2. **Moreover, the superceding indictment was filed to delay the trial in this case, to the great prejudice of Todd, Todd's counsel, and the court.**
3. **Additionally, the superceding indictment was filed for purposes of forum shopping; in order to remove the trial from the magistrate who had overseen Todd's mental health recovery and treatment for suicide attempts.**

More than a year ago, on Friday, November 4, 2022, at a status hearing in this case, before Chief Judge Howell, the Chief Judge ruled that the Government's time was "running out of time" to charge Todd with any additional allegations:

> THE COURT [CHIEF JUDGE HOWELL]: This is -- he's only been charged in an information with two Class A misdemeanors and two Class B misdemeanors; is that right?
>
> MR. [AUSA] JAMES: That is correct, Your Honor.
>
> THE COURT: And the government doesn't have an intention of superseding with any felony charges?

   MR. JAMES: Well, Judge, as I had explained to the former counsel, <u>we were looking at that</u>, but I cannot say that we're going to do that right now. It is something that we have <u>actively considered</u>, and I had informed former counsel about that, but we have not done so.

   THE COURT: <u>Well, you're running out of time</u>. When are you planning on doing that?

   MR. JAMES: I understand that, Judge. <u>We've looked at potential charges that we decided not to pursue at this time</u>.

   THE COURT: Okay. Well, I mean, I've had trials with misdemeanors attached to felony charges. And it was *my understanding* that the government was, in its initial informations and for early negotiations, discovery, and pleas, charging misdemeanors; but if there was going to be a trial, they were going to, you know, *bring them on*. So is the government telling me that we're going to have a trial on misdemeanor charges? Is that what you're telling me, Mr. James?

   MR. JAMES: Your Honor, what I'm stating to the Court is that as of right now that answer would be yes. <u>But we have actively looked.</u> The issue in this case, and I provided this to defense counsel -- current defense counsel as well -- there are a number of open source videos of the defendant's activities on the west front<u>, and some of those activities that we've analyzed and we've reanalyzed could lead to a potential 231 charge,</u> Your Honor, which is, of course, a felony charge. But we haven't made that decision at this time.

Transcript of Status Hearing, Nov. 4, 2022, pp. 4-7.

   This discussion was more than one year ago. The Government represented to the Court (five times) that it had "actively" looked for additional charges for Todd. The Government represented it had "analyzed and reanalyzed" the evidence while seeking to find a felony charge for Todd. The Chief Judge told the Government, <u>"Well, you're running out of time</u>."

   Ultimately the parties came to a resolution under the Court's instructions by opting to have the trial of misdemeanors reassigned to U.S. Magistrate Judge Moxila A. Upadhyaya. The Magistrate court was mutually agreed upon as the appropriate venue for trial in this case, as the Magistrate has jurisdiction to preside over trials of misdemeanors (ECF # 40, filed 11/08/22). The Government had <u>an additional year</u> to prepare its case against Todd. The parties have provided exhibit lists, witness lists, proposed jury instructions, and jury questions. Mr. Todd and his family, along with counsel and staff, arranged their schedules and travel plans in preparation for trial on December 15, 2023.

It is significant that Mr. Todd has suffered a series of mental health setbacks, and two suicide attempts in Missouri, stemming from stress related to this case. Mr. Todd has, in fact, been hospitalized twice due to these episodes.  Police were called one evening in April 2023 to an apartment where Mr. Todd had climbed to an upstairs unit during a confrontation with a neighbor who was taunting Todd and having an extramarital affair with Todd's wife.  Mr. Todd's mental health crises were intertwined with Todd's loss of his career, his employment, his wife, and his family—largely due to Mr. Todd being prosecuted as a J6 defendant.

Magistrate Judge Upadhyaya ordered a treatment plan for Mr. Todd, with weekly disclosures and reporting, in combination with Mr. Todd relocating to South Carolina under the care and custody of Mr. Todd's sister, counselors, and church staff.  Mr. Todd has recovered substantially under the program and direction of Judge Upadhyaya.

**The Government's claims of newly discovered "assault/resist/impeding" evidence came just in time to disrupt the trial schedule, to maximize prejudice to the defense.**

Then, as the parties were in final preparations for trial, the Government disrupted the Court schedule by suddenly obtaining a superceding grand jury indictment <u>on December 6</u>—**nine days before trial**. The Government claims that "[d]uring the course of preparing this case for trial . . . This past week, we discovered additional body worn camera evidence depicting Mr. Todd committing what we believe is an assault/resist/impeding a federal officer pursuant to 18 U.S.C. § 111." (Government's email to Magistrate's chambers 11/30/2023.)

The Government has actually possessed the bodyworn camera video from the beginning of this case.  But the Government provided it's 'newly discovered' body worn camera evidence to Todd's counsel on Nov. 30, 2023.  Suffice it to say that the 'newly discovered' bodycam video hardly shows an assault/resist/impeding of an officer with "injuries."  In fact, the video shows an officer violently pulling Mr. Todd's flimsy fiberglass flag rod out of Mr. Todd's grip where the officer appears to cut his own palm

4

after unnecessarily breaking the rod.[1] And the government admits it has possessed this bodycam video since the beginning of this case.

In any case, after viewing the allegedly-newly-discovered "bodily injury" bodycam footage, counsel submits that the entirety of Todd's conduct in the video was already subsumed within the Government's existing disorderly conduct allegations. (In fact, this footage actually shows no criminal conduct whatsoever on the part of Todd; but shows unlawful retaliatory property destruction by a member of law enforcement.)

**The Court's orders and instructions in November 2022 constitute the Law of the Case; and the Government's post-removal conduct violate Laches.**

The Court's orders and instructions, issued some 13 months ago, combined with the parties' resolution and the docketing of Todd's case in the Magistrate's Court for resolution by trial on the misdemeanors, constitute the Law of the Case.

In general, law of the case is a concept that precludes the relitigation of issues within the context of a single case once they have been decided. *See Messinger v. Andersen*, 225 U.S. 436, 444 (1912); *Gindes v. United States*, 740 F.2d 947, 949 (Fed. Cir. 1984). It is thus akin to the doctrines of collateral estoppel, res judicata, and stare decisis. *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). *Messinger v. Anderson*, 225 U.S. 436, 444 (1983).

By stipulating to the Court's diversion of Todd's case for trial resolution on misdemeanors, the Government was effectively estopped from bringing new felony charges in Todd's case. In November 2022, the Government assured and reassured the Court that the Government had exhausted all efforts to examine the available evidence and prosecute Todd for any felonies ("we were looking at that," "we have

---

[1] The defense has requested, via email, any and all medical records or reports relating to the tiny cut on the officer's hand. At the time of this writing, the government has not responded.

actively considered;" "we have actively looked;" "we've analyzed and we've reanalyzed" the evidence). The transfer of the case for resolution by trial before the Magistrate was a *resolution* of the issues highlighted by the District Court over a year ago. Both the Court and Mr. Todd have exhausted significant expenses and efforts in following the Court's directed resolution.

Mr. Todd and his counsel and legal team were prepared for trial on the charges in this case on December 15. Mr. Todd invested greatly into his December 15 trial preparation. Mr. Todd has been <u>severely prejudiced</u>.

It baffles the defense how, in the government's year-and-a-half period of investigation, research, and review of evidence, *in which the government itself* once told a court *five times* that it had carefully "analyzed and reanalyzed" available evidence (which included the very bodycam footage the government now bases its superceding indictment on), the government somehow missed an opportunity to bring additional charges prior to now.

**The timing of the Government's effort to disrupt the trial brings a presumption of unconstitutional vindictiveness.**

"When, as in this case, the government chooses not to lodge charges for a period of time and then makes the decision to prosecute so close after a defendant elects to exercise his rights in the face of prosecution opposition, apparent vindictiveness is clearly established. Indeed, the question of the delay and the timing of the present indictment is crucial." *United States v. Velsicol Chem. Corp.*, 498 F.Supp. 1255, 1264-65 (D.D.C. 1980).

In *United States v. Groves,* 571 F.2d 450 (9th Cir. 1978) (cited with favor in *Velsicol Chem. Corp.*), the Ninth Circuit found that the *timing* of a subsequent indictment is a fundamental factor in rendering a superceding indictment suspect. The court upheld dismissal of the indictment where the government knew the extent of Groves' involvement in a case and secured a different indictment only after defendant exercised his right to a speedy trial. See also *United States v. Alvarado-Sandoval,* 557 F.2d 645 (9th Cir. 1977) ("appearance of vindictiveness, not vindictiveness itself, is the touchstone . . ."); *United States v. DeMarco,* 550 F.2d 1224, 1227 (9th Cir. 1977) ("apprehension of vindictiveness and

6

the 'appearance of vindictiveness' are adequate to bring this case squarely within *Blackledge* [ *v. Perry*].")

[vindictiveness] (citation omitted).

Last-Minute Gamesmanship by Prosecutors Violates Due Process and the Right to a Fair Trial.

**AN UNCONSTITUTIONAL PATTERN OF VENGEANCE AND RETALIATION BY THE GOVERNMENT IN PROSECUTION OF JANUARY 6TH CASES IN THE DISTRICT OF THE DISTRICT OF COLUMBIA**

Additionally, Todd's counsel, John Pierce Law, has identified an unconstitutional, <u>systematic pattern and practice</u> by the government in this federal court district. Counsel has identified twelve (12) January 6 ("J6") cases fitting the <u>precise pattern</u> of Todd's prosecution in this case:

1. Derick Gunby;
2. Deborah Lee;
3. Hatchet Speed;
4. Stephanie Baez;
5. Mark Sahady;
6. Joseph Irwin;[2]
7. Leo Kelly;[3]
8. Patrick Montgomery[4]
9. Richard Barnett,[5]
10. Darrell Neely,[6]
11. Anthime Joseph Gionet[7]

---

[2] 21-cr-589 (initially charged with 2 misdemeanors, then 4 misdemeanors, then—after two years and upon rejecting plea offer—obstruction of an official proceeding, § 1512).
[3] 21cr 708 (initially charged with 2 misdemeanors, then charged with § 1512 after declining misdemeanor plea offer).
[4] Patrick Montgomery's case is slightly different from the others in this list. Montgomery's docket journey began with two misdemeanors for going inside the Capitol on Jan. 6, but now (in its 5th charging instrument) is a major prosecution of ten charges, including one charge (18 USC § 1512) carrying a potential 20 years in prison.
[5] 21-cr-38 (initially charged with 3 misdemeanors; then superceded with § 1512 obstruction and weapon possession (taser) counts; then superceded with § 231 civil disorder count after rejecting plea offer.
[6] Case No. 21-cr-642-JDB (initially charged with 5 misdemeanors, then superceded with felony § 231 count after declining plea offer) (ultimately acquitted at trial of the felony § 231 count.).
[7] (a.k.a. "Baked Alaska,"—who said on the record he was innocent but was coerced to take the misdemeanor plea deal when prosecutors threatened to charge him with a felony if he insisted on a trial).

7

12. John George Todd III (the instant case).

Each of these J6 defendant initially faced two or more "standard" misdemeanors and were offered a plea deal in which all counts but one would be dropped in exchange for the defendant pleading guilty to one misdemeanor. In each case, after the defendant expressed his innocence and intent to exercise his or her right to trial, federal prosecutors added (or threatened to add) an additional 20-year felony charge.

In Todd's case, the superceding indictment, exposing Todd to a potential **twenty-times-greater prison sentence than the plea offer**, was dropped on Todd's lap, <u>after a year and a half</u>, just days before Todd's misdemeanor trial was scheduled to begin.

This 20-to-1 ratio is <u>greater than ratios considered in any previous court case</u> which ever addressed the question of vindictive prosecutions, including all of the landmark cases in this line—some of which reversed convictions and struck down prosecutions. See *North Carolina v. Pearce*, 395 U.S. 711 (1969) (invalidating two convictions: Pearce, convicted of assault with intent to rape and sentenced to 12 years and then later given an 8-year term without credit for time served[8] after winning an appeal; and Rice, sentenced to 10 years for burglary but then given 25 years after winning his appeal). *Blackledge v. Perry*, 417 U.S. 21 (1974) (finding due process violation where defendant sentenced to 6 months for misdemeanor assault was given 5-7 years for felony assault with a deadly weapon with intent to kill (over the same facts), after appealing). *Bordenkircher v. Hayes*, 434 U.S. 357 (1978)(defendant rejected 5-year plea offer and was then indicted as career offender and sentenced to life imprisonment);[9] *United States v.*

---

[8] All parties in *Pearce* agreed that Pearce's 8-year sentence, when combined with time already served, was more harsh than Pearce's original sentence.

[9] Doug Lieb, in his article, "*Vindicating Vindictiveness: Prosecutorial Discretion and Plea Bargaining, Past and Future,*" 123 Yale L.J. 1014, 1056 (2014), offers the example of a twenty-four-year old defendant, "so a life sentence would likely mean about fifty years in prison." So the ratio in *Bordenkircher* was around 10 to 1. Referencing the Florida case of Shane Guthrie (offered 2 years but then facing life imprisonment upon rejecting the offer, Lieb suggests that a "trial penalty of roughly twenty-five times the prison term he had initially deemed to be a sufficient punishment" would be "severe enough that a reasonable observer might suspect the prosecutor had acted in bad faith." Id. (citing Richard A. Oppel, Jr., *Sentencing Shift Gives New Leverage to Prosecutors*, N.Y. TIMES, Sept. 25, 2011,

*Goodwin*, 457 U.S. 368 (1982) (involving an offer of petty assault (up to 1 year), which became assaulting federal officer (up to 8 years), upon rejection of the offer).

**The government's practice of escalation and retaliation in Todd's case is the most extreme example of retaliatory vindictiveness ever recorded in federal law.**

(Note that Counsel is aware of <u>dozens of</u> <u>other</u> J6 cases which also exhibited the stacking of additional charges upon J6 defendants who refused to plead guilty.  However, some of these defendants were initially charged with felonies, or were initially charged individually and later joined to other defendants' cases, or were explicitly charged with additional counts after prosecutors learned of new evidence which was not previously in their possession.  See, for example:

- Virtually all the "Oath Keeper" cases ("seditious conspiracy" and other counts added, after around a year of cases pending),[10]
- Virtually all of the "Proud Boy" cases (same),
- Christopher Alberts (new felony assault charge added after declining 3-year plea offer (ultimately sentenced to 7 years))
- Kenneth Joseph Thomas (additional assault charges added after rejecting plea offer) (ultimately sentenced to almost five years; despite being acquitted of several counts by the jury),
- Garet Miller, 21-cr119 (multiple felony counts added upon refusal to plead guilty)
- Ryan Samsel (additional charges, including assault with dangerous weapon count added over several indictments)
- Rachael Powell (additional felony count added after turning down plea offer)
- Richard Slaughter (additional 20-year count of aggravated assault with a deadly weapon (handing a tiny capsule of pepper spray—available over the counter at 7-11—to another demonstrator), after refusing offer).

---

https://www.nytimes.com/2011/09/26/us/tough-sentences-help-prosecutors-push-for-plea-bargains.html) (accessed 10/4/2023).

[10] See, e.g., DOJ Press Release, August 9, 2021: "Fifth Superseding Indictment Unsealed in Oath Keeper Conspiracy Case Related to Jan. 6 Capitol Breach: Two Additional Conspirators Identified, Charges Added in Eighteen-Defendant Conspiracy Case." https://www.justice.gov/usao-dc/pr/fifth-superseding-indictment-unsealed-oath-keeper-conspiracy-case-related-jan-6-capitol

And, in fact, there is evidence that this pattern and practice by the government in this District is, in fact, chilling the exercise of trial rights.  Moreover, there is evidence that this pattern and practice is likely contributing to wrongful convictions of Jan. 6 defendants for *crimes they did not commit*.

**"I believe I'm innocent ... but they're saying if I go to trial they're going to hit me with a felony."**

That this retaliatory tactic by the government in J6 cases has chilled the exercise of constitutional rights is a matter of public record. In at least one reported case, a J6 defendant named Anthime Joseph Gionet ("Baked Alaska") stated during his change-of-plea hearing that he was pleading guilty to a crime he did not commit due to prosecutors' threats to charge him with a felony if he exercised his constitutional right to jury trial. See Ryan J. Reilly "Judge nixes Jan. 6 plea deal after right-wing streamer 'Baked Alaska' declares himself 'innocent,'" *NBC News*, May 11, 2022, https://www.nbcnews.com/politics/justice-department/judge-nixes-jan-6-plea-right-wing-streamer-baked-alaska-declares-innoc-rcna28245 (accessed 9/28/2023) ("Anthime Joseph Gionet, otherwise known as 'Baked Alaska,' said he had agreed to take the deal only because he was worried he'd be charged with a felony"). Gionet's "plea deal went up in smoke after he declared himself innocent." *Id*.

Just like Todd, Hatchet Speed, Sahady, Gunby, Baez, and Deborah Lee, Gionet was charged with the four standard misdemeanors. And just like Todd, Speed, Sahady, Gunby, Baez, and Deborah Lee, Gionet was offered a dismissal of all counts but one if Gionet would plead guilty to a single misdemeanor. Most significantly, Gionet stated at his change-of-plea colloquy "I believe I'm innocent ... but they're saying if I go to trial they're going to hit me with a felony." *Id*. (Note that Gionet's plea deal was ultimately accepted by Judge Sullivan.)

**A systematic practice of punishing those who insist on their innocence is the most egregious due process violation of all.**

Significantly, the landmark *Pearce* case—the case that launched the issue of vindictiveness as a due process violation—mentioned that a *practice* of lengthier sentences upon exercise of rights would be the most egregious violation of all.

10

Even the case of *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the case most cited by the government to support a notion that anything goes during plea negotiations, pronounced that prosecutors abuse their power where the accused is not realistically "free to accept or reject the prosecution's offer." 434 U. S. 363. Counsel submits that no J6er is realistically "free to accept or reject the prosecution's offer" where rejection means almost certain destruction of his life and years of incarceration.

Moreover, the government's systematic practice of punishing the exercise of rights in this District leaves little room for defense lawyers to recommend going to trial, where such advice is almost certainly ineffective assistance of counsel.

Given the extreme disparities between outcomes of J6 defendants who immediately accept the government's misdemeanor plea offers and defendants who opt for a trial, it is virtually <u>ineffective assistance of counsel</u> to advise J6 misdemeanor clients to do anything other than immediately plead guilty. the Supreme Court's rulings in *Missouri v. Frye*, 566 U.S. 134 (2012) and *Lafler v. Cooper*, 566 U.S. 156 (2012) suggests that defense lawyers are almost certainly straying toward ineffective assistance if they counsel against immediate pleas of guilty.[11] *Lafler v. Cooper*, 566 U.S. 156 (2012) ruled that ineffective assistance of counsel during plea negotiations can constitute grounds for relief if there is a fair probability that defense counsel's ineffective assistance resulted in a harsher sentence or conviction.

CONCLUSION

The superceding indictment recently filed in this case was filed by the government in plain violation of the Law of this Case. It was filed to disrupt and delay the proceedings, to remove the case to a more favorable venue, and to greatly prejudice Mr. Todd, the Court, and Mr. Todd's defense team. The indictment was also filed vindictively, in retaliation against Mr. Todd for exercising his constitutional

---

[11] *Missouri v. Frye* :: 566 U.S. 134 (2012) suggested a defense lawyer committed ineffective assistance where prosecutors would have let Frye plead guilty to a misdemeanor and serve 90 days in prison for driving without a license but, after the offer expired, Frye was sentenced to three years. In the *Cooper* case, a defense lawyer was found to have provided ineffective assistance where Cooper rejected a plea bargain that called for a sentence of four to seven years, and consequently was sentenced to 15 to 30 years.

rights, and to chill the exercise of rights by other J6 defendants. This is part of a recognized pattern, policy, and practice by the government in the District Court, and this pattern and practice is contributing to the wrongful conviction of J6 defendants for crimes they did not commit.

ACCORDINGLY, the superceding indictment in this case must be dismissed.

Attachments:

A- Segment of bodycam video alleging bodily injury located here:

https://www.dropbox.com/scl/fi/xhp4zwxw8kry9egz905h3/410_NOAH-RATHBUN-BWC-X6039BJVD.mp4?rlkey=dcs1oqivobpgljqu4pr0f3jv5&dl=0

B- Transcript from November 4th 2022 Staus Hearing

Dated: December 13, 2023                                              Respectfully Submitted,

/s/ John M. Pierce
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

/s/ Roger I. Roots
Roger I. Roots
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: RRoots@johnpiercelaw.com

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, December 13, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce