**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 22-CR-00166-BAH** |
| **v.** | : | |
| | : | |
| **JOHN GEORGE TODD III,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO REVEAL GRAND JURY INSTRUCTIONS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes the motion by the defendant, John George Todd III ("defendant") demanding the legal instructions provided to the grand jury.

## BACKGROUND

A. **Mr. Todd's Conduct on January 6, 2021**

The facts of this matter are summarized in the Statement of Facts (ECF No. 1), which the government incorporates by reference. The Defendant entered the U.S. Capitol building on January 6, 2021 via the Upper West Terrace at 2:44 P.M He was holding a fiberglass tent pole with an American flag attached to it. A minute later, the defendant entered the Capitol Rotunda via its west door before exiting via the north door. defendant reentered the Rotunda through the north door at 2:52 P.M. While in the Rotunda, the defendant interacted with individuals, yelled at police, and smoked some type of cigarette.

The defendant exited and entered the Rotunda once more, at which time he encountered Capitol police officers who were attempting to clear the Rotunda. Between 3:10P.M and 3:17P.M, the defendant repeatedly pushed against Capitol Police officers when being told to leave. In body worn camera footage obtained from the Metropolitan Police Department, the Defendant was

recorded yelling at law enforcement officers. At one point inside the rotunda, while near a law enforcement officer, the Defendant yelled, "I swear to God, I'll hip toss your ass into the fuckin' crowd, mother fucker!" Capitol Police Officer Noah Rathbun, one of the officers attempting to clear the Rotunda, believed that the defendant was about to strike someone with his fiberglass tent pole and attempted to take the pole from the defendant.

The defendant and Officer Rathbun pushed back and forth in an attempt to gain control over the pole. While the two men wrestled over the fiberglass pole, the pole splintered. When the pole splintered, the officer and the defendant both saw the splintered fiberglass, but the defendant then ripped the splintered pole out of Officer Rathbun's hands. As a result, the splintered pole cut through Officer Rathbun's knuckle, creating a deep cut. The laceration exposed a tendon in his finger, requiring further medical attention.

The defendant was finally forced from the Rotunda and the Capitol through the east doors at 3:18 P.M. He then proceeded to the Northwest Terrace of the Capitol. Over the next hour, the defendant interacted with the crowd, loudly stated "we were inside yelling we need more people until they pushed us out", and shoved against police shields as law enforcement attempted to clear the Northwest Stairs at 4:42 P.M. By 4:50 P.M, the defendant had moved towards the West Tunnel, where police had engaged in an hours-long physical conflict with the crowd. The Defendant leaned off railings and observed the physical violence in the tunnel. The Defendant eventually exited the Capitol by walking west towards the National Mall, where he gave a video interview to a journalist.

### B.  December 6, 2023 Superseding Indictment

On May 12, 2022, the defendant was charged by Information with Entering an Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly

Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), (ECF 6). On October 12, 2022, the defendant requested a continuance of the November 14, 2022 trial. ECF 31. In response, the Court vacated the trial date and ordered the parties to appear for a status conference on November 4, 2022. (Minute Order 10/12/22).

At the November 4, 2022 status hearing, the Court ordered the parties to submit proposed trial dates. ECF 88 at pg. 17. After the status hearing, but before a new trial date was scheduled, the defendant moved for a trial to be conducted by a magistrate, which the government did not oppose, and the case was reassigned Magistrate Judge Moxila Upadhyaya. ECF 38;  Minute Order 11/9/22. Judge Upadhyaya scheduled a trial for October 16, 2023 (Minute Order 12/09/22). The defendant again moved for a continuance and the trial was rescheduled to December 15, 2023. ECF 77; Minute Entry 10/4/23).

As this Court knows, in the preparation for the December 15, 2023 trial, the Government uncovered additional video evidence (which had been previously turned over to the defendant nonetheless) of the defendant assaulting law enforcement. The government immediately notified the defendant's counsel and sought a superseding indictment from a federal grand jury.

On December 6, 2023, a federal grand jury in the District of Columbia returned an indictment, charging the defendant with a felony, to-wit: Inflicting Bodily Injury on Certain Officers, in violation of 18 U.C.S § 111(a)(1) and (b), in addition to the identical misdemeanors originally charged in the Information. ECF 133. As part of that grand jury presentation, the Defendant's counsel requested that he be able to testify before the grand jury. On December 6,

2023, the Defendant did testify in the grand jury, before their deliberations.[1] Following the issuance of the Indictment. the case was reassigned to the district court and a trial date of January 22, 2024 was scheduled. ECF 140; Set/Reset Deadlines/Hearings 12/15/2023. The defendant then filed a motion to compel the government to turn over the instructions given to the grand jury.

## ARGUMENT

### I . The Defendant Has No Legal Right to See Grand Jury Instructions

It is clearly established that the indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity. Fed. R. Crim. Pro. 6(e); *See United States v. Procter & Gamble Co*., 356 U.S. 677, 681 (1958); *United States v. Apodaca*, 287 F. Supp. 3d 21 (D.D.C. 2017). This presumption of secrecy around the grand jury and its proceeding is only broken "upon particularized proof of irregularities in the grand jury process," *United States v. Mechanik*, 475 U.S. 66, 75 (1986).

Grand jury proceedings are "accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Navarro*, 651 F. Supp. 3d 212, 234 (D.D.C. 2023) quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring). To break the protection of secrecy on grand jury proceedings, the burden lies on the defense to meet the "heavy burden" of showing that "the importance of preserving the secrecy of the grand jury minutes is minimal and also admits the persuasiveness of the arguments advanced in favor of disclosure." *United States v. Trie*, 23 F. Supp. 2d 55, 61 (D.D.C. 1998); *Dennis v. United States*, 384 U.S. 855, 871–72 (1966).

---

[1] While non-binding and legally unenforceable, a defendant's request to testify in the grand jury is briefly discussed in public Department guidance, as set forth in the Justice Manual, § 9-11.152 (giving guidance on how prosecutors may allow or disallow targets from testifying in a grand jury).

In this Circuit, "a defendant must show a 'particularized need' for [grand jury-related] disclosure[s]," requiring a "factual basis"—'conclusory or speculative allegations of misconduct' do not suffice." *United States v. Tajideen*, 319 F. Supp. 3d 445, 472 (D.D.C. 2018), quoting *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007). Additionally, that burden requires such a particularized need in order to outweigh the grand jury's secrecy. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). As a result, courts routinely deny defendants' requests for grand jury minutes. *United States v. Sutton*, No. CR 21-0598 (PLF), 2023 WL 5827718, at *10 (D.D.C. Sept. 8, 2023) (noting that courts only require the government to disclose grand jury materials in "exceedingly rare cases.").

To start, the government has already provided the defendant the transcript of his testimony to the grand jury. Beyond that, the defendant has failed to identify – let alone attempt to proffer – why such need exists. The Defendant's request, at its onset, is generic and unavailing.

In his motion, he alleges that, "[n]o properly instructed grand jury could have found probable cause to indict for 18 U.S.C. Section 111." ECF. 138. However, "the mere suspicion that the grand jury may not have been properly instructed with respect to [a] legal definition" does not entitle a defendant to breach the grand jury's secrecy or to the dismissal of the indictment. *Trie*, 23 F. Supp. 2d at 61-2 (noting that dismissal is only appropriate if there is grave doubt that the decision to indict was free from the substantial influence of such violations). And the Defendant has offered no more than mere suspicion to support his request.

The reality is simple and not nefarious. The defendant believes that he did not commit the crime. And his belief, from his perspective, therefore, underpins the grand jury's allegedly erroneous decision to indict. But the defendant provided his account of what he believed transpired to that grand jury, and the grand jury nonetheless indicted, rejecting his account, and relying on

the evidence presented to the grand jury, to include video evidence of the crime.[2] Indeed, the defendant has all of that evidence at his disposal and appears to simply contest the ultimate issue that will be presented to the jury: whether the evidence is sufficient to show that the defendant assaulted, resisted, impeded, or obstructed law enforcement, and caused bodily injury. *See* ECF No. 138, at 3*; See United States v. Singhal*, 876 F. Supp. 2d 82, 99 (D.D.C. 2012) (rejecting disclosure of grand jury materials where defendants failed to identify any portion of the indictment that suggested that any charge before the grand jury was legally erroneous.).

This Court is no stranger to such misplaced allegations. In *United States v. Apodaca*, the Court tackled a narrower request – the defendant seeking an *in camera* inspection of the grand jury evidence to decide whether the government accurately captured the sufficiency of the crime. 287 F. Supp. 3d 21, 46 (D.D.C. 2017). In rejecting the defendant's request, the Court noted that the government had not even proffered what evidence was presented to the grand jury, finding that the defendant had adequate notice of the charges and did not provide "sufficient reason, let alone a particularized need, to overcome the presumption against disclosure of the grand jury materials." *Id.* at 48. The Court similarly addressed whether the same defendant was entitled to the legal instructions provided to the grand jury. "With this argument [referencing the government's extradition request and summary of the law], the [defendant] again fails to meet his burden for demonstrating a particularized need." *Id.* at 49 (internal punctuation omitted). The Court additionally noted that the indictment was facially valid, thereby undermining any such need. *Id.* at 50.

---

[2] Without revealing specific content, the presentation of such evidence has furthered the government's investigation into the charge of Obstruction, in violation of 18 U.S.C. § 1512(c)(2), and the government has put the defendant on notice of its preliminary intent to supersede before trial with the additional crime.

This case is no different. The defendant devotes no time or effort explaining his non-speculative need for such material. Instead, he expends significant energy lambasting the overall January 6 investigation and prosecution, amalgamating various legal and non-legal theories untethered to this prosecution. ECF No. 138, at 2-5. None of this meets the heavy burden required under the law.

For good measure, the defendant dedicates a single line of his motion accusing the government of vindictive prosecution, *id.* at 5, an argument that has repeatedly failed in this context. *See, e.g.*, *United States. v. Hatchet Speed* 1:22-cr-00244 at ECF 54, *United States v. Derek Gunby* 1:21-cr-00626-PLF at ECF 68. As he has not stylized his motion on this ground, the government has not responded. Nonetheless, we are prepared to similarly brief the matter and seek denial of any such relief.

Overall, the defendant has not established a particularized need, let alone any need, for the grand jury's instructions in this case. As a result, his motion should be denied.

## CONCLUSION

For the foregoing reasons, the motion by the defendant should be denied.


Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ *Barry K. Disney*
Barry K. Disney
KS Bar No. 13284
Assistant United States Attorney – Detailee
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Email: Barry.Disney@usdoj.gov

Cell: (202) 924-4861

/s/ *Allison K. Ethen*
Allison K. Ethen
MN Bar No. 0395353
Assistant United States Attorney – Detailee
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Email: Allison.Ethen@usdoj.gov

/s/ *Matthew Beckwith*
MATTHEW BECKWITH
DC Bar No: 90014452
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20004
(202) 252-7109
Matthew.Beckwith@usdoj.gov

8