UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)  Criminal No. 1: 22-cr-166 (MAU)<br>JOHN GEORGE TODD III )<br>)<br>**Defendant** )<br>) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION TO COMPEL DISCLOSURE
OF MATERIALS PURSUANT TO *BRADY V. MARYLAND***

COMES NOW Defendant John George Todd III ("Todd"), by and through the undersigned counsel, brings this Reply to the government's (ECF 150) opposition to Defendant's motion to compel disclosure of materials pursuant to *Brady v. Maryland*.

## ARGUMENT

**I.   THE GOVERNMENT'S DISCOVERY PRODUCTIONS ARE VOLUMINOUS AND UNHELPFUL GIVEN TIME CONSTRAINTS OF JANUARY 22, 2024 TRIAL**

The prosecution's discovery production, whether case-specific or global, while appearing to meet its obligation to under *Brady* and Fed. R. Crim. P. 16(a)(1)(E) due to its being regularly updated and continuously disclosed, continues to violate Todd's due process because such discovery production continues to obscure evidence material to his guilt or punishment, *irrespective of the good faith or bad faith of the prosecution*. *See Brady v. Maryland*, 373 U.S. 87 (1963) (emphasis added). Rules of criminal procedure are typically silent on digital discovery, and case law is scant and varies greatly from one court to the next. Jenia I. Turner, *Managing Digital Discovery in Criminal Cases*, 109 J. CRIM. L. & CRIMINOLOGY 237 (2019) (citing N.J. CT. R. 3:13; cf. M.R.U. CRIM. P. 16 (noting that where practicable, the prosecutor must provide the defendant "an opportunity to obtain an electronic copy, at any reasonable time

1

and in any reasonable manner," and where the prosecutor is unable to do so, "because the technology makes such provision impracticable," or when copying is not legally permitted, the prosecutor *must provide the defendant "a reasonable opportunity" to review such evidence*) (emphasis added)).

### A. The Data Dump is "Unduly Onerous" under *Skilling*

In *Skilling*, the leading case on whether large voluminous discovery can run afoul of *Brady*, the defendant asserted that the "seven hundred million pages of documents" produced by the prosecution violated the federal government's Brady obligations because the voluminous open file was so large as to suppress exculpatory evidence.  *See United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009).  The Fifth Circuit identified several factors that should be evaluated when determining whether there has been an impermissible "data dump" in violation of *Brady*: whether the open file production contained "pointless or superfluous" materials, whether the production was so voluminous as to be "unduly onerous," and whether the placement of exculpatory material within the production indicated an attempt to conceal such documents.

Here, the government has provided multiple terabytes of information due to the size and scope of January 6th discoverable material.  Even if none is superfluous and the government has not attempted to conceal exculpatory material, the production is so voluminous as to be "unduly onerous."  The prosecution's latest discovery letter reveals that as of November 17, 2023, more than 7.95 million files (over 10.10 terabytes of information) have been provided to the defense Relativity workspace.  These files include (but are not limited to) the results of searches of 832 digital devices and 451 Stored Communications Act accounts; 36,865 FBI FD-302s and related attachments (FD-302s generally consist of memoranda of interviews and other investigative steps); 523 digital recordings of subject interviews; and 210,538 (redacted or anonymous) tips. Over 32,000 files including body-worn and hand-held camera footage from five law enforcement

agencies and surveillance-camera footage from three law enforcement agencies have been shared to the defense evidence.com video repository.  For context, the files provided amount to over nine terabytes of information and would *take more than a year to view continuously* (emphasis added).

Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See*, *e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993).  Todd's trial is set for January 22, 2024.  It would be "unduly onerous" to require Todd's defense counsel to comb through the global discovery in the next couple of weeks as it continues to fine tune his defense.

**B. The Data Dump is a Suppression of Evidence Under *Blankenship***

*United States v. Blankenship* articulates an alternative approach to evaluate whether a "data dump" constitutes suppression of evidence in violation of Brady.  Hilary Oran, *Does Brady Have Byte? Adapting Constitutional Disclosure for the Digital Age*, 50 COLUM. J.L. & SOC. PROBS 97, 126 (2016).   Under the *Blankenship* standard, merely giving defendants access to the case file cannot satisfy *Brady*; rather, the prosecution must identify any known favorable evidence within the electronic materials.  *See United States v. Blankenship*, 2015 WL 3687864 (S.D.W. Va. June 12, 2015).  The rationale is that, "at some point . . . a duty to disclose may be unfulfilled by disclosing too much; at some point 'disclosure,' in order to be meaningful, requires 'identification' as well." *Id.* at \*6–7.  The court asserted that the prosecution, "having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce . . . is in a far better position than [Blankenship] to know what evidence might be exculpatory." *Id.* at \*7.  This holding rejects *Skilling's* assumption that once defendants have full access to a case file, the parties are equally situated to discover the *Brady* material.  In its

3

decision, the court stressed that its standard "conforms to the clear and continuing requirements of *Brady*" by ensuring a fair trial. *Id.*

The *Blankenship* standard was applied in *Sayler*. In *United States v. Sayler*, 2010 U.S. Dist. LEXIS 77617, at * 19-23 (E.D. Cal. Aug. 2, 2010), the court ordered the prosecution to identify Rule 16, and *Brady* documents contained in a voluminous discovery production "as a matter of case management (and fairness) noting "in light of the above, and to return to the real problem here, it bears repetition to emphasize that the ultimate issue is whether there is 'disclosure' in the letter and spirit of *Brady* simply by turning over a mountain of 'everything' acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information can be found. 'The government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack.' *United States v. Hsia*, 24 F.Supp. 2d 14, 29-30 (D.D.C. 1998).

Here, Todd is similarly in a much weaker position to know which evidence might be exculpatory because his firm is not equally situated to discover the *Brady* material. That is why Todd made the specific requests for the nine items, requests which are material, within the possession, custody and control of the government, and not duplicative of already provided discovery. ECF No. 142 at 2.

**C. The Data Dump Violates Defendant's Due Process Claims Under *Mathews v. Eldridge***

The constitutional measure of fair procedures may turn on the comparative resources of the government and the individual. Oran at 132. *Mathews v. Eldridge* announced a three-part balancing test to analyze due process claims, weighing an individual's private interests, the government's interests, and the cost and benefits of granting additional process to the defendant. 424 U.S. 319 (1976). The *Mathews* balancing test has been applied in several cases concerning a

4

defendant's right to access evidence. *See, e.g.*, *McKithen v. Brown*, 481 F.3d 89, 107–08 (2d Cir. 2007); *Grayson v. King*, 460 F.3d 1328, 1340–43 (11th Cir. 2006); *Harvey v. Horan*, 285 F.3d 298, 315 (4th Cir. 2002). The ultimate goal of the *Mathews* framework is to determine how much more reliability and fairness can be discerned by affording an individual some additional process, and if it is worth the incremental cost to the government. Oran at 133. For those defendants unable to effectively search an oppressive, massive case file, the additional burden on the government is indeed worth the potential risk of an unfair trial. *Id*. Here, given the comparative resources between the government and defense counsel's small law firm, a *Mathews* balancing test should result in additional process to the defendant in the form of at least some of the nine items he requested as soon as possible in advance of the January 22, 2024 trial in order to conform with *Brady* and Fed. R. Crim. P. 16. ECF No. 142 at 2.

**D. Defendant's Discovery Requests are Material Under Fed. R. Crim. P. 16.**

The government's argument that Todd's discovery requests are immaterial does not conform with its own guidance. The Justice Department Manual provides that regarding materiality and admissibility of evidence, exculpatory evidence is material to a finding of guilt— and thus the Constitution requires disclosure—when there is a *reasonable probability* that effective use of the evidence will result in an acquittal. *United States v. Bagley*, 475 U.S. 667, 676 (1985) (emphasis added). Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a *broad view of materiality* and err on the side of disclosing exculpatory and impeaching evidence. *Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (emphasis added). While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure *if admissibility is a close question*. Justice Manual § 9-5.001 (B)(1) (emphasis added). Here, Todd has made a preliminary showing, through requests 1-3, that the information sought is material to

his defense because those requests specifically concern the officers involved in Todd's alleged assault. Requests 4 and 5, regarding medical records and alleged injuries of those involved, is also material to his defense because they implicate whether the officers might have harmed themselves instead of being assaulted by Todd. Requests 6 and 7 concerning identities of all protestors standing nearby Todd at the time of these events is also material and not "patently absurd on its face" because Todd is not asking for "hundreds" of individuals during the entire two and a half hours Todd was on the grounds, only for those standing nearby Todd at the time of the events in question. The government's assertion that the global discovery database is "regularly maintained and updated" and accessible for "over a year" does little to convince defense counsel that the government has met its bar to disclose exculpatory evidence under *Brady*. In sum, admissibility is a much closer question than the government asserts in its opposition. ECF No. 150.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests the Court consider the issues contained in the defendant's motion to compel in order to comply with the defendant's due process rights under *Brady v. Maryland*. ECF No. 142.

Date: December 29, 2023

Respectfully Submitted,

*/s/ Roger I. Roots*
Roger I. Roots
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (775) 765-9347
Email: rroots@johnpiercelaw.com

## CERTIFICATE OF SERVICE

I, Roger I. Roots, hereby certify that on this day, December 29, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

*/s/ Roger I. Roots*
Roger I. Roots
