**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN GEORGE TODD III,<br><br>    Defendant. | Criminal Action No. 22-166 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Defendant John George Todd III faces trial on January 22, 2024, on a five-count superseding indictment arising from his alleged conduct at the U.S. Capitol on January 6, 2021. Pending before the Court are defendant's Motion to Reveal Legal Instructions Given to Grand Jury ("Def.'s Mot. to Reveal"), ECF No. 138, and Motion to Dismiss the Superseding Indictment ("Def.'s Mot. to Dismiss"), ECF No. 139.[1]  The government opposes both motions, which are now ripe for resolution.  *See* Gov't's Opp'n to Def.'s Mot. to Reveal ("Gov't MTR Opp'n"), ECF No. 151; Gov't's Opp'n to Def.'s Mot. to Dismiss ("Gov't's MTD Opp'n"), ECF No. 147; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s MTD Reply"), ECF No. 153.  For the reasons discussed below, both motions are DENIED.

---

[1]    Ten additional pretrial motions have already been resolved, including: (1) the government's Motion *in Limine* Regarding the Authentication of Publicly Available Video Evidence, ECF No. 29; (2) the government's Motion *in Limine* to Admit Defendant's Statements, ECF No. 96; (3) the government's Motion *in Limine* to Preclude the Use of Improper First Amendment Defenses, ECF No. 110; (4) the government's Motion *in Limine* to Preclude Improper Defense Arguments About Law Enforcement, ECF No. 111; (5) defendant's Motion to Compel, ECF No. 117; (6) defendant's Motion to Lift Protective Order and Motion *in Limine* Given Recent Public Release of Surveillance Footage, ECF No. 118; (7) defendant's Motion to Compel, ECF No. 142; (8) defendant's Motion *in Limine* to Preclude Post-Event Camera Footage, ECF No. 145; (9) defendant's Motion to Prohibit Any Further Contrived Superseding Indictments, ECF No. 146; and (10) the government's Motion to Modify Standing Order Relating to the Pretrial Statement, ECF No. 157.  *See* Min. Order (Nov. 15, 2023); Min. Entry (Nov. 15, 2023); Min. Orders (Nov. 22, 2023); Min. Orders (Jan. 9, 2024); Min. Order (Jan. 10, 2024).

## I.    BACKGROUND

On May 12, 2022, a four-count information was filed, charging defendant with Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* Information, ECF No. 6.  A trial on all charges was scheduled for November 14, 2022, *see* Min. Order (Aug. 12, 2022), but the trial date was vacated in light of defendant's "continued need for mental health assessment and treatment" and inability to assist in his defense, Status Report, No. 31; *see also* Min. Order (Oct. 12, 2022); Pretrial Compliance Report, No. 30.

Defendant received new counsel on October 26, 2022, *see* Notice of Att'y Appearance by John Pierce, ECF No. 33; *see also* Min. Order (Oct. 27, 2022) (granting Motion to Withdraw filed by Ronna Holloman-Hughes, ECF No. 34), and moved, on November 4, 2022, with the government's consent, for a trial by magistrate judge, *see* Def.'s Mot. for Trial by Magistrate Judge, ECF No. 38; Gov't's Resp. to Def.'s Mot. for Trial by Magistrate Judge, ECF No. 40. Upon consideration of defendant's "express and written election to be tried before a magistrate judge" and his "express and specific waiver of trial, judgment, and sentencing by a district judge," as well as the government's consent to the same, defendant's motion was granted.  Min. Order (Nov. 9, 2022).

A bench trial before a magistrate judge was then scheduled to begin on October 16, 2023, *see* Min. Entry (Dec. 9, 2022), but due to defense counsel's "incredibly compressed and overlapping trial schedule," defendant sought and obtained a continuance of the trial until

December 15, 2023, with a pre-trial conference scheduled for December 7, 2023, *see* Def.'s Mot. to Continue Trial, ECF No. 77; *see also* Am. Pretrial Order, ECF No. 83.

Two weeks before the December 2023 trial date, the government informed the Court and defendant that, upon closer review of the evidence in preparation for trial, evidence, including police officer body worn camera footage, was uncovered that could warrant a charge under 18 U.S.C. § 111.  *See* Def.'s Notice at 2–3, ECF No. 128 (citing government's Nov. 30, 2023 email to chambers).  On December 6, 2023, a grand jury was empaneled, before whom defendant voluntarily testified.  *See* Min. Order (Dec. 5, 2023).  On the same day, this grand jury returned a superseding indictment, charging defendant with, in addition to the four misdemeanor counts in the original information, one count of Inflicting Bodily Injury on Certain Officers, in violation of 18 U.S.C. § 111(a)(1), (b).  *See* Superseding Indictment, ECF No. 133.  The additional felony count necessitated the return of the case to the undersigned, as the original presiding judge, and a new trial date is now set for January 22, 2024, on defendant's demand for a speedy trial.  *See* Min. Order (Dec. 15, 2023); Min. Entry (Dec. 15, 2023).

## II.   DISCUSSION

Among the pre-trial motions filed by defendant are the instant Motion to Reveal Legal Instructions Given to Grand Jury and Motion to Dismiss the Superseding Indictment.  *See supra* note 1.  Both motions make the serious accusation that the District Court for the District of Columbia and prosecutors in this district, have adopted an "explicit policy of punishing January 6 defendants who reject guilty plea offers," suggesting a "high likelihood that the Super[s]eding Indictment in this case was generated for purposes of spite, vindictiveness, and retaliation." Def.'s Mot. to Reveal at 2–5; *see also* Def.'s Mot. to Dismiss at 6–11.  Defendant's allegations

of vindictive and retaliatory prosecution are first addressed, before turning to his arguments specific to each motion.

### A.    Vindictive Prosecution

Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017).  To succeed on a claim of vindictive prosecution stemming from the nature of the charges brought, a defendant must show that "the increased charge was 'brought *solely* to penalize him and could not be justified as a proper exercise of prosecutorial discretion.'"  *Id.* (alteration in original accepted) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982)).  Such a showing may be made "through objective evidence showing actual vindictiveness, or through evidence 'indicating a realistic likelihood of vindictiveness,' which gives rise to a presumption that the government must then attempt to rebut."  *Id.* (alteration in original accepted) (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987)). Defendant offers no evidence of actual vindictiveness.  Rather, he points to presumptive evidence in the form of "a growing list of Jan. 6 defendants," citing twelve such cases including defendant, as to whom "federal prosecutors added (or threatened to add) an additional, 20-year felony charge" when "the defendant expressed his innocence and intent to exercise his or her right to trial" on misdemeanor charges.  Def.'s Mot. to Reveal at 4; *see also id.* at 3–5; Def.'s Mot. to Dismiss at 6–11.

In pre-trial presumption cases, as here, "'the prosecutor's assessment of the proper extent of the prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive."  *Slatten*, 865 F.3d at 799 (quoting *Meyer*, 810 F.2d at 1245).  In this context, therefore,

"a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Id.* (quoting *Meyer*, 810 F.2d at 1245–46).

Defendant's reliance on the government's filing of a superseding indictment after he refused to plead guilty, *see* Def.'s Mot. to Dismiss at 6–11, is insufficient to make this showing. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent charges in the charging decision are unjustified." *Goodwin*, 457 U.S. at 382–383; *see also Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("[O]penly present[ing] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, d[oes] not violate the Due Process Clause of the Fourteenth Amendment."). Rather, what defendant describes is "nothing more . . . than a run-of-the-mill pretrial situation." *United States v. Meadows*, 867 F.3d 1305, 1320 (D.C. Cir. 2017) (Rogers, J., concurring) (internal citation omitted).

Even if the timing in the procedural chronology triggered the presumption—which it does not—no finding of vindictiveness is supportable. Given the terabytes of data in multiple formats collected from many sources about the attack on the U.S. Capitol on January 6, 2021, ferreting out who did what, when and where that day is a significant and time-consuming challenge in the face of limited investigative and prosecutorial resources. This is important context in understanding the timing of charges brought in this and other January 6 cases. The government, when preparing for trial on the misdemeanor charges against this defendant, reasonably reviewed the discovery related to defendant in more depth and thereby uncovered evidence of an alleged assault of a law enforcement officer by defendant. Gov't MTR Opp'n at 3. The government then sought a superseding indictment from a grand jury. *Id.* This scenario of expending

investigative and prosecutorial resources to drill down deeper into the terabytes of data in preparation for trial likely plays out in similar fashion in other cases charging offense conduct at the U.S. Capitol on January 6, 2021.  Defendant points to nothing else and nothing unusual about this case that would give rise to a presumption of vindictive prosecution.  *See, e.g.*, Order, *United States v. Speed*, No. 22-cr-244, ECF No. 54 (denying defendant's motion to dismiss for vindictive prosecution); Transcript of Bench Trial (Day 1) at 5–9, *Speed*, No. 22-cr-244, ECF No. 75 (explaining that defendant established presumption of vindictiveness because the felony charge was added only after a mistrial was declared in defendant's trial in Virginia district court and prosecutors in the case were aware of the mistrial, but concluding nonetheless that the government overcame the presumption by, *inter alia*, pointing to "additional video evidence" supporting the alleged charge, which the government recovered several months later because they "started reviewing the evidence and preparing in earnest only once the trial date approached").

On this record, the return of the Superseding Indictment presents no indication of prosecutorial vindictiveness, let alone any irregularity in grand jury process.  *See United States v. Gunby*, No. 21-cr-626, 2023 WL 5672746, at *1 (D.D.C. Sept. 1, 2023) (denying defendant's motion to dismiss a new indictment on grounds of prosecutorial vindictiveness where "[t]he government has explained that, as it prepared for trial and reviewed the evidence in detail, it sought an additional charge commensurate with the conduct, and consistent with its approach in January 6 prosecutions" (internal citation omitted)).

### B. Motion to Reveal Legal Instructions to Grand Jury

"[L]ong-established policy . . . maintains the secrecy of the grand jury proceedings in the federal courts," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958), and grand jury proceedings are entitled to "a presumption of regularity, which generally may be dispelled

only upon particularized proof of irregularities in the grand jury process," *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring).  Specifically, grand jury materials are subject to disclosure only when the defendant succeeds in carrying the heavy burden of showing that "a particularized need exists" that "outweighs the policy of secrecy."  *Pittsburg Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).  "Only in exceedingly rare cases are defendants able to make a factually based showing of particularized need for the production and inspection of grand jury materials."  *United States v. Apodaca*, 287 F. Supp. 3d 21, 47–48 (D.D.C. 2017) (cataloguing cases).

Recognizing this heavy burden, defendant nonetheless argues that he has established a particularized need for the legal instructions given to the grand jury for three reasons that shift—somewhat illogically—to substantive attacks on the validity of the Superseding Indictment.[2] None of the reasons are persuasive.  First, defendant argues that the Superseding Indictment was not signed by the grand jury foreperson, does not name witnesses, and is thus invalid. Def.'s Mot. to Reveal at 1.  The Superseding Indictment was, in fact, signed by the foreperson, *see* Superseding Indictment (Sealed), ECF No. 134, but even if not, such irregularity would not be fatal, *see Frisbie v. United States*, 157 U.S. 160, 163–64 (1895).  Furthermore, defendant offers no support for the proposition that names of witnesses who testified before the grand jury must be listed in the superseding indictment, and the Court is aware of none.  Indeed, defendant's proposition runs directly counter to the secrecy required under Federal Rule of Criminal Procedure 6(e).  *See* Fed. R. Crim. P. 6(e)(6) (requiring "[r]ecords, orders, and subpoenas relating to grand jury proceedings" to "be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury").

---

[2]     The limited nature of this request must be highlighted since the government has already produced to defendant part of the grand jury presentation, namely, a transcript of defendant's own voluntary testimony, on December 6, 2023, before the grand jury.  *See* Gov't's MTR Opp'n at 5.

Second, defendant argues that "[n]either the [l]aw nor application of law to the evidence" supported the new assault count, and thus the government "must have deceived the grand jury." Def.'s Mot. to Reveal at 1–2.  Defendant acknowledges, however, that body camera footage shows that defendant's fiberglass flagpole broke and that the officer "punctured his own hand" on the flagpole.  *Id.* at 2.  Just because defendant vigorously asserts that he would not have found himself guilty on this evidence is insufficient to meet his high burden of establishing irregularity or a particular need for the grand jury materials.  In any event, in making this argument, defendant minimizes his own conduct by ignoring the remainder of the government's proffer about the overall circumstances of his interaction with law enforcement officers underlying the new assault charge.  As the government alleges, in response to U.S. Capitol police officers' efforts and directions to clear unauthorized rioters, including defendant, from the U.S. Capitol Rotunda area, defendant "repeatedly pushed against [the] officers when being told to leave," and shouted at the officers and threatened them with physical violence, yelling "I swear to God, I'll hip toss your ass into the fuckin' crowd, mother fucker!"  Gov't's MTR Opp'n at 1–2.  The government further alleges that Officer N.R., believing that "defendant was about to strike someone with his fiberglass tent pole," "attempted to take the pole from the defendant."  *Id.* at 2. Defendant then wrestled with Officer N.R. for control of the pole, splintering the pole, and defendant, who saw the "splintered fiberglass," nonetheless "ripped the splintered pole out of [the officer's] hands," resulting in a "deep cut" through the officer's knuckle that exposed a tendon in the officer's finger and required further medical attention.  *Id.*

Finally, in a last gasp attack on the new felony assault charge against him, defendant makes the serious accusation of prosecutorial retaliation.  *See* Def.'s Mot. to Reveal at 3–4. Normally, vindictive prosecution claims are made to obtain relief in the form of dismissal of the

indictment, but here is apparently thrown into the mix merely to show "irregularities in the grand jury process" to obtain inspection of the instructions to the grand jury. *Id.* at 5. For the reasons explained above, defendant's claims of vindictive prosecution fail.

In sum, defendant offers no reason—let alone a particularized need—to overcome the presumption against disclosure of grand jury materials and his request for disclosure of the legal instructions provided to the grand jury is therefore denied.

C.     **Motion to Dismiss**

Defendant raises two arguments, in addition to his contentions of vindictive prosecution, to support his motion to dismiss the Superseding Indictment's new charge in Count One for Inflicting Bodily Injury on Certain Officers, in violation of 18 U.S.C. § 111(a)(1), (b). Neither argument is persuasive.

First, defendant posits, in a conclusory fashion, that "no plausible legal theory" supports the new Count One charge for forcibly assaulting, resisting, opposing, impeding, intimidating, interfering, and inflicting bodily injury on "N.R., an officer with the Metropolitan Police Department while such officer . . . was engaged in or on account of the performance of official duties or where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony." Superseding Indictment; *see also* Def.'s Mot. to Dismiss at 1. This argument simply ignores the dispositive weight of contrary law.

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). Courts have repeatedly rejected the notion that "defendants [can] challenge indictments on the ground that they are not supported by adequate or competent evidence," criticizing the position as "run[ning] counter to

9

the whole history of the grand jury institution."  *Id.* at 364; *see also United States v. Williams*, 504 U.S. 36, 54 (1992).  Rather, pretrial dismissal of an indictment is unwarranted on sufficiency of evidence grounds unless "the material facts are undisputed and only an issue of law is presented."  *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (cataloguing cases and noting, as an exception, the Eleventh Circuit, which has held that "even where there are undisputed facts a district court may not engage in a pretrial determination of the sufficiency of the evidence").

Here, no facts have been stipulated to by the parties and thus, as the government concisely states, "[e]very material fact of the case remains in dispute."  Gov't's MTD Opp'n at 4. Defendant argues that no factual disputes exist because "[t]here is no hint of evidence to show that Todd manipulated the flagpole in any manner towards the direction of the officer," and "[r]ather, the injury and contact was self-inflicted and initiated by the officer himself."  Def.'s MTD Reply at 2–3.  In so arguing, defendant acknowledges that evidence of defendant and the officer interacting exists, that defendant's flagpole was instrumental in the officer's injury, and that the officer was, in fact, injured.  That upon his view of the evidence, "the injury and contact" was self-inflicted by the officer—not defendant—or that the officer's injury was not sufficiently severe to constitute a "bodily injury," *id.* at 3–4, reflect quintessential disputes of material fact best left for a jury.  In any event, as explained above, defendant minimizes his own conduct by ignoring the government's proffer about the full context and circumstances of his interaction with law enforcement officers underlying the new charge, including allegations that he "repeatedly pushed," yelled at, and threatened officers, and wrestled with Officer N.R. for control over a fiberglass pole—an altercation that resulted in a laceration that exposed a tendon in the officer's finger.  Gov't's MTD Opp'n at 1–2.

Second, defendant relies on law-of-the case doctrine as support for dismissal of Count One.  This doctrine, which is not a "binding rule," provides that "a court involved in later phases of a lawsuit should not re-open questions decided by that court or a higher one in earlier phases." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) (alteration in original accepted and citation omitted).  "Colloquially speaking, the doctrine ensures that the same issue presented a second time in the same case in the same court should lead to the same result." *Id.*  Defendant suggests that the Court's statement at a status conference on November 4, 2022, that the government was "running out of time" to file a superseding indictment amounted to a court order that the government violated by subsequently filing the Superseding Indictment.  Def.'s Mot. to Dismiss at 3; *see also* Transcript of Nov. 4, 2022 Status Conference ("Nov. 4 Conf. Tr.") at 4, ECF No. 88.  Read in context, however, this statement simply reflected the Court's expectation that a trial, which had already been rescheduled once, would be soon.  *See* Nov. 4 Conf. Tr. at 7 (the Court stating: "This case has been pending now for some time.  I just had a trial date free up on December 5th.  This case was supposed to be tried November 14th.  What's wrong with the December 5th date?").   In fact, when defendant urged for a trial date in 2023, the Court warned: "I have no idea how far into 2023 you're contemplating, but that's just going to give [the government] plenty of more time to be investigating Mr. Todd and potentially bring superseding charges."  *Id.* at 11.  No reasonable person could read the Court's passing statement that the government was "running out of time" to file a superseding indictment to represent a court order that the government was prohibited from filing one.

Defendant then argues that by transferring the case to a magistrate judge, the Court ruled that the government could not bring a Superseding Indictment.  Def.'s Mot. to Dismiss at 6.  This contention also has no merit.  The Court granted defendant's Motion for Trial by Magistrate

Judge, ECF No. 38, pursuant to 18 U.S.C. § 3401(b), which provides that a defendant may "expressly consent[] to be tried before [a] magistrate judge and expressly and specifically waive[] trial, judgment, and sentencing by a district judge." *See* Min. Order (Nov. 9, 2022). The minute order granting defendant's motion makes no mention of any potential superseding indictment. In sum, the law-of-the-case doctrine is not implicated because the issue of whether the government was precluded from filing a superseding indictment was simply never decided.

## III.    CONCLUSION

For the foregoing reasons, it is:

**ORDERED** that defendant's Motion to Reveal Legal Instructions Given to Grand Jury, ECF No. 138, is DENIED, and it is further

**ORDERED** that defendant's Motion to Dismiss the Superseding Indictment, ECF No. 139, is DENIED.

**SO ORDERED.**

Date:  January 10, 2024

_____
**BERYL A. HOWELL**
United States District Judge

12