UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN GEORGE TODD III,<br><br>Defendant. | Criminal Action No. 22-166 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION AND ORDER**

Defendant John George Todd III faces trial on January 29, 2024, on a six-count superseding indictment arising from his alleged conduct at the U.S. Capitol on January 6, 2021. *See* Second Superseding Indictment, ECF No. 171; Min. Order (Jan. 12, 2024) (continuing trial for one week from January 22 to January 29, 2024, at defendant's request for additional time to challenge new felony charge against defendant for violation of 18 U.S.C. § 1512(c)(2)). In preparation for trial, defendant filed a notice (the "Notice"), pursuant to Federal Rule of Criminal Procedure 16(c)(1)(C), of his intent to offer a "use-of-force" expert, Steven Hill, to testify about Hill's review of the body-worn camera ("BWC") footage of two District of Columbia Metropolitan Police Department ("MPD") officers "at the time and location at issue" of defendant's alleged offense conduct underlying Count Two of the Second Superseding Indictment, charging him with Inflicting Bodily Injury on Certain Officers, in violation of 18 U.S.C. § 111(a)(1), (b). *See* Def.'s Notice of Use-of-Force Expert ("Def.'s Notice") at 2, ECF No. 143; *see also* Second Superseding Indictment. The government seeks to exclude Hill's proffered expert testimony. *See* Gov't's Mot. in Limine to Exclude Expert Test. of Steven Hill ("Gov't's Mot."), ECF No. 160. Upon consideration of the parties' briefing and supplemental

1

filings in support of and in opposition to the government's motion, and hearing oral argument at the pretrial conference on January 12, 2024, the government's motion is GRANTED.

## I. PROFFERED EXPERT TESTIMONY

Hill is "a retired police supervisor and trainer with 40 years of experience in law enforcement," Def.'s Notice at 1; *see also* Def.'s Notice, Decl. of Steven Hill ("Hill Decl."), ECF No. 143-1, with prior experience as a reserve officer, detective, and sergeant in the Albuquerque Police Department, an instructor at the Department of Energy National Training Center, and, until his retirement in 2021, a systems engineer at a Department of Energy National Nuclear Laboratory, Def.'s Supp. Curriculum Vitae of Def. Expert ("Def.'s Supp."), Ex. 2 Curriculum Vitae of Steven Hill ("Hill C.V.") at 1–4, ECF No. 167-2.[1]  Since his retirement, Hill has been "providing pro bono and paid consultation and legal services for January 6th 2021 defendants." Hill C.V. at 1.

According to defendant's Notice, Hill plans to testify at trial in this matter, based on his own viewing of the BWC footage of two MPD officers "at the time and location at issue" that (1) defendant's conduct was "vocal or admonishing but not assaultive or criminal"; (2) defendant was "holding his small flag very close to his own body and was not using the flag as a weapon or disruptive device"; (3) "[t]hus, the officer had no reason or need to grab at Todd's flag or try to pull it from Todd's grasp"; and (4) "[t]he officer deliberately and unnecessarily broke Mr. Todd's small flagpole and accidentally cut his hand on the fiberglass fibers," which injury was "100% self-inflicted."  Def.'s Notice at 2.

---

[1] Defendant's initial Notice of Use-of-Force Expert did not include a curriculum vitae, other form of resume, or a list of cases in which Hill has testified and, instead, proffered generally that Hill has "40 years of experience in law enforcement" and described in broad strokes Hill's prior work experience without any associated dates of employment or, for each job, specific job titles or responsibilities.  *See generally* Def.'s Notice; Hill Decl.  After the Court's prompting at the pretrial conference, defendant supplemented his Notice with Hill's curriculum vitae.  *See generally* Def.'s Supp.

2

Hill's declaration echoes defendant's Notice, explaining, based on his review of the BWC footage of the two MPD officers "at around the period of time in question," that MPD officers complied with supervisory direction not to engage or let rioters through a police line, which was "relatively stable, albeit with lots of verbal challenging and taunting by the parties (including Mr. Todd)." Hill Decl. ¶¶ 11, 20–21. Hill opines, "[f]rom the bodycam videos, it appears Mr. Todd did <u>not</u> initiate any contact with the officers," *id*. ¶ 22 (emphasis in original), that the officer's "grabbing of Mr. Todd's flagpole was something of an act of aggression (which, it appears, violated orders)," *id*. ¶ 23, when defendant "held onto his flagpole," the officer "retaliated by trying to break Mr. Todd's flagpole," *id*. ¶ 24, and, further, that when the officer succeeded, "the flagpole's fibers broke the skin on [the officer's] hand," *id*. ¶ 25. Hill sums up his perspective about the officer being aggressive and retaliatory, stating: "My opinion is that Officer Rath[bun] broke Mr. Todd's flagpole unnecessarily, in apparent retaliation against Todd for protesting and holding onto his flag. The puncture cut on Officer Rath[bun]'s hand was 100% <u>self inflicted</u>." *Id.* ¶ 26 (emphasis in original).[2]

The Notice makes no mention of what testimony Hill would offer about the use of force, other than stating, as to prior experience, that Hill was "the City of Albuquerque's designated witness on matters of police use-of-force procedures in civil rights litigation cases." Def.'s Notice at 1–2.[3] In contrast to the notable absence in the Notice of any reference to proffered testimony on the use of force, Hill's declaration describes a "use-of-force continuum," with which Capitol Police and MPD officers are allegedly trained. Hill Decl. ¶ 13. Hill explains that

---

[2] Hill uses "Rathman" and "Rathbun" interchangeably to refer to the officer who was injured after engaging in an altercation with defendant. The government's exhibit list states the officer's name as "Noah Rathbun." *See* Statement of Case, Ex. Gov't Ex. List at 4–5, ECF No. 170-2. For consistency, "Rathbun" will thus be used.

[3] This is also reflected in Hill's C.V., which indicates that, as a "Sergeant/Supervisor" in the Albuquerque Police Department, from 1985 to 2003, he was a "District and Federal court certified expert witness," Hill C.V. at 3, but no other detail is provided about the subject matter, the number of times, or the cases in which he testified as an expert.

3

this "continuum" requires officers to be "responsive to levels of force used by combatants, rioters, or other non-officers," such that "[d]uring riots," officers are "sometimes required to initiate forceful contact with demonstrators," including "push[ing] protestors," in order "to force them to move away from an unauthorized place or person." *Id.* ¶¶ 13, 17, 19. "[W]hen officers make physical contact with demonstrators in such circumstances," however, "[g]enerally speaking," "the demonstrators on the receiving end of such contacts are not considered to be assaulting the officers." *Id.* ¶ 19.

In sum, reading defendant's Notice and the accompanying Hill declaration most generously, defendant intends to call Hill to testify about (1) what training the MPD and Capitol Police officers present at the U.S. Capitol on January 6, 2021, may have received and whether defendant's conduct constitutes "assault" under that training, and (2) his subjective opinion, based on his review of two BWC videos, that defendant did not assault Officer Rathbun.

## II.     DISCUSSION

Before expert testimony may be admitted at trial, Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), require a district court to act as "gatekeep[er]" by "ensur[ing] that any [such] testimony is based on" scientific, technical, or other specialized knowledge that "will assist the trier of fact to understand or determine a fact in issue." *United States v. McGill*, 815 F.3d 846, 903 (D.C. Cir. 2016) (quoting *Daubert*, 509 U.S. at 592); *see also United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 892 (D.C. Cir. 2010) ("[T]rial judges must act as gatekeepers to exclude unreliable expert testimony."). Those rules place, on the party seeking to introduce an expert's testimony, the burden of establishing both the qualifications of the expert—*i.e.*, that the witness is "an expert by knowledge, skill, experience, training, or education"—and

the admissibility of the testimony—*i.e.*, that "it is more likely than not" that the proffered testimony (a) will "help the trier of fact [] understand the evidence or [] determine a fact in issue"; (b) is "based on sufficient facts or data"; (c) is "the product of reliable principles and methods"; and (d) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also McGill*, 815 F.3d at 903 ("The proponent of the expert testimony bears the burden to establish the admissibility of the testimony and the qualifications of the expert.").

The party offering the expert need not prove that the expert's opinions are correct, but rather that the expert is a qualified person who has reached his opinions in a methodologically reasonable manner. *See Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (explaining that courts "must focus 'solely on principles and methodology, not on the conclusions that they generate'" (quoting *Daubert*, 509 U.S. at 595)); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999) (stating that the trial court's job is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

The government moves to exclude Hill's proffered testimony on several grounds, asserting, first, that defendant's Notice was insufficient to meet the disclosure requirements of Federal Rule of Criminal Procedure 16. *See* Gov't's Mot. at 1, 5–9. As to this ground, the Court assumes without deciding that defendant's Notice, as supplemented after the pretrial conference in this matter, satisfies Rule 16's disclosure requirements. *See id.* at 6–7 (critiquing, reasonably, failure of defendant's Notice and accompanying Hill declaration to offer "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"

5

and "the bases and reasons" for the witness's opinions, as required by Fed. R. Crim. P. 16(b)(1)(C)(iii)); Def.'s Reply to Gov't's Mot. to Exclude Expert Test. of Steven Hill ("Def.'s Opp'n") at 2–3, ECF No. 165 (asserting merely that "[c]learly the government is well aware of what Mr. Hill will be testifying to," and acknowledging that Hill's testimony would be offered "on why an assault was not committed by the defendant in the matter," based on "the various types of bodycam footage he has reviewed" and "the universally accepted use-of-force continuum"); *see also* Def.'s Supp. (supplementing Notice with list of Hill's qualifications and experience, ECF No. 167-1, Hill's C.V., ECF No. 167-2, and Hill's Department of Energy National Training Center transcript, ECF No. 167-3). Any insufficiency in defendant's Notice in describing Hill's qualifications and proffered expert testimony will be applied in assessing whether defendant has demonstrated to the Court that "it is more likely than not that" the other prerequisites, under Rule 702, for presentation of his opinions to the jury are satisfied.

Close examination of Hill's qualifications and proffered summary of his expert opinion testimony reveals that defendant falls short of meeting his burden of demonstrating the prerequisites for admission of Hill's proffered opinion testimony under Rule 702.

### A.     Hill's Qualifications

"[T]he qualifications of an expert witness" are "a threshold inquiry for the trial court," and experts may be qualified based on their "'knowledge, skill, experience, training, or education,' any one of which is sufficient." *United States v. Marshall*, 946 F.3d 591, 596 (D.C. Cir. 2020) (quoting Fed. R. Evid. 702). The government contends that Hill is "not qualified to speak on the topics for which the defendant has noticed him as an expert," Gov't's Mot. at 10, and the Court agrees.

Defendant intends to call Hill to opine, based on his alleged expertise on "police use of force" and, more specifically, the "use-of-force continuum," that Officer Rathbun's injuries were self-inflicted and his actions retaliatory. Hill Decl. ¶¶ 1, 20–27. Although Hill has extensive experience in law enforcement and, in the most general terms, indicates that he previously was a "certified expert witness" an unspecified number of times in unidentified cases while working at the Albuquerque Police Department between twenty and thirty years ago, Hill C.V. at 3, defendant fails to demonstrate how this experience makes Hill qualified to testify about MPD Officer Rathbun's interactions with defendant on January 6, 2021. Hill's declaration claims no familiarity with the policies, procedures, or training of the Capitol Police or MPD and provides no basis for his knowledge about the use-of-force continuum as allegedly used by the law enforcement officers present at the U.S. Capitol on January 6, 2021. Hill Decl. ¶ 13; *see also id.* ¶¶ 3–6, 14 (acknowledging that training "may vary slightly from department to department" and identifying that Hill has worked at only the Albuquerque Police Department, Albuquerque SWAT Team, Department of Energy, and Department of State); *see also* Gov't's Mot. at 10–11 ("Hill appears to have *no* background or experience with Congress, the USCP, the MPD, or the U.S. Capitol building and grounds—and certainly does not have the specialized experience that would qualify him as an expert in those areas."). Likewise, Hill's more extensive curriculum vitae makes no mention of the Capitol Police, MPD, the U.S. Capitol, or even the use-of-force continuum. *See generally* Hill C.V.

Notably, defendant, in opposition, makes no effort to show why Hill's experience is a sufficient basis for his opinion about the operations of the Capitol Police and MPD, or whether Hill's education and experience is "of a kind that others in the field would recognize as acceptable." *Kumho Tire Co.*, 526 U.S. at 151. Defendant's opposition simply restates that Hill

has "forty years of experience in law enforcement training" and that the MPD's adoption of the use-of-force continuum has been recognized by courts in this district, Def's Opp'n at 2–3, but without making any effort to connect these two observations.  Put another way, defendant fails to demonstrate why Hill's "forty years of experience," none of which involved MPD, Capitol Police, or the U.S. Capitol and its grounds, makes him qualified to testify about whether the officers present on January 6, 2021, were trained on and adopted the use-of-force continuum, as Hill understands it, or some other riot control technique, the conditions under which any such techniques were used on January 6, 2021, or what Officer Rathbun should have done differently when confronted by defendant, given the overall context of the situation.

      While to be "qualified" as an expert under Rule 702, a witness need not "be recognized as a leading authority in the field in question or even a member of a recognized professional community," a witness does not qualify if his specialized knowledge has become obsolete, the subject matter of the witness's testimony does not match the witness's competence, or "the adequacy of a witness' qualifications are based . . . on the witness' experience testifying as an expert."  29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6264.1 (2d ed. 2023) (footnote omitted).  Hill's proffered expertise on the use of force appears to date from his experience over twenty years ago at the Albuquerque Police Department, where he also says he provided expert testimony, and is highly attenuated from any familiarity with the policies, practices, and training employed the MPD and Capitol Police at the U.S. Capitol on January 6, 2021.  *See Arias v. DynCorp*, 928 F. Supp. 2d 10, 17 (D.D.C. 2013) (finding expert unqualified under Rule 702 despite his "impressive credentials" because "plaintiffs [did] not demonstrate[] how his academic and professional experiences ma[d]e him qualified to testify" about the particular factual questions at issue); *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 8 (D.D.C.

2009) (finding expert unqualified under Rule 702 where expert did "not offer 'expert' testimony based on his years of experience" but instead "decide[d] credibility on an incomplete written record, offer[ed] conclusions that have no basis in fact revealed from his report, and advocate[d] for the Plaintiff rather than providing expertise to the fact-finder").

These shortcomings are fatal—and have been found reason to exclude Hill's proffered expert testimony in other cases. *See* Rough Tr. of Pre-Trial Conference (May 12, 2023), *United States v. Thomas*, No. 21-cr-552 (DLF) (expressing doubts that Hill is qualified as an expert to testify about the training and instruction given to MPD and Capitol Police and about whether law enforcement's use of force on January 6, 2021, violated their training and standards governing the use of force because Hill's curriculum vitae reflects no evidence of any personal knowledge, experience, training, or education in the MPD or Capitol Police); Min. Order (May 12, 2023), *Thomas*, No. 21-cr-552 (granting government's motion in limine to exclude Hill's expert testimony).[4]

Defendant has thus failed to carry his burden to establish that Hill is qualified to offer expert testimony on the appropriateness of Officer Rathbun's interactions with defendant on January 6, 2021, and this officer's alleged use of force.

### B. Admissibility of Hill's Proffered Testimony

Even if Hill were qualified as an expert to testify about the "use-of-force continuum" or the general use of force by law enforcement officers at the U.S. Capitol on January 6, 2021, his proffered testimony does not satisfy any of Rule 702's admissibility requirements. Defendant

---

[4] Hill indicates that he was a "Fact Witness" in *United States v. Christie*, No. 23-cr-5, and *United States v. Nordean*, No. 21-cr-175, and also provided "some expert testimony" in the latter, and participated in some fashion in *United States v. Thomas*, No. 21-cr-552. Hill C.V. at 4. Indeed, nowhere does defendant or Hill confirm that Hill has been previously qualified as an expert to testify at any trial involving offense conduct at the U.S. Capitol on January 6, 2021, including about the "use-of-force continuum" in a riot situation such as the one confronted by law enforcement that day at the U.S. Capitol and its grounds, or anywhere else.

fails to demonstrate that Hill's proffered testimony is "based on sufficient facts or data," is "the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). As explained above, Hill has established no personal knowledge of the Capitol Police or MPD's training policies, and any testimony on these topics would serve only "as conjecture and assumptions." Gov't's Mot. at 11. Hill cites no specific trainings, manuals, procedures, methodologies, or frankly any "facts or data" that he has reviewed as a basis for his proffered testimony that no assault occurred, as is charged in this case, except for the two BWC videos that will be presented to the jury for their own independent review. Hill Decl. ¶¶ 10–11. In sum, Hill's testimony does not appear to be based on *any* principles and methods, much less ones that are reliable, or involve any specialized or technical matter, much less one that "a lay jury may benefit from a qualified expert's tutelage." *Miller*, 608 F.3d at 895 (citation omitted); *see also Arsanjani v. United States*, No. 19-cv-1746, 2023 WL 3231101, at *4 (D.D.C. May 3, 2023) (concluding that the proposed testimony "based in large part on [the proposed expert's] subjective observations of a photo" is "not supported by any principle or methodology, much less a reliable one").

More fundamentally, Hill's proffered testimony would not help the jury "understand the evidence or [] determine a fact in issue." Fed. R. Evid. 702(a); *see also Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1211 (D.C. Cir. 1997) ("[W]e apply a two-part test for determining the admissibility of expert testimony: the witness (1) must be qualified, and (2) must be capable of assisting the trier of fact."). As discussed above, Hill's proffered testimony falls into two categories: testimony about (1) what training the MPD and Capitol Police officers present at the U.S. Capitol on January 6, 2021, may have received and whether Officer

10

Rathbun's conduct constitutes "assault" under that training, and (2) his subjective opinions about what the two BWC videos depict.

As to the former, Hill's proposed testimony about what training MPD and Capitol Police officers may have received and whether Officer Rathbun's conduct violated that training is entirely irrelevant to the charged offense: inflicting bodily injury on a MPD officer, in violation of 18 U.S.C. § 111(a)(1), (b), which requires only that an individual "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" a qualifying person "engaged in or on account of the performance of official duties."  18 U.S.C. § 111(a)(1).[5]  Put another way, whether defendant is guilty of inflicting bodily injury does not turn on defendant's alleged victim's conduct.[6]

Whether Officer Rathbun's conduct fits a definition of "assault" under the use-of-force continuum or pursuant to any training Officer Rathbun may have received is similarly irrelevant. *See* Hill Decl. ¶¶ 13–19; *see also* Def.'s Opp'n at 3–4 (stating, with no explanation, that "[w]hether [the officer] used the appropriate level of force is highly relevant to the issue at hand").  Here, defendant is charged with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], interfer[ing] and inflict[ing] bodily injury on, an officer and employee of the United States," *see* Second Superseding Indictment, and the question for the jury will be whether, based on the evidence presented at trial, the government has proved this charge beyond a reasonable doubt, *see* Statement of Case, Ex. Revised Proposed Jury Instrs. at 9, ECF No. 170-4 (jointly proposing jury instructions that define Count Two to include "assaulting"

---

[5]   Accordingly, Hill's proffered expert testimony is also excluded under Rule 401, as irrelevant, and under Rule 403, because any minimal probative value of Hill's proffered expert testimony is substantially outweighed by the danger of confusing the jury about the elements of 18 U.S.C. § 111, which does not depend on whether law enforcement officers followed their training or law enforcement procedures.

[6]   Defendant does not raise self-defense.

11

a qualifying officer); Statement of Case, Ex. Proposed Verdict Form, ECF No. 170-3 (jointly proposing that Count Two should be listed, at a minimum, as "Assaulting Certain Officers"). If the parties dispute the definition of "assault" under 18 U.S.C. § 111, this is a question of law for the Court—not an "expert" witness. *See United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (explaining that "an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged" is "to be determined by the court" and should not go to the jury). In fact, when a "term[] used by the witness ha[s] a separate, distinct and specialized meaning in the law different from that present in the vernacular," exclusion of the expert's testimony is particularly appropriate. *Burkhart*, 112 F.3d at 1212 (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Thus, to the extent Hill intends to testify that defendant did not assault Officer Rathbun, under Hill's own view of the use-of-force continuum, such testimony is irrelevant, misleading, and confusing.

As to the second proposed category, Hill's proffered testimony is also not expert testimony that would help the jury "understand the evidence" or "determine a fact in issue." Defendant intends to call Hill to opine about the following factual matters: that (1) defendant "did not initiate any contact with the officers," (2) Officer Rathbun "broke [defendant's] flagpole unnecessarily, in apparent retaliation against Todd," and (3) "[t]he puncture cut on [the officer's] hand was 100% self inflicted." Hill Decl. ¶¶ 22, 26 (emphasis in original). Based on these observations, Hill intends to conclude that "Todd's conduct at the time," while "vocal or admonishing," was "not assaultive or criminal." Def.'s Notice at 2; Def.'s Opp'n at 2 (confirming that defendant intends to call Hill to provide "his opinion on why an assault was not committed by the defendant in th[is] matter").

This proffered testimony is not based on any expertise obtained from Hill's experience as a law enforcement officer or any "scientific, technical, or other specialized knowledge." Rather, they are subjective opinions based on Hill's review of two BWC videos and, perhaps, the other unspecified evidence produced by the government in this case. *See* Hill Decl. ¶¶ 10–11 (stating that Hill reviewed only the BWC videos); Def.'s Opp'n at 1 ("Hill used all of the evidence turned over by the government to make his expert opinion."). In any case, Hill fails to identify any methodology he applied and provides no reason, grounded in any of his experience or alleged expertise, for his conclusion that Officer Rathbun "broke [defendant's] flagpole *unnecessarily*, in apparent retaliation," and that his injury was "100% *self inflicted*." Hill Decl. ¶¶ 26 (emphasis added). He states, instead, that he reached these conclusions via a subjective analysis of two BWC videos. *Id.* ¶¶ 10 ("I have reviewed the body-worn camera video of the MPD officer (Officer Noah Rathbun) who is alleged to be the officer injured by Mr. Todd in this matter."), 11 ("I have also reviewed other bodycam footage of this location at around the period of time in question; including the bodycam footage of MPD Officer Travis Coley."), 12 ("offer[ing]," based on such review, "the following summary observations and opinions"). This is "exactly the type of testimony that this Court must take care to exclude in its role as gatekeeper." *Arsanjani*, 2023 WL 3231101, at *5.

Hill's proposed testimony, in addition, goes to the ultimate question at issue in Count Two: whether defendant committed an assault. In fact, defendant seeks to call Hill *specifically* to testify "on the ultimate issue of whether the defendant assaulted Officer [Rathbun]." Def.'s Opp'n at 1; *id.* at 2 ("Hill has gone a step further within the declaration to break down his opinion on why an assault was not committed by the defendant in the matter."). To be sure, Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it

13

embraces an ultimate issue." Fed. R. Evid. 704(a).  Rule 704, however, is not unrestrained and does not permit free-for-all opinion testimony.  "Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions," *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988), because "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact," *Burkhart*, 112 F.3d at 1211 (cataloguing cases).  Put differently, "Rule 702 (and Rule 403) may still be used to exclude 'opinions which would merely tell the jury what result to reach.'"  *United States v. Boney*, 977 F.2d 624, 630 (D.C. Cir. 1992) (quoting Fed. R. Evid. 704, Note of Advisory Committee on 1972 Proposed Rules).

Here, defendant asks Hill to testify about whether, based on his view of the videos, defendant committed an assault.  In this capacity, Hill's testimony would be no different to that of "a lay person who reviewed limited information on behalf of a person with an interest in the outcome."  *Sykes*, 634 F. Supp. 2d at 8.  Such subjective lay opinions about Hill's perception of the officer's aggressiveness and culpability "do not assist a jury, but merely distract or interfere with its deliberation" and usurp its role.  *Id.*

For these, and other, reasons, Hill has not been permitted to testify as an expert in similar capacities, as far as the Court is aware.  *See, e.g.*, Min. Order (May 12, 2023), *Thomas*, No. 21-cr-552 (DLF) (granting government's motion in limine to exclude proposed expert testimony of Hill); Tr. of Jury Trial (May 18, 2023) at 13–14, *Thomas*, No. 21-cr-553, ECF No. 209 (explaining that the Court has "precluded [Hill] from testify as an expert," raising questions about whether Hill's testimony is "cumulative," and concluding that there is "no need" for "Hill to interpret the video that the jury can watch just like he did"); Rough Tr. of Jury Trial (Apr. 6, 2023) at 17299–300, *United States v. Nordean*, No. 21-cr-175 (TJK) (excluding Hill's expert testimony on notice, relevance, and Rule 403 grounds).  When Hill has testified in other cases

arising from the January 6, 2021 attack on the U.S. Capitol, he has done so only as a fact witness. *See supra* note 4; *see e.g.*, Min. Entry (May 19, 2023), *Thomas*, No. 21-cr-552; Tr. of Jury Trial (May 19, 2023) at 120, *Thomas*, No. 21-cr-553, ECF No. 210 (emphasizing that Hill's testimony is "limited" to that of "a summary witness"); Min. Entry (Apr. 6, 2023), *Nordean*, No. 21-cr-175; Rough Tr. of Jury Trial (Apr. 6, 2023) at 17300, *Nordean*, No. 21-cr-175 (permitting, with parties' consent, Hill to testify as fact witness but noting that the proposed testimony "sort of[] mirrors the kind of testimony we've already had"); Min. Entry (Aug. 8, 2023), *United States v. Christie*, No. 23-cr-5 (APM); Tr. of Bench Trial (Aug. 8, 2023) at 255, *Christie*, No. 23-cr-5, ECF No. 84 (noting the parties' agreement that Hill could testify as a "fact witness," not an "expert witness," and warning defense counsel that "we are getting close to expert testimony"); *see also* Tr. of Jury Trial (Jan. 12, 2023) at 623, *United States v. Barnett*, No. 21-cr-38 (CRC), ECF No. 163 (defense counsel explaining that, if Hill is called as a witness, he would be called as "a summation witness" and counsel would be "very careful to follow the Court's directions regarding . . . not using it as a back door into expert witness testimony"). Hill is not being offered in this case as a fact witness, however, and before he would be permitted to testify as such, a precise and detailed proffer would be required.

### III. CONCLUSION

In sum, defendant seeks to call Hill to testify about (1) what training the MPD and Capitol Police officers present at the U.S. Capitol on January 6, 2021, may have received and whether Officer Rathbun's conduct constitutes "assault" under that training, and (2) his subjective opinion, based on his review of two BWC videos, that defendant did not commit an assault and that Officer Rathbun's injury was self-inflicted. The former usurps the role of the judge, and the latter usurps the role of the jury.

Accordingly, for the foregoing reasons, it is:

**ORDERED** that the government's Motion in Limine to Exclude Expert Testimony of Steven Hill, ECF No. 160, is GRANTED.

**SO ORDERED.**

Date:  January 19, 2024

_____
**BERYL A. HOWELL**
United States District Judge