UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 22-CR-166 (BAH) |
| | : | |
| **JOHN GEORGE TODD III,** | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S SUBMISSION REGARDING RESTITUTION

During the Sentencing Hearing on May 31, 2024, the Court ordered the government to provide any evidentiary support for the imposition of restitution.

The crimes that took place on January 6 involved harm to victims. Those victims included the Architect of the Capitol (the federal agency responsible for the physical upkeep of the Capitol building and grounds), the House Chief Administrative Officer, the Secretary of the Senate, the Senate Sargent at Arms, and the United States Capitol Police Department ("USCP"), several hundred of whose officers were guarding the Capitol Building and Grounds on January 6 when they suffered physical and psychological injuries as a direct result of the riot. *See* 18 U.S.C.§ 3664(i) (authorizing restitution to federal agencies).[1]

Because the January 6 cases involve the related criminal conduct of hundreds of defendants, all of whom proximately caused loss to the victims, the courts can allocate restitution based on incremental culpability. Critically, because most, if not all, January 6 defendants proximately caused harm to the victims in this case, restitution ought to be imposed regardless of whether a defendant personally injured a police officer or damaged property. The United States has generally sought $2,000 in restitution from felony

---

[1] The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is a victim under the analysis set forth above. The government has not included MPD in its overall restitution summary, including the totals set forth in this memorandum. In consultation with individual MPD victim officers, the government has sought restitution from individual defendants based on a case-by-case evaluation.

defendants and $500 from misdemeanor defendants. These numbers are based on an estimate of the damage to the Capitol and compensable expenses to injured USCP officers divided by the estimated number of felony and misdemeanor defendants prosecuted for the January 6 events.

Restitution seeks to make crime victims whole. Its purpose is to provide compensation for harm that convicted criminals have inflicted upon victims and restore them to the position, at least financially, where they stood before they were victimized. *See Paroline v. United States*, 572 U.S. 434, 456 (2014) ("The primary goal of restitution is remedial or compensatory."); *Dolan v. United States*, 560 U.S. 605, 612 (2010) (explaining that restitution "seeks primarily to ensure that victims of a crime receive full restitution"). But a federal court possesses no "inherent authority to order restitution," and can impose restitution only when authorized by statute. *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012).

Two general restitution statutes authorize sentencing courts to compensate crime victims. The Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663, "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). And the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, requires restitution for a subset of crimes covered in the VWPA, including "offense[s] against property." *Id*. The applicable procedures for restitution orders under these two statutes is found in 18 U.S.C. § 3664. *See also* 18 U.S.C. § 3556 (directing that the sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Both the VWPA and MVRA require that restitution "be tied to the loss caused by the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 418 (1990) (interpreting the VWPA); *United States v. Clark*, 747 F.3d 890, 897 (D.C. Cir. 2014) (interpreting the MVRA). Both define a victim as "a person directly and proximately harmed as a result of" the offense of conviction. 18 U.S.C. § 3663(a)(2) (VWPA); 18 U.S.C. § 3663A(a)(2) (MVRA). Both identify similar covered costs, including lost property and certain expenses from bodily injury. *Id.* at § 3663(b) (VWPA); § 3663A(b) (MVRA). And under both statutes, the government must establish the amount of loss suffered by the victim by a preponderance of the evidence. *United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019). And, when a court finds that more than one

defendant "has contributed to the loss of a victim, the court make made each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants. . . ." 18 U.S.C. § 3664(h).

To determine whether a criminal defendant bears responsibility for the harm the offense caused, the relevant inquiry is the scope of the defendant's offense conduct and the harm the victim suffered as a result. *See Hughey,* 495 U.S. at 413 (Congress "authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction").

Significantly for the January 6 cases, a "reasonable estimate" or reasonable approximation of loss is sufficient, "especially in cases in which an exact dollar amount is inherently incalculable." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013); *see United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) (estimating the restitution figure is permissible because "it is sometimes impossible to determine an exact restitution amount") (citation omitted); *see also Paroline*, 572 U.S. at 459 (observing in the context of the restitution provision in 18 U.S.C. § 2259 that the court's job to "assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader casual process that produced the victim's losses . . . cannot be a precise mathematical inquiry"). "The determination of an appropriate restitution amount is by nature an inexact science." *United States v. Brewer*, 983 F.2d 181, 185 (10th Cir. 1993). "[W]here the precise amount [of restitution] owed is difficult to determine, 18 U.S.C. § 3664 authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." *Id*. (citing S. Rep. No. 532, 97th Cong., 2d Sess. 31, reprinted in 1982 U.S. Code Cong. & Admin. News 2515, 2537) (cleaned up).

The January 6 cases present a relatively common restitution question about proximate causation—how to compensate victims for their losses where multiple defendants' actions have caused harm. Although the absence of a particular defendant, or even dozens of defendants, from the mob of rioters may have made little difference to the damages caused by the riot, that does not mean that any particular rioter may avoid restitution liability because his personal contribution to the aggregate loss is comparatively lower.

The Supreme Court confronted an analogous issue in *Paroline*. The defendant there was one of many, perhaps thousands, of individuals who possessed the child victim's pornographic images, and the

victim sought restitution from the defendant in the full amount of her damages. *Id*. at 449. Interpreting a restitution statute for child pornography offenses that shares the same causation language as the VWPA and MVRA, the Supreme Court held that restitution is available "only to the extent the defendant's offense proximately caused a victim's losses." *Paroline*, 572 U.S. at 448 (interpreting restitution under 18 U.S.C. § 2259). Proximate cause, the Court explained, is "a flexible concept that generally refers to the basic requirement that there must be 'some direct relation between the injury asserted and the injurious conduct alleged." *Id*. at 444 (cleaned up). "A requirement of proximate cause thus serves, *inter alia,* to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.* at 445.

The Court then addressed the "difficult question" of how to determine what losses a defendant had caused. *Id.* at 449. The Court recognized that strict but-for causation—the traditional causal requirement—cannot be established when a victim's images are widely distributed across the internet: "Even without [the defendant's] offense, thousands would have viewed and would in the future view the victim's images, so it cannot be shown that her trauma and attendant losses would have been any different but for [the defendant's] offense." *Id.* at 450. Yet the Court refused to deny restitution on that ground, explaining that "there can be no doubt Congress wanted victims to receive restitution for harms like this." *Id*. at 457. "While it is not possible to identify a discrete, readily definable incremental loss [the defendant] caused, it is indisputable that he was a part of the overall phenomenon that caused [the victim's] general losses." *Id*.

The Supreme Court elaborated that while "[e]very event has many causes, . . . only some of them are proximate, as the law uses that term." *Id*. at 444. Proximate cause requires that an event be both "an actual cause or cause in fact" and "that there must be some direct relation between the injury asserted and the injurious conduct alleged." *Id*. (cleaned up). "Proximate cause is often explicated in terms of *foreseeability or the scope of the risk created by the predicate conduct*." *Id*. at 445 (emphasis added).

Requiring strict "but for" causation in Paroline's case inadequately captured his responsibility for the victim's harm. The victim's losses (as here) were caused by the aggregate criminal conduct of an unknowable number of offenders, and the government was generally unable to demonstrate that any

individual defendant's offense conduct was a cause in fact of the victim's loss. To address the statutory command that a defendant whose criminal conduct contributed to the loss must pay restitution, the *Paroline* Court addressed "aggregate causation theories," which hold that "when the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event." 572 U.S. at 451 (cleaned up). The theory posits that "a wrongdoer's conduct, though alone insufficient to cause the plaintiff's harm, is, when combined with conduct by other persons, more than sufficient to cause the harm." *Id*. at 452. Such "aggregate causation theories … are []relevant to determining the proper outcome in cases like this." *Id.* at 456. So where a defendant's criminal conduct contributes, even minimally, to "the victim's general losses," he proximately caused that loss even if "it is not possible to identify a discrete, readily definable incremental loss he caused." *Id*. at 456-57. "[W]here it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court … should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 458.

The *Paroline* Court recognized that "[t]his approach is not without its difficulties," "involv[ing] discretion and estimation." *Id*. at 462. But the Court emphasized that "[d]istrict courts routinely exercise wide discretion both in sentencing as a general matter and more specifically in fashioning restitution orders," and recognized that courts "can only do their best to apply the statute as written in a workable manner." *Id*. As a result, the Court explained, there can be no "precise algorithm" for computing individual restitution awards. *Id*. at 459-60.

The same principles apply here. As in *Paroline*, it is impossible to trace a particular amount of losses to a defendant's offense conduct by recourse to a more traditional causal inquiry, but the defendant's offenses still proximately contributed to the losses the victims suffered. When properly aggregated, each January 6 defendant's conduct was a proximate cause of the losses sustained during the Capitol breach. Whether any one defendant personally hit an officer or broke a window, they were part of a collective whole that overran the outnumbered officers stationed at the Capitol, dissipating their lines, and giving others the

opening to hit and break throughout the building. Whereas an individual trespasser, acting alone or in a small group, might not reasonably foresee that his trespass would lead to destruction and injury, it was reasonably foreseeable for such trespass in the context of January 6 to result in the damages that occurred. The police officers sought to protect the Capitol not from a single trespasser, not from several, and not even dozens, but from thousands, all of whom contributed incrementally to the harm which, in the aggregate, harmed multiple victims. All these reasons justify restitution in the case of the typical January 6 rioter, but they apply even more powerfully in this case: the defendants extensively coordinated and planned to forcibly disrupt the certification proceeding, and then they took "integral" part in all the major breaches, all of which made the "consequences and gravity" of the offense abundantly foreseeable. *Paroline*, 472 U.S. at 462.

In order to provide the Court with the most up-to-date information, the government has sought to obtain updated damage figures from the victims of January 6, 2021. The government has obtained updated information from the Architect of the Capitol, the Secretary of the Senate, and the Senate Sergeant at Arms. The government has attached herewith signed letters from each of the victims on behalf of which it is seeking restitution. The letters can be found at Exhibits A – C.

**Damages to the Capitol Building and Grounds**

| | |
|---|---|
| Architect of the Capitol | $1,135,200.03 (as of June 14, 2024) |
| Secretary of the Senate | $32,075.00 (as of June 11, 2024) |
| Senate Sergeant at Arms | $79,490.05 (as of June 12, 2024) |
| **Total** | **$1,246,765.08** |

The government awaits confirmation of damage figures from the House Chief Administrative Officer and the United States Capitol Police, which figures will constitute the remainder of the approximately $2.9 million in overall restitution sought by the government in these cases.

Pursuant to 18 U.S.C. § 3664(d)(5), the Court is permitted to make a final determination of losses up to 90 days after sentencing. The government will submit any updated information from the House Chief

Administrative Officer and the United States Capitol Police promptly after the information has been received by the prosecution team.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY

BY:          /s/ *Matthew Beckwith*
                 MATTHEW BECKWITH
                 DC Bar No: 90014452
                 Assistant United States Attorney
                 601 D Street, N.W.
                 Washington, D.C. 20004
                 Matthew.beckwith@usdoj.gov

                 /s/ *Barry K. Disney*
                 Barry K. Disney
                 KS Bar No. 13284
                 Assistant United States Attorney – Detailee
                 U.S. Attorney's Office for the District of Columbia
                 601 D Street, N.W.
                 Washington, D.C. 20530
                 Email:  Barry.Disney@usdoj.gov
                 Cell:  (202) 924-4861

                 /s/ *Allison K. Ethen*
                 Allison K. Ethen
                 MN Bar No. 0395353
                 Assistant United States Attorney – Detailee
                 U.S. Attorney's Office for the District of Columbia
                 601 D Street, N.W.
                 Washington, D.C. 20530
                 Email: Allison.Ethen@usdoj.gov

                 */s/ Kaitlin Klamann*
                 KAITLIN KLAMANN
                 Assistant United States Attorneys
                 601 D Street, N.W.
                 Washington, D.C. 20530