```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,        )  Criminal Action
               Plaintiff,        )  No. 22-166
vs.                              )
                                 )  May 31, 2024
JOHN GEORGE TODD, III,           )  10:56 a.m.
               Defendant.        )  Washington, D.C.
      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT JUDGE**

<u>**APPEARANCES:**</u>

FOR THE UNITED STATES:

MATTHEW M. BECKWITH
MICHAEL ROMANO
ALLISON ETHEN
DOJ-USAO
601 D Street NW
Washington, DC 20530
(202) 252-6778
Email:  matthew.beckwith@usdoj.gov
Email:  michael.romano@usdoj.gov

FOR THE DEFENDANT:

JOHN PIERCE
21550 Oxnard Street
Suite Third Floor
Woodland Hills, CA 91367
(213) 400-0725
Email:  jpierce@johnpiercelaw.com

**<u>(Appearances Continued)</u>**

**APPEARANCES (Continued)**:


FOR THE DEFENDANT:

                         ROGER ROOTS
                         10 Dorrance Street
                         Suite 700 #649
                         Providence, RI 02903
                         (775) 764-9347
                         Email:  rroots@johnpiercelaw.com



ALSO PRESENT:        CRYSTAL LUSTIG, U.S. Probation

                     SHANIQUEA CLARK, USAO, Paralegal

                     EMILY LAMBERT, Paralegal



Court Reporter:      Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter


             Proceedings reported by machine shorthand.
          Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1    THE COURTROOM DEPUTY:  Your Honor, this is

2    Criminal Case 22-166, United States of America versus John

3    Todd.

4    Would the parties please come forward to the

5    lectern and identify yourselves for the record this morning.

6    We'll start with government counsel first.

7    MR. BECKWITH:  Good morning, Your Honor.

8    Matthew Beckwith, along with Allison Ethen and Michael

9    Romano.  Also, at the table with us is Shaniquea Clark.

10    THE COURT:  All right.  Thank you.

11    MR. PIERCE:  Good morning, Your Honor.

12    John Pierce and Roger Roots on behalf of defendant John

13    Todd, and we also have Ms. Emily Lambert, our paralegal, at

14    our table.

15    THE COURT:  All right.  Good morning to all of you.

16    Good morning, Mr. Todd.

17    THE DEFENDANT:  Good morning.

18    THE COURT:  All right.  We're here this morning

19    for the sentencing of Mr. Todd after his conviction by a

20    jury on February 27, 2024, of all six counts against him:

21    Count 1, obstructing, influencing, or impeding an official

22    proceeding in violation of 18 U.S.C. Section 1512(c)(2)

23    and 2; Count 2, inflicting bodily injury on certain officers

24    in violation of 18 U.S.C. Sections 111(a)(1) and (b);

1    Count 3, entering and remaining in a restricted building or

2    grounds in violation of 18 U.S.C. Section 1752(a)(1);

3    Count 4, disorderly and disruptive conduct in a restrictive

4    building or grounds in violation of 18 U.S.C. Section

5    1752(a)(2); Count 5, disorderly conduct in a Capitol

6    Building in violation of 40 U.S.C. Section 5104(e)(2)(D);

7    and for parading, demonstrating, or picketing in a Capitol

8    Building in violation of 40 U.S.C. Section 5104(e)(2)(G).

9            All right.  So I am going to review, first off,

10   all of the materials I have looked at in connection with the

11   sentencing hearing this morning, starting with the probation

12   office's presentence report and sentencing recommendation

13   docketed at ECFs 221 and 222; the government's sentencing

14   memo docketed at ECF 224; sentencing memoranda submitted on

15   behalf of the defendant, the first one was docketed at

16   ECF 225 with an errata document docketed at ECF 226.

17           And I just understand, Mr. Pierce or Mr. Roots,

18   that 226 is the corrected sentencing memo.  That's what I

19   should be reading; is that correct?

20           MR. ROOTS:  Yes.  And I think we added a bunch of

21   material --

22           THE COURT:  I am getting to that.

23           MR. ROOTS:  Okay.

24           THE COURT:  There was an Exhibit A, which is a

25   269-page document attached to the defendant's corrected

1    sentencing memo docketed at ECF 226-1, which appears to be a

2    defense motion for discovery in an evidentiary hearing in a

3    totally different case, *U.S. v. Garret Miller*, at 21-CR-119.

4    It's not formally related to this matter in any way.

5              Also, late yesterday, after business hours, the

6    defendants dropped on the docket 7 letters of support

7    docketed at ECF 232 and 233.  The document dropped on

8    docket 232 include 6 different letters from what appears to

9    be from friends.  And then the letter dropped at 233 is a

10   letter from a person named D. Langese [sic].  Although the

11   letter itself does not identify the relationship between

12   this person and the defendant, I take it from the text

13   descriptions -- is that the defendant's mother, Mr. Roots?

14             MR. ROOTS:  That is his mother, yes.

15             THE COURT:  All right.

16             Is that all of the documents that the defendant --

17   that the government has submitted, and does the government

18   have all of those documents?

19             MR. BECKWITH:  Yes, Your Honor.

20             THE COURT:  Mr. Roots, are those all of the

21   documents the defendant has submitted --

22             MR. ROOTS:  I believe so.

23             THE COURT:  -- and do you have all of those

24   documents?

25             MR. ROOTS:  Yes.

```
1              THE COURT:  All right.
2              Good.  We're all working from the same group of
3       records.  Of course, I presided over the trial so I have
4       seen all of those exhibits as well.
5              Mr. Todd, just stand right where you are, please.
6              I like to explain to each defendant who stands
7       before me for sentencing how the sentencing hearing is going
8       to proceed.  Also, if you have any friends or relatives in
9       the audience, it's also good for them to know what is going
10      to be happening, and when, during the course of the next
11      hour or so.
12             I conduct my sentencing hearings in four different
13      steps.
14             At the first step, I will determine whether the
15      government or your counsel, on your behalf, have any
16      objections to the factual portions of the presentence
17      investigation report; and if there are objections -- and
18      there are here -- then I will resolve those objections.
19             At the second step, I will determine how the
20      advisory guidelines apply to your case based on your
21      criminal history and all of the other specific offense
22      characteristics that are associated with your offense
23      conduct.
24             At the third step, I will hear first from the
25      government, then I will hear from your counsel, and then I
```

1    will hear directly from you if you wish to speak to me about

2    fashioning an appropriate sentence in your case.  If you

3    want to know when is it that you will have the opportunity

4    to speak, if you want, it's at that stage.

5         At the last step, I will explain the reasons for

6    the sentence I am going to impose in considering the factors

7    set out at 18 U.S.C. Section 3553A, and then impose

8    sentence.

9         Do you have any questions about what is going to

10   be happening over the course of the hearing?

11        THE DEFENDANT:  I don't, Your Honor.

12        THE COURT:  Thank you.  You may be seated.

13        Mr. Todd -- I'm sorry.  I have a couple more

14   questions to ask you.  Sorry.

15        Are you satisfied with your attorneys in this

16   case?

17        THE DEFENDANT:  I am, Your Honor.

18        THE COURT:  Do you feel that you have had enough

19   time to talk to your counsel, Mr. Pierce, Mr. Roots, about

20   the sentencing -- presentence investigation report submitted

21   by the probation office, the recommendation from the

22   probation office about sentencing in this case, and the

23   other papers submitted in connection with your sentencing

24   here today?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  All right.  You may be seated.

2          All right.  So Step One, the final presentence

3    report and sentencing recommendation were filed in this

4    matter on April 29, 2024.  Under Federal Rule of Criminal

5    Procedure 32(e)(2), the defendant is entitled to receive

6    these materials at least 35 days before the sentencing

7    hearing; and we have -- by my count, we are at 32 days.

8          Does the defendant wish to proceed today and waive

9    his right to the 35-day minimum period, or not?

10          MR. ROOTS:  We will waive -- we will proceed to

11    sentencing.

12          THE COURT:  All right.

13          So the government has raised objections to the

14    guideline determination which I will address at the next

15    step of the hearing.  But I understand, from review of your

16    sentencing memo and the PSR, that the government has no

17    objections to the factual statements in the PSR; is that

18    correct?

19          MR. BECKWITH:  That is correct, Your Honor.

20          THE COURT:  All right.  And, Mr. Roots -- who

21    should I be addressing here?

22          Mr. Pierce has pointed to you.  You are in the hot

23    seat.

24          MR. ROOTS:  Yes.  I will be doing most of the

25    PSR-type stuff.  Mr. Pierce will be doing, I believe, the

 1     family, and presenting those type of statements.

 2                THE COURT:  Okay.  Fine.

 3                So, Mr. Roots, I understand -- let me just ask

 4     first.  Have you and your client read and discussed the

 5     presentence report?

 6                MR. ROOTS:  Yes, we have.

 7                THE COURT:  I understand that you have raised a

 8     number of objections to the guideline determinations.  And

 9     just like with the government, I am going to address those

10     at the next stage of this hearing.  At this point I just

11     want to address any objections to the factual parts of the

12     presentence report.

13                I understand, from the PSR, that you have

14     interposed objections to what the PSR has categorized into 9

15     different categories of -- objections to 9 different

16     categories of statements in the presentence investigation

17     report, and that's at pages 34 through 36 of the PSR.

18                As I look at those categories of objections, I

19     read only Categories 1 and 2 talking about offense conduct,

20     the factual portions of the PSR.  So those are the ones I

21     want to focus on now, not the objections to the other

22     paragraphs of the PSR dealing with guideline determinations.

23                These categories include paragraphs -- as the PSR

24     has organized all of the objections that the defense raised,

25     Category 1 would be offense conduct in paragraphs 20, 23,

1    24, 25, 26, 28, 31, 32, Footnote 2, and 37 of the PSR; and

2    Category 2, where defense counsel asserts that -- objections

3    to paragraphs 39 and 40 objecting to the restitution

4    paragraphs.

5          I am going to deal with those objections now.

6          Are there any other paragraphs that deal with

7    facts other than guideline determinations?

8          I don't think so.

9          MR. ROOTS:  Not to my knowledge.  I think a lot of

10    the guideline determinations depend on the factual

11    interpretation made by probation and the government.

12          THE COURT:  Which I will turn to you in the

13    guideline determinations.

14          MR. ROOTS:  Right.

15          THE COURT:  All right.  So I am going to start

16    with defendant's objections to paragraphs 20, 23, 24, 25,

17    26, 28, 31, 32, Footnote 2, and 37.  Are you still raising

18    objections to all of those parts of the PSR?

19          MR. ROOTS:  Yes.

20          THE COURT:  Do you want to add anything to your

21    objections?

22          MR. ROOTS:  Well, I think we laid it out fairly

23    well.  We will stand on what we have written.

24          So much of this is construction.  It seemed like

25    the government is construing facts.  And, obviously, we

1    think the evidence at the trial did not establish the facts

2    in the way the government contends.

3              For example, I don't believe there was evidence

4    that Mr. Todd saw signs saying "unlawful entry" or "closed

5    area;" that's one example.  There is a lot of that kind of

6    assertion.

7              THE COURT:  Yes.  But this is not the time to

8    relitigate what the jury found.

9              MR. ROOTS:  Yes, correct.  But we would just ask

10   the Court to closely look at the exhibits.

11             THE COURT:  All right.  And supersede the jury

12   finding?

13             Okay.  Does the government have anything to say?

14             MR. BECKWITH:  No, Your Honor.

15             THE COURT:  All right.

16             Okay.  I have reviewed the defendant's objections

17   in Category 1, as the PSR has laid it out, to factual

18   statements in the PSR.

19             At the outset, let me just say that the defendant

20   has offered no citations to the record to accompany any of

21   his objections.  Simply states there is no evidence that

22   supports these paragraphs:  20, 23, 24, 25, 26, 28, 31, 32,

23   Footnote 2, and 37, in the PSR.  So in terms of the

24   defendant's opinion, without citation to the record, it's

25   not particularly helpful.

1          The defendant's objections to all of these

2     paragraphs in the PSR are overruled.

3          Defendant objects to several of the paragraphs in

4     the PSR on the basis the defendant did not see what is

5     described.

6          PSR paragraphs 20 and 23 state that the U.S.

7     Capitol has restrictions, including permanent and temporary

8     security barriers, and posts manned by U.S. Capitol Police,

9     and temporary and permanent barricades on January 6, 2021.

10         The PSR, at paragraph 25, states that:  Shortly

11    after 2 p.m., individuals in the crowd forced entry into the

12    U.S. Capitol, including by breaking windows and by

13    assaulting members of law enforcement.  As to these

14    paragraphs, the defendant does not dispute that the

15    paragraphs are factually correct but only that he did not

16    see what is described.

17         As I explained already during the second pretrial

18    conference on January 26, 2024, whether defendant perceived

19    those specific events described in these paragraphs of the

20    PSR is not particularly relevant.  These PSR paragraphs

21    describe the broad circumstances of the attack on the U.S.

22    Capitol on January 6, 2021, and the context for the law

23    enforcement response.

24         These statements are supported by the trial record

25    and exhibits, and provide probative and important context in

1    evaluating this defendant's conduct.  To the extent

2    defendant objects to characterization of the U.S. Capitol as

3    "restricted area," the jury disagreed when it found him

4    guilty of entering and remaining on a restricted building or

5    grounds in Count 3, and disorderly or disruptive conduct in

6    a restricted building or grounds in Count 4 given that an

7    element of both these counts is that the defendant engaged

8    in the offense conduct in a restricted building or grounds.

9    See the jury instructions at pages 9 through 10, docketed at

10   ECF 208.

11          Defendant's objections to paragraphs 20, 23, and

12   25, thus, are overruled.

13          Paragraph 24, to which defendant has also lodged

14   an objection, states, in relevant part, that the crowd was

15   not lawfully authorized to enter or remain in the building;

16   the defendant objects on the basis that many, including

17   Defendant Todd, were authorized to enter by implicit and

18   explicit invitation of Capitol Police officers.

19          A similar argument made by defendant was rejected

20   when this Court granted the government's motion in limine to

21   preclude improper defense arguments about law enforcement.

22   See the minute order docketed at -- minute order entered on

23   January 9, 2024.  For the reasons explained in my January 9,

24   2024, order, defendant's arguments may not be revisited at

25   sentencing, so the objection to paragraph 24 is overruled.

1          Paragraph 26 states -- let me just say that the

2     defense counsel has made this argument -- maybe he believes

3     it; certainly, the defendant may believe it.

4          The communications that I see in the letters

5     submitted late yesterday by some of his friends and his

6     mother suggest that he was authorized to go in, so that is

7     clearly a story he is spreading to his family; it is

8     contrary -- contrary to the evidence at trial.

9          Let me just make that clear right at the outset.

10          Paragraph 26 states that:  Members of the U.S.

11     House of Representatives and United States Senate, including

12     the president of the Senate and Vice President Pence were

13     instructed to and did evacuate the chambers.  This paragraph

14     further states that, quote:  In light of the dangerous

15     circumstances caused by the unlawful entry to the U.S.

16     Capitol, congressional proceedings could not resume until

17     after every unauthorized occupant had left the U.S. Capitol,

18     and the building had been confirmed secured.

19          Defendant argues these statements are false

20     because:  One, the House Chamber was never breached and

21     members of the House never evacuated chambers; two, there is

22     no evidence that the breaches by mostly unarmed individuals

23     posed any danger; and three, there is no authority for the

24     proposition that proceedings could not have resumed even

25     with unauthorized occupants in common areas.

1          These objections are totally bogus and suggest

2     that members of Congress could have just blithely continued

3     their work while police officers are being overrun to keep

4     threatening rioters out of and away from the building.

5     Police officers are being bloodied inside and outside of the

6     Capitol when no one knew what all these rioters were

7     carrying with them into the building.  And this view is just

8     totally not based on reality but appears spun out of wishful

9     thinking to minimize the illegal conduct of the mob.

10          Dan Schwager, for example, who served as general

11     counsel to the secretary of the Senate on January 6, 2021,

12     testified, during the trial of this case on February 1,

13     2024, that the House and Senate had to call recess subject

14     to the call of the chair for almost six hours due to the

15     attack on the Capitol.  They did evacuate both their

16     respective chambers.

17          Whether the House was actually breached is

18     irrelevant.  People were blockaded into the House Chamber,

19     hiding under their chairs, scared to death, as were staff

20     and members of Congress all throughout the building.

21          He also testified that the House and Senate cannot

22     do business in the Capitol Building when the Capitol Police

23     have lost control of the building because it's not safe for

24     them to be conducting business while they are being

25     attacked, such as when guns are drawn and shots are actually

1    being fired at the breach at the House Lobby and the

2    Speaker's Lobby.  See the trial transcript on February 1,

3    2024, at pages 182 through 188.

4              Indeed, defense counsel asked Mr. Schwager these

5    questions that he raises in his objection at paragraph 26 of

6    the PSR, and Mr. Schwager refuted each of those claims.

7              That is the evidence in the trial order; that is

8    what the evidence at trial showed.

9              Defendant's objection to paragraph 26 is

10   overruled.

11             Paragraph 28 states:  Defendant made his way to

12   the Capitol carrying a makeshift flagpole which appeared to

13   be made from a tent pole with a flag tied to the end.

14   Defendant indicates now, at sentencing, that he, quote:

15   Carried a commercially sold small U.S. flag with a

16   fiberglass pole.  He had the opportunity to say this during

17   the trial.  He doesn't cite to where he said this at any

18   point during the trial, including when he testified.  He

19   doesn't explain how he got the flag.  There is no trial

20   transcript testimony about the fact that he carried a

21   commercially sold small U.S. flag with a fiberglass pole,

22   and he doesn't point to any part of the record.

23             What is stated in the PSR is based on what the

24   evidence showed at trial.  But I will direct that PSR

25   paragraph 28, in response to this objection, add a sentence

1    that states:  At the time of sentencing, defendant indicated

2    that the flag defendant carried at the U.S. Capitol was a

3    commercially sold U.S. flag with a fiberglass flagpole.

4              Yes?

5              MR. ROOTS:  Mr. Todd just alerted me that he

6    testified before the grand jury that, in fact, he purchased

7    that at some stand or something, so it was a commercially

8    sold tiny little flagpole.

9              THE COURT:  That was testimony before the grand

10   jury that was not presented at this trial.  But for whatever

11   it's worth, I am going to add that statement in there.

12             Does the government have any objection?

13             MR. BECKWITH:  No, Your Honor.

14             THE COURT:  I have already ruled, but whatever.

15             Just checking.  We'll add that sentence to the PSR.

16             The PSR, at paragraph 28, further states that the

17   defendant, quote:  "Illegally entered the Capitol grounds on

18   the west side where he would have observed large groups of

19   rioters who were pushing down fencing and confronting law

20   enforcement officers."

21             Defendant concedes that he moved through the dense

22   crowd on the west plaza and arrived near the media tower,

23   but contends that no evidence supports that he would have

24   observed large groups of rioters who were pushing down

25   fencing and confronting law enforcement officers.

1          That is his objection at page 5.

2          The evidence at trial including photo and video

3     exhibits showed that defendant, on the west plaza around the

4     same time the police line was broken, amidst a giant crowd

5     of rioters.

6          This objection to paragraph 28 is overruled based

7     on the trial evidence.

8          Paragraph 31 states that the defendant, quote:

9     Resisted the officers' orders by refusing to back up, and

10    pressing against the police line.  He also objects to

11    paragraph 32 that described the altercation between Officer

12    Rathbun and the defendant.

13         Defendant argues that defendant's civil

14    disobedience was entirely passive resistance, that he never

15    aggressively pushed forward or assaulted any police line.

16    He further argues that he had a right to hold on to his

17    flagpole.  Officer Rathbun had no right to break the

18    defendant's flagpole, and the officer's cut was

19    self-inflicted.  See the defendant's objections at pages 6

20    through 7.

21         At the outset, as explained in more detail in the

22    Court's January 9, 2024, minute order granting the

23    government's motion in limine to preclude the use of

24    improper First Amendment defenses, which motion was made at

25    ECF No. 111, the defendant's conduct was not civil

1    disobedience.  He has been found guilty of disorderly and

2    disruptively entering the U.S. Capitol Building with the

3    intent to impede, disrupt, and disturb the orderly conduct

4    of a session of Congress, and succeeded in doing so when the

5    U.S. Capitol Building and its grounds were restricted areas,

6    as well as knowingly entering and remaining in those areas

7    without lawful authority to do so.

8         He has also been convicted of forcibly assaulting,

9    resisting, opposing, impeding, intimidating, interfering,

10   and inflicting bodily injury on a Metropolitan Police

11   Department officer engaged in the performance of his

12   official duties.

13        Regardless of defendant's political motivations or

14   any message he may have wanted to express, this alleged

15   conduct would consist of overt nonexpressive acts and is not

16   protected by the First Amendment.

17        With respect to defendant's remaining arguments,

18   which were raised in his motion to dismiss the superseding

19   indictment docketed at ECF No. 139, and as the Court

20   explained in its January 10, 2024, memorandum opinion and

21   order denying that motion, which is docketed at ECF 166,

22   these arguments by defendant are quintessential disputes of

23   material fact best left for a jury, which has since resolved

24   these factual disputes by finding defendant guilty of

25   forcibly assaulting, resisting, or impeding Officer Rathbun.

1    His objections to paragraphs 31 and 32 are overruled.

2          Paragraph 36, Footnote 2 states that:  U.S.

3    Capitol Police Lieutenant Millard said neither he nor any

4    other officer at the door told a rioter they could come in

5    and watch the proceedings; and two, the video evidence of

6    the defendant entering the building did not show any police

7    officer near defendant when or after he entered the

8    building.

9          Defendant argues that, on cross, Lieutenant

10    Millard testified that he said:  "You can come in and watch

11    the proceedings, just don't disrupt them."

12          Defendant was with a group of people discussing

13    with the officers.  See the defendant's objections at 7

14    through 8.

15          Notably, defendant offers, again, no citations to

16    the trial transcript or admitted evidence to support his

17    objection about Lieutenant Millard.  This objection is

18    simply more wishful thinking, as the transcripts clearly

19    demonstrate.

20          On direct, Lieutenant Millard repeatedly testified

21    he did not tell and did not hear any of his colleagues tell

22    any rioter they could come into the building.  See the trial

23    transcript, January 30, 2024, pages 14 through 15.

24          On cross, he continued to testify he did not tell

25    any rioters they could come into the building.  See the

1    trial transcript, same date, 199 through 208.

2        Lieutenant Millard acknowledged he said:  "I

3    disagree, but respect it," with "it" referring to the

4    building; and that he did not make any arrests or use any

5    force on protesters because, he explained, by this point he

6    and his colleagues were significantly outnumbered and were

7    waiting on reinforcements.  Nothing in the record supports a

8    finding that Lieutenant Millard or any U.S. Capitol Police

9    officer told rioters they could go in and watch the

10   proceedings.

11       Notably, defendant offers no citations, again, to

12   the trial transcript or admitted evidence showing defendant

13   talking to officers when he entered the Capitol Building.

14   His objection to Footnote 2 is overruled.

15       Paragraph 37 describes the defendant's testimony.

16   Defendant objects to this paragraph, but the basis of his

17   objection is unclear.  He doesn't dispute that the PSR,

18   paragraph 37, correctly summarizes his testimony, but merely

19   states that his testimony is entirely accurate as described.

20       I don't understand what the nature of the

21   objection is to paragraph 37 when he says he was accurately

22   describing the testimony, so his objection is overruled.

23       The defendant also objects to paragraphs 39 and 40

24   with respect to restitution.  Paragraph 39 states that the

25   government seeks $2,000 in restitution and paragraph 40

1    states the approximate loss suffered as a result of the riot

2    was $2,923,080.05.  The defendant doesn't dispute the

3    accuracy of these facts and argues only that defendant did

4    not cause damage to the Capitol.

5          Based on that objection, the objections are

6    overruled.

7          So are there any other objections to the factual

8    portions of the PSR that I haven't otherwise addressed in

9    those paragraphs, Mr. Roots or Mr. Pierce?

10          MR. ROOTS:  Well, Your Honor just indicated we

11   didn't object to the $2 million.  For the record, I don't

12   think that that -- we actually would like an itemized

13   accounting by the government to explain this $2 million

14   figure.  We believe that is exaggerated.

15          THE COURT:  What is the government's support for

16   the $2,923,080.05?

17          Do you have an Architect of the Capitol itemized

18   list?  Do you have a letter from the Architect of the

19   Capitol?  What do you have to support that other than your

20   statement?

21          MR. BECKWITH:  Just one moment, Your Honor.  I am

22   going to confer.

23          THE COURT:  Yes.  I mean, the number has

24   fluctuated over time.

25          (Whereupon, government counsel confer.)

1          MR. BECKWITH:  Your Honor, that comes from the

2     Architect of the Capitol.

3          THE COURT:  I know it does.

4          MR. BECKWITH:  We don't have a memo with us today

5     or a sort of itemized receipt of the damages.  If we had

6     known before today, we would have been sure to bring it and

7     track that down; but we don't have a specific breakout on

8     hand or --

9          THE COURT:  So what are you going to ask me to do

10    about restitution then?

11         MR. BECKWITH:  We are seeking restitution as laid

12    out in our sentencing memorandum.

13         If you would like, we could supply for the Court,

14    if the Court would like, a statement --

15         THE COURT:  Well, I have a defense objection

16    saying:  Where is the proof that this is the amount of the

17    damages?

18         This is not a plea situation where you have

19    already negotiated and provided sufficient assurance to

20    defense counsel that the $2,000 request for a felony

21    conviction in the amount of restitution is sufficient or

22    adequately established.

23         You have got a trial.  Mr. Roots is saying I

24    don't -- where is the proof that that is the amount of

25    restitution?

1          I mean, you have to have something in the record.

2     It wasn't part of a trial exhibit because it wasn't

3     necessary there.  It is necessary for the time of sentencing

4     because you are seeking restitution.

5          Call somebody back at your office and have them

6     fax to you whatever the Architect of the Capitol has been

7     providing, whether it's an old letter, whether it's the

8     2-million figure, or something different.  Get it faxed to

9     you or brought over to you.  The U.S. Attorney's Office is

10    big.  There are a lot of people there.  Okay.  Go take care

11    of it.

12         Okay.  We'll await some information supporting

13    that amount of damage to the U.S. Capitol Building, whether

14    it's an old letter -- you are only asking for $2,000.  Even

15    if it's the one before they were actually fixing all of the

16    windows and cleaning up the floor and fixing the dents and

17    the torn-off signs and all of the other damage to the

18    Capitol that happened across the board -- even if it's

19    $1 million, you are only asking for 2000; that would be

20    enough to establish that.

21              MR. ROMANO:  Your Honor.

22              THE COURT:  Identify yourself for the record.

23              MR. ROMANO:  Michael Romano for the United States.

24              THE COURT:  Could you step forward to the podium.

25              MR. ROMANO:  Sure.

1          THE COURT:  Everybody is very -- that's fine; you

2     can be a little lax, as opposed to coming up and down.

3     Let's keep the formalities here.

4          MR. ROMANO:  Happy to, Your Honor.

5          We will try to get that information before the

6     Court as quickly as possible.  If we are not able to get it

7     before the conclusion of the sentencing hearing today, we

8     would ask that the Court order restitution, but defer a

9     finding of the specific dollar amount.  I believe the

10    statute allows the Court to defer that up to 90 days.

11         THE COURT:  For 30 days or 90 days?

12         MR. ROMANO:  I thought it was 90.

13         THE COURT:  You will check that.

14         MR. ROMANO:  We will check that.

15         We would certainly be able to provide information

16    to the Court if we don't find it before the end of the

17    hearing today much faster than 30, let alone 90 days.

18         THE COURT:  I mean, this is your opportunity to

19    bring in the Architect of the Capitol or somebody from the

20    Architect of the Capitol to explain to the public what

21    happened to the Capitol Building when there are still people

22    who believe, possibly sitting in this courtroom, that

23    nothing happened at the U.S. Capitol on January 6, 2021.

24         MR. ROMANO:  Well, Your Honor, I would --

25         THE COURT:  You could exploit the opportunity.

1          MR. ROMANO:  I would suggest that some of those

2     people aren't persuadable by facts, and presenting the

3     testimony from the Architect of the Capitol would not

4     necessarily change their minds or be a good use of the

5     Architect of the Capitol's time.

6          THE COURT:  Okay.  That's your decision.

7          All right.  Hearing no further objections from

8     either side, based on my rulings of the objections so far, I

9     will find that the PSR factual -- summary of the facts

10    underlying the offense conduct are sufficient findings of

11    fact for purposes of sentencing, of course supplemented by

12    the record and the exhibits presented at trial over which I

13    provided.

14         All right.  We're now at the second step of the

15    sentencing hearing where I determine how the guidelines

16    apply to Mr. Todd's case.

17         Of his six convictions, Counts 5 and 6 are petty

18    offenses not subject to the U.S. Sentencing Guidelines, but

19    I have to decide how the guidelines apply to his four other

20    convictions in Counts 1, 2, 3, and 4.

21         I am going to start with the criminal history, and

22    then I will get into the objections to other portions of the

23    guideline determinations as set out in the PSR.

24         As to the criminal history, Mr. Todd has four

25    adult convictions.  Two of his convictions, one in 2009 and

1    one in 2023, don't add any criminal history points to his

2    criminal history score as stated in the presentence

3    investigation report at paragraphs 85 and 88.

4              Two of his convictions, however, do each

5    contribute one criminal history point, as set out in PSR

6    paragraphs 86 and 87.  Those two convictions are a 2012

7    conviction for driving under the influence in Nevada and a

8    2014 conviction in Missouri for a DWI and -- a marijuana

9    possession and speeding conviction.

10             The government has no objections to the criminal

11   history score of 2 with Criminal History Category II, as

12   determined in the presentence investigation report.

13             The defendant has three objections, as I

14   understand it, to the defendant's criminal history, in

15   paragraphs 86, 87, and 91.

16             As I understand it, Mr. Pierce and Mr. Roots, he

17   argues that his two DUI arrests that are listed in

18   paragraphs 86 and 87 should be considered as offenses

19   similar to reckless or careless driving and should not be

20   assessed criminal history points so that he would have zero

21   criminal history points and a criminal history category

22   of 1.

23             Do you want to be heard on that objection?

24             MR. ROOTS:  Yes.

25             THE COURT:  Why don't you step forward to the

1    podium.

2          MR. ROOTS:  Yes.  These are almost to the outer

3    edge of the 10-year time limit as well.  So the sentencing

4    guidelines are very clear that a certain category of traffic

5    crimes count as petty traffic offenses and almost suggests

6    that traffic-type offenses really fall into that category.

7          Number one, these two DUI episodes in Mr. Todd's

8    life are practically outside the 10-year window.

9          THE COURT:  Did you read the commentary, at Note 5

10   to the guideline at Section 4A1.2, which states that:

11   Convictions for driving while intoxicated or under the

12   influence and similar offenses by whatever name they're

13   known are always counted?

14         DUIs are always considered more serious offenses.

15   You didn't talk about that Commentary?

16         MR. ROOTS:  I don't recall looking at that.  But

17   keep in mind, reckless driving itself is singled out.  You

18   know, reckless driving can be very serious.

19         So we would ask for the Court's discretion in the

20   analysis of these.  These are very petty offenses in the big

21   picture, almost outside the window.

22         THE COURT:  All right.  Any response from the

23   government?

24         MR. BECKWITH:  On this, Your Honor, we'll just

25   rest on the pleadings.

1          THE COURT:  Okay.

2          All right.  Defendant's objection to the criminal

3    history determination in the PSR is easily resolved based on

4    clear instructions in the guidelines manual.

5          Commentary Note 5 to the guideline at Section

6    4A1.2 states:  Convictions for driving while intoxicated or

7    under the influence and similar offenses by whatever name

8    they are known are always counted without regard to how the

9    offense is classified.

10         Paragraphs 1 and 2 of the guidelines 4A1.2(c) do

11   not apply.

12         Paragraphs 1 and 2 of Section 4A1.2(c) allow for

13   offenses similar to a specifically delineated list of

14   offenses to avoid being assessed criminal history points --

15   and that is what defense counsel has relied on to have me

16   not count those two DUI convictions -- commentary 5

17   expressly excludes DUIs from offenses that may be excluded.

18   Accordingly, defendant's objection is overruled.  His 2012

19   and 2014 DUIs each contribute one point to his criminal

20   history, resulting in a criminal history score of 2,

21   criminal history category of 2.

22         Now I am going to turn to how the guidelines apply

23   here, starting with the government.

24         The government raises two objections to the

25   probation office's guideline determination in the PSR.  The

1    government argues, first, that a five-level increase under

2    the specific offense characteristic at guideline

3    2A2.2(b)(3)(A) is warranted for Count 2.  And the government

4    disagrees with the PSR's grouping of various counts.

5            Does that encompass all of the government's

6    objections?

7            MR. BECKWITH:  Yes, Your Honor.

8            THE COURT:  Okay.  I just want to make sure I have

9    got all of the objections down, then I will turn to talk

10   about them.

11           The defendant raises seven objections to the PSR's

12   guideline determination as well as his adjusted offense

13   level.

14           As I understand these seven objections -- which I

15   will address each separately, as I am required to -- he

16   objects to:  One, applying a two-level adjustment under

17   Section 3C1.1 for obstruction of justice is not warranted

18   based on his trial testimony; two, not granting him a

19   two-level reduction under Section 3E1.1 for acceptance of

20   responsibility using the guideline at Section 2A2.2; for

21   aggravated assault for Counts 2 and 4; four, applying a

22   four-level increase under the guideline at Section

23   2A2.2(b)(2)(B) for use of a dangerous weapon; five, applying

24   a three-level increase under the guideline at Section

25   2A2.2(b)(3)(A) for the victim sustaining a bodily injury;

1      six, applying a six-level increase under 3A1.2(b) for the

2      victim being a government officer; and seven, not applying a

3      two-level reduction under the new amendment to the

4      guidelines at Section 4C1.1 and treating Mr. Todd as a

5      zero-point offender.

6              Now, the defendant's memo only mentions objections

7      for the four-level increase for use of a dangerous weapon;

8      and Objection 5, which is the three-level increase for the

9      victim sustaining bodily injury.

10             I just want to get clarification of the record.

11             Does the defendant want to pursue or maintain all

12     seven objections, or are you just limiting it to what you

13     have talked about in your sentencing memo?

14             MR. ROOTS:  Yes.  We maintain all of those

15     objections.

16             And I would add, you know, during the trial the

17     definition of "bodily injury," as defined in the federal law

18     is --

19             THE COURT:  I am going to get to each objection in

20     turn, so save your breath for right now.  I just want to

21     make sure I have got all of the objections.

22             Are you adding in another objection or are you

23     just -- is this argument related to one of the objections on

24     my list?

25             MR. ROOTS:  We would add the objection that this

1    particular bodily injury in this case, which was seven

2    stitches on a finger of an officer, seven inches, just

3    barely, just barely --

4            THE COURT:  That's your objection, No. 5.  Why

5    don't you save that until I get to that objection,

6    Mr. Roots.

7            Don't confuse me.  I am trying to keep straight,

8    for the record, all of the objections.  I will deal with all

9    of the arguments as to each objection in turn.  Okay?

10           MR. ROOTS:  Okay.

11           THE COURT:  All right.  Thank you.

12           Okay.  So I think, with those seven -- nine total

13   objections, those are the ones I am going to deal with.

14           I am going to start with the government's

15   objection to only -- the PSR's addition of only a

16   three-level increase for bodily injury, which is Mr. Root's

17   Objection 5, where he thinks there shouldn't even be the

18   three points.  I have got cross-purpose objections here,

19   with the government wanting to increase the three levels the

20   probation office added and the defense saying the three

21   levels is too much.

22           I am going to deal with that objection first.

23           Just to lay this out, the guideline at 2A2.2

24   provides a base offense level of 14 for aggravated assault

25   and authorizes adding three offense levels under Section

1    2A2.2(b)(3)(A) if the victim suffers bodily injury, or five

2    offense levels under Section 2A2.2(b)(3)(B) if the victim

3    suffers serious bodily injury.

4         The PSR opted for the "bodily injury," not the

5    serious bodily injury.  The government says it should be

6    "serious bodily injury" with a plus-five.  The defendant

7    says he is not responsible for any bodily injury, there

8    shouldn't be any.

9         So that's the summary of what the dispute is.

10        Now I will hear first from the government and

11   then, Mr. Roots -- I will hear first from you about -- in

12   support of your "serious bodily injury"; and Mr. Roots for

13   why there shouldn't be any, which we'll get back to what you

14   were just trying to get into.

15        Let's hear first from the government.

16        MR. BECKWITH:  Your Honor, we really -- our entire

17   argument is encapsulated in the --

18        THE COURT:  Okay.  You just want to rest on your

19   papers, that's great.  Have a seat.

20        Mr. Roots.

21        MR. ROOTS:  Yes.  It's just preposterous that they

22   would argue that it's serious bodily injury, let's start

23   with that.  Ridiculous.  Under every case that's ever --

24        THE COURT:  I am not going to do that.  You don't

25   have to waste your breath.

1          MR. ROOTS:  Okay.  Thank you.

2          Now let's get to the question of whether it's

3    bodily injury at all.  Okay.

4          Under federal law, the definition, the standard,

5    is something like:  An injury for which a person would

6    normally seek medical attention.

7          In this case we have seven stitches on a finger of

8    an officer.  Seven stitches.  Obviously, many people get a

9    cut of the same seriousness and don't seek medical

10   attention.  I have had cuts that I could have gotten

11   stitches for; we all have.  Many of us.

12          If you have ever worked in the construction

13   field --

14          THE COURT:  I'm sorry.  I'm sorry.

15          This was a deep cut.  I think my recollection of

16   this sort of -- my visceral reaction to some of the

17   testimony is that you could see his tendon, if not his bone.

18   This was a cut -- he needed to go to the hospital, he needed

19   to get seven stitches, it's not a small number of stitches.

20          I am not sure where you are going with that.  If

21   you, Mr. Roots, have a cut like that, where you can see your

22   tendons and your bone and it's bleeding profusely and you do

23   not go get medical attention, I would think you have made

24   the wrong decision.

25          MR. ROOTS:  Well, I submit it just barely

 1  qualifies under the law as a "bodily injury" by that

 2  standard.  The standard is that you would normally seek

 3  medical attention.

 4         The body-cam footage of the officer --

 5         THE COURT:  Yes, you would normally seek medical

 6  attention for that kind of cut.

 7         MR. ROOTS:  Stitches, sure, I mean.  But I think

 8  all of us have deep cuts that we didn't -- we didn't go to a

 9  clinic for.

10         THE COURT:  Speak for yourself, Mr. Roots.

11         MR. ROOTS:  The officer's own body cam goes on for

12  an hour or two after that episode; that was never played at

13  trial but that body cam exists.  It shows him very jovially

14  talking about things in the hours afterward.  He does go and

15  see a medical officer, then he gets in an ambulance and he

16  goes to Howard Medical Center and gets seven stitches.

17         THE COURT:  Just like he testified.

18         MR. ROOTS:  Yes.  We're not disputing his

19  testimony.  But he was not traumatized.  This was not a

20  serious -- of all of the bodily injuries that have ever been

21  considered under that statute, I submit that this has to be

22  near the absolute lower bottom end of that.  We would just

23  submit it's a very close call as to whether it even

24  qualifies as a "bodily injury."

25         THE COURT:  Thank you, Mr. Roots.

1          Does the government want to respond?  No?

2          Rest on your papers?

3          (No audible response was heard.)

4          THE COURT:  Okay.

5          All right.  Both the government and the defense

6    objections are overruled, and the PSR's position is adopted.

7          "Bodily injury" is defined as, quote:  "Any

8    significant injury, e.g., for example, an injury that is

9    painful and obvious, or is of a type for which medical

10   attention ordinarily would be sought."  See the commentary,

11   Note 1, at Section 1B1 of the guidelines, which is the

12   definitional section.

13         "Serious bodily injury," by contrast, is defined

14   as, quote:  "Injury involving extreme physical pain or the

15   protracted impairment of a function of a bodily member organ

16   or mental faculty; or requiring mental -- medical

17   intervention, such as surgery, hospitalization, or physical

18   rehabilitation."

19         Here, a struggle between Officer Rathbun and

20   defendant occurred which involved defendant jerking a

21   splintered flagpole back resulting in a deep cut to Officer

22   Rathbun's finger.  Officer Rathbun testified he saw blood

23   between his knuckles and in the palm of his hand and that,

24   when he straightened his fingers out, he could see tendons

25   between the section of bone.  See the trial transcript,

1    January 31, 2024, at page 41.  He testified, however, that

2    he did not remember having any immediate pain.  See the

3    trial transcript at page 60.

4           Officer Rathbun was taken by ambulance to Howard

5    hospital where he had x-rays taken of his hand that he

6    received from a surgeon, seven stitches on the inside of his

7    knuckle.  He missed nine days of work due to his injury.

8           In light of this evidence, a jury convicted the

9    defendant of forcibly assaulting, resisting, or impeding

10   certain officers or employees causing bodily injury, and his

11   objection that no offense levels should be added pursuant to

12   Section 2A2.2 is thus overruled because Officer Rathbun

13   plainly suffered from a bodily injury.

14          The question whether Officer Rathbun's injury was

15   serious is closer.  Officer Rathbun undoubtedly suffered a

16   sufficiently significant injury for which medical attention

17   ordinarily would be sought and kept him out of work for nine

18   days.  His injury, however, does not constitute "serious

19   bodily injury."  He didn't testify that he experienced

20   extreme physical pain, impairment of a function of his hand,

21   serious surgery or physical rehabilitation.

22          The government appears to rely on the fact that

23   Officer Rathbun was taken to the hospital but

24   hospitalization, as used in this definition, generally

25   implies some period of staying overnight in the hospital for

1    treatment which Officer Rathbun did not need.

2            Accordingly, the government's objection that a

3    five-level increase should be added pursuant to Section

4    2A2.2(b)(3)(B) is overruled.

5            Now let's turn to the government's objection as to

6    grouping, which is really quite complicated.  Grouping is a

7    very complicated issue.

8            What difference does it make how these -- whether

9    the PSR grouped the offenses correctly or not?  Does the

10   government want to pursue that objection to the grouping?

11           MR. BECKWITH:  We just rest on our pleadings in

12   this case, Your Honor.

13           THE COURT:  Okay.  You come and explain to me what

14   your grouping problem is.

15           That wasn't my question.  My question is what

16   difference does it make in the offense levels?

17           MR. BECKWITH:  I don't believe it does make a

18   difference in the offense level.

19           THE COURT:  So why are you raising an objection to

20   it?

21           MR. BECKWITH:  I think we have so many of these

22   cases, Your Honor, we're just trying to be consistent across

23   all of the cases and how we group them, that's all it is.

24   It doesn't make a difference here.  We are not seeking to

25   make -- we are not seeking to fight about it or make a big

```
1    issue of it.

2              THE COURT:  Well, the government contends that

3    Counts 1, 3, and 4 should all be grouped together based on

4    their involvement with the same victim which the government

5    says is Congress, pursuant to Section 3D1.2(b); and that a

6    separate -- Count 2 should be treated as a separate group

7    because that Count 2 should be treated differently.

8              Why?

9              MR. BECKWITH:  Well, Count 1 --

10             THE COURT:  I mean, because -- why does that make

11   a difference between the PSR's grouping of Counts 1 and 3 as

12   one group, and Counts 2 and 4 as one group for presenting

13   totally distinct harms; one, Counts 1 and 3 representing a

14   harm to Congress; and 2, representing a harm to Officer

15   Rathbun?

16             MR. BECKWITH:  We're merely pointing out

17   different -- as we understand the sentencing guidelines

18   required for different victims to be grouped together, we

19   just saw Congress as an institution as a distinct victim

20   from Sergeant Rathbun.

21             THE COURT:  All right.  It makes no difference to

22   the final offense level.

23             Do you want to be heard on this Mr. Roots?

24             You don't have to be.

25             MR. ROOTS:  I do, a little bit.
```

1           THE COURT:  Okay.

2           MR. ROOTS:  So what they're doing is a trick that

3     the government is using in all of these January 6 cases;

4     it's a trick of conceptualization designed to maximize

5     sentences and catapult people to a higher --

6           THE COURT:  Yes.  But they have admitted,

7     Mr. Roots, that this has no effect on the ultimate offense

8     level here, which is why -- why?

9           MR. ROOTS:  We certainly stand with probation on

10    this.  The objection is not --

11          THE COURT:  Okay.  So do I.

12          All right.  Let me explain.

13          The government's objection is overruled.

14          The guideline at 3D1.2 provides -- and I am going

15    to have to go through this since the government is

16    persisting in its objection.

17          The guideline at Section 3D1.2 provides that,

18    quote:  All counts involving substantially the same harm

19    shall be grouped together.  Counts that involve

20    substantially the same harm include:  One, counts that

21    involve the same victim or two or more acts or transactions

22    connected by a common criminal objective or constituting

23    part of the common scheme or plan; see Section 3D1.2(b).  Or

24    two, when -- quote:  When one of the counts embodies conduct

25    that is treated as a specific offense characteristic in or

1    other adjustment to the guideline applicable to another of

2    the counts.  That's at Section 3D1.2(c).

3         At the outset, acknowledged grouping is a very

4    murky endeavor.  These four counts could be grouped together

5    in multiple ways, without any of those ways ultimately

6    making any difference whatsoever to the final total offense

7    level.

8         Let me just say that the government's approach is

9    imprecise and inconsistent in several respects.  So if you

10   are trying to stay consistent with what arguments you are

11   making in front of other judges, let me just tell you:

12   Don't make it in front of me again; this is how I view it.

13        First, the government groups pursuant to

14   Section 3D1.2(b), Count 1 for obstruction; Count 3, entering

15   and remaining in a restricted building or grounds; and 4,

16   disorderly or disruptive conduct are counts that involve the

17   same victim, Congress.  But when calculating the offense

18   level of Count 4, the disorderly and disruptive conduct, the

19   government assumes the victim is Officer Rathbun when it

20   applies all of the specific offense characteristics related

21   to assault pursuant to Section 2A2.4(b) and (c), including

22   plus three for physical contact, plus two for bodily injury.

23   They grab the aggravated assault cross-reference, plus four,

24   for dangerous weapon and plus five for serious bodily

25   injury.

1          I don't know how the government can make the

2     argument that Count 4, the victim is Congress, when it's

3     applying all of these other specific offense characteristics

4     for Officer Rathbun as the victim.  That makes little sense

5     to me.

6          Second, it then Groups 1 and 2 pursuant to

7     Section 3D1.2(c), which implies that Count 2 embodies

8     conduct that is treated as a specific offense characteristic

9     in the guideline applicable to Group 1.  Remember, Group 1,

10    in the government's counting, is Counts 1, 3, and 4.  But

11    Count 2 embodies conduct that is treated as a specific

12    offense characteristic, and only Count 4; not Counts 1

13    and 3.  So that doesn't make any sense either.

14         So just my input on how the government wants to

15    group.  And if you are persisting in this objection here

16    because you want to be consistent across other cases, it

17    doesn't make sense anywhere probably; but certainly doesn't

18    make sense here.

19         The probation officer's approach as reflected in

20    the PSR, as people who deal with this murky grouping which

21    is very complicated, dense, and always a difficult issue --

22    so my compliments to the probation officer for having to

23    work it through -- the PSR's approach is more precise, makes

24    more sense; I adopt it here.

25         First, Count 1, obstruction; and Count 3, entering

1    or remaining on restricted grounds are grouped as Group 1,

2    pursuant to Section 3D1.2(b) because they involve the same

3    victim, Congress, and two or more acts or transactions

4    connected by a common criminal objective or constituting

5    part of a criminal scheme or plan.

6           Second, Counts 2, assault; Count 4, disorderly or

7    disruptive conduct are grouped as Group 2, pursuant to

8    Section 3D1.2(c) because Count 2 embodies conduct that is

9    treated as a specific offense characteristic in the

10   guideline applicable to Count 4.  Third, Groups 1 and 2

11   cannot be grouped because they involve separate and distinct

12   harms.  Group 1 represents harm to Congress, Group 2

13   represents harm to Officer Rathbun.

14          Accordingly, the government's objection as to the

15   grouping is overruled.

16          Now let's turn to the defendant's objection to

17   application of the increase of two offense levels under

18   Section 3C1.1 where they, probation -- the PSR adds two

19   offense levels to both Counts 1 and 2 because this guideline

20   applies if the defendant willfully obstructed or impeded or

21   attempted to obstruct or impede the administration of

22   justice with respect to the investigation, prosecution, or

23   sentencing of the instant offense of conviction, and the

24   obstructive conduct related to the defendant's offense of

25   conviction and any relevant conduct or a closely related

1    offense so that this guideline provides that if any of those

2    circumstances apply, the offense level is to be increased by

3    two levels.

4         This is -- as I said, 3C1.1, a two-level increase

5    has been applied to both Counts 1 and 2 based on the

6    defendant's dissembling testimony at trial; one, that he did

7    not encounter any barriers, signs, or other indications that

8    he was not allowed on Capitol grounds or in the Capitol

9    Building; two, a law enforcement officer told him, "You can

10   come in and watch the proceedings, just don't interrupt

11   them"; and three, that he was not aggressive and was merely

12   holding onto his flagpole.

13        So while the government applies this enhancement

14   to all four counts subject to the guideline, the defendant

15   contends that the guideline 3C1.1 should not be applied at

16   all to any of the counts.  I will hear the parties about

17   this if they want to be heard.

18        Does the government want to be heard?

19        MR. BECKWITH:  No, Your Honor.

20        THE COURT:  Mr. Roots?

21        MR. ROOTS:  So there is this little controversy

22   about whether officers said something while Mr. Todd was at

23   the entrance or near the entrance.

24        I submit that, in the big picture, the evidence

25   that came in is pretty consistent with Mr. Todd's testimony.

1    Mr. Todd, for a time, was up on a little -- he was outside

2    the Capitol Building up on a little -- maybe a ledge.  There

3    was a group that was negotiating with officers, talking back

4    and forth; he was hearing this conversation.  The

5    conversation can be interpreted and construed in a way that

6    Mr. Todd heard it, and that was consistent with his

7    testimony.

8            By the way, Officer Millard testified that he did

9    say, "I understand" -- "I respect" -- something about "I

10   respect it," and then -- now he is saying that he meant he

11   was respecting the building.  It's obvious from the context

12   what Millard was saying as protesters demonstrated when they

13   walked past him --

14           THE COURT:  Clearly, it's not so obvious to you.

15   He said he was referring to the building, "Respect the

16   building."  These people were coming in and overrunning the

17   police, so -- you know.

18           Mr. Roots, your view of reality is so different

19   from the evidence at trial, it's really -- it's sometimes

20   difficult to have a conversation about it.  Just finish what

21   you -- make your record.

22           MR. ROOTS:  Yes.  The video shows Officer Millard

23   and, maybe, two other officers are standing there as 200

24   protesters walked right through that door.  And they stood

25   there as 200 people --

1          THE COURT:  200 protesters against how many cops

2     were there? -- two, three, in the doorway; that's how many

3     they could muster for that doorway.

4          MR. ROOTS:  Officer Millard was speaking to the

5     protesters saying, "I understand you," "I respect it," or

6     something like that.  "I understand and respect you,"

7     saying -- but, hey, you know.

8          THE COURT:  Anything further?

9          MR. ROOTS:  That's what we'll say.  It's very

10    consistent with Mr. Todd's testimony.

11         THE COURT:  All right.  The defendant's objection

12    is overruled.

13         Commentary Note 2 to Section 3C1.1 warns that:  In

14    applying this provision in respect to false testimony, the

15    Court should be cognizant that inaccurate testimony or

16    statements sometimes may result from confusion, mistake, or

17    faulty memory and, thus, not all inaccurate testimony or

18    statements necessarily reflect a willful attempt to obstruct

19    justice.

20         A defendant need not perjure himself, however, for

21    Section 3C1.1 to apply.

22         The D.C. Circuit recently explained that Section

23    3C1.1 may apply when a defendant is disingenuous, is not

24    entirely candid or truthful or mischaracterizes some of his

25    actions and motivations in order to downplay his

1    culpability.  See *U.S. v. Alford*, 89 F.4th 943, jump cite

2    954, D.C. Circuit 2024, affirming application of the 3C1.1

3    enhancement where the defendant testified that he traveled

4    to D.C. to enjoy himself, take some pictures, enjoy some

5    like-minded people, and that he did not notice the signs and

6    barricades restricting access to the Capitol and claiming

7    not to know that he was not allowed inside.

8            Sound similar?

9            Application of this section, two-offense level

10   3C1.1 enhancement to Counts 1 and 3 versus Counts 2 and 4

11   will be discussed separately.

12           Counts 1 and 3, defendant repeatedly falsely

13   testified that officers opened the door and said defendant

14   could go in and go sit in on the proceedings as long as he

15   did not disrupt them or disturb them; this is the trial

16   transcript, February 2, 2024, at page 19.

17           This is when, in normal circumstances, people have

18   to go through checkpoints, have all their bags checked,

19   et cetera.  But on a day of the Joint Session of Congress,

20   according to this defendant's testimony, police officers

21   were just saying, "Come on in.  We have got the whole

22   Congress and the Vice President, no security check necessary

23   today."  Makes no sense.  Wishful thinking.

24           Defendant also testified that he did not think

25   storming the Capitol would be dangerous; reasoning that it

1    would not make sense that the police would open the door and

2    let people in if that was going to create a danger, and

3    likening it with opening the gate and just letting everyone

4    in on a military base; you don't do that because you are

5    welcoming anyone to come in.  He said that at the trial

6    transcript at page 203.

7         Defendant incredibly testified that he saw a

8    police officer wearing a MAGA hat, shaking people's hands

9    and saying, "How are you guys doing?  Remember to keep it

10   peaceful."

11        He also testified that he was allowed to be in the

12   building and was never told to leave before finally

13   admitting on cross-examination that the officers told him to

14   leave but he refused.

15        In fact, as of today's sentencing, he seems to

16   continue to persist in saying he was allowed in the Capitol.

17        Defendant's objection to application of 3C1.1 to

18   Counts 1 and 3 is overruled.

19        As to Counts 2 and 4, application of Section 3C1.1

20   to Count 2, based on defendant's testimony that he was not

21   aggressive, he was merely holding on to the flagpole, also

22   downplays his culpability justifying application of

23   Section 3C1.1.

24        Defendant repeatedly testifying he was not at

25   fault at all in the breaking of the flagpole.  According to

defendant, Officer Rathbun grabbed control of the flag with both hands, pulled and got frustrated, resulting in the snapping by Officer Rathbun of the flagpole.  See defendant's trial testimony, February 2, 2024, at page 157; and also at page 159, where the defendant testified that the officer, quote, "snapped it," and it splintered and cut his finger.

In defendant's view, his only role in this altercation was refusing to let go of the flagpole because, quote, "He likes to keep his property with him."  He said that at page 148; also 157, in different ways; page 158, 161, and 196 through 197.

He denies applying any force to the flagpole and denies having any role in the breaking of the flagpole saying, at 157:  "I do not know how I could have broken it at that point where it was broken, so no."

At 159:  "If I were to break it, it would have broken in between my hand and his hand, and that wasn't the case."

Defendant's testimony is contradicted by the testimony of Officer Rathbun, MPD Officer Travis Coley, and MPD Sergeant Jay Coletti.  The jury clearly credited the testimony of the officers, discounted defendant's testimony, finding him guilty of forcibly assaulting, resisting, or impeding certain officers or employees with acts involving

1    physical contact with the victim of that assault.

2              He continues to maintain that he was not at fault.

3    He even says, in his objections, that Officer Rathbun's

4    injury was self-inflicted.

5              His objection to application of Section 3C1.1 to

6    Counts 2 and 4 is also overruled.

7              He next objects to not being given credit for

8    acceptance of responsibility.  Under the guidelines, a

9    two-offense-level reduction is applied if he clearly

10   demonstrates acceptance of responsibility for his offense.

11   As support for his entitlement to this two-level reduction,

12   he makes the blanket statement that, in the objections at

13   page 16, quote:  "Todd has clearly demonstrated acceptance

14   of responsibility."  He offers no further justification for

15   this position nor any explanation for what evidence there is

16   about that.

17             I will hear from you if you want to supplement the

18   record on that.  Saying he didn't do it is not accepting

19   responsibility for what was proven at trial that he didn't do.

20             MR. ROOTS:  Yes.  Mr. Todd took the stand.  Toward

21   the end of his testimony, Mr. Pierce was questioning him and

22   he very clearly accepted responsibility.  He said:  I

23   shouldn't have done some of the things I did; I wasn't

24   perfect.  I made a lot of mistakes.  He clearly accepted

25   responsibility.

1          THE COURT:  I have had defendants in the January 6

2    context take the stand and say:  I agree I am guilty of

3    these counts; that's not what happened here.

4          Did I miss something?

5          MR. ROOTS:  Well, he -- we believe and he believes

6    he is not guilty of --

7          THE COURT:  Any of these charged offense conducts

8    that the jury found him guilty of?

9          MR. ROOTS:  Let's put it this way, I think --

10          THE COURT:  No.  Is he saying now that he accepts

11    responsibility and is guilty of any of the charges for which

12    he was convicted?

13          MR. ROOTS:  I don't know about the misdemeanors.

14    He believes the evidence doesn't support those two felony

15    convictions.

16          On the stand, he did admit he made a lot of

17    mistakes and he was rambunctious and a little bit rowdy, so

18    he did accept responsibility for that.  So you can say he

19    accepted responsibility for being a little bit disorderly,

20    but that was in the context of the moment; and everyone was

21    disorderly including law enforcement was disorderly.  So

22    even though he --

23          THE COURT:  You think law enforcement was

24    disorderly on January 6, 2021?

25          MR. ROOTS:  Yes.  Absolutely.  There are many

1    instances of that.

2          THE COURT:  All right.  Mr. Roots, anything

3    further?

4          MR. ROOTS:  No, thank you.

5          THE COURT:  The Commentary Note 2 of Section 3E1.1

6    explains that:  Although conviction by trial does not

7    automatically preclude a defendant from consideration for

8    such a reduction of two offense levels under 3E1.1, this

9    adjustment is not intended to apply to a defendant who puts

10   the government to its burden of proof at trial by denying

11   the essential factual elements of guilt is convicted and

12   then -- and only then admits guilt and expresses remorse.

13         Here, the defendant has never admitted his guilt,

14   he hasn't even expressed remorse.

15         He repeatedly testified that officers let him into

16   the Capitol; Officer Rathbun's injury was self-inflicted;

17   his conduct amounted to nothing more than peaceful protest.

18   See the trial transcript at pages 139 through -40 asserting

19   his right to protest, likening his conduct to people who

20   protect -- protest Hamas and stuff in the Capitol, or the

21   LGBTQ stuff in the Capitol; and asking:  What is the

22   difference between us and them?

23         At one point, Mr. Todd testified that Officer

24   Rathbun assaulted him.  Despite the jury convicting him of

25   all six counts against him, he repeats these egregious

1    mischaracterizations in his sentencing memo, arguing that

2    his prosecution was vindictive; Officer Rathbun's injury was

3    self-inflicted, and he's wrongfully facing decades in

4    prison.

5            He also continues to assert that he was only

6    peacefully protesting.  I saw the same videos as the jury;

7    this defendant was not peaceful.  He was threatening, he was

8    aggressive, he was disrespectful, he was belittling to the

9    law enforcement officers.

10           His objection is overruled.

11           Next objection.  The aggravated assault

12   application to the guideline at 2A2.2.

13           Anybody want to be heard about that?

14           Mr. Roots?

15           MR. ROOTS:  We'll just stand on our pleadings.

16   The flagpole could not have been a weapon by any stretch of

17   the imagination.

18           THE COURT:  Does the government want to talk about

19   application of 2A2.2, the aggravated assault?

20           MR. BECKWITH:  We rest on our pleadings, Your

21   Honor.

22           THE COURT:  All right.  Defendant's objection to

23   using the aggravated assault guideline at 2A2.2 is

24   overruled.

25           The guideline at Section 2A2.2 applies to

1    aggravated assault, which is defined as, quote:  A felonious

2    assault that involved, A, a dangerous weapon with intent to

3    cause bodily injury, i.e., not merely to frighten with that

4    weapon or, D, an intent to commit another felony.

5              The jury found defendant guilty of forcibly

6    assaulting, resisting, or impeding, certain officers or

7    employees with intent to commit another felony.  See the

8    verdict form docketed at ECF 214.  Accordingly, this

9    aggravated assault applies.  The guideline at 2A2.2 applies.

10             His objection is overruled.

11             Next objection is use of a dangerous weapon,

12   specific offense characteristic, and application of that at

13   Section 2A2.2(b)(2)(B).

14             Do you want to be heard on that?

15             MR. ROOTS:  Same objection.  The flag could not

16   have been a weapon; it's just a flimsy, tiny little flag.

17             THE COURT:  It wasn't so tiny.

18             Anything?

19             MR. BECKWITH:  We have nothing to add, Your Honor.

20             THE COURT:  All right.  The guideline at Section

21   2A2.2(b)(2)(B) directs that a four-offense-level increase be

22   applied if, quote:  A dangerous weapon, including a firearm,

23   was otherwise used in the assault.  Commentary Note 1 to

24   Section 2A2.2 defines a dangerous weapon to include, quote:

25   Any instrument that is not ordinarily used as a weapon, for

1    example, a car, a chair, or an ice pick if such an

2    instrument is involved in the offense with the intent to

3    commit bodily injury.

4         The fiberglass flagpole carried by the defendant

5    here plainly qualifies as a dangerous weapon.  Indeed, it

6    caused a cut on Officer Rathbun's hand that resulted in a

7    trip via ambulance to the hospital and seven stitches.  It

8    is notable also that defendant does not meaningfully

9    challenge the flagpole was a weapon, although he does here.

10   He argues it was his personal property, the officer cut

11   himself due to the officer's own conduct, which based on the

12   trial evidence and the jury verdict is not consistent with

13   the trial record.

14        Accordingly, his objection is overruled.

15        Objection No. 6, that application of the

16   government officer victim at the guideline at Section 3E1.2,

17   which produces a six-offense-level increase if the victim is

18   a government officer.

19        Does the defendant want to be heard on that

20   objection?

21        MR. ROOTS:  We would just stand on what we have

22   written.

23        THE COURT:  Does the government want to be heard?

24        MR. BECKWITH:  No, Your Honor.

25        THE COURT:  This objection is overruled.

1            The PSR clearly explains correctly that Sections

2    2A2.2 and 2A2.4 apply to convictions under 18 U.S.C. Section

3    111.  Section 2A2.4 applies to obstructing or impeding

4    officers.  And had 2A2.4 been used for the base offense

5    level for Count 2, the victim-related adjustment would not

6    have applied because Section 2A2.4 already takes into

7    account the victim's status as an officer.  See the

8    Commentary Note 2 to Section 2A2.4 which makes this clear,

9    stating:  The base offense level incorporates the fact that

10   the victim was a governmental officer performing official

11   duties; therefore, do not apply the Section 3A1.2 official

12   victim enhancement.

13           This commentary note goes on, however, to say:  If

14   the offense level is determined under Section 2A2.2 for

15   aggravated assault, then the official victim enhancement

16   under Section 3A1.2 may apply.

17           In this case, Section 2A2.4(c) directs a

18   cross-reference to Section 2A2.2 because the assault

19   constituted an aggravated assault which covers all

20   aggravated assaults regardless of whether the victim is an

21   officer.

22           Application of Section 3A1.2(b) for the victim

23   being a government officer, thus, does not constitute

24   double-counting, as the defendant urged in his objections,

25   and is also contemplated by the guidelines.

1           Indeed, under the guidelines, Section 2A2.2, if

2     the defendant is convicted of 18 U.S.C. Section 111(b), as

3     this defendant was, the Commentary Note 4 states expressly

4     that Section 3A1.2, official victim, also shall apply.

5           Accordingly, defendant's objection is overruled.

6           Defendant's last objection, the zero-point

7     offender reduction under the amendment at Section 4C1.1.

8           Given the Court's prior ruling on the criminal

9     history that the defendant is in Criminal History

10    Category II, with a criminal history score of 2, do you want

11    to persist in that objection?

12          MR. ROOTS:  Yes.  I think the intent of

13    Congress -- the sentencing commission is to give people the

14    benefit of the doubt for minor convictions that are --

15          THE COURT:  No.  The purpose of the sentencing

16    guidelines, in providing all of this guidance, is to ensure

17    some consistency and fairness for sentencing people based on

18    their real offense conduct.  So the zero-point offender

19    means zero-point offender, no criminal history points; this

20    defendant has 2, and is in Criminal History Category II.

21    But if you want to persist in maintaining that objection,

22    fine.  I am ready to rule.

23          MR. ROOTS:  Yes.  He had two DUIs many years

24    before the incident.  Very minor.  He really should qualify

25    for that.

1          THE COURT:  All right.  For the reasons previously

2     explained, defendant's two prior DWIs add 2 points total to

3     his criminal history score; he is, therefore, not a

4     zero-point offender.  And so this objection is overruled

5     just on its face.  He is not eligible for application of

6     Section 4C1.1.

7          Even if he were a zero-point offender, he wouldn't

8     be eligible for the two-point adjustment under Section 4C1.1

9     because he used violence and he possessed a dangerous

10    weapon, a flagpole, which he used and did, in fact, hurt

11    Officer Rathbun in connection with this offense.

12         So for the reasons explained, his objection is

13    overruled.

14         All right.  With these objections resolved, I will

15    now state how the guidelines apply to this defendant.

16         Grouping.  As I have already said, Counts 1 and 3

17    are grouped as Group 1.  Counts 2 and 4 are grouped as

18    Group 2 pursuant to Section 3D1.2(c).  Groups 1 and 2 can't

19    be grouped because they involve separate and distinct harms

20    with Group 1 representing a harm to Congress, Group 2

21    representing a harm to Officer Rathbun.  The offense level

22    applicable to each group is driven by the count that results

23    in the highest offense levels.

24         The PSR includes calculations for only Counts 1

25    and 2.  I will review the guideline calculations for all

1    four counts as required by the guideline at Section

2    1B1.1(a)(4) for Group 1.

3            Starting with Count 1, violation of 1512(c)(2),

4    the applicable guideline is 2J1.2, which provides a base

5    offense level of 14; two offense levels are added for

6    obstruction of justice pursuant to Section 3C1.1, resulting

7    in a total offense level of 16.

8            For Count 3, violation of 1752(a)(1), the

9    guideline that applies is Section 2B2.3(a), which also

10   provides a base offense level of 4; two offense levels are

11   added because the trespass occurred at any restricted

12   building or grounds under Section 2B2.3(b)(1)(A)(vii).  This

13   results in a total offense level of 6, but Section 2B2.3(c)

14   instructs if the offense was committed with the intent to

15   commit a felony offense, apply Section 2X1.1.  In respect to

16   that felony offense, if the resulting offense level is

17   greater than that determined above, 2X1.1, in turn, provides

18   a base offense level of 14, which is the base offense level

19   applicable to 1512(c)(2), with two offense levels added for

20   obstruction of justice under 3C1.1, resulting in a total

21   offense level of 16.

22           Because the resulting offense, when applying the

23   2X1.1 cross-reference, as instructed by Section 2B2.3(c),

24   results in a higher offense level than the 6 without the

25   cross-reference, the total offense level is 16.

1          So both counts in 1 and 2, Group 1, have the same

2     total offense level of 16.

3          For Group 2, the count at 111(a)(1) and (b) is

4     subject to the guideline at 2A2.4, which, in 2A2.4(c)

5     instructs to apply 2A2.2 if the conduct constitutes

6     aggravated assault, as it does here, because "aggravated

7     assault" is defined to mean a felonious assault that

8     involved, D, an intent to commit another felony under the

9     commentary application of Note 1, and the jury affirmatively

10    and unanimously so found in this case.

11         Application of 2A2.2 provides a base offense level

12    of 14, to which four offense levels are added for use of a

13    dangerous weapon under 2A2.2(b)(2)(B), plus three offense

14    levels are added for the victim sustaining bodily injury

15    under 2A2.2(b)(3)(A).  Two offense levels are added because

16    the defendant was convicted under Section 111(b) under the

17    guideline at 2A2.2(b)(7).  Six offense levels are added

18    because the victim was a government officer under the

19    guideline at Section 3A1.2(a) and (b), and two offense

20    levels are added for obstruction of justice under 3C1.1,

21    resulting in a total offense level of 31.

22         Turning to Count 4, violation of 1752(a)(2),

23    Section 2A2.4 applies to Count 4.  And with the same

24    cross-reference under 2A2.4(c) as applied to Count 2,

25    because the conduct constitutes an aggravated assault, the

1    base offense level under 2A2.2 is a base offense level of

2    14, plus four offense levels are added for use of a

3    dangerous weapon under 2A2.2(b)(2)(B), three offense levels

4    are added for the victim sustaining bodily injury, two

5    offense levels are added because the defendant was convicted

6    under Section 111(b), six offense levels are added because

7    the victim was a government officer, and two offense levels

8    are added for obstruction of justice, resulting in a total

9    offense level of 31.

10           So both Counts 2 and 4 in Group 2 have the same

11   total offense level of 31.  For the multiple-count

12   adjustment pursuant to Section 3D1.4, the combined offense

13   level is determined by taking the offense level applicable

14   to the group with the highest offense level, which here is

15   Group 2 with a total offense level of 31, and increasing

16   that offense level by the number of units.

17           Group 1 has a total offense level of 16, which is

18   15 offense levels less serious than Group 2.  Group 1 is,

19   therefore, disregarded under guideline 3D1.4(c), and Group 1

20   will not increase the applicable offense level but may

21   provide a reason for sentencing at the higher end of the

22   sentencing range for the applicable offense level.  The

23   adjusted total offense level is, thus, 31.  That 31, in

24   combination with the criminal history category of 2, results

25   in an advisory sentencing range of 121 to 151 months'

1    incarceration.

2            Counts 1 and 2 are Class C felonies, each with a

3    maximum term of imprisonment of 20 years, and the advisory

4    sentencing range for Counts 1 and 2 is, thus, 121 to 151

5    months' incarceration, 24 to 36 months of supervised

6    release, and a $30,000 to $250,000 fine.

7            Counts 3 and 4 are Class A misdemeanors, each with

8    a maximum term of imprisonment of 1 year.  So the advisory

9    guideline sentencing range for Counts 3 and 4 is, thus,

10   1 year, with 1 year of supervised release, and a $30,000 to

11   $100,000 fine.

12           Counts 5 and 6 are not subject to the guidelines;

13   each has a maximum term of imprisonment of 6 months.  The

14   special assessment that is triggered here is $100 for

15   Counts 1 and 2, $25 for Counts 3 and 4, and $10 for Counts 5

16   and 6; totaling $270.

17           All right.  Is there any objection to that

18   guideline determination not already noted on the record from

19   the government?

20           MR. BECKWITH:  I'm sorry, Your Honor.

21           Could you repeat that.

22           THE COURT:  Are there any objections to that

23   guideline determination not already noted on the record?

24           MR. BECKWITH:  No, Your Honor.

25           THE COURT:  Mr. Roots?

```
1              MR. ROOTS:  We stand on our prior objections.

2              THE COURT:  Do you have any additional objections

3     to make to that?

4              My question is:  Do you have any additional

5     objections to that guideline determination that are not

6     already noted on the record?

7              MR. ROOTS:  None that I can think of.

8              THE COURT:  All right.  That serves.

9              All right.  The defendant made a motion for a

10    downward departure under Section 5K2.13 due to his mental

11    health conditions.  The government hasn't expressed any

12    opinion about that.

13             What's the government's position about the

14    downward departure and application of that here?

15             MR. ROMANO:  May we have just one moment, Your

16    Honor?

17             THE COURT:  Yes.  I am going to take a five-minute

18    break so you can take time to think about that.

19             (Whereupon, a recess was taken.)

20             THE COURTROOM DEPUTY:  Resuming Criminal

21    Case 22-166, United States of America versus John Todd.

22             THE COURT:  All right.  Mr. Roots, do you want to

23    be heard on your motion for a downward departure pursuant to

24    the policy statement at Section 5K2.13?

25             MR. ROOTS:  Yes.  So it is obvious in this case
```

1    that Mr. Todd has very serious mental health issues, and

2    it's also obvious that those issues can be improved; that

3    it's not -- that he is not without the very real possibility

4    of being improved with proper counseling and treatment.

5            Mr. Todd, of course, is a Marine.  He suffered a

6    lot of trauma in the Marine Corps; documented and diagnosed.

7    He has PTSD; this is well-documented; it's diagnosed.  He

8    testified about his personal issues that he has when he is

9    in a crowd and being pushed.  And he, at times in the trial,

10   the evidence showed he comes across as sort of boisterous,

11   belligerent, a little bit --

12           THE COURT:  Threatening?

13           MR. ROOTS:  Well, that is a survival mechanism,

14   and it's a survival mechanism that is well-documented for

15   people who have PTSD and who have lifetime trauma incidents.

16   It is a protective defense mechanism that people like

17   Mr. Todd have.

18           In this case, as I am sure you are well aware,

19   there were moments where he had suicide attempts.  He was

20   actually committed to jail at one time.  The government --

21   this is when he was only charged with misdemeanors; they

22   moved to revoke his release.  At that point, the magistrate

23   judge in this case, Ms. --

24           THE COURT:  Upadhyaya.

25           MR. ROOTS:  -- I can't remember her name.

1          She really took hold of the case, she really sized

2     it up, and she did a great job of having Mr. Todd,

3     basically, put in the custody of his sister in South

4     Carolina.  She did a fantastic job.  He was basically on

5     a -- you can say home confinement in a way, and he was

6     meeting weekly, with weekly counseling, and he was going

7     through therapy and lots of prayer also, religious

8     counseling; he was very much improving.

9          I actually think he has improved since I first

10    encountered himself myself, but he is someone that needs

11    improvement.  He is someone that needs a lot of care, mental

12    health care, and a sentence of incarceration would probably

13    not help him in any way; it might harm that situation for

14    him.  So we do move for a downward departure based on that.

15              THE COURT:  Does the government want to be heard?

16              MR. BECKWITH:  Your Honor, we would oppose the

17    downward departure under 5K2.13 because, under the footnote

18    defining "significantly reduced mental capacity," we don't

19    believe that the defendant meets the standard and that the

20    defense's arguments are much better considered as a 3553(a)

21    factor.

22              THE COURT:  Mr. Roots has talked about his PTSD as

23    a reason for a downward departure and as, I guess, part of

24    what occurred in terms of the offense conduct.

25              Was there any evidence or motion or any notice of

1    such a PTSD defense at trial?

2            MR. BECKWITH:  There was nothing about a PTSD --

3    I'm sorry.  I didn't mean to --

4            THE COURT:  Was there anything about a PTSD notice

5    or defense of mental incapacity, or anything like that,

6    presented at trial?

7            MR. BECKWITH:  His mental health was discussed at

8    trial.  But there is nothing in the PSR that would warrant a

9    significantly reduced mental capacity which, you know, would

10   impair his ability to understand the wrongfulness of his

11   behavior.

12           THE COURT:  The guideline at 5K2.13 provides that

13   the Court may not depart below the applicable guideline

14   range if the facts under this guideline policy statement --

15   if the facts and circumstances of the defendant's offense

16   indicate a need to protect the public because the offense

17   involved actual violence or a serious threat of violence.

18               The government is not relying on that?

19           MR. BECKWITH:  We would rely on that, Your Honor.

20   We were merely --

21           THE COURT:  You didn't read that far?

22           MR. BECKWITH:  We did read that far.  But we more

23   meant that the statute -- that section, as a whole, is

24   inapplicable here.  So getting into the substance of it, we

25   thought the definition was --

 1                THE COURT:  Mr. Roots has gotten into the

 2      substance of it.  It's incumbent on you to get into the

 3      substance of it.  He has made a serious motion.

 4                MR. BECKWITH:  Well, it would apply, Your Honor,

 5      because there is a significant history here.  There is a

 6      pattern of conduct, of violent behavior.  There was a

 7      pattern of conduct, violent behavior subsequent to the day.

 8      We think that there is -- this was a 111(b) case that

 9      required a step-back.  We think that the facts and evidence

10      show that there is a serious threat to the public in this

11      case.

12                THE COURT:  Okay.  That's a substantive argument.

13                All right.  Mr. Roots, do you want to reply?

14                MR. ROOTS:  Yes.

15                THE COURT:  If you do, step forward, please.

16                MR. ROOTS:  Yes.  His mental health issues are

17      fairly well-documented.  He has had more than one suicide

18      attempt.  Thankfully, we believe we are beyond that at this

19      moment with him.

20                We believe he can really improve, and that he

21      would be a very good member of the community if he is not

22      sentenced to a prolonged prison term where his issues would

23      not be properly dealt with.  He deserves a chance at being

24      helped in this way.

25                THE COURT:  All right.  The defendant has moved

1    for a downward departure pursuant to Section 5K2.13 due to

2    Mr. Todd's mental health conditions.

3            This particular guideline policy statement

4    provides that, quote:  "A downward departure may be

5    warranted if, one, the defendant committed the offense while

6    suffering from a significantly reduced mental capacity and,

7    two, the significantly reduced mental capacity contributed

8    substantially to the commission of the offense.

9            Now, the definitions for application of this part

10    of the guidelines defines a "significantly reduced mental

11    health capacity" to mean that the defendant has a

12    significantly impaired ability to, A, understand the

13    wrongfulness of the behavior comprising the offense or to

14    exercise the power of reason or, B, controlled behavior that

15    the defendant knows is wrongful.

16            The guideline at Section 5K2.13 further provides

17    that, quote:  "The Court may not depart below the applicable

18    guideline range if, 2, the facts and circumstances of the

19    defendant's offense indicate a need to protect the public

20    because the offense involved actual violence or a serious

21    threat of violence.

22            The defendant indisputably has some mental health

23    diagnosis and symptoms, such as PTSD; and he has got some

24    serious mental health conditions that have provoked him

25    during his pretrial release in this case to engage in very

1    threatening conduct that required police intervention.

2              On September 9, 2022, his ex-wife contacted the

3    police department where she was living, saying that the

4    defendant was suicidal and armed with a gun.

5              On April 24, 2023, still, while he was on pretrial

6    release, he was identified climbing up the side of a

7    building, I think for his ex-wife -- where his ex-wife was

8    living, with razor blades and knives on his person,

9    attempting to enter the home of a man who was romantically

10   involved with his ex-wife.  The officers on the scene found

11   that he was intoxicated.  They found cuts on his own arm.

12   He told the police he had been trying to kill himself, and

13   he was sent out for a mental health evaluation.

14             These are incidents that occurred when he, at one

15   point, had a gun and at another point he had knives and

16   razor blades.  This was serious conduct even after the

17   offense conduct for which he stands convicted.

18             There was -- I saw Mr. Todd testify.  He did not

19   indicate that he was so significantly mentally impaired that

20   he couldn't understand the wrongfulness of his conduct; he

21   simply had excuses for his conduct.  But to my mind, this is

22   not a person who has a significantly reduced mental capacity

23   that contributed substantially to his commission of this

24   offense.

25             And, in addition, because not only the offense

1    conduct, but even after the offense conduct for which he has

2    been convicted in his -- but before that, in his pretrial

3    release, he was engaging in also very threatening conduct

4    which indicates a need to protect the public.

5         So on multiple bases, the guideline at Section

6    5K2.13 is not applicable or appropriately applied here.

7         At the same time, I acknowledge that he has mental

8    health concerns.  I think that those are appropriately taken

9    into account in discussing the 3553(a) factors in

10   determining whether or not a downward variance is

11   appropriate here.

12        Okay.  Those are all of the objections and

13   departures that I have noted on the record.  Unless there

14   are any further objections from either side, I am now going

15   to turn to the third step of the hearing where I will hear

16   from the parties and fashioning an appropriate sentence in

17   the case.

18        With respect to that, the probation office has

19   recommended a downward variance here to avoid unwarranted

20   sentence disparities to concurrent terms of 78 months'

21   incarceration on Counts 1 and 2, 12 months on Counts 3 and

22   4, and 6 months on Counts 5 and 6.

23        The government has recommended 151 months'

24   incarceration which is, at this point, at the top of the

25   guideline range that applies, and 3 years' supervised

1    release, restitution of $2,000 to the Architect of the

2    Capitol, and another $2,000-plus to the Metropolitan Police

3    Department.

4              The defendant has recommended 2 years' probation,

5    with weekly counseling, no fine, and no restitution.

6              I am now going to turn to the parties with

7    divergent set of sentencing recommendations before me, and I

8    will start with the government.

9              MR. BECKWITH:  Your Honor, can you see the

10   presentation?

11             THE COURT:  Yes, I can.  Thank you.

12             MR. BECKWITH:  We are engaging in a very brief

13   allocution today.  We don't feel it's necessary to review

14   all of the video and evidence that have occurred at this

15   trial; the Court has clearly seen it, understands it, and

16   appreciates the severity of it.

17             We would say that we are now recommending a

18   sentence of 121 months, which is at the bottom of the

19   guideline range --

20             THE COURT:  That was going to be my first

21   question, whether the new guideline range results in a

22   modification of your sentencing recommendation.  So

23   thank you for addressing that right off the top.

24             MR. BECKWITH:  Yes.  We seek to have -- we would

25   like to -- we are seeking to be consistent with the

1    guidelines range sentence, and that was obviously very --

2    based on Your Honor's findings today.

3              At the very heart of this presentation is just

4    going to be a brief discussion of the four aggravating

5    factors in this case.  The first is a willingness to engage

6    violently.  This was not just against Sergeant Rathbun --

7              THE COURT:  Hold on just one second.

8              (Technical difficulty addressed.)

9              THE COURT:  Perhaps, Mr. Coates, you can take the

10   screen on your desk and turn it around.

11             MR. BECKWITH:  Or if you want to take this, the

12   laptop.

13             THE COURT:  It's not as good as it being on your

14   table, but at least you can see that.

15             Sorry for the interruption.  Please continue.

16             MR. BECKWITH:  The first factor that the

17   government would like to emphasize here is the consistently

18   violent conduct of Mr. Todd.  This is not just the assault

19   on then Officer and now Sergeant Noah Rathbun, but also

20   throughout the day.

21             Nothing can justify that behavior.  There is no

22   reason why a United States military veteran would injure a

23   police officer inside the United States Capitol as part of a

24   political riot.

25             In other January 6th cases, Judge Chutkan has

1    commented that there is a macabre irony to someone attacking

2    a law enforcement officer with an American flagpole.

3           Throughout the day here, it is more than just

4    that, the interaction with Officer Rathbun.  Prior to the

5    interaction with Officer Rathbun, MPD Officer Travis Coley

6    had interaction with the defendant where the defendant

7    threatened to "hip toss his ass into the crowd"; that was at

8    Government's Exhibit 400.

9           And then subsequently to the assault on Officer

10   Rathbun, after the defendant had been pushed out of the east

11   side of the building, he made the choice, instead of leaving

12   the Capitol grounds, to come back around to the west side,

13   around the lower west terrace stairs.  He shoved against

14   police shields and further challenged officers, asking them

15   to "drop their shit," and had further violent fights.

16          It's -- obviously, that is just wildly

17   unacceptable behavior, and it speaks to a pattern of

18   behavior that is unacceptable.

19          The second aggravating factor is the attempt to

20   undermine three critical democratic and legal institutions.

21   Not only was the defendant found guilty of attempt to

22   obstruct the certification of the 2020 election in Congress,

23   he was part of the mob that actually forced the delay of

24   that proceeding by several hours.  He also made the choice

25   to come to this courthouse and make misrepresentations to

1    the grand jury and then, after that, at his trial, to sit on

2    the stand, and he made misrepresentations in front of the

3    jury.

4            The cumulative effect of those actions -- so it

5    wasn't a mistake in a single day, it's a corrosive effect

6    when someone tries to undermine democratic and legal

7    institutions.  Every January 6 sentencing is an opportunity

8    to try and protect the integrity of those systems.

9            The third aggravating factor, and factor that we

10   know the Court will consider, is the comparable cases to

11   support a guideline sentence.  We would say here, the most

12   important case the Court can look at is *United States v.*

13   *Thomas Webster.*  And that was -- that case has a variety of

14   similarities with the current case, and the most notable is

15   that they have the same victim.  In that case, Thomas

16   Webster, a former police officer, assaulted Noah Rathbun

17   with a flag.  He also -- Mr. Webster also later challenged

18   officers to "take your shit off," and challenged them to a

19   fight.  Mr. Webster was sentenced to 120 months in prison,

20   which is only one month less than the government's new

21   sentencing recommendation.

22           We would note that in the restitution amounts that

23   we showed the Court related to Officer Rathbun's medical

24   bills, the majority did come from the injury to his hand

25   that required the stitches.  And we did break those out, so

1     that the defendant would not be -- we're not asking the

2     Court to -- pay more than the defendant is responsible for.

3              We would also point the Court to the cases of

4     James McGrew, Isaiah Sturgeon, and Craig Bingert.  It is

5     this Court that sentenced Mr. McGrew.  And I would note that

6     in that case -- that was also a Rotunda case involving a

7     variety of violent conduct, but it was a 111(a)(1) case and

8     there was an acceptance of responsibility in that case,

9     which is not present.

10             The final point that the government would like to

11    make, which we know the Court is well aware of, each

12    January 6th case is an important deterrence.  Nothing like

13    this can happen again; it is unacceptable in a democracy.  I

14    think that we can all appreciate there is a fragility of

15    precious things, and it requires a constant commitment to

16    setting a clear example that it is unacceptable.

17             That's all we have, unless the Court has any

18    questions.

19             THE COURT:  No.  Thank you.

20             MR. BECKWITH:  Thank you.

21             MR. ROOTS:  We do have some character witnesses we

22    would like to put on.  I don't know if this is the time for

23    that.

24             THE COURT:  All right.  I have read the letters.

25             Are there character witnesses that you want to

1    present who did not submit a letter?

2           MR. ROOTS:  I think at least a couple do not have

3    letters?  Right?

4           I would briefly like -- also, I could address the

5    need to avoid sentencing disparities, which the government

6    just --

7           THE COURT:  Well, I mean, you want to put up

8    character witnesses?

9           Answer my first question.

10          MR. ROOTS:  Yes.

11          THE COURT:  One, I have already read a letter that

12   you have submitted -- seven letters.

13          Are you trying to put before me character

14   witnesses who have already submitted a letter?

15          If the answer is yes, then what supplemental

16   information are they going to give me?  And if no, the

17   question is:  Why didn't they write a letter?

18          MR. ROOTS:  I believe there are two -- right? --

19   that did not write letters and were hoping to testify and,

20   for that reason, did not write letters.  So it's a little

21   bit of a -- we feel that they should have -- because they

22   felt that they would come and appear, and they would have

23   the opportunity to speak on behalf of Mr. Todd.

24          One of them is very important.  I believe it's his

25   sister, who has really been his caregiver; that is a very

1    important witness.

2              THE COURT:  All right.  Let's move them through

3    promptly, please.

4              MR. ROOTS:  The first one is his sister, and her

5    name is -- I will let her introduce herself.

6              MS. REVELS:  Hi, Your Honor.  My name is Kristen

7    Revels.  I am John Todd's sister.

8              THE COURT:  I didn't hear you.  Crystal?

9              MS. REVELS:  Kristen, K-R-I-S-T-E-N; Revels,

10   R-E-V, as in Victor, E-L-S.

11             THE COURT:  And you did not submit a letter?

12             MS. REVELS:  I have not submitted a letter, no.

13             THE COURT:  All right.  Proceed.

14             MS. REVELS:  So, obviously, we grew up together.

15   Our childhood was not the greatest, so we'll start there,

16   with childhood trauma.

17             John took the brunt of a lot of abuse verbally,

18   physically.  When I left home to join the Air Force, he and

19   my other brother were left behind.  He actually got kicked

20   out of the home by my stepdad when he was 17 years old,

21   moved in with his girlfriend whose mother decided that she

22   wanted to start a sexual relationship with him.  He then

23   moved in with me to finish his senior year in high school,

24   and was able to join the Marine Corps because of that.

25             I have also experienced PTSD from combat and

1    military sexual trauma, so I understand what John is going

2    through.  It took me 14 years to even admit that to anybody.

3    So for somebody to try to put a time line on PTSD treatment,

4    the time, the therapy -- I am still in therapy on a regular

5    basis; it is a daily struggle.

6          I have seen John go so low to where he's called me

7    saying he didn't want to live anymore, it wasn't worth it.

8    And I have seen him -- come move with me and my husband and

9    able to pull himself out of that so he could be a better

10   person.  He found himself again with working on a farm,

11   helping me with things, getting his relationship back with

12   God.

13         Before he went into jail, he was in a good place

14   because of the therapy.  We spoke about all of the things

15   that he did regarding violence after -- while he was on

16   probation -- pretrial probation.  He did not have the

17   support system to get the treatment he needed.

18         Once he moved in with me and my husband, we got

19   him involved with the V.A. system, and he was able to

20   actually get treatment.  If you look at that, since he

21   started the treatment and found a medication regimen which

22   he was able to deduce down to taking vitamins with weekly

23   therapy -- none of that continued.  In three and a half

24   months, through conversations -- because I can just tell on

25   the phone with speaking to him or text messages, I can

1  already see a decline in his mental health.  I know there

2  are studies out there regarding PTSD and combat veterans and

3  members of the military sexual trauma -- any trauma in

4  prison, and the outcomes aren't great.

5          There are programs out there through the Veterans

6  Justice Outreach Program to help veterans who have these

7  problems so that they can become a productive member of

8  society and heal from the traumas that they have faced.

9  It's been a long struggle and battle for both of us.

10          We were both deployed.  I have seen Marines blown

11  up.  I have seen -- I have seen the aftereffects of Marines

12  and other military members that have been blown up.

13  Fortunately, they weren't blown up in front of me.

14  Unfortunately, my brother got to experience losing one of

15  his best friends while he was deployed that was blown up in

16  front of him.  There are things that -- unless you have been

17  there and you have seen it, you will never truly understand

18  it.

19          He vowed to defend this country, both foreign and

20  domestic, went overseas, suffered trauma that many will

21  never understand; came back and, instead of having the

22  support of his command and the government, they sent him

23  away instead of trying to help him get treatment for the

24  things that he endured.

25          He has already been pushed out by so many people.

1    Instead of helping him, they just push him aside like it

2    doesn't matter.  And I feel like he finally got to a point

3    in his life where things were improving, he was happy, and

4    he was facing those demons.  Now, all of a sudden, it's

5    abruptly stopped, and it breaks my heart because I know

6    there is so much good that he can do in this world.

7         I know everybody sees somebody who was speaking

8    aggressively, you would think he was being violent and evil.

9    The signs of PTSD are reckless behavior, substance abuse,

10   depression, anxiety; things that I have suffered with;

11   things my husband has suffered with; those are all symptoms

12   of -- and trauma responses.  And, unfortunately, it takes a

13   long time sometimes for people to get help, and I am just

14   fortunate that he hasn't become one of those 22-a-day

15   members.  I don't want him to become that statistic.

16   Thank you for your time.

17        THE COURT:  Thank you.

18        MR. ROOTS:  And also, very briefly, his aunt

19   Jackie Sexton; she has sort of been his manager throughout

20   this entire time.

21        MS. SEXTON:  Good morning.  Good afternoon.

22   Jacqueline Sexton.

23        Would you like me to spell it?

24        THE COURT:  No.  I think it's S-E-X-T-O-N; is that

25   correct?

1          MS. SEXTON:  That's correct.

2          I wrote out a lot of different things that I have

3     witnessed through John's life, but there are some things

4     that you haven't been able to see from inside this courtroom

5     or from his file.

6          He has -- since the day he met his wife, who is

7     not yet his ex-wife --

8          THE COURT:  "Who is not yet his ex-wife," did I

9     hear you correctly?

10         MS. SEXTON:  That's correct.  So the account that

11    you talked about earlier, that was during his marriage; that

12    she was in an apartment with someone else with his

13    knowledge.

14         John, from the day that he met his wife,

15    financially supported her and a child that was not

16    biologically his son, which dates back to her pregnancy.  He

17    has pled with family to assist with childcare costs for his

18    son, Aiden, once he was no longer allowed to work due to the

19    employment restrictions leading up to trial.

20         For a time while he was able to be employed, he

21    would walk to construction sites when his truck broke down

22    because he did not have a support system, but he was

23    determined to provide for his wife and for his son.

24         John has not seen his child for two years.  So I

25    know that you are looking at sentencing him and punishing

1    him for his actions, but I can tell you the most detrimental

2    thing to John is taking him away from the presence of being

3    the dad that he didn't have, because he had a biological

4    father who used him as a weapon and he had a stepfather who

5    used him as a battering ram; so he strived to be a good dad,

6    and now he doesn't have the opportunity to do that.

7         He has offered his assistance wherever it is

8    possible even during this process, right?  So he has been on

9    house arrest, but he has tried to help in so many ways.

10        There are people that he met at church, one of

11   which -- instead of asking us for prayers for himself, he

12   would plea for us to pray for a friend, Julie, who has

13   cancer, and has checked in more on her than he probably

14   should have, being a man standing before a judge and looking

15   at prison time.

16        On top of that, and this speaks to his heart,

17   John, with no money during his pretrial, had made friends

18   with a woman named Nedra; you probably have a letter from

19   her.  Her husband and her were in a house explosion.  And

20   despite all that John had facing him, he, with no money,

21   asked me to buy a notebook so that he could write down all

22   the many ways that she had impacted his life and to give her

23   a reason to fight through all of her physical challenges,

24   despite losing the love of her life; that is who John is.  I

25   know that you can't see that in the videos, but that is the

1    heart of who John is.

2            To speak to his PTSD, there have been times where

3    we have been in New Jersey, where my mother is from, and we

4    have been at a flea market; and the noise of the crowd, as

5    it escalates and the brushing up against him, has become so

6    overwhelming that we have had to leave.  So when he gets

7    into a situation where he feels like he is out of control,

8    he is not himself.

9            I don't remember the exact number of John's unit

10   or Marine friends who have committed suicide since returning

11   home, but I do remember when he told me; the number is

12   shocking.  I believe it is somewhere between 7 and 8 men

13   that he knows who have taken their life.

14           With the minimum of two prior suicide attempts

15   himself, to say that the deployment and the service to the

16   country that he has had has already cost him a lot; it has

17   cost him his wife; it has cost him his son; it has cost him

18   at least two years of employment which, except for the grace

19   of family, I am not really sure where he would be because

20   there would have been nobody providing housing or food or

21   shelter, clothing.

22           John and his sister Kristen were born into an

23   abusive household where their father physically and sexually

24   assaulted my sister.  When John was about two years old, his

25   dad kidnapped his sister.  My dad had to go to Florida and

1    beg the court to release my sister and the two kids once

2    Kristen was found and bring them home to New Jersey so that

3    they would have safe haven.

4         After that, his biological father used visitations

5    to set up videotapes and tried to brainwash the children

6    against him.  John has always been a pawn in somebody's

7    hand.

8         We thought most of that had ended when my sister

9    had married her second husband, Richard.  And for a time,

10   John was the apple of Richard's eye.  But the moment that my

11   nephew Tyler was born, that all changed.  John was the

12   center of blame, and he was a place for Richard to release

13   his wrath.

14        One evening, I was actually at my sister's house,

15   Richard kicked down the door on top of my nephew Tyler.  The

16   children were pushed aside.  John is not unaware of domestic

17   abuse and has tried to provide a safe place for his son;

18   although, with his PTSD and the lack of treatment, it has

19   been very hard for him to come out of something that he has

20   grown up in.

21        Because of that, John's heart has always been to

22   rescue those that he sees that are being oppressed or hurt

23   in front of him, and I think part of that is because nobody

24   came to his rescue.

25        John has been his own advocate for years with

1    limited resources in the faces of others treating him as

2    less than, and still putting the needs of others first.

3    John has never had a father to teach him when to speak or

4    when to be silent so his mouth gets in his way.

5            Being taught when to rescue others and when to

6    stand still was learned only by experience.  His experience

7    has been that people have stood by and watched as he

8    suffered.  The irony is that these circumstances have

9    created a string of usury [sic] relationships, some even

10   abusive, which then reinverse [sic] the insecurities that

11   were created during his childhood and his adult traumas.

12   And with the lack of support never allowing John to get

13   consistent mental and medically treated for what now looks

14   like vitamin deficiencies, it does blow my mind, Your Honor,

15   that -- he has tried to receive treatment several times, and

16   only in the last year and a half was he given consistent

17   medication that actually worked.  He would try and things

18   would not go well, and then he would stop.  And so for him

19   to, in the last year and a half, have consistent counseling

20   and medical treatment -- so much so, that they have reduced

21   it down to vitamins.  Vitamins.  It blows my mind that maybe

22   had he had gotten vitamins and not had deficiencies, that

23   there are so many things that would be different in his

24   life, but nobody took the time.

25            The sad part is the country that John so proudly

1    served because -- while what you see may not look like a

2    patriot, John 100 percent was willing to put his life on the

3    line for this country; and he did.  He went out there and he

4    served.

5           As a young man with many hopes, who had the

6    resources -- I'm sorry.  So the sad part is that the country

7    that John so proudly served as a young man, with many hopes

8    of the future, who had the resources, the professionals to

9    diagnose and treat him, and the basic provisions of housing

10   and diet prior to leaving the Marines, to get the internal

11   imbalances resolved without the struggle of just surviving,

12   they didn't.

13          Again, the authorities in his life looked the

14   other way and released him to fend for himself.  And now the

15   same country looks at this middle-aged man who has been

16   struggling to find a balance between peace, provision, and

17   responsibility, and sees a criminal.

18          John's actions on the 6th are not commendable.  I

19   am not here to say that.

20          The truth remains that a U.S. Marine attended the

21   Capitol Building on January 6th, and either he is an utter

22   failure as a soldier or he really did show physical

23   restraint, because he never used any of the combat skills

24   that he was trained by the same government.  If he had

25   intended to hurt someone, you cannot tell me that you think

1   that that would be as small as a scratch; because,

2   otherwise, we fail to train our military.  That doesn't make

3   any sense to me.

4          How much mercy does a trained Marine who utilized

5   none of his combat skills and physical restraint get?  I

6   don't know.  I know that that is in your hands.

7          There are a few things that I would like to tell

8   you that are redeemable.  The redeemable outcome of the

9   aftermath of January 6th in John's life is that John has

10   returned to church.  That may not mean anything to anybody

11   else in this courtroom, but for those of us that prayed that

12   he would come back from foreign countries and that he would

13   find his way back to a place of peace and joy, and not

14   struggle, that's a huge answer.

15          He prays and he serves others where and when he

16   can.  And he knows -- he now knows with the proper

17   vitamins/medications he has -- he can see the color of joy

18   again; because prior to just recently, he didn't know that.

19   The medicines had failed him over and over again prior.

20          I don't know how much of that will be undone by

21   the known prisoner to prisoner sexual abuse that will go on

22   in prison.  The PTSD triggers from solitary confinement and

23   the lack of counseling, and the new medications.  Because

24   when he went behind bars, they changed his medications.

25   They told him he was not depressed, and they only put him on

1    anxiety medicine.

2              I ask you to have mercy and to remember that he

3    voluntarily served this country.  Before he was even a part

4    of January 6, he was willing to give his life so that we all

5    could sit in this courtroom and have this democracy.  He did

6    that.  He willingly did that.  That heart hasn't changed.

7    Thank you, Your Honor.

8              THE COURT:  All right.

9              Do you have any other argument to make, Mr. Pierce

10   or Mr. Roots?

11             MR. ROOTS:  I think that concludes what we have to

12   say.

13             THE COURT:  All right.  Mr. Todd, would you like

14   to say anything directly to me?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  All right.  Please stand forward at

17   the podium with one or both of your counsel.

18             I will explain the sentence I am about to impose

19   and impose sentence.

20             After considering the sentencing memoranda and

21   various documents submitted in connection with Mr. Todd's

22   sentencing, the review of the presentence investigation

23   report, the sentencing recommendations from both parties and

24   from the probation office, I must now consider the relevant

25   factors set out by Congress in 18 U.S.C. Section 3553(a) and

1    ensure I impose a sentence that is sufficient but not

2    greater than necessary to comply with the purposes of

3    sentencing.  These purposes include the need for the

4    sentence imposed to reflect the seriousness of the offense

5    conduct.

6         The seriousness of the offense conduct in this

7    case doesn't get much more serious than this, than stopping

8    democracy in its tracks, by stopping the Joint Session of

9    Congress on a day when they're supposed to be certifying our

10   next President.

11        Promote respect for the law.  There is nothing

12   more disrespectful than what happened on January 6, 2021,

13   than stopping a constitutionally mandated process of a Joint

14   Session of Congress to certify the presidential election so

15   we can move on with our democracy and our next elected

16   official.

17        I also have to consider the need to provide just

18   punishment for the offense; deter criminal conduct generally

19   to make sure this doesn't happen again, as the government

20   mentioned; and protect the public from future crimes by you,

21   Mr. Todd; and to promote rehabilitation.

22        So in addition to the guidelines and policy

23   statements I have already considered, I also have to

24   consider the nature and circumstances of the offense; your

25   history and characteristics, Mr. Todd; the types of

1    sentences available; the need to avoid unwarranted sentence

2    disparities among defendants with similar records or

3    criminal history who have been found guilty of similar

4    conduct; and the need to provide restitution to any victims

5    of the offense.

6             As to the restitution amount, I am going to

7    withhold and postpone entering a restitution amount in this

8    case until the defense and the government confer.  We have

9    some evidence about what supports the $2,000 other than the

10   word of the government to support the, at least, $2,000 in

11   restitution.

12            The government has supported or provided evidence

13   about the $2,514 in Officer Rathbun's medical treatment for

14   his stitches on his hand due to the flagpole injury.  And

15   let me just say that restitution is mandatory here.  You

16   will get a restitution amount; it's a matter of how much.

17            I think this is a caution to the government that

18   just saying so when the defense raises an objection after

19   trial to the restitution amount -- be prepared.  I am

20   prepared to give you a hearing.  Be prepared.  You were not

21   prepared.

22            Just so it's going to be clear, you are going to

23   get a restitution amount because, under the Mandatory

24   Victim's Restitution Act at 18 U.S.C. Section 3663A for your

25   conviction on Count 2, assault under 111(a)(1) and (b) is an

1    offense in which there is an identifiable victim who

2    suffered a physical injury or pecuniary loss.  Under Section

3    3663(a)(c)(1)(B), there is mandatory restitution that's

4    required for me to apply.

5            I know you object to the amount of restitution to

6    the Capitol -- the Architect of the Capitol, based on the

7    almost $3 million, at this point, of damages that the

8    Architect of the Capitol says -- required taxpayer funds to

9    correct, to fix, broken windows and furniture and various

10   other things that were damaged from the riot at the Capitol

11   on January 6, 2021 -- it's your right to contest that, see

12   proof of it -- the government has only asked for $2,000 in

13   restitution.  And I note that the defense has made the

14   argument that you personally didn't damage any of that --

15   cause any of the damage -- you didn't break the windows, you

16   didn't break the doors, you didn't pull things off the

17   walls, you didn't steal things like other people did on

18   January 6, 2021, but you were there.

19           You were distracting the police by calling them

20   all sorts of names, not following their directions to leave

21   the Capitol when they asked.  You were just part of that

22   same mob that contributed to all of the damage that was done

23   to the Capitol.  A restitution amount is totally fair to

24   impose on you.  But I will wait and see the amount that has

25   to be imposed and impose the restitution amount within 30

1    days of entry of the Judgment and Commitment order on this.

2         Regarding the nature and circumstances of the

3    offense, you have been adjudged guilty by a jury of the six

4    charges which I have already outlined.  Your criminal

5    conduct, as I've just said, directly helped facilitate this

6    riot at the Capitol that overwhelmed law enforcement.  They

7    had to call in reinforcements on -- not only -- Capitol

8    Police had to call in reinforcements not just from the D.C.

9    Metropolitan Police, but every police agency in the

10   tri-state area and beyond to help secure the Capitol to make

11   it safe for Congress to continue doing its work.

12        This was a chilling first in our history, that the

13   peaceful transition of power, after a democrat election, was

14   totally disrupted.  And this is not a garden-variety episode

15   of unlawful entry, disorderly conduct, merely being

16   unlawfully present or trespassing in a sensitive place like

17   the Capitol when every member of Congress is there for a

18   Joint Session and the Vice President is there.  This was a

19   dangerous first where the peaceful transition to a new

20   presidential administration was disrupted.

21        You were here.  You attended the former

22   President's rally.  You traveled from Missouri to D.C. to

23   "wreak havoc."  According to some of the evidence at trial,

24   you attended the Stop the Steal rally.  You moved through

25   the crowd at the U.S. Capitol Building and Grounds carrying

1    a fiberglass flag [sic].

2              When you reached the media tower on the west plaza

3    at about 2:15, barricades were still in place.  The police

4    lines were still intact.  The police officers were very,

5    very concerned that they were about to be overrun.  And they

6    were.

7              At 2:29, while you were right there at the west

8    plaza, the barricades were torn down, people were battering

9    at the police, police were bloodied there.  And this whole

10   crowd that you were a part of surged forward, broke the

11   police line.  You were able to climb all the way up the

12   stairs on the northwest scaffolding that was there for the

13   inauguration of the new President.

14             You even went up on the inaugural stage, and you

15   were able to enter the building through the upper west

16   terrace doors where a large group of police officers were

17   gathering with riot gear to wait for the signal where other

18   people were in place so that they could safely get people

19   out of the building.  You went into the building, there were

20   alarms blaring.  This was not a place -- anybody could see

21   this was not a place you were supposed to be.

22             There were police there with riot gear.  There

23   were alarms blaring.  There was tear gas that we could see

24   in some of the videos, right there, showing that this was

25   not a place where the crowd was supposed to be getting into

1    the Capitol Building.  Despite that, you entered the Rotunda

2    through the west doors, you exited through the north doors,

3    and then you entered the Rotunda a second time through the

4    north door and remained inside for nearly 20 minutes.

5          You saw a packed crowd pushing and being pushed.

6    You saw a lot of violence including a woman getting hit in

7    the face with a baton, people getting sprayed, all as the

8    police were trying to move people out of the Capitol

9    Building.

10         Police officers were asking everybody to leave

11   including you.  You testified you were irritated, you were

12   agitated, you were vocal, short-tempered.  You admitted to

13   talking trash, and you were; saying words that could be

14   construed as inviting a physical fight.

15         There was body-worn camera footage capturing you

16   saying:  "Get your fucking hands off of me.  I swear to God

17   motherfucker, I will hip toss your ass in the fucking crowd.

18   We have exhausted every fucking legal route"; meaning that

19   you knew you were there to disrupt the Joint Session of

20   Congress.

21         Officers formed a police line in the Rotunda with

22   Officer Rathbun to get people moving in a line.  And as they

23   were yelling, "Move back," and "get back," you were not just

24   somebody in this crowd hanging out.  You went to the front

25   of that mob right by the police line, refused to back up

1    and, instead, pushed back against the officers yelling:  "I

2    ain't fucking moving."  You were just insisting you were not

3    going to follow their directions.

4          You were waving -- you had your flag.  Officer

5    Rathbun believing you might strike somebody with that flag,

6    attempted to control the pole, take the pole from you; you

7    refused to let go.  When Officer Rathbun tried to pull away

8    from -- with the pole, the pole splintered, and this

9    splintered pole sliced open his finger exposing a tendon

10   requiring, as we have already said, seven stitches and nine

11   days off work.

12         You were finally forced out from the Rotunda.  But

13   rather than leave, having seen what chaos there was caused

14   by this mob and that nothing -- no legitimate business could

15   go on in the Capitol with this mob creating havoc -- rather

16   than leave, you walked to the upper west terrace where you

17   stayed for over an hour.

18         Now, the upper west terrace was also a place where

19   you engaged, according to open-source footage, where you

20   were yelling, "We need" -- you said, "We were inside yelling

21   'we need more people' until they pushed us out."  You did

22   shove your body against some police shields as law

23   enforcement was attempting to clear that area, with you

24   shouting:  "Come on, drop your shit.  Let's go right now."

25   Sort of inviting the police to engage in more force than

1    they were already using.  They were the ones trying to

2    resist using more force than necessary.

3          You continued to antagonize the officers.  You

4    accused them of being pedophiles.  I mean, that's, like,

5    some echo chamber that people circulate which is just

6    absurdity.

7          You then moved to the lower west terrace tunnel.

8    The lower west terrace tunnel is -- in so many areas of the

9    Capitol that were overrun that day resulting in injury to

10   law enforcement officers, the lower west terrace tunnel was

11   about the most serious violence going on there.

12         Police engaged in hours-long physical conflict

13   with the mob on the lower west tunnel, with rioters

14   attacking the police with plywood, bear spray, stealing

15   shields; trying to pull them into the crowd, which is highly

16   dangerous.

17         You were watching all of this horrible conduct

18   going on there until you finally walked away from the tunnel

19   towards the National Mall where you then gave a video

20   interview to a journalist.  You showed no remorse.

21   Absolutely no remorse for what was happening.  This was not

22   a patriot.  This is not conduct becoming of a Marine.

23         What you said was:  "People should stand up and

24   fight."  Even after seeing everything you had done -- after

25   all of that, at the end of the day, you were still

1    encouraging people to fight, even after your deliberate,

2    unlawful entry into the Capitol Building not once but twice.

3          So this is all very serious conduct, and the

4    nature of the circumstances of the offense cry out for a

5    sentence that reflects the seriousness of the offense, to

6    promote respect for our Constitution and our law, and favors

7    a period of incarceration here.

8          Regarding your history and your characteristics,

9    you have four prior adult convictions, only two of which are

10   sufficiently serious as DUIs to count.  You did serve in the

11   Marines; that service is commendable.  You were given an

12   "other than honorable" discharge, which is the most severe

13   nonpunitive administrative discharge due to alcohol and drug

14   abuse; perhaps you were self-medicating there.  But that,

15   combined with other incidents that occurred while you were

16   on pretrial release in this case pending trial, indicates

17   that you have a serious need for treatment; that I

18   acknowledge.

19         You also have serious mental health issues which

20   made your pretrial release very rocky going as I have

21   already discussed.

22         You have been diagnosed with a whole number of

23   mental health issues.  I am going to recommend that, while

24   you are incarcerated, that you are allowed to participate in

25   all of the different mental health treatment programs that

1    the Bureau of Prisons can offer.

2         Your pretrial release in this case was beyond

3    rocky.  By my count, you violated the terms of your

4    supervision approximately seven times.  But at least --

5    unlike other defendants who stand before me, at least you

6    acknowledge that you have mental health problems and you

7    want mental health treatment, so that's a step in the right

8    direction.

9         I will recommend, as the probation office does,

10   that you be allowed to be considered in various programs

11   within the Bureau of Prisons including the Federal Prison's

12   Industries Program, the Parenting Program, the Challenge

13   Program, the Drug Abuse Education Program, the

14   Nonresidential Drug Abuse Program, and the Resolve Program.

15        All of your mental health conditions don't

16   outweigh the serious nature and circumstances of the offense

17   and both general deterrence, given the nature of the offense

18   conduct here as well as specific deterrence, are issues

19   that, to my mind, require a period of incarceration here.

20        To this day you really have accepted no

21   responsibility or expressed remorse for your conduct on

22   January 6, 2021, what this did not just to the law

23   enforcement officers who were there, but to the country.  I

24   haven't seen other than -- and based on what your counsel

25   has been expressing, I haven't seen any change of

1    perspective on what happened.  I mean, people who -- and

2    based on what you said on January 6, 2021, you believe that

3    the presidential election was stolen.  I have seen no

4    indication that you have changed your mind about that

5    despite every fact that has demonstrated that that was not a

6    stolen election.

7            Given your conduct on January 6, 2021, potential

8    continued belief in that, that is of very grave concern to

9    me, requiring specific deterrence.

10           You are a person who was originally charged in

11   this case with misdemeanors.  Misdemeanors.  And you

12   persisted so much in your own view that there was nothing

13   that you did on January 6 that I have seen on videotape that

14   required you to express any remorse or acceptance of

15   responsibility, and that attitude on your part hasn't

16   changed.  As the government prepared for trial on

17   misdemeanors, they found more evidence; that's why we are

18   here today.  They just found more evidence against you and

19   about your offense conduct on January 6, 2021.

20           Still no remorse.  No acceptance of responsibility

21   about the damage to this country's fragile democratic

22   institutions, and that's of extraordinary concern.

23           Your lawyers have spewed totally inaccurate

24   information about you being penalized for exercising your

25   Sixth Amendment right to trial rather than pleading guilty;

1    that is not so.

2         Based on some of the letters I have received last

3    night, some of the people in your friend circle believe

4    that; it is not so.

5         When the government has to go to trial, they

6    prepare really intensely.  They prepared intensely in this

7    trial, they found more evidence against you; and that

8    resulted in additional charges against you, when you could

9    have resolved this case with misdemeanors.  That's what

10   happened here.

11        Your lack of remorse, your lack of acceptance of

12   responsibility, perhaps your continuing belief contrary to

13   all facts that the 2020 presidential election was stolen,

14   makes you stand here today not accepting responsibility, not

15   understanding the criminal aspects of your conduct on

16   January 6, 2021; and all of these are factors I take into

17   account in understanding what punishment is required here

18   for specific deterrence as well as general deterrence.

19        Regarding the types of sentences available, with

20   Class C felonies in Counts 1 and 2 and the sentencing

21   guidelines at 121 months, that is a guideline that

22   recommends a period of incarceration.  That recommendation,

23   based on the evidence I have seen in this case and the jury

24   finding of guilt on six counts -- this is a very reasonable

25   recommendation for a period of incarceration.

1          Regarding the need to avoid unwarranted sentence

2     disparities, the government has offered a few comparators,

3     including two defendants sentenced for convictions that

4     included obstruction under 1512(c)(2) and assault under

5     111(a)(1).

6          I haven't found, the government hasn't produced,

7     nor has the defendant, any comparators with your precise

8     series of convictions for the same counts, but there are

9     some similar comparators.

10         Sturgeon, who was sentenced to a term of 72

11    months, who was convicted of both 1512, the obstruction, and

12    111(a); that was after a bench trial.  And Bingert, Craig

13    Bingert, who was sentenced to terms of 96 months'

14    incarceration on 1512, the obstruction, and also 111(a)(1)

15    also after a bench trial.

16         One of the government's comparators was -- in

17    *U.S. v. Krol* -- was sentenced to 51 months, but that was

18    after pleading guilty.  And as the D.C. Circuit just

19    reinforced earlier this week in *Webster*, defendants who go

20    to trial are not similarly situated to those who plead

21    guilty; because those who plead guilty are accepting

22    responsibility, understanding and appreciating the gravity

23    of the harm that they caused and the nature of their

24    criminal conduct.

25         As the Circuit has said, the disparity in their

1    treatment is generally permissible.  It's disparity, but

2    it's not unwarranted disparity; it's warranted disparity for

3    their acceptance of responsibility.  That's in *U.S. v.*

4    *Webster*, the D.C. Circuit's decision from May 28, 2024.

5    See, also, *U.S. v. Otunyo*, a D.C. Circuit case from 2023.

6              The government's last comparator is notable

7    because he is the other individual that the government

8    mentioned who assaulted Officer Rathbun; your same victim

9    here.  Webster received concurrent terms of 120 months'

10   incarceration for his conviction on 111.  He was not

11   convicted of 1512.  The D.C. Circuit just recently affirmed

12   his sentence as substantively reasonable.

13             In the *Webster* case, Mr. Webster knocked Officer

14   Rathbun to the ground, pushed his gas mask into his face.

15   And when an officer is on the ground, that's very, very

16   dangerous in a mob.  So that was very, very frightening.

17             But his case is not particularly -- the same

18   here -- *Webster*, remind me, was he a police officer?  Yes?

19             Wasn't he a police officer?

20             MR. BECKWITH:  Yes, Your Honor.

21             THE COURT:  Was he an active police officer?

22             MR. BECKWITH:  Former police officer.

23             THE COURT:  He was a former police officer.

24             I think that what was particularly offensive about

25   Mr. Webster, he was a former police officer really making

1    life difficult for other police officers, but he also

2    received a four-level enhancement for using body armor; and

3    he was also found to be an instigator to the January 6

4    crowd.  So I do think that, in terms of comparative penalty,

5    his conduct was, in some respects, more egregious than

6    Mr. Todd in this case.

7            The defendant cites a variety of defendants in

8    non-January 6, 2021, cases that are unhelpful for a number

9    of reasons.  First, he reports to conduct reported in the

10   news without providing docket numbers for any criminal

11   prosecution that might have been brought; those examples are

12   totally unhelpful.  They can't be properly examined by the

13   Court.  He provides little information about what charges

14   were brought, in what court, what the results were; I mean,

15   this is just like a Google search dump.  It's totally

16   unhelpful, Mr. Roots and Mr. Pierce.

17           Second, the defendant points to a series of

18   individuals not similarly situated by any means; pointing to

19   a person named Desmond David-Pitts who was sentenced to 20

20   months' incarceration for setting a police station on fire

21   someplace.  While egregious, this conduct is not comparable

22   to storming the Capitol and preventing the peaceful

23   transition of power at the federal government level and

24   stopping the democratic process.

25           I find what happened on January 6 to be far more

1    serious than setting fire to some police station someplace;

2    in my view, that did not have the repercussions that what

3    happened on January 6, 2021, had on this country and the

4    standing of this country worldwide.

5          Defendant also cites individuals involved in the

6    women's march who allegedly caused the Capitol Building to

7    shut down; that's not comparable.  They never stormed the

8    Capitol.  They never engaged in violence.  I don't know on

9    what basis the defendant says that the women's march closed

10    down the Capitol.  I think the women's march was held on a

11    Saturday.  The Capitol is usually not -- they're not in

12    business on Saturday.  Most representatives are home in

13    their home districts on the weekends.  There was no official

14    proceeding happening.  That is totally useless fodder only

15    designed to try and make the argument that what he was doing

16    was a demonstration and a protest.  It was not.

17          Defendant also provides three pages of individuals

18    who were arrested in connection with George Floyd protests

19    in Portland and argues all of these cases were dismissed.

20    3553(a)(6) requires the Court to compare the sentences of

21    similarly-situated defendants.  I don't know what happened

22    in Portland.  Those people are not similarly situated to

23    individuals here.

24          Before this case -- you weren't here, Mr. Todd --

25    but I have a defendant who was arrested and charged, served

1    time for conduct, illegal conduct he engaged in during the

2    BLM protests in the summer of 2020.  People got arrested,

3    prosecuted in my court, sentenced by me in connection with

4    those protests.  I don't know what happened in Portland, but

5    I know what happened here.

6         In any event, prosecutors have broad discretion to

7    enforce the law.  Their decisions are presumed to be proper

8    absent clear evidence to the contrary.  See *U.S. v. Slaaten,*

9    a D.C. Circuit case from 2017.  There is no evidence at all

10   in this case of any kind of prosecutorial vindictiveness.  I

11   am not going to revisit that conclusion that I already

12   reached in my January 10, 2024, memorandum opinion and order

13   which some of the arguments made here during sentencing

14   seemed to revive.

15        In short, there is no perfect case comparator for

16   this defendant, but I do want to note a couple of things.

17        I have had one January 6 defendant who has been

18   convicted of 111(b); that was Gregory Nix.  But Nix pled

19   guilty; he was convicted on no other felony counts, much

20   less an additional -- no other counts.  He pled guilty to

21   that.  He received a sentence of 42 months' incarceration.

22        Every defendant I have sentenced has been

23   convicted of 111(a) which carries a lesser penalty than

24   111(b), which Mr. Todd was convicted.  I have sentenced to a

25   significant term of incarceration even when they pled

1    guilty.  The defendant offers no reason not to do the same

2    here given his conviction of the more serious 111(b).  The

3    defendant nonetheless has asked for a 2-year probationary

4    term; that's less than I generally give to defendants who

5    have pled guilty to only petty offenses to whom I generally

6    give 36 months' probation.

7         A defendant who entered guilty pleas with

8    guideline reductions that accompany that choice to

9    violations of 111(a) and obstruction was sentenced to 46

10   months, that was Greg Rubenacker; but he pled guilty,

11   accepted responsibility.

12        For defendants who have entered guilty pleas with

13   guideline reductions that accompany that choice of accepting

14   responsibility, acknowledging the criminal conduct to

15   violations of 111 and no other felony, they were sentenced

16   to terms between 78 months and 24 months, depending on the

17   severity of the assault of the police officers over time and

18   in intensity, with most falling between 37 and 44 months.

19        Mr. McGrew received 78 months because his conduct

20   was fairly lengthy, over a long period of time, and

21   repeated, in terms of assaults on law enforcement.

22        I won't go through all of them because it gets to

23   be very endless.

24        Jason Owens, who received 24 months'

25   incarceration, hit a police officer with a skateboard, in

1    one simple assault situation; he also engaged in other

2    aggravating consult.  But because that single assault was a

3    single instance, he received 24 months.

4          One last example -- but he pled guilty.  He was

5    very remorseful.

6          One last example is a defendant convicted at jury

7    trial before me, violating 111(a)(1) and not a 20-year

8    felony -- not 111(b), and not a 1512 20-year felony like

9    Mr. Todd, he was also convicted of a civil disorder felony

10   as well as various Class A misdemeanors and petty offenses,

11   was sentenced to 68 months' incarceration; that was Vincent

12   Gillespie.  He is not a particularly perfect comparator

13   since his felony convictions, as I mentioned, were 111(a),

14   not (b); and civil disorder, which is not 1512, rather than

15   obstruction.

16         But he also dissembled, during his testimony at

17   trial.  He showed no remorse for his conduct on January 6,

18   2021.  And like Mr. Todd, made public statements on

19   January 6th encouraging other rioters.  His offense conduct

20   was, in some ways, less serious than Mr. Todd's since

21   Mr. Gillespie never made it inside of the Capitol Building;

22   but in some ways he was more physically violent than

23   Mr. Todd since, for a lengthy period of time, he was part of

24   the mob at the lower west terrace tunnel.  You may have seen

25   him, Mr. Todd, while you were standing there watching what

1    was going on.

2            For about 15 minutes, Mr. Gillespie used a stolen

3    police shield to hit at officers.  He actually pulled on an

4    officer to try and drag him into the violent crowd.

5            There is no perfect comparator for the unique set

6    of facts and circumstances making up this defendant,

7    Mr. Todd's, offense conduct, his unique background and

8    mental health challenges, all of which I will take into

9    account.

10           What is clear to me is that the defendant's

11   recommendation of 24 months' probation is way too low.  The

12   government's recommendation of over 12 years -- 10 years at

13   this point, is way too high.

14           Given Mr. Todd's prior service in the Marines,

15   even though he was not honorably discharged, but his

16   deployment, his mental health conditions, his PTSD, the fact

17   that unlike some of the other defendants who have really set

18   out to attack law enforcement officers -- and I don't see

19   that on this record by Mr. Todd -- I am going to grant a

20   downward variance in this case.

21           So based on my consideration of these and other

22   factors, I will now state the sentence to be imposed.

23           Pursuant to the Sentencing Reform Act of 1984 and

24   in consideration of the provisions of 18 U.S.C. Section

25   3553, it is the judgment of the Court that you, John George

1    Todd, are hereby committed to the custody of the Bureau of

2    Prisons for concurrent terms of 60 months, which is 5 years,

3    on Counts 1 and 2; 12 months, 1 year, on Counts 3 and 4; and

4    6 months on Counts 5 and 6.  You are further sentenced to

5    serve concurrent terms of supervised release of 36 months,

6    which is 3 years, on Counts 1 and 2; and 12 months, which is

7    1 year, on Counts 3 and 4.

8            In addition, you are ordered to pay a special

9    assessment of $270 in accordance with 18 U.S.C. Section

10   3013.

11           During your period of incarceration, the Court

12   recommends to the Bureau of Prisons that you be allowed to

13   participate in programming recommended by the probation

14   office including the Federal Prisons Industries Program,

15   parenting program, Challenge Program, drug abuse education

16   program, nonresidential drug abuse program, the Resolve

17   Program and, also, mental health programs, and to receive

18   mental health treatment for your documented PTSD, and other

19   mental conditions.

20           While on supervision, you shall abide by the

21   following mandatory conditions as well as all discretionary

22   conditions recommended by the probation office in Part D,

23   Sentencing Options, of the presentence report which are

24   imposed to establish the basic expectations for your conduct

25   while on supervision.

 1          The mandatory conditions include:  One, you must

 2     not commit another federal, state, or local crime; two, you

 3     must not unlawfully possess a controlled substance; three,

 4     you must refrain from any unlawful use of a controlled

 5     substance and submit to one drug test within 15 days of

 6     placement on supervision and at least two periodic drug

 7     tests thereafter as determined by the Court.  You must

 8     cooperate in the collection of DNA as directed by the

 9     probation officer.  You will make restitution in accordance

10     with 18 U.S.C. Section 3663 and 3663(a), or any other

11     statute authorizing a sentence of restitution with that

12     amount to be determined within the next 30 days.

13          During your period of supervision, you shall

14     comply with the following special conditions:  You must

15     submit to substance abuse testing to determine if you have

16     used a probative substance and not attempt to obstruct or

17     tamper with testing methods.  You must participate in an

18     inpatient and/or outpatient substance abuse treatment

19     program and follow the rules and regulations of that

20     program.  The probation officer will supervise your

21     participation in the program regarding the provider,

22     location, modality, duration, intensity, et cetera.

23          You must participate in a mental health treatment

24     program and follow the rules and regulations of that

25     program.  The probation officer, in consultation with the

1      treatment provider, will supervise your participation in

2      that program regarding the provider location, modality,

3      duration, intensity, et cetera.  And you must take all

4      mental health medications prescribed by your treating

5      physician.

6                The Court finds you do not have the ability to pay

7      a fine and, therefore, waives imposition of a fine.

8                The financial obligations are immediately payable

9      to the Clerk of the Court for the U.S. District Court, 333

10     Constitution Avenue Northwest, Washington, D.C. 20001.

11     Within 30 days of any change of address, you shall notify

12     the Clerk of the Court of the change until such time as the

13     financial obligation is paid in full.

14                The probation office shall release the presentence

15     investigation report to all appropriate agencies, which

16     includes the U.S. Probation Office in the approved district

17     of residence in order to execute the sentence of the Court.

18     Treatment agencies shall return the presentence report to

19     the probation office upon the defendant's completion or

20     termination from treatment.

21                With respect to payment of restitution and the

22     special assessments, during your period of incarceration you

23     shall make those payments in the amount of at least $25 per

24     quarter and then, once your period of incarceration is over,

25     that amount shall be increased, depending on your ability to

1    pay, to at least $100 until the amounts are paid in full.

2            You have the right to appeal your convictions of

3    guilt to the U.S. Court of Appeals for the D.C. Circuit.

4            Pursuant to 18 U.S.C. Section 3742, you also have

5    the right to appeal the verdict and sentence.  If you choose

6    to appeal, you must file any appeal within 14 days after the

7    Court enters judgment.  If you are unable to afford the cost

8    of an appeal, you may request permission from the Court to

9    file an appeal without cost to you.

10            As defined in 28 U.S.C. Section 2255, you also

11    have the right to challenge the conviction entered or

12    sentence imposed if new and currently unavailable

13    information becomes available to you or on a claim you

14    received ineffective assistance of counsel in entering a

15    plea of guilty to the offense of conviction or in connection

16    with sentencing.

17            Okay.  You may be seated.

18            Are there any objections to the sentence imposed

19    not already noted on the record from the government?

20            MR. BECKWITH:  No, Your Honor.

21            THE COURT:  From the defense?

22            MR. PIERCE:  Not in addition to the things already

23    stated on the record.

24            THE COURT:  Do you have a recommended place that

25    you want me to recommend to the Bureau of Prisons for

1    designation?

2    MR. PIERCE:  So South Carolina would be ideal

3    because that's where his sister is who really helped him

4    through the pretrial release process that the magistrate

5    judge supervised.

6    THE COURT:  All right.  So, Mr. Todd, I will make

7    a recommendation to the Bureau of Prisons that you be

8    designated to a Bureau of Prisons' facility in South

9    Carolina near -- unless you have a name.

10    THE DEFENDANT:  I don't have a name.  I know it's

11    an hour and a half from my sister's in South Carolina.

12    THE COURT:  Do you have a name?  Do they know?

13    I am just going to say in South Carolina.  We'll

14    leave it at that.

15    All right.  Is there anything else to address

16    today from the government?

17    MR. BECKWITH:  No, Your Honor.

18    THE COURT:  From the defense?

19    MR. ROOTS:  Mr. Todd would actually like to meet

20    with his family, at least be able to talk to him.  He would

21    like to hug his grandma.  He is in the hole right now for a

22    couple of reasons, little things, in the jail.  He can't get

23    visitors at the jail, so he is hoping he can have visitors.

24    THE COURT:  There is no physical contact.  I am

25    not going to put the deputy marshals at risk in any way,

1    that is all part of their security protocol.  It's totally

2    up to them, I am not going to supersede their requests or

3    their protocols.

4              All right.  If there is nothing further, you are

5    excused.  Yes.

6              MR. ROOTS:  He also needs a notary to sign a

7    little -- execute a power of attorney for some of his

8    personal affairs outside.  I don't know how easy that would

9    be in the courthouse, to get a notary to help him sign this

10   power of attorney thing.

11             THE COURT:  Mr. Roots, you do bring issues to me

12   that you think I can solve.  I am not a notary.  I don't

13   think anybody in the courtroom right now is a notary to be

14   able to help you.

15             If you perhaps brought that to my attention

16   earlier, I might -- certainly would have been willing, I

17   might have been able to help you, but not right now.  Sorry.

18             MR. ROOTS:  Okay.

19             (Whereupon, the proceeding concludes, 1:49 p.m.)

20

21

22

23

24

25

## <u>CERTIFICATE</u>

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

Dated this 22nd day of July, 2024.

<u>/s/ Elizabeth Saint-Loth, RPR, FCRR</u>
Official Court Reporter

# #

**#649** [1] - 2:4

# $

**$10** [1] - 62:15
**$100** [2] - 62:14, 112:1
**$100,000** [1] - 62:11
**$2,000** [7] - 21:25, 23:20, 24:14, 71:1, 90:9, 90:10, 91:12
**$2,514** [1] - 90:13
**$2,923,080.05** [2] - 22:2, 22:16
**$25** [2] - 62:15, 111:23
**$250,000** [1] - 62:6
**$270** [2] - 62:16, 109:9
**$30,000** [2] - 62:6, 62:10

# '

**'we** [1] - 95:21

# /

**/s** [1] - 115:15

# 0

**02903** [1] - 2:5

# 1

**1** [57] - 3:22, 9:19, 9:25, 11:17, 15:12, 16:2, 24:19, 26:20, 27:22, 29:10, 29:12, 36:11, 39:3, 39:9, 39:11, 39:13, 41:14, 42:6, 42:9, 42:10, 42:12, 42:25, 43:1, 43:10, 43:12, 43:19, 44:5, 47:10, 47:12, 48:18, 54:23, 58:16, 58:17, 58:18, 58:20, 58:24, 59:2, 59:3, 60:1, 60:9, 61:17, 61:18, 61:19, 62:2, 62:4, 62:8, 62:10, 62:15, 70:21, 100:20, 109:3, 109:6, 109:7
**10** [5] - 2:4, 13:9, 19:20, 105:12, 108:12
**10-year** [2] - 28:3, 28:8
**100** [1] - 86:2
**10:56** [1] - 1:5

**111** [4] - 18:25, 56:3, 102:10, 106:15
**111(a** [4] - 101:12, 105:23, 106:9, 107:13
**111(a)(b** [6] - 3:25, 60:3, 75:7, 90:25, 101:14, 107:7
**111(a)(1)** [1] - 101:5
**111(b** [7] - 57:2, 60:16, 61:6, 67:8, 105:18, 105:24, 107:8
**111(b)** [1] - 106:2
**12** [4] - 70:21, 108:12, 109:3, 109:6
**120** [2] - 74:19, 102:9
**121** [4] - 61:25, 62:4, 71:18, 100:21
**139** [2] - 19:19, 52:18
**14** [8] - 20:23, 32:24, 59:5, 59:18, 60:12, 61:2, 78:2, 112:6
**148** [1] - 49:11
**15** [4] - 20:23, 61:18, 108:2, 110:5
**151** [3] - 61:25, 62:4, 70:23
**1512** [5] - 101:11, 101:14, 102:11, 107:8, 107:14
**1512(c)(2** [4] - 3:23, 59:3, 59:19, 101:4
**157** [3] - 49:4, 49:11, 49:15
**158** [1] - 49:11
**159** [2] - 49:5, 49:17
**16** [6] - 50:13, 59:7, 59:21, 59:25, 60:2, 61:17
**161** [1] - 49:12
**166** [1] - 19:21
**17** [1] - 77:20
**1752(a)(1** [2] - 4:2, 59:8
**1752(a)(2** [2] - 4:5, 60:22
**18** [13] - 3:23, 3:25, 4:2, 4:4, 7:7, 56:2, 57:2, 88:25, 90:24, 108:24, 109:9, 110:10, 112:4
**182** [1] - 16:3
**188** [1] - 16:3
**19** [1] - 47:16
**196** [1] - 49:12
**197** [1] - 49:12
**1984** [1] - 108:23
**199** [1] - 21:1
**1:49** [1] - 114:19
**1B1** [1] - 36:11

**1B1.1(a)(4** [1] - 59:2

# 2

**2** [70] - 3:24, 9:19, 10:1, 10:2, 10:17, 11:23, 12:11, 20:2, 21:14, 22:11, 22:13, 26:20, 27:11, 29:10, 29:12, 29:20, 29:21, 30:3, 30:21, 39:6, 39:7, 39:12, 39:14, 42:6, 42:7, 42:11, 43:6, 43:7, 43:8, 43:10, 43:12, 43:19, 44:5, 46:13, 47:10, 47:16, 48:19, 48:20, 49:4, 50:6, 52:5, 56:5, 56:8, 57:10, 57:20, 58:2, 58:17, 58:18, 58:20, 58:25, 60:1, 60:3, 60:24, 61:10, 61:15, 61:18, 61:24, 62:2, 62:4, 62:15, 68:18, 70:21, 71:4, 90:25, 100:20, 109:3, 109:6
**2,000-plus** [1] - 71:2
**2-million** [1] - 24:8
**2-year** [1] - 106:3
**20** [8] - 9:25, 10:16, 11:22, 12:6, 13:11, 62:3, 94:4, 103:19
**20-year** [2] - 107:7, 107:8
**200** [3] - 45:23, 45:25, 46:1
**2000** [1] - 24:19
**20001** [1] - 111:10
**2009** [1] - 26:25
**2012** [2] - 27:6, 29:18
**2014** [2] - 27:8, 29:19
**2017** [1] - 105:9
**202** [1] - 1:15
**2020** [3] - 73:22, 100:13, 105:2
**2021** [16] - 12:9, 12:22, 15:11, 25:23, 51:24, 89:12, 91:11, 91:18, 98:22, 99:2, 99:7, 99:19, 100:16, 103:8, 104:3, 107:18
**2022** [1] - 69:2
**2023** [3] - 27:1, 69:5, 102:5
**2024** [18] - 1:4, 3:21, 8:4, 12:18, 13:23, 13:24, 15:13, 16:3, 18:22, 19:20, 20:23, 37:1, 47:2, 47:16,

49:4, 102:4, 105:12, 115:14
**203** [1] - 48:6
**20530** [1] - 1:15
**208** [2] - 13:10, 21:1
**21-CR-119** [1] - 5:3
**213** [1] - 1:21
**214** [1] - 54:8
**21550** [1] - 1:20
**22-166** [3] - 1:3, 3:3, 63:21
**22-a-day** [1] - 80:14
**221** [1] - 4:13
**222** [1] - 4:13
**224** [1] - 4:14
**225** [1] - 4:16
**2255** [1] - 112:10
**226** [2] - 4:16, 4:18
**226-1** [1] - 5:1
**22nd** [1] - 115:14
**23** [5] - 9:25, 10:16, 11:22, 12:6, 13:11
**232** [2] - 5:7, 5:8
**233** [2] - 5:7, 5:9
**24** [11] - 10:1, 10:16, 11:22, 13:13, 13:25, 62:5, 69:5, 106:16, 106:24, 107:3, 108:11
**25** [5] - 10:1, 10:16, 11:22, 12:10, 13:12
**252-6778** [1] - 1:15
**26** [8] - 10:1, 10:17, 11:22, 12:18, 14:1, 14:10, 16:5, 16:9
**269-page** [1] - 4:25
**27** [1] - 3:21
**28** [9] - 10:1, 10:17, 11:22, 16:11, 16:25, 17:16, 18:6, 102:4, 112:10
**29** [1] - 8:4
**2:15** [1] - 93:3
**2:29** [1] - 93:7
**2A2.2** [16] - 30:20, 32:23, 37:12, 53:12, 53:19, 53:23, 53:25, 54:9, 54:24, 56:2, 56:14, 56:18, 57:1, 60:5, 60:11, 61:1
**2A2.2(b)(2)(B** [4] - 30:23, 54:21, 60:13, 61:3
**2A2.2(b)(2)(B)** [1] - 54:13
**2A2.2(b)(3)(A** [3] - 30:3, 30:25, 33:1
**2A2.2(b)(3)(A)** [1] - 60:15
**2A2.2(b)(3)(B** [2] -

33:2, 38:4
**2A2.2(b)(7)** [1] - 60:17
**2A2.4** [7] - 56:2, 56:3, 56:4, 56:6, 56:8, 60:4, 60:23
**2A2.4(b** [1] - 41:21
**2A2.4(c** [3] - 56:17, 60:4, 60:24
**2B2.3(a** [1] - 59:9
**2B2.3(b)(1)(A)(vii)** [1] - 59:12
**2B2.3(c** [2] - 59:13, 59:23
**2J1.2** [1] - 59:4
**2X1.1** [3] - 59:15, 59:17, 59:23

# 3

**3** [24] - 4:1, 13:5, 26:20, 39:3, 39:11, 39:13, 41:14, 42:10, 42:13, 42:25, 47:10, 47:12, 48:18, 58:16, 59:8, 62:7, 62:9, 62:15, 70:21, 70:25, 91:7, 109:3, 109:6, 109:7
**30** [6] - 20:23, 25:11, 25:17, 91:25, 110:12, 111:11
**3013** [1] - 109:10
**31** [13] - 1:4, 10:1, 10:17, 11:22, 18:8, 20:1, 37:1, 60:21, 61:9, 61:11, 61:15, 61:23
**32** [6] - 8:7, 10:1, 10:17, 11:22, 18:11, 20:1
**32(e)(2** [1] - 8:5
**333** [1] - 111:9
**34** [1] - 9:17
**35** [1] - 8:6
**35-day** [1] - 8:9
**3553** [1] - 108:25
**3553(a** [3] - 65:20, 70:9, 88:25
**3553(a)(6** [1] - 104:20
**3553A** [1] - 7:7
**36** [5] - 9:17, 20:2, 62:5, 106:6, 109:5
**3663** [1] - 110:10
**3663(a** [1] - 110:10
**3663(a)(c)(1)(B** [1] - 91:3
**3663A** [1] - 90:24
**37** [7] - 10:1, 10:17, 11:23, 21:15, 21:18, 21:21, 106:18

2

**3742** [1] - 112:4
**39** [3] - 10:3, 21:23, 21:24
**3A1.2** [3] - 56:11, 56:16, 57:4
**3A1.2(a** [1] - 60:19
**3A1.2(b** [2] - 31:1, 56:22
**3C1.1** [16] - 30:17, 43:18, 44:4, 44:15, 46:13, 46:21, 46:23, 47:2, 47:10, 48:17, 48:19, 48:23, 50:5, 59:6, 59:20, 60:20
**3D1.2** [2] - 40:14, 40:17
**3D1.2(b** [3] - 39:5, 41:14, 43:2
**3D1.2(b)** [1] - 40:23
**3D1.2(c** [2] - 42:7, 43:8
**3D1.2(c)** [2] - 41:2, 58:18
**3D1.4** [1] - 61:12
**3D1.4(c** [1] - 61:19
**3E1.1** [3] - 30:19, 52:5, 52:8
**3E1.2** [1] - 55:16

---

**4**

**4** [28] - 4:3, 13:6, 26:20, 30:21, 39:3, 39:12, 41:15, 41:18, 42:2, 42:10, 42:12, 43:6, 43:10, 47:10, 48:19, 50:6, 57:3, 58:17, 59:10, 60:22, 60:23, 61:10, 62:7, 62:9, 62:15, 70:22, 109:3, 109:7
**40** [6] - 4:6, 4:8, 10:3, 21:23, 21:25, 52:18
**400** [1] - 73:8
**400-0725** [1] - 1:21
**41** [1] - 37:1
**42** [1] - 105:21
**44** [1] - 106:18
**46** [1] - 106:9
**4A1.2** [2] - 28:10, 29:6
**4A1.2(c** [2] - 29:10, 29:12
**4C1.1** [4] - 31:4, 57:7, 58:6, 58:8

---

**5**

**5** [14] - 4:5, 18:1, 26:17, 28:9, 29:5, 29:16, 31:8, 32:4,

---

**6**

**6** [37] - 5:8, 12:9, 12:22, 15:11, 18:19, 25:23, 26:17, 40:3, 51:1, 51:24, 55:15, 59:13, 59:24, 62:12, 62:13, 62:16, 70:22, 74:7, 88:4, 89:12, 91:11, 91:18, 98:22, 99:2, 99:7, 99:13, 99:19, 100:16, 103:3, 103:8, 103:25, 104:3, 105:17, 107:17, 109:4
**60** [2] - 37:3, 109:2
**601** [1] - 1:14
**68** [1] - 107:11
**6th** [6] - 72:25, 75:12, 86:18, 86:21, 87:9, 107:19

---

**7**

**7** [4] - 5:6, 18:20, 20:13, 83:12
**700** [1] - 2:4
**72** [1] - 101:10
**764-9347** [1] - 2:5
**775** [1] - 2:5
**78** [3] - 70:20, 106:16, 106:19

---

**8**

**8** [2] - 20:14, 83:12
**85** [1] - 27:3
**86** [3] - 27:6, 27:15, 27:18
**87** [3] - 27:6, 27:15, 27:18
**88** [1] - 27:3
**89** [1] - 47:1

---

**9**

**9** [7] - 9:14, 9:15, 13:9, 13:23, 18:22, 69:2
**90** [4] - 25:10, 25:11, 25:12, 25:17

---

**91** [1] - 27:15
**91367** [1] - 1:21
**943** [1] - 47:1
**954** [1] - 47:2
**96** [1] - 101:13

---

**A**

**a.m** [1] - 1:5
**abide** [1] - 109:20
**ability** [5] - 66:10, 68:12, 111:6, 111:25, 115:7
**able** [13] - 25:6, 25:15, 77:24, 78:9, 78:19, 78:22, 81:4, 81:20, 93:11, 93:15, 113:20, 114:14, 114:17
**abruptly** [1] - 80:5
**absent** [1] - 105:8
**absolute** [1] - 35:22
**absolutely** [2] - 51:25, 96:21
**absurdity** [1] - 96:6
**Abuse** [2] - 98:13, 98:14
**abuse** [9] - 77:17, 80:9, 84:17, 87:21, 97:14, 109:15, 109:16, 110:15, 110:18
**abusive** [2] - 83:23, 85:10
**accept** [1] - 51:18
**acceptance** [9] - 30:19, 50:8, 50:10, 50:13, 75:8, 99:14, 99:20, 100:11, 102:3
**accepted** [5] - 50:22, 50:24, 51:19, 98:20, 106:11
**accepting** [4] - 50:18, 100:14, 101:21, 106:13
**accepts** [1] - 51:10
**access** [1] - 47:6
**accompany** [3] - 11:20, 106:8, 106:13
**accordance** [2] - 109:9, 110:9
**according** [4] - 47:20, 48:25, 92:23, 95:19
**accordingly** [6] - 29:18, 38:2, 43:14, 54:8, 55:14, 57:5
**account** [5] - 56:7, 70:9, 81:10, 100:17, 108:9
**accounting** [1] - 22:13

---

**accuracy** [1] - 22:3
**accurate** [2] - 21:19, 115:4
**accurately** [1] - 21:21
**accused** [1] - 96:4
**acknowledge** [3] - 70:7, 97:18, 98:6
**acknowledged** [2] - 21:2, 41:3
**acknowledging** [1] - 16:14
**Act** [2] - 90:24, 108:23
**Action** [1] - 1:3
**actions** [4] - 46:25, 74:4, 82:1, 86:18
**active** [1] - 102:21
**acts** [4] - 19:15, 40:21, 43:3, 49:25
**actual** [2] - 66:17, 68:20
**add** [9] - 10:20, 16:25, 17:11, 17:15, 27:1, 31:16, 31:25, 54:19, 58:2
**added** [17] - 4:20, 32:20, 37:11, 38:3, 59:5, 59:11, 59:19, 60:12, 60:14, 60:15, 60:17, 60:20, 61:2, 61:4, 61:5, 61:6, 61:8
**adding** [2] - 31:22, 32:25
**addition** [5] - 32:15, 69:25, 89:22, 109:8, 112:22
**additional** [4] - 63:2, 63:4, 100:8, 105:20
**address** [7] - 8:14, 9:9, 9:11, 30:15, 76:4, 111:11, 113:15
**addressed** [2] - 22:8, 72:8
**addressing** [2] - 8:21, 71:23
**adds** [1] - 43:18
**adequately** [1] - 23:22
**adjudged** [1] - 92:3
**adjusted** [2] - 30:12, 61:23
**adjustment** [6] - 30:16, 41:1, 52:9, 56:5, 58:8, 61:12
**administration** [2] - 43:21, 92:20
**administrative** [1] - 97:13
**admit** [2] - 51:16, 78:2
**admits** [1] - 52:12
**admitted** [5] - 20:16,

---

21:12, 40:6, 52:13, 94:12
**admitting** [1] - 48:13
**adopt** [1] - 42:24
**adopted** [1] - 36:6
**adult** [2] - 26:25, 85:11, 97:9
**advisory** [4] - 6:20, 61:25, 62:3, 62:8
**advocate** [1] - 84:25
**affairs** [1] - 114:8
**affirmatively** [1] - 60:9
**affirmed** [1] - 102:11
**affirming** [1] - 47:2
**afford** [1] - 112:7
**aftereffects** [1] - 79:11
**aftermath** [1] - 87:9
**afternoon** [1] - 80:21
**aged** [1] - 86:15
**agencies** [2] - 111:15, 111:18
**agency** [1] - 92:9
**aggravated** [14] - 30:21, 32:24, 41:23, 53:11, 53:19, 53:23, 54:1, 54:9, 56:15, 56:19, 56:20, 60:6, 60:25
**aggravating** [4] - 72:4, 73:19, 74:9, 107:2
**aggressive** [3] - 44:11, 48:21, 53:8
**aggressively** [2] - 18:15, 80:8
**agitated** [1] - 94:12
**agree** [1] - 51:2
**aided** [1] - 2:16
**Aiden** [1] - 81:18
**ain't** [1] - 95:2
**Air** [1] - 77:18
**alarms** [2] - 93:20, 93:23
**alcohol** [1] - 97:13
**alerted** [1] - 17:5
**Alford** [1] - 47:1
**alleged** [1] - 19:14
**allegedly** [1] - 104:6
**ALLISON** [1] - 1:13
**Allison** [1] - 3:9
**allocution** [1] - 71:13
**allow** [1] - 29:12
**allowed** [8] - 44:8, 47:7, 48:11, 48:16, 81:18, 97:24, 98:10, 109:12
**allowing** [1] - 85:12
**allows** [1] - 25:10
**almost** [5] - 15:14, 28:2, 28:5, 28:21,

3

91:7
**alone** [1] - 25:17
**ALSO** [1] - 2:8
**altercation** [2] - 18:11, 49:9
**ambulance** [3] - 35:15, 37:4, 55:7
**amendment** [2] - 31:3, 57:7
**Amendment** [3] - 18:24, 19:16, 99:25
**AMERICA** [1] - 1:3
**America** [2] - 3:3, 63:21
**American** [1] - 73:2
**amidst** [1] - 18:4
**amount** [17] - 23:16, 23:21, 23:24, 24:13, 25:9, 90:6, 90:7, 90:16, 90:19, 90:23, 91:5, 91:23, 91:24, 91:25, 110:12, 111:23, 111:25
**amounted** [1] - 52:17
**amounts** [2] - 74:22, 112:1
**analysis** [1] - 28:20
**answer** [3] - 76:9, 76:15, 87:14
**antagonize** [1] - 96:3
**anxiety** [2] - 80:10, 88:1
**apartment** [1] - 81:12
**appeal** [6] - 112:2, 112:5, 112:6, 112:8, 112:9
**Appeals** [1] - 112:3
**appear** [1] - 76:22
**appearances** [1] - 1:24
**APPEARANCES** [2] - 1:10, 2:1
**appeared** [1] - 16:12
**apple** [1] - 84:10
**applicable** [12] - 41:1, 42:9, 43:10, 58:22, 59:4, 59:19, 61:13, 61:20, 61:22, 66:13, 68:17, 70:6
**application** [17] - 43:17, 47:2, 47:9, 48:17, 48:19, 48:22, 50:5, 53:12, 53:19, 54:12, 55:15, 56:22, 58:5, 60:9, 60:11, 63:14, 68:9
**applied** [7] - 44:5, 44:15, 50:9, 54:22, 56:6, 60:24, 70:6
**applies** [10] - 41:20,

43:20, 44:13, 53:25, 54:9, 56:3, 59:9, 60:23, 70:25
**apply** [18] - 6:20, 26:16, 26:19, 29:11, 29:22, 44:2, 46:21, 46:23, 52:9, 56:2, 56:11, 56:16, 57:4, 58:15, 59:15, 60:5, 67:4, 91:4
**applying** [9] - 30:16, 30:21, 30:23, 31:1, 31:2, 42:3, 46:14, 49:13, 59:22
**appreciate** [1] - 75:14
**appreciates** [1] - 71:16
**appreciating** [1] - 101:22
**approach** [3] - 41:8, 42:19, 42:23
**appropriate** [4] - 7:2, 70:11, 70:16, 111:15
**appropriately** [2] - 70:6, 70:8
**approved** [1] - 111:16
**approximate** [1] - 22:1
**April** [2] - 8:4, 69:5
**Architect** [11] - 22:17, 22:18, 23:2, 24:6, 25:19, 25:20, 26:3, 26:5, 71:1, 91:6, 91:8
**area** [4] - 11:5, 13:3, 92:10, 95:23
**areas** [4] - 14:25, 19:5, 19:6, 96:8
**argue** [1] - 33:22
**argues** [9] - 14:19, 18:13, 18:16, 20:9, 22:3, 27:17, 30:1, 55:10, 104:19
**arguing** [1] - 53:1
**argument** [9] - 13:19, 14:2, 31:23, 33:17, 42:2, 67:12, 88:9, 91:14, 104:15
**arguments** [8] - 13:21, 13:24, 19:17, 19:22, 32:9, 41:10, 65:20, 105:13
**arm** [1] - 69:11
**armed** [1] - 69:4
**armor** [1] - 103:2
**arrest** [1] - 82:9
**arrested** [2] - 104:18, 104:25, 105:2
**arrests** [2] - 21:4, 27:17
**arrived** [1] - 17:22

**aside** [2] - 80:1, 84:16
**aspects** [1] - 100:15
**ass** [2] - 73:7, 94:17
**assault** [27] - 30:21, 32:24, 41:21, 41:23, 43:6, 50:1, 53:11, 53:19, 53:23, 54:1, 54:2, 54:9, 54:23, 54:15, 56:18, 56:19, 60:6, 60:7, 60:25, 72:18, 73:9, 90:25, 101:4, 106:17, 107:1, 107:2
**assaulted** [5] - 18:15, 52:24, 74:16, 83:24, 102:8
**assaulting** [6] - 12:13, 19:8, 19:25, 37:9, 49:24, 54:6
**assaults** [2] - 56:20, 106:21
**assert** [1] - 53:5
**asserting** [1] - 52:18
**assertion** [1] - 11:6
**asserts** [1] - 10:2
**assessed** [2] - 27:20, 29:14
**assessment** [2] - 62:14, 109:9
**assessments** [1] - 111:22
**assist** [1] - 81:17
**assistance** [2] - 82:7, 112:14
**associated** [1] - 6:22
**assumes** [1] - 41:19
**assurance** [1] - 23:19
**attached** [1] - 4:25
**attack** [3] - 12:21, 15:15, 108:18
**attacked** [1] - 15:25
**attacking** [2] - 73:1, 96:14
**attempt** [5] - 46:18, 67:18, 73:19, 73:21, 110:16
**attempted** [2] - 43:21, 95:6
**attempting** [2] - 69:9, 95:23
**attempts** [2] - 64:19, 83:14
**attended** [3] - 86:20, 92:21, 92:24
**attention** [8] - 34:6, 34:10, 34:23, 35:3, 35:6, 36:10, 37:16, 114:15
**attitude** [1] - 99:15
**attorney** [2] - 114:7,

114:10
**Attorney's** [1] - 24:9
**attorneys** [1] - 7:15
**audible** [1] - 36:3
**audience** [1] - 6:9
**aunt** [1] - 80:18
**authorities** [1] - 86:13
**authority** [2] - 14:23, 19:7
**authorization** [1] - 115:10
**authorized** [3] - 13:15, 13:17, 14:6
**authorizes** [1] - 32:25
**authorizing** [1] - 110:11
**automatically** [1] - 52:7
**available** [3] - 90:1, 100:19, 112:13
**Avenue** [1] - 111:10
**avoid** [5] - 29:14, 70:19, 76:5, 90:1, 101:1
**await** [1] - 24:12
**aware** [2] - 64:18, 75:11

## B

**background** [1] - 108:7
**bags** [1] - 47:18
**balance** [1] - 86:16
**barely** [3] - 32:3, 34:25
**barricades** [4] - 12:9, 47:6, 93:3, 93:8
**barriers** [2] - 12:8, 44:7
**bars** [1] - 87:24
**base** [1] - 32:24, 48:4, 56:4, 56:9, 59:4, 59:10, 59:18, 60:11, 61:1
**based** [21] - 6:20, 15:8, 16:23, 18:6, 22:5, 26:8, 29:3, 30:18, 39:3, 44:5, 48:20, 55:11, 57:17, 65:14, 72:2, 91:6, 98:24, 99:2, 100:2, 100:23, 108:21
**bases** [1] - 70:5
**basic** [2] - 86:9, 109:24
**basis** [5] - 12:4, 13:16, 21:16, 78:5, 104:9
**baton** [1] - 94:7
**battering** [2] - 82:5, 93:8

**battle** [1] - 79:9
**bear** [1] - 96:14
**Beckwith** [1] - 3:9
**BECKWITH** [40] - 1:12, 3:8, 5:19, 8:19, 11:14, 17:13, 22:21, 23:1, 23:4, 23:11, 28:24, 30:7, 33:16, 38:11, 38:17, 38:21, 39:9, 39:16, 44:19, 53:20, 54:19, 55:24, 62:20, 62:24, 65:16, 66:2, 66:7, 66:19, 66:22, 67:4, 71:9, 71:12, 71:24, 72:11, 72:16, 75:20, 102:20, 102:22, 112:20, 113:17
**become** [4] - 79:7, 80:14, 80:15, 83:5
**becomes** [1] - 112:13
**becoming** [1] - 96:22
**BEFORE** [1] - 1:8
**beg** [1] - 84:1
**behalf** [4] - 3:13, 4:15, 6:15, 76:23
**behavior** [9] - 66:11, 67:6, 67:7, 68:13, 68:14, 72:21, 73:17, 73:18, 80:9
**behind** [2] - 77:19, 87:24
**belief** [2] - 99:8, 100:12
**believes** [3] - 14:2, 51:5, 51:14
**belittling** [1] - 53:8
**belligerent** [1] - 64:11
**below** [3] - 66:13, 68:17, 115:11
**bench** [2] - 101:12, 101:15
**benefit** [1] - 57:14
**BERYL** [1] - 1:8
**best** [3] - 19:23, 79:15, 115:6
**better** [2] - 65:20, 78:9
**between** [12] - 5:11, 18:11, 36:19, 36:23, 36:25, 39:11, 49:18, 52:22, 83:12, 86:16, 106:16, 106:18
**beyond** [3] - 67:18, 92:10, 98:2
**big** [4] - 24:10, 28:20, 38:25, 44:24
**bills** [1] - 74:24
**Bingert** [3] - 75:4, 101:12, 101:13
**biological** [2] - 82:3,

4

84:4
**biologically** [1] -
81:16
**bit** [5] - 39:25, 51:17,
51:19, 64:11, 76:21
**blades** [2] - 69:8,
69:16
**blame** [1] - 84:12
**blanket** [1] - 50:12
**blaring** [2] - 93:20,
93:23
**bleeding** [1] - 34:22
**blithely** [1] - 15:2
**BLM** [1] - 105:2
**blockaded** [1] - 15:18
**blood** [1] - 36:22
**bloodied** [2] - 15:5,
93:9
**blow** [1] - 85:14
**blown** [4] - 79:10,
79:12, 79:13, 79:15
**blows** [1] - 85:21
**board** [1] - 24:18
**bodily** [31] - 3:24,
19:10, 30:25, 31:9,
31:17, 32:1, 32:16,
33:1, 33:3, 33:4,
33:5, 33:6, 33:7,
33:12, 33:22, 34:3,
35:1, 35:20, 35:24,
36:7, 36:13, 36:15,
37:10, 37:13, 37:19,
41:22, 41:24, 54:3,
55:3, 60:14, 61:4
**body** [6] - 35:4, 35:11,
35:13, 94:15, 95:22,
103:2
**body-cam** [1] - 35:4
**body-worn** [1] - 94:15
**bogus** [1] - 15:1
**boisterous** [1] - 64:10
**bone** [3] - 34:17,
34:22, 36:25
**born** [2] - 83:22, 84:11
**bottom** [2] - 35:22,
71:18
**brainwash** [1] - 84:5
**breach** [1] - 16:1
**breached** [2] - 14:20,
15:17
**breaches** [1] - 14:22
**break** [6] - 18:17,
49:17, 63:18, 74:25,
91:15, 91:16
**breaking** [3] - 12:12,
48:25, 49:14
**breakout** [1] - 23:7
**breaks** [1] - 80:5
**breath** [2] - 31:20,
33:25

**brief** [2] - 71:12, 72:4
**briefly** [2] - 76:4,
80:18
**bring** [4] - 23:6, 25:19,
84:2, 114:11
**broad** [2] - 12:21,
105:6
**broke** [2] - 81:21,
93:10
**broken** [5] - 18:4,
49:15, 49:16, 49:18,
91:9
**brother** [2] - 77:19,
79:14
**brought** [4] - 24:9,
103:11, 103:14,
114:15
**brunt** [1] - 77:17
**brushing** [1] - 83:5
**building** [27] - 4:1,
4:4, 13:4, 13:6, 13:8,
13:15, 14:18, 15:4,
15:7, 15:20, 15:23,
20:6, 20:8, 20:22,
20:25, 21:4, 41:15,
45:11, 45:15, 45:16,
48:12, 59:12, 69:7,
73:11, 93:15, 93:19
**Building** [17] - 4:6,
4:8, 15:22, 19:2,
19:5, 21:13, 24:13,
25:21, 44:9, 45:2,
86:21, 92:25, 94:1,
94:9, 97:2, 104:6,
107:21
**bunch** [1] - 4:20
**burden** [1] - 52:10
**Bureau** [7] - 98:1,
98:11, 109:1,
109:12, 112:25,
113:7, 113:8
**business** [5] - 5:5,
15:22, 15:24, 95:14,
104:12
**buy** [1] - 82:21

## C

**CA** [1] - 1:21
**calculating** [1] - 41:17
**calculations** [2] -
58:24, 58:25
**cam** [3] - 35:4, 35:11,
35:13
**camera** [1] - 94:15
**cancer** [1] - 82:13
**candid** [1] - 46:24
**cannot** [3] - 15:21,
43:11, 86:25
**capacity** [6] - 65:18,

66:9, 68:6, 68:7,
68:11, 69:22
**Capitol** [69] - 4:5, 4:7,
12:7, 12:8, 12:12,
12:22, 13:2, 13:18,
14:16, 14:17, 15:6,
15:15, 15:22, 16:12,
17:2, 17:17, 19:2,
19:5, 20:3, 21:8,
21:13, 22:4, 22:17,
22:19, 23:2, 24:6,
24:13, 24:18, 25:19,
25:20, 25:21, 25:23,
26:3, 44:8, 45:2,
47:6, 47:25, 48:16,
52:16, 52:20, 52:21,
71:2, 72:23, 73:12,
86:21, 91:6, 91:8,
91:10, 91:21, 91:23,
92:6, 92:7, 92:10,
92:17, 92:25, 94:1,
94:8, 95:15, 96:9,
97:2, 103:22, 104:6,
104:8, 104:10,
104:11, 107:21
**Capitol's** [1] - 26:5
**capturing** [1] - 94:15
**car** [1] - 55:1
**care** [3] - 24:10, 65:11,
65:12
**caregiver** [1] - 76:25
**careless** [1] - 27:19
**Carolina** [5] - 65:4,
113:2, 113:9,
113:11, 113:13
**carried** [4] - 16:15,
16:20, 17:2, 55:4
**carries** [1] - 105:23
**carrying** [3] - 15:7,
16:12, 92:25
**case** [48] - 5:3, 6:20,
7:2, 7:16, 7:22,
15:12, 26:16, 32:1,
33:23, 34:7, 38:12,
49:19, 56:17, 60:10,
63:25, 64:18, 64:23,
65:1, 67:8, 67:11,
68:25, 70:17, 72:5,
74:12, 74:13, 74:14,
74:15, 75:6, 75:7,
75:8, 75:12, 89:7,
90:8, 97:16, 98:2,
99:11, 100:9,
100:23, 102:5,
102:13, 102:17,
103:6, 104:24,
105:9, 105:10,
105:15, 108:20
**Case** [2] - 3:3, 63:21
**cases** [9] - 38:22,

38:23, 40:3, 42:16,
72:25, 74:10, 75:3,
103:8, 104:19
**catapult** [1] - 40:5
**categories** [4] - 9:15,
9:16, 9:18, 9:23
**Categories** [1] - 9:19
**categorized** [1] - 9:14
**category** [5] - 27:21,
28:4, 28:6, 29:21,
61:24
**Category** [6] - 9:25,
10:2, 11:17, 27:11,
57:10, 57:20
**caused** [5] - 14:15,
55:6, 95:13, 101:23,
104:6
**causing** [1] - 37:10
**caution** [1] - 90:17
**Center** [1] - 35:16
**center** [1] - 84:12
**certain** [5] - 3:24,
28:4, 37:10, 49:25,
54:6
**certainly** [5] - 14:3,
25:15, 40:9, 42:17,
114:16
**CERTIFICATE** [1] -
115:1
**certificate** [1] - 115:8
**certification** [1] -
73:22
**certify** [2] - 89:14,
115:4
**certifying** [1] - 89:9
**cetera** [3] - 47:19,
110:22, 111:3
**chair** [2] - 15:14, 55:1
**chairs** [1] - 15:19
**challenge** [2] - 55:9,
112:11
**Challenge** [2] - 98:12,
109:15
**challenged** [3] -
73:14, 74:17, 74:18
**challenges** [2] -
82:23, 108:8
**Chamber** [2] - 14:20,
15:18
**chamber** [1] - 96:5
**chambers** [3] - 14:13,
14:21, 15:16
**chance** [1] - 67:23
**change** [4] - 26:4,
98:25, 111:11,
111:12
**changed** [5] - 84:11,
87:24, 88:6, 99:4,
99:16
**chaos** [1] - 95:13

**character** [4] - 75:21,
75:25, 76:8, 76:13
**characteristic** [6] -
30:2, 40:25, 42:8,
42:12, 43:9, 54:12
**characteristics** [5] -
6:22, 41:20, 42:3,
89:25, 97:8
**characterization** [1] -
13:2
**charged** [4] - 51:7,
64:21, 99:10, 104:25
**charges** [4] - 51:11,
92:4, 100:8, 103:13
**check** [3] - 25:13,
25:14, 47:22
**checked** [2] - 47:18,
82:13
**checking** [1] - 17:15
**checkpoints** [1] -
47:18
**child** [2] - 81:15, 81:24
**childcare** [1] - 81:17
**childhood** [3] - 77:15,
77:16, 85:11
**children** [2] - 84:5,
84:16
**chilling** [1] - 92:12
**choice** [4] - 73:11,
73:24, 106:8, 106:13
**choose** [1] - 112:5
**church** [2] - 82:10,
87:10
**Chutkan** [1] - 72:25
**circle** [1] - 100:3
**Circuit** [8] - 46:22,
47:2, 101:18,
101:25, 102:5,
102:11, 105:9, 112:3
**Circuit's** [1] - 102:4
**circulate** [1] - 96:5
**circumstances** [12] -
12:21, 14:15, 44:2,
47:17, 66:15, 68:18,
85:8, 89:24, 92:2,
97:4, 98:16, 108:6
**citation** [1] - 11:24
**citations** [3] - 11:20,
20:15, 21:11
**cite** [2] - 16:17, 47:1
**cites** [2] - 103:7, 104:5
**civil** [4] - 18:13, 18:25,
107:9, 107:14
**claim** [1] - 112:13
**claiming** [1] - 47:6
**claims** [1] - 16:6
**clarification** [1] -
31:10
**Clark** [1] - 3:10
**CLARK** [1] - 2:9

**Class** [4] - 62:2, 62:7, 100:20, 107:10
**classified** [1] - 29:9
**cleaning** [1] - 24:16
**clear** [9] - 14:9, 28:4, 29:4, 56:8, 75:16, 90:22, 95:23, 105:8, 108:10
**clearly** [10] - 14:7, 20:18, 45:14, 49:22, 50:9, 50:13, 50:22, 50:24, 56:1, 71:15
**Clerk** [2] - 111:9, 111:12
**client** [1] - 9:4
**climb** [1] - 93:11
**climbing** [1] - 69:6
**clinic** [1] - 35:9
**close** [1] - 35:23
**closed** [2] - 11:4, 104:9
**closely** [2] - 11:10, 43:25
**closer** [1] - 37:15
**clothing** [1] - 83:21
**coates** [1] - 72:9
**cognizant** [1] - 46:15
**Coletti** [1] - 49:22
**Coley** [2] - 49:21, 73:5
**colleagues** [2] - 20:21, 21:6
**collection** [1] - 110:8
**color** [1] - 87:17
**COLUMBIA** [1] - 1:1
**combat** [4] - 77:25, 79:2, 86:23, 87:5
**combination** [1] - 61:24
**combined** [2] - 61:12, 97:15
**coming** [2] - 25:2, 45:16
**command** [1] - 79:22
**commendable** [2] - 86:18, 97:11
**commentary** [8] - 28:9, 29:5, 29:16, 36:10, 46:13, 54:23, 56:13, 60:9
**Commentary** [4] - 28:15, 52:5, 56:8, 57:3
**commented** [1] - 73:1
**commercially** [4] - 16:15, 16:21, 17:3, 17:7
**commission** [3] - 57:13, 68:8, 69:23
**commit** [6] - 54:4, 54:7, 55:3, 59:15,

60:8, 110:2
**Commitment** [1] - 92:1
**commitment** [1] - 75:15
**committed** [5] - 59:14, 64:20, 68:5, 83:10, 109:1
**common** [4] - 14:25, 40:22, 40:23, 43:4
**communications** [1] - 14:4
**community** [1] - 67:21
**comparable** [3] - 74:10, 103:21, 104:7
**comparative** [1] - 103:4
**comparator** [4] - 102:6, 105:15, 107:12, 108:5
**comparators** [4] - 101:2, 101:7, 101:9, 101:16
**compare** [1] - 104:20
**complete** [1] - 115:6
**completion** [1] - 111:19
**complicated** [3] - 38:6, 38:7, 42:21
**compliments** [1] - 42:22
**comply** [2] - 89:2, 110:14
**comprising** [1] - 68:13
**computer** [1] - 2:16
**computer-aided** [1] - 2:16
**concedes** [1] - 17:21
**conceptualization** [1] - 40:4
**concern** [2] - 99:8, 99:22
**concerned** [1] - 93:5
**concerns** [1] - 70:8
**concludes** [2] - 88:11, 114:19
**conclusion** [2] - 25:7, 105:11
**concurrent** [4] - 70:20, 102:9, 109:2, 109:5
**conditions** [10] - 63:11, 68:2, 68:24, 98:15, 108:16, 109:19, 109:21, 109:22, 110:1, 110:14
**conduct** [68] - 4:3, 4:5, 6:12, 6:23, 9:19, 9:25, 13:1, 13:5,

13:8, 15:9, 18:25, 19:3, 19:15, 26:10, 40:24, 41:16, 41:18, 42:8, 42:11, 43:7, 43:8, 43:24, 43:25, 52:17, 52:19, 55:11, 57:18, 60:5, 60:25, 65:24, 67:6, 67:7, 69:1, 69:16, 69:17, 69:20, 69:21, 70:1, 70:3, 72:18, 75:7, 89:5, 89:6, 89:18, 90:4, 92:5, 92:15, 96:17, 96:22, 97:3, 98:18, 98:21, 99:7, 99:19, 100:15, 101:24, 103:5, 103:9, 103:21, 105:1, 106:14, 106:19, 107:17, 107:19, 108:7, 109:24
**conducting** [1] - 15:24
**conducts** [1] - 51:7
**confer** [3] - 22:22, 22:25, 90:8
**conference** [1] - 12:18
**confinement** [2] - 65:5, 87:22
**confirmed** [1] - 14:18
**conflict** [1] - 96:12
**confronting** [2] - 17:19, 17:25
**confuse** [1] - 32:7
**confusion** [1] - 46:16
**Congress** [21] - 15:2, 15:20, 19:4, 39:5, 39:14, 39:19, 41:17, 42:2, 43:3, 43:12, 47:19, 47:22, 57:13, 58:20, 73:22, 88:25, 89:9, 89:14, 92:11, 92:17, 94:20
**congressional** [1] - 14:16
**connected** [2] - 40:22, 43:4
**connection** [7] - 4:10, 7:23, 58:11, 88:21, 104:18, 105:3, 112:15
**consider** [4] - 74:10, 88:24, 89:17, 89:24
**consideration** [3] - 52:7, 108:21, 108:24
**considered** [7] - 27:18, 28:14, 35:21, 65:20, 89:23, 98:10, 115:8
**considering** [2] - 7:6,

88:20
**consist** [1] - 19:15
**consistency** [1] - 57:17
**consistent** [11] - 38:22, 41:10, 42:16, 44:25, 45:6, 46:10, 55:12, 71:25, 85:13, 85:16, 85:19
**consistently** [1] - 72:17
**constant** [1] - 75:15
**constitute** [2] - 37:18, 56:23
**constituted** [1] - 56:19
**constitutes** [2] - 60:5, 60:25, 115:4
**constituting** [2] - 40:22, 43:4
**Constitution** [2] - 97:6, 111:10
**constitutionally** [1] - 89:13
**construction** [3] - 10:24, 34:12, 81:21
**construed** [2] - 45:5, 94:14
**construing** [1] - 10:25
**consult** [1] - 107:2
**consultation** [1] - 110:25
**contact** [3] - 41:22, 50:1, 113:24
**contacted** [1] - 69:2
**contemplated** [1] - 56:25
**contends** [4] - 11:2, 17:23, 39:2, 44:15
**contest** [1] - 91:11
**context** [5] - 12:22, 12:25, 45:11, 51:2, 51:20
**continue** [3] - 48:16, 72:15, 92:11
**continued** [5] - 15:2, 20:24, 78:23, 96:3, 99:8
**Continued** [2] - 1:24, 2:1
**continues** [1] - 50:2, 53:5
**continuing** [1] - 100:12
**contradicted** [1] - 49:20
**contrary** [4] - 14:8, 100:12, 105:8
**contrast** [1] - 36:13
**contribute** [2] - 27:5, 29:19

**contributed** [3] - 68:7, 69:23, 91:22
**control** [4] - 15:23, 49:1, 83:7, 95:6
**controlled** [3] - 68:14, 110:3, 110:4
**controversy** [1] - 44:21
**conversation** [3] - 45:4, 45:5, 45:20
**conversations** [1] - 78:24
**convicted** [17] - 19:8, 37:8, 51:12, 52:11, 57:2, 60:16, 61:5, 69:17, 70:2, 101:11, 102:11, 105:18, 105:19, 105:23, 105:24, 107:6, 107:9
**convicting** [1] - 52:24
**conviction** [13] - 3:20, 23:21, 27:7, 27:8, 27:9, 43:23, 43:25, 52:6, 90:25, 102:10, 106:2, 112:11, 112:15
**convictions** [17] - 26:17, 26:20, 26:25, 27:4, 27:6, 28:11, 29:6, 29:16, 51:15, 56:2, 57:14, 97:9, 101:3, 101:8, 107:13, 112:2
**cooperate** [1] - 110:8
**cops** [1] - 46:1
**Corps** [2] - 64:6, 77:24
**correct** [9] - 4:19, 8:18, 8:19, 11:9, 12:15, 80:25, 81:1, 81:10, 91:9
**corrected** [2] - 4:18, 4:25
**correctly** [4] - 21:18, 38:9, 56:1, 81:9
**corrosive** [1] - 74:5
**cost** [6] - 83:16, 83:17, 112:7, 112:9
**costs** [1] - 81:17
**counsel** [14] - 3:7, 6:15, 6:25, 7:19, 10:2, 14:2, 15:11, 16:4, 22:25, 23:20, 29:15, 88:17, 98:24, 112:14
**counseling** [6] - 64:4, 65:6, 65:8, 71:5, 85:19, 87:23
**count** [8] - 8:7, 28:5, 29:16, 58:22, 60:3, 61:11, 97:10, 98:3

6

**Count** [31] - 3:22, 3:24, 4:1, 4:3, 4:5, 13:5, 13:6, 30:3, 39:6, 39:7, 39:9, 41:14, 41:18, 42:2, 42:7, 42:11, 42:12, 42:25, 43:6, 43:8, 43:10, 48:20, 56:5, 59:3, 59:8, 60:22, 60:23, 60:24, 90:25
**counted** [2] - 28:13, 29:8
**counting** [2] - 42:10, 56:24
**countries** [1] - 87:12
**country** [10] - 79:19, 83:16, 85:25, 86:3, 86:6, 86:15, 88:3, 98:23, 104:3, 104:4
**country's** [1] - 99:21
**counts** [21] - 3:21, 13:7, 30:4, 40:18, 40:19, 40:20, 40:24, 41:2, 41:4, 41:16, 44:14, 44:16, 51:3, 52:25, 59:1, 60:1, 62:12, 100:24, 101:8, 105:19, 105:20
**Counts** [38] - 26:17, 26:20, 30:21, 39:3, 39:11, 39:12, 39:13, 42:10, 42:12, 43:6, 43:19, 44:5, 47:10, 47:12, 48:18, 48:19, 50:6, 58:16, 58:17, 58:24, 61:10, 62:2, 62:4, 62:7, 62:9, 62:15, 70:21, 70:22, 100:20, 109:3, 109:4, 109:6, 109:7
**couple** [4] - 7:13, 76:2, 105:16, 113:22
**course** [5] - 6:3, 6:10, 7:10, 26:11, 64:5
**Court** [37] - 2:13, 2:13, 11:10, 13:20, 19:19, 23:13, 23:14, 25:6, 25:8, 25:10, 25:16, 46:15, 66:13, 68:17, 71:15, 74:10, 74:12, 74:23, 75:2, 75:3, 75:5, 75:11, 75:17, 103:13, 104:20, 108:25, 109:11, 110:7, 111:6, 111:9, 111:12, 111:17, 112:3, 112:7, 112:8, 115:16
**court** [3] - 84:1,
103:14, 105:3
**COURT** [127] - 1:1, 1:8, 3:11, 3:16, 3:19, 4:22, 4:24, 5:15, 5:20, 5:23, 6:1, 7:12, 7:18, 8:1, 8:12, 8:20, 9:2, 9:7, 10:12, 10:15, 10:20, 11:7, 11:11, 11:15, 17:9, 17:14, 22:15, 22:23, 23:3, 23:9, 23:15, 24:22, 24:24, 25:1, 25:11, 25:13, 25:18, 25:25, 26:6, 27:25, 28:9, 28:22, 29:1, 30:8, 31:19, 32:4, 32:11, 33:18, 33:24, 34:14, 35:5, 35:10, 35:17, 35:25, 36:4, 38:13, 38:19, 39:2, 39:10, 39:21, 40:1, 40:6, 40:11, 44:20, 45:14, 46:1, 46:8, 46:11, 51:1, 51:7, 51:10, 51:23, 52:2, 52:5, 53:18, 53:22, 54:17, 54:20, 55:23, 55:25, 57:15, 58:1, 62:22, 62:25, 63:2, 63:8, 63:17, 63:22, 64:12, 64:24, 65:15, 65:22, 66:4, 66:12, 66:21, 67:1, 67:12, 67:15, 67:25, 71:11, 71:20, 72:7, 72:9, 72:13, 75:19, 75:24, 76:7, 76:11, 77:2, 77:8, 77:11, 77:13, 80:17, 80:24, 81:8, 88:8, 88:13, 88:16, 102:21, 102:23, 112:21, 112:24, 113:6, 113:12, 113:18, 113:24, 114:11
**Court's** [3] - 18:22, 28:19, 57:8
**courthouse** [2] - 73:25, 114:9
**courtroom** [5] - 25:22, 81:4, 87:11, 88:5, 114:13
**COURTROOM** [2] - 3:2, 63:20
**covers** [1] - 56:19
**Craig** [2] - 75:4, 101:12
**create** [1] - 48:2
**created** [2] - 85:9, 85:11

**creating** [1] - 95:15
**credit** [1] - 50:7
**credited** [1] - 49:22
**crime** [1] - 110:2
**crimes** [2] - 28:5, 89:20
**Criminal** [7] - 1:3, 3:3, 8:4, 27:11, 57:9, 57:20, 63:10
**criminal** [32] - 6:21, 26:21, 26:24, 27:1, 27:2, 27:5, 27:10, 27:14, 27:20, 27:21, 29:2, 29:14, 29:19, 29:20, 29:21, 40:22, 43:4, 43:5, 57:8, 57:10, 57:19, 58:3, 61:24, 86:17, 89:18, 90:3, 92:4, 100:15, 101:24, 103:10, 106:14
**critical** [1] - 73:20
**cross** [9] - 20:9, 20:24, 32:18, 41:23, 48:13, 56:18, 59:23, 59:25, 60:24
**cross-examination** [1] - 48:13
**cross-purpose** [1] - 32:18
**cross-reference** [5] - 41:23, 56:18, 59:23, 59:25, 60:24
**crowd** [16] - 12:11, 13:14, 17:22, 18:4, 64:9, 73:7, 83:4, 92:25, 93:10, 93:25, 94:5, 94:17, 94:24, 96:15, 103:4, 108:4
**cry** [1] - 97:4
**Crystal** [1] - 77:8
**CRYSTAL** [1] - 2:8
**culpability** [2] - 47:1, 48:22
**cumulative** [1] - 74:4
**current** [1] - 74:14
**custody** [2] - 65:3, 109:1
**cut** [10] - 18:18, 34:9, 34:15, 34:18, 34:21, 35:6, 36:21, 49:6, 55:6, 55:10
**cuts** [3] - 34:10, 35:8, 69:11

**D**

**D.C** [13] - 1:5, 46:22, 47:2, 47:4, 92:8, 92:22, 101:18,

102:4, 102:5, 102:11, 105:9, 111:10, 112:3
**dad** [4] - 82:3, 82:5, 83:25
**daily** [1] - 78:5
**damage** [7] - 22:4, 24:13, 24:17, 91:14, 91:15, 91:22, 99:21
**damaged** [1] - 91:10
**damages** [3] - 23:5, 23:17, 91:7
**Dan** [1] - 15:10
**danger** [2] - 14:23, 48:2
**dangerous** [16] - 14:14, 30:23, 31:7, 41:24, 47:25, 54:2, 54:11, 54:22, 54:24, 55:5, 58:9, 60:13, 61:3, 92:19, 96:16, 102:16
**date** [1] - 21:1
**Dated** [1] - 115:14
**dates** [1] - 81:16
**David** [1] - 103:19
**David-Pitts** [1] - 103:19
**days** [14] - 8:6, 8:7, 25:10, 25:11, 25:17, 37:7, 37:18, 92:1, 95:11, 110:5, 110:12, 111:11, 112:6
**DC** [1] - 1:15
**deal** [6] - 10:5, 10:6, 32:8, 32:13, 32:22, 42:20
**dealing** [1] - 9:22
**dealt** [1] - 67:23
**death** [1] - 15:19
**decades** [1] - 53:3
**decide** [1] - 26:19
**decided** [1] - 77:21
**decision** [3] - 26:6, 34:24, 102:4
**decisions** [1] - 105:7
**decline** [1] - 79:1
**deduce** [1] - 78:22
**deep** [3] - 34:15, 35:8, 36:21
**defend** [1] - 79:19
**Defendant** [2] - 1:5, 13:17
**defendant** [108] - 3:13, 4:15, 5:12, 5:16, 5:21, 6:6, 8:5, 8:8, 11:19, 12:3, 12:4, 12:14, 12:18, 13:2, 13:7, 13:13, 13:16,

13:19, 14:3, 14:19, 16:11, 16:14, 17:1, 17:2, 17:17, 17:21, 18:3, 18:8, 18:12, 18:13, 19:22, 19:24, 20:6, 20:7, 20:9, 20:12, 20:15, 21:11, 21:12, 21:16, 21:23, 22:2, 22:3, 27:13, 30:11, 31:11, 33:6, 36:20, 37:9, 43:20, 44:14, 46:20, 46:23, 47:3, 47:12, 47:13, 47:24, 48:7, 48:24, 49:1, 49:5, 52:7, 52:9, 52:13, 53:7, 54:5, 55:4, 55:8, 55:19, 56:24, 57:2, 57:3, 57:9, 57:20, 58:15, 60:16, 61:5, 63:9, 65:19, 67:25, 68:5, 68:11, 68:15, 68:22, 69:4, 71:4, 73:6, 73:10, 73:21, 75:1, 75:2, 101:7, 103:7, 103:17, 104:5, 104:9, 104:17, 104:25, 105:16, 105:17, 105:22, 106:1, 106:3, 106:7, 107:6, 108:6
**DEFENDANT** [8] - 1:18, 2:2, 3:18, 7:11, 7:17, 7:25, 88:15, 113:10
**defendant's** [41] - 4:25, 5:13, 10:16, 11:16, 11:24, 12:1, 13:1, 13:11, 13:24, 16:9, 18:13, 18:18, 18:19, 18:25, 19:13, 19:17, 20:13, 21:15, 27:14, 29:2, 29:18, 31:6, 43:16, 43:24, 44:6, 46:11, 47:20, 48:17, 48:20, 49:4, 49:8, 49:20, 49:23, 53:22, 57:5, 57:6, 58:2, 66:15, 68:19, 108:10, 111:19
**defendants** [11] - 5:6, 51:1, 90:2, 98:5, 101:3, 101:19, 103:7, 104:21, 106:4, 106:12, 108:17
**defense** [19] - 5:2, 9:24, 10:2, 13:21, 14:2, 16:4, 23:15, 23:20, 29:15, 32:20,

7

36:5, 64:16, 66:1, 66:5, 90:8, 90:18, 91:13, 112:21, 113:18
**defense's** [1] - 65:20
**defenses** [1] - 18:24
**defer** [2] - 25:8, 25:10
**deficiencies** [2] - 85:14, 85:22
**defined** [6] - 31:17, 36:7, 36:13, 54:1, 60:7, 112:10
**defines** [2] - 54:24, 68:10
**defining** [1] - 65:18
**definition** [4] - 31:17, 34:4, 37:24, 66:25
**definitional** [1] - 36:12
**definitions** [1] - 68:9
**delay** [1] - 73:23
**deliberate** [1] - 97:1
**delineated** [1] - 29:13
**democracy** [4] - 75:13, 88:5, 89:8, 89:15
**democrat** [1] - 92:13
**democratic** [4] - 73:20, 74:6, 99:21, 103:24
**demons** [1] - 80:4
**demonstrate** [1] - 20:19
**demonstrated** [3] - 45:12, 50:13, 99:5
**demonstrates** [1] - 50:10
**demonstrating** [1] - 4:7
**demonstration** [1] - 104:16
**denies** [2] - 49:13, 49:14
**dense** [2] - 17:21, 42:21
**dents** [1] - 24:16
**denying** [2] - 19:21, 52:10
**depart** [2] - 66:13, 68:17
**Department** [2] - 19:11, 71:3
**department** [1] - 69:3
**departure** [8] - 63:10, 63:14, 63:23, 65:14, 65:17, 65:23, 68:1, 68:4
**departures** [1] - 70:13
**deployed** [2] - 79:10, 79:15
**deployment** [2] -

83:15, 108:16
**depressed** [1] - 87:25
**depression** [1] - 80:10
**DEPUTY** [2] - 3:2, 63:20
**deputy** [1] - 113:25
**describe** [1] - 12:21
**described** [5] - 12:5, 12:16, 12:19, 18:11, 21:19
**describes** [1] - 21:15
**describing** [1] - 21:22
**descriptions** [1] - 5:13
**deserves** [1] - 67:23
**designated** [1] - 113:8
**designation** [1] - 113:1
**designed** [2] - 40:4, 104:15
**desk** [1] - 72:10
**Desmond** [1] - 103:19
**despite** [5] - 52:24, 82:20, 82:24, 94:1, 99:5
**detail** [1] - 18:21
**deter** [1] - 89:18
**determination** [7] - 8:14, 29:3, 29:25, 30:12, 62:18, 62:23, 63:5
**determinations** [6] - 9:8, 9:22, 10:7, 10:10, 10:13, 26:23
**determine** [4] - 6:14, 6:19, 26:15, 110:15
**determined** [7] - 27:12, 56:14, 59:17, 61:13, 81:23, 110:7, 110:12
**determining** [1] - 70:10
**deterrence** [6] - 75:12, 98:17, 98:18, 99:9, 100:18
**detrimental** [1] - 82:1
**diagnose** [1] - 86:9
**diagnosed** [3] - 64:6, 64:7, 97:22
**diagnosis** [1] - 68:23
**diet** [1] - 86:10
**difference** [8] - 38:8, 38:16, 38:18, 38:24, 39:11, 39:21, 41:6, 52:22
**different** [13] - 5:3, 5:8, 6:12, 9:15, 24:8, 39:17, 39:18, 45:18, 49:11, 81:2, 85:23, 97:25
**differently** [1] - 39:7

**difficult** [3] - 42:21, 45:20, 103:1
**difficulty** [1] - 72:8
**direct** [2] - 16:24, 20:20
**directed** [1] - 110:8
**direction** [1] - 98:8
**directions** [2] - 91:20, 95:3
**directly** [3] - 7:1, 88:14, 92:5
**directs** [2] - 54:21, 56:17
**disagree** [1] - 21:3
**disagreed** [1] - 13:3
**disagrees** [1] - 30:4
**disassembled** [1] - 115:9
**discharge** [2] - 97:12, 97:13
**discharged** [1] - 108:15
**discounted** [1] - 49:23
**discovery** [1] - 5:2
**discretion** [2] - 28:19, 105:6
**discretionary** [1] - 109:21
**discussed** [4] - 9:4, 47:11, 66:7, 97:21
**discussing** [2] - 20:12, 70:9
**discussion** [1] - 72:4
**disingenuous** [1] - 46:23
**dismiss** [1] - 19:18
**dismissed** [1] - 104:19
**disobedience** [2] - 18:14, 19:1
**disorder** [2] - 107:9, 107:14
**disorderly** [12] - 4:3, 4:5, 13:5, 19:1, 41:16, 41:18, 43:6, 51:19, 51:21, 51:24, 92:15
**disparities** [4] - 70:20, 76:5, 90:2, 101:2
**disparity** [4] - 101:25, 102:1, 102:2
**dispute** [4] - 12:14, 21:17, 22:2, 33:9
**disputes** [2] - 19:22, 19:24
**disputing** [1] - 35:18
**disregarded** [1] - 61:19
**disrespectful** [2] - 53:8, 89:12

**disrupt** [4] - 19:3, 20:11, 47:15, 94:19
**disrupted** [2] - 92:14, 92:20
**disruptive** [5] - 4:3, 13:5, 41:16, 41:18, 43:7
**disruptively** [1] - 19:2
**dissembled** [1] - 107:16
**dissembling** [1] - 44:6
**distinct** [4] - 39:13, 39:19, 43:11, 58:19
**distracting** [1] - 91:19
**District** [1] - 111:9
**DISTRICT** [3] - 1:1, 1:1, 1:8
**district** [1] - 111:16
**districts** [1] - 104:13
**disturb** [2] - 19:3, 47:15
**divergent** [1] - 71:7
**DNA** [1] - 110:8
**docket** [3] - 5:6, 5:8, 103:10
**docketed** [11] - 4:13, 4:14, 4:15, 4:16, 5:1, 5:7, 13:9, 13:22, 19:19, 19:21, 54:8
**document** [3] - 4:16, 4:25, 5:7
**documented** [5] - 64:6, 64:7, 64:14, 67:17, 109:18
**documents** [5] - 5:16, 5:18, 5:21, 5:24, 88:21
**DOJ** [1] - 1:14
**DOJ-USAO** [1] - 1:14
**dollar** [1] - 25:9
**domestic** [2] - 79:20, 84:16
**done** [3] - 50:23, 91:22, 96:24
**door** [6] - 20:4, 45:24, 47:13, 48:1, 84:15, 94:4
**doors** [4] - 91:16, 93:16, 94:2
**doorway** [2] - 46:2, 46:3
**Dorrance** [1] - 2:4
**double** [1] - 56:24
**double-counting** [1] - 56:24
**doubt** [1] - 57:14
**down** [13] - 17:19, 17:24, 23:7, 25:2, 30:9, 78:22, 81:21, 82:21, 84:15, 85:21,

93:8, 104:7, 104:10
**downplay** [1] - 46:25
**downplays** [1] - 48:22
**downward** [11] - 63:10, 63:14, 63:23, 65:14, 65:17, 65:23, 68:1, 68:4, 70:10, 70:19, 108:20
**drag** [1] - 108:4
**drawn** [1] - 15:25
**driven** [1] - 58:22
**driving** [6] - 27:7, 27:19, 28:11, 28:17, 28:18, 29:6
**drop** [2] - 73:15, 95:24
**dropped** [3] - 5:6, 5:7, 5:9
**drug** [5] - 97:13, 109:15, 109:16, 110:5, 110:6
**Drug** [2] - 98:13, 98:14
**due** [8] - 15:14, 37:7, 55:11, 63:10, 68:1, 81:18, 90:14, 97:13
**DUI** [3] - 27:17, 28:7, 29:16
**DUIs** [5] - 28:14, 29:17, 29:19, 57:23, 97:10
**dump** [1] - 103:15
**duration** [2] - 110:22, 111:3
**during** [17] - 6:10, 12:17, 15:12, 16:16, 16:18, 31:16, 68:25, 81:11, 82:8, 82:17, 85:11, 105:1, 105:13, 107:16, 109:11, 110:13, 111:22
**duties** [2] - 19:12, 56:11
**DWI** [1] - 27:8
**DWIs** [1] - 58:2

## E

**E-L-S** [1] - 77:10
**e.g** [1] - 36:8
**easily** [1] - 29:3
**east** [1] - 73:10
**easy** [1] - 114:8
**ECF** [10] - 4:14, 4:16, 5:1, 5:7, 13:10, 18:25, 19:19, 19:21, 54:8
**ECFs** [1] - 4:13
**echo** [1] - 96:5
**edge** [1] - 28:3
**Education** [1] - 98:13

8

**education** [1] - 109:15
**effect** [3] - 40:7, 74:4, 74:5
**egregious** [3] - 52:25, 103:5, 103:21
**either** [4] - 26:8, 42:13, 70:14, 86:21
**elected** [1] - 89:15
**election** [6] - 73:22, 89:14, 92:13, 99:3, 99:6, 100:13
**element** [1] - 13:7
**elements** [1] - 52:11
**eligible** [2] - 58:5, 58:8
**Elizabeth** [2] - 2:13, 115:15
**ELIZABETH** [1] - 115:3
**Email** [4] - 1:16, 1:16, 1:22, 2:6
**embodies** [4] - 40:24, 42:7, 42:11, 43:8
**EMILY** [1] - 2:10
**Emily** [1] - 3:14
**emphasize** [1] - 72:17
**employed** [1] - 81:20
**employees** [3] - 37:10, 49:25, 54:7
**employment** [2] - 81:19, 83:18
**encapsulated** [1] - 33:17
**encompass** [1] - 30:5
**encounter** [1] - 44:7
**encountered** [1] - 65:10
**encouraging** [2] - 97:1, 107:19
**end** [6] - 16:13, 25:16, 35:22, 50:21, 61:21, 96:25
**endeavor** [1] - 41:4
**ended** [1] - 84:8
**endless** [1] - 106:23
**endured** [1] - 79:24
**enforce** [1] - 105:7
**enforcement** [16] - 12:13, 12:23, 13:21, 17:20, 17:25, 44:9, 51:21, 51:23, 53:9, 73:2, 92:6, 95:23, 96:10, 98:23, 106:21, 108:18
**engage** [3] - 68:25, 72:5, 95:25
**engaged** [7] - 13:7, 19:11, 95:19, 96:12, 104:8, 105:1, 107:1
**engaging** [2] - 70:3, 71:12

**enhancement** [6] - 44:13, 47:3, 47:10, 56:12, 56:15, 103:2
**enjoy** [1] - 47:4
**ensure** [2] - 57:16, 89:1
**enter** [4] - 13:15, 13:17, 69:9, 93:15
**entered** [9] - 13:22, 17:17, 20:7, 21:13, 94:1, 94:3, 106:7, 106:12, 112:11
**entering** [9] - 4:1, 13:4, 19:2, 19:6, 20:6, 41:14, 42:25, 90:7, 112:14
**enters** [1] - 112:7
**entire** [2] - 33:16, 80:20
**entirely** [3] - 18:14, 21:19, 46:24
**entitled** [1] - 8:5
**entitlement** [1] - 50:11
**entrance** [2] - 44:23
**entry** [6] - 11:4, 12:11, 14:15, 92:1, 92:15, 97:2
**episode** [2] - 35:12, 92:14
**episodes** [1] - 28:7
**errata** [1] - 4:16
**escalates** [1] - 83:5
**essential** [1] - 52:11
**establish** [3] - 11:1, 24:20, 109:24
**established** [1] - 23:22
**et** [3] - 47:19, 110:22, 111:3
**ETHEN** [1] - 1:13
**Ethen** [1] - 3:9
**evacuate** [2] - 14:13, 15:15
**evacuated** [1] - 14:21
**evaluating** [1] - 13:1
**evaluation** [1] - 69:13
**evening** [1] - 84:14
**event** [1] - 105:6
**events** [1] - 12:19
**evidence** [33] - 11:1, 11:3, 11:21, 14:8, 14:22, 16:7, 16:8, 16:24, 17:23, 18:2, 18:7, 20:5, 20:16, 21:12, 37:8, 44:24, 45:19, 50:15, 51:14, 55:12, 64:10, 65:25, 67:9, 71:14, 90:9, 90:12, 92:23, 99:17, 99:18, 100:7,

100:23, 105:8, 105:9
**evidentiary** [1] - 5:2
**evil** [1] - 80:8
**ex** [4] - 69:2, 69:7, 69:10, 81:7, 81:8
**ex-wife** [4] - 69:2, 69:7, 69:10, 81:7, 81:8
**exact** [1] - 83:9
**exaggerated** [1] - 22:14
**examination** [1] - 48:13
**examined** [1] - 103:12
**example** [8] - 11:3, 11:5, 15:10, 36:8, 55:1, 75:16, 107:4, 107:6
**examples** [1] - 103:11
**except** [1] - 83:18
**excluded** [1] - 29:17
**excludes** [1] - 29:17
**excused** [1] - 114:5
**excuses** [1] - 69:21
**execute** [2] - 111:17, 114:7
**exercise** [1] - 68:14
**exercising** [1] - 99:24
**exhausted** [1] - 94:18
**exhibit** [1] - 24:2
**Exhibit** [2] - 4:24, 73:8
**exhibits** [5] - 6:4, 11:10, 12:25, 18:3, 26:12
**exists** [1] - 35:13
**exited** [1] - 94:2
**expectations** [1] - 109:24
**experience** [3] - 79:14, 85:6
**experienced** [2] - 37:19, 77:25
**explain** [8] - 6:6, 7:5, 16:19, 22:13, 25:20, 38:13, 40:12, 88:18
**explained** [8] - 12:17, 13:23, 18:21, 19:20, 21:5, 46:22, 58:2, 58:12
**explains** [2] - 52:6, 56:1
**explanation** [1] - 50:15
**explicit** [1] - 13:18
**exploit** [1] - 25:25
**explosion** [1] - 82:19
**exposing** [1] - 95:9
**express** [2] - 19:14, 99:14
**expressed** [3] - 52:14,

63:11, 98:21
**expresses** [1] - 52:12
**expressing** [1] - 98:25
**expressly** [2] - 29:17, 57:3
**extent** [1] - 13:1
**extraordinary** [1] - 99:22
**extreme** [2] - 36:14, 37:20
**eye** [1] - 84:10

# F

**F.4th** [1] - 47:1
**face** [3] - 58:5, 94:7, 102:14
**faced** [1] - 79:8
**faces** [1] - 85:1
**facilitate** [1] - 92:5
**facility** [1] - 113:8
**facing** [5] - 53:3, 80:4, 82:20
**fact** [10] - 16:20, 17:6, 19:23, 26:11, 37:22, 48:15, 56:9, 58:10, 99:5, 108:16
**factor** [5] - 65:21, 72:16, 73:19, 74:9
**factors** [6] - 7:6, 70:9, 72:5, 88:25, 100:16, 108:22
**facts** [12] - 10:7, 10:25, 11:1, 22:3, 26:2, 26:9, 66:14, 66:15, 67:9, 68:18, 100:13, 108:6
**factual** [6] - 6:16, 8:17, 9:11, 9:20, 10:10, 11:17, 19:24, 22:7, 26:9, 52:11
**factually** [1] - 12:15
**faculty** [1] - 36:16
**fail** [1] - 87:2
**failed** [1] - 87:19
**failure** [1] - 86:22
**fair** [1] - 91:23
**fairly** [3] - 10:22, 67:17, 106:20
**fairness** [1] - 57:17
**fall** [1] - 28:6
**falling** [1] - 106:18
**false** [2] - 14:19, 46:14
**falsely** [1] - 47:12
**family** [5] - 9:1, 14:7, 81:17, 83:19, 113:20
**fantastic** [1] - 65:4
**far** [4] - 26:8, 66:21, 66:22, 103:25
**farm** [1] - 78:10

**fashioning** [2] - 7:2, 70:16
**faster** [1] - 25:17
**father** [4] - 82:4, 83:23, 84:4, 85:3
**fault** [2] - 48:25, 50:2
**faulty** [1] - 46:17
**favors** [1] - 97:6
**fax** [1] - 24:6
**faxed** [1] - 24:8
**FCRR** [3] - 2:13, 115:3, 115:15
**February** [5] - 3:21, 15:12, 16:2, 47:16, 49:4
**federal** [4] - 31:17, 34:4, 103:23, 110:2
**Federal** [3] - 8:4, 98:11, 109:14
**felonies** [2] - 62:2, 100:20
**felonious** [2] - 54:1, 60:7
**felony** [13] - 23:20, 51:14, 54:4, 54:7, 59:15, 59:16, 60:8, 105:19, 106:15, 107:8, 107:9, 107:13
**felt** [1] - 76:22
**fencing** [2] - 17:19, 17:25
**fend** [1] - 86:14
**few** [2] - 87:7, 101:2
**fiberglass** [5] - 16:16, 16:21, 17:3, 55:4, 93:1
**field** [1] - 34:13
**fight** [6] - 38:25, 74:19, 82:23, 94:14, 96:24, 97:1
**fights** [1] - 73:15
**figure** [2] - 22:14, 24:8
**file** [3] - 81:5, 112:6, 112:9
**filed** [1] - 8:3
**final** [4] - 8:2, 39:22, 41:6, 75:10
**finally** [4] - 48:12, 80:2, 95:12, 96:18
**financial** [2] - 111:8, 111:13
**financially** [1] - 81:15
**findings** [2] - 26:10, 72:2
**fine** [8] - 9:2, 25:1, 57:22, 62:6, 62:11, 71:5, 111:7
**finger** [5] - 32:2, 34:7, 36:22, 49:7, 95:9
**fingers** [1] - 36:24

**finish** [2] - 45:20, 77:23
**fire** [2] - 103:20, 104:1
**firearm** [1] - 54:22
**fired** [1] - 16:1
**First** [2] - 18:24, 19:16
**first** [23] - 3:7, 4:9, 4:15, 6:14, 6:24, 9:4, 30:1, 32:22, 33:10, 33:11, 33:15, 41:13, 42:25, 65:9, 71:20, 72:5, 72:16, 76:9, 77:4, 85:2, 92:12, 92:19, 103:9
**five** [7] - 30:1, 30:23, 33:1, 33:6, 38:3, 41:24, 63:17
**five-level** [2] - 30:1, 38:3
**five-minute** [1] - 63:17
**fix** [1] - 91:9
**fixing** [2] - 24:15, 24:16
**flag** [13] - 16:13, 16:15, 16:19, 16:21, 17:2, 17:3, 49:1, 54:15, 54:16, 74:17, 93:1, 95:4, 95:5
**flagpole** [19] - 16:12, 17:3, 17:8, 18:17, 18:18, 36:21, 44:12, 48:21, 48:25, 49:3, 49:9, 49:13, 49:14, 53:16, 55:4, 55:9, 58:10, 73:2, 90:14
**flea** [1] - 83:4
**flimsy** [1] - 54:16
**Floor** [1] - 1:20
**floor** [1] - 24:16
**Florida** [1] - 83:25
**Floyd** [1] - 104:18
**fluctuated** [1] - 22:24
**focus** [1] - 9:21
**fodder** [1] - 104:14
**follow** [3] - 95:3, 110:19, 110:24
**following** [3] - 91:20, 109:21, 110:14
**food** [1] - 83:20
**footage** [1] - 35:4, 94:15, 95:19
**footnote** [1] - 65:17
**Footnote** [5] - 10:1, 10:17, 11:23, 20:2, 21:14
**FOR** [4] - 1:1, 1:11, 1:18, 2:2
**force** [4] - 21:5, 49:13, 95:25, 96:2
**Force** [1] - 77:18

**forced** [3] - 12:11, 73:23, 95:12
**forcibly** [5] - 19:8, 19:25, 37:9, 49:24, 54:5
**foregoing** [1] - 115:4
**foreign** [2] - 79:19, 87:12
**form** [1] - 54:8
**formalities** [1] - 25:3
**formally** [1] - 5:4
**formed** [1] - 94:21
**former** [5] - 74:16, 92:21, 102:22, 102:23, 102:25
**forth** [1] - 45:4
**fortunate** [1] - 80:14
**fortunately** [1] - 79:13
**forward** [7] - 3:5, 18:15, 24:24, 27:25, 67:15, 88:16, 93:10
**four** [16] - 6:12, 26:19, 26:24, 30:21, 30:22, 31:7, 41:4, 41:23, 44:14, 54:21, 59:1, 60:12, 61:2, 72:4, 97:9, 103:2
**four-level** [3] - 30:22, 31:7, 103:2
**four-offense-level** [1] - 54:21
**fragile** [1] - 99:21
**fragility** [1] - 75:14
**friend** [2] - 82:12, 100:3
**friends** [6] - 5:9, 6:8, 14:5, 79:15, 82:17, 83:10
**frighten** [1] - 54:3
**frightening** [1] - 102:16
**front** [7] - 41:11, 41:12, 74:2, 79:13, 79:16, 84:23, 94:24
**frustrated** [1] - 49:2
**fucking** [4] - 94:16, 94:17, 94:18, 95:2
**full** [3] - 111:13, 112:1, 115:5
**function** [2] - 36:15, 37:20
**funds** [1] - 91:8
**furniture** [1] - 91:9
**future** [2] - 86:8, 89:20

**G**

**garden** [1] - 92:14
**garden-variety** [1] - 92:14

**Garret** [1] - 5:3
**gas** [2] - 93:23, 102:14
**gate** [1] - 48:3
**gathering** [1] - 93:17
**gear** [2] - 93:17, 93:22
**general** [3] - 15:10, 98:17, 100:18
**generally** [5] - 37:24, 89:18, 102:1, 106:4, 106:5
**GEORGE** [1] - 1:5
**George** [2] - 104:18, 108:25
**giant** [1] - 18:4
**Gillespie** [3] - 107:12, 107:21, 108:2
**girlfriend** [1] - 77:21
**given** [9] - 13:6, 50:7, 57:8, 85:16, 97:11, 98:17, 99:7, 106:2, 108:14
**God** [2] - 78:12, 94:16
**Google** [1] - 103:16
**government** [75] - 3:7, 5:17, 6:15, 6:25, 8:13, 8:16, 9:9, 10:11, 10:25, 11:2, 11:13, 17:12, 21:25, 22:13, 22:25, 27:10, 28:23, 29:23, 29:24, 30:1, 30:3, 31:2, 32:19, 33:5, 33:10, 33:15, 36:1, 36:5, 37:22, 38:10, 39:2, 39:4, 40:3, 40:15, 41:13, 41:19, 42:1, 42:14, 44:13, 44:18, 52:10, 53:18, 55:16, 55:18, 55:23, 56:23, 60:18, 61:7, 62:19, 63:11, 64:20, 65:15, 66:18, 70:23, 71:8, 72:17, 75:10, 76:5, 79:22, 86:24, 89:19, 90:8, 90:10, 90:12, 90:17, 91:12, 99:16, 100:5, 101:2, 101:6, 102:7, 103:23, 112:19, 113:16
**government's** [17] - 4:13, 13:20, 18:23, 22:15, 30:5, 32:14, 38:2, 38:5, 40:13, 41:8, 42:10, 43:14, 63:13, 74:20, 101:16, 102:6, 108:12
**Government's** [1] - 73:8
**governmental** [1] -

56:10
**grab** [1] - 41:23
**grabbed** [1] - 49:1
**grace** [1] - 83:18
**grand** [3] - 17:6, 17:9, 74:1
**grandma** [1] - 113:21
**grant** [1] - 108:19
**granted** [1] - 13:20
**granting** [2] - 18:22, 30:18
**grave** [1] - 99:8
**gravity** [1] - 101:22
**great** [3] - 33:19, 65:2, 79:4
**greater** [2] - 59:17, 89:2
**greatest** [1] - 77:15
**Greg** [1] - 106:10
**Gregory** [1] - 105:18
**grew** [1] - 77:14
**ground** [2] - 102:14, 102:15
**grounds** [12] - 4:2, 4:4, 13:5, 13:6, 13:8, 17:17, 19:5, 41:15, 43:1, 44:8, 59:12, 73:12
**Grounds** [1] - 92:25
**Group** [19] - 42:9, 43:1, 43:7, 43:12, 58:17, 58:18, 58:20, 59:2, 60:1, 60:3, 61:10, 61:15, 61:17, 61:18, 61:19
**group** [11] - 6:2, 20:12, 38:23, 39:6, 39:12, 42:15, 45:3, 58:22, 61:14, 93:16
**grouped** [11] - 38:9, 39:3, 39:18, 40:19, 41:4, 43:1, 43:7, 43:11, 58:17, 58:19
**grouping** [10] - 30:4, 38:6, 38:10, 38:14, 39:11, 41:3, 42:20, 43:15, 58:16
**Groups** [3] - 42:6, 43:10, 58:18
**groups** [3] - 17:18, 17:24, 41:13
**grown** [1] - 84:20
**guess** [1] - 65:23
**guidance** [1] - 57:16
**guideline** [57] - 8:14, 9:8, 9:22, 10:7, 10:10, 10:13, 26:23, 28:10, 29:5, 29:25, 30:2, 30:12, 30:20, 30:22, 30:24, 32:23,

40:14, 40:17, 41:1, 42:9, 43:10, 43:19, 44:1, 44:14, 44:15, 53:12, 53:23, 53:25, 54:9, 54:20, 55:16, 58:25, 59:1, 59:4, 59:9, 60:4, 60:17, 60:19, 61:19, 62:9, 62:18, 62:23, 63:5, 66:12, 66:13, 66:14, 68:3, 68:16, 68:18, 70:5, 70:25, 71:19, 71:21, 74:11, 100:21, 106:8, 106:13
**guidelines** [20] - 6:20, 26:15, 26:19, 28:4, 29:4, 29:10, 29:22, 31:4, 36:11, 39:17, 50:8, 56:25, 57:1, 57:16, 58:15, 62:12, 68:10, 72:1, 89:22, 100:21
**Guidelines** [1] - 26:18
**guilt** [5] - 52:11, 52:12, 52:13, 100:24, 112:3
**guilty** [25] - 13:4, 19:1, 19:24, 49:24, 51:2, 51:6, 51:8, 51:11, 54:5, 73:21, 90:3, 92:3, 99:25, 101:18, 101:21, 105:19, 105:20, 106:1, 106:5, 106:7, 106:10, 106:12, 107:4, 112:15
**gun** [2] - 69:4, 69:15
**guns** [1] - 15:25
**guys** [1] - 48:9

**H**

**half** [4] - 78:23, 85:16, 85:19, 113:11
**Hamas** [1] - 52:20
**hand** [10] - 23:8, 36:23, 37:5, 37:20, 49:18, 55:6, 74:24, 84:7, 90:14
**hands** [4] - 48:8, 49:2, 87:6, 94:16
**hanging** [1] - 94:24
**happy** [2] - 25:4, 80:3
**hard** [1] - 84:19
**harm** [10] - 39:14, 40:18, 40:20, 43:12, 43:13, 58:20, 58:21, 65:13, 101:23
**harms** [3] - 39:13,

43:12, 58:19
**hat** [1] - 48:8
**haven** [1] - 84:3
**havoc** [2] - 92:23, 95:15
**heal** [1] - 79:8
**health** [24] - 63:11, 64:1, 65:12, 66:7, 67:16, 68:2, 68:11, 68:22, 68:24, 69:13, 70:8, 79:1, 97:19, 97:23, 97:25, 98:6, 98:7, 98:15, 108:8, 108:16, 109:17, 109:18, 110:23, 111:4
**hear** [12] - 6:24, 6:25, 7:1, 20:21, 33:10, 33:11, 33:15, 44:16, 50:17, 70:15, 77:8, 81:9
**heard** [12] - 27:23, 36:3, 39:23, 44:17, 44:18, 45:6, 53:13, 54:14, 55:19, 55:23, 63:23, 65:15
**hearing** [14] - 4:11, 5:2, 6:7, 7:10, 8:7, 8:15, 9:10, 25:7, 25:17, 26:7, 26:15, 45:4, 70:15, 90:20
**hearings** [1] - 6:12
**heart** [6] - 72:3, 80:5, 82:16, 83:1, 84:21, 88:6
**held** [1] - 104:10
**help** [9] - 65:13, 79:6, 79:23, 80:13, 82:9, 92:10, 114:9, 114:14, 114:17
**helped** [3] - 67:24, 92:5, 113:3
**helpful** [1] - 11:25
**helping** [2] - 78:11, 80:1
**hereby** [2] - 109:1, 115:3
**herself** [1] - 77:5
**Hi** [1] - 77:6
**hiding** [1] - 15:19
**high** [2] - 77:23, 108:13
**higher** [3] - 40:5, 59:24, 61:21
**highest** [2] - 58:23, 61:14
**highly** [1] - 96:15
**Hills** [1] - 1:21
**himself** [11] - 46:20, 47:4, 55:11, 65:10,

69:12, 78:9, 78:10, 82:11, 83:8, 83:15, 86:14
**hip** [2] - 73:7, 94:17
**History** [3] - 27:11, 57:9, 57:20
**history** [26] - 6:21, 26:21, 26:24, 27:1, 27:2, 27:5, 27:11, 27:14, 27:20, 27:21, 29:3, 29:14, 29:20, 29:21, 57:9, 57:10, 57:19, 58:3, 61:24, 67:5, 89:25, 90:3, 92:12, 97:8
**hit** [3] - 94:6, 106:25, 108:3
**hold** [3] - 18:16, 65:1, 72:7
**holding** [2] - 44:12, 48:21
**hole** [1] - 113:21
**home** [8] - 65:5, 69:9, 77:18, 77:20, 83:11, 84:2, 104:12, 104:13
**Honor** [39] - 3:2, 3:8, 3:12, 5:19, 7:11, 7:17, 7:25, 8:19, 11:14, 17:13, 22:10, 22:21, 23:1, 24:21, 25:4, 25:24, 28:24, 30:7, 33:16, 38:12, 38:22, 44:19, 53:21, 54:19, 55:24, 62:20, 62:24, 63:16, 65:16, 66:19, 67:4, 71:9, 77:6, 85:14, 88:7, 88:15, 102:20, 112:20, 113:17
**Honor's** [1] - 72:2
**honorable** [1] - 97:12
**HONORABLE** [1] - 1:8
**honorably** [1] - 108:15
**hopes** [2] - 86:5, 86:7
**hoping** [2] - 76:19, 113:23
**horrible** [1] - 96:17
**hospital** [5] - 34:18, 37:5, 37:23, 37:25, 55:7
**hospitalization** [2] - 36:17, 37:24
**hot** [1] - 8:22
**hour** [4] - 6:11, 35:12, 95:17, 113:11
**hours** [5] - 5:5, 15:14, 35:14, 73:24, 96:12
**hours-long** [1] - 96:12
**House** [8] - 14:11, 14:20, 14:21, 15:13,

15:17, 15:18, 15:21, 16:1
**house** [3] - 82:9, 82:19, 84:14
**household** [1] - 83:23
**housing** [2] - 83:20, 86:9
**Howard** [2] - 35:16, 37:4
**HOWELL** [1] - 1:8
**hug** [1] - 113:21
**huge** [1] - 87:14
**hurt** [3] - 58:10, 84:22, 86:25
**husband** [5] - 78:8, 78:18, 80:11, 82:19, 84:9

---

**I**

**i.e** [1] - 54:3
**ice** [1] - 55:1
**ideal** [1] - 113:2
**identifiable** [1] - 91:1
**identified** [1] - 69:6
**identify** [3] - 3:6, 5:11, 24:22
**II** [3] - 27:11, 57:10, 57:20
**III** [1] - 1:5
**illegal** [2] - 15:9, 105:1
**illegally** [1] - 17:17
**imagination** [1] - 53:17
**imbalances** [1] - 86:11
**immediate** [1] - 37:2
**immediately** [1] - 111:8
**impacted** [1] - 82:22
**impair** [1] - 66:10
**impaired** [2] - 68:12, 69:19
**impairment** [2] - 36:15, 37:20
**impede** [2] - 19:3, 43:21
**impeded** [1] - 43:20
**impeding** [7] - 3:22, 19:9, 19:25, 37:9, 49:25, 54:6, 56:3
**implicit** [1] - 13:17
**implies** [2] - 37:25, 42:7
**important** [5] - 12:25, 74:12, 75:12, 76:24, 77:1
**impose** [7] - 7:6, 7:7, 88:18, 88:19, 89:1, 91:24, 91:25

**imposed** [6] - 89:4, 91:25, 108:22, 109:24, 112:12, 112:18
**imposition** [1] - 111:7
**imprecise** [1] - 41:9
**imprisonment** [3] - 62:3, 62:8, 62:13
**improper** [2] - 13:21, 18:24
**improve** [1] - 67:20
**improved** [3] - 64:2, 64:4, 65:9
**improvement** [1] - 65:11
**improving** [2] - 65:8, 80:3
**inaccurate** [3] - 46:15, 46:17, 99:23
**inapplicable** [1] - 66:24
**inaugural** [1] - 93:14
**inauguration** [1] - 93:13
**incapacity** [1] - 66:5
**incarcerated** [1] - 97:24
**incarceration** [19] - 62:1, 62:5, 65:12, 70:21, 70:24, 97:7, 98:19, 100:22, 100:25, 101:14, 102:10, 103:20, 105:21, 105:25, 106:25, 107:11, 109:11, 111:22, 111:24
**inches** [1] - 32:2
**incident** [1] - 57:24
**incidents** [3] - 64:15, 69:14, 97:15
**include** [6] - 5:8, 9:23, 40:20, 54:24, 89:3, 110:1
**included** [1] - 101:4
**includes** [2] - 58:24, 111:16
**including** [14] - 12:7, 12:12, 13:16, 14:11, 16:18, 18:2, 41:21, 51:21, 54:22, 94:6, 94:11, 98:11, 101:3, 109:14
**inconsistent** [1] - 41:9
**incorporates** [1] - 56:9
**increase** [14] - 30:1, 30:22, 30:24, 31:1, 31:7, 31:8, 32:16, 32:19, 38:3, 43:17,

44:4, 54:21, 55:17, 61:20
**increased** [2] - 44:2, 111:25
**increasing** [1] - 61:15
**incredibly** [1] - 48:7
**incumbent** [1] - 67:2
**indeed** [3] - 16:4, 55:5, 57:1
**indicate** [3] - 66:16, 68:19, 69:19
**indicated** [2] - 17:1, 22:10
**indicates** [3] - 16:14, 70:4, 97:16
**indication** [1] - 99:4
**indications** [1] - 44:7
**indictment** [1] - 19:19
**indisputably** [1] - 68:22
**individual** [1] - 102:7
**individuals** [6] - 12:11, 14:22, 103:18, 104:5, 104:17, 104:23
**Industries** [2] - 98:12, 109:14
**ineffective** [1] - 112:14
**inflicted** [4] - 18:19, 50:4, 52:16, 53:3
**inflicting** [2] - 3:24, 19:10
**influence** [3] - 27:7, 28:12, 29:7
**influencing** [1] - 3:22
**information** [7] - 24:12, 25:5, 25:15, 76:16, 99:24, 103:13, 112:13
**injure** [1] - 72:22
**injuries** [1] - 35:20
**injury** [44] - 3:24, 19:10, 30:25, 31:9, 31:17, 32:1, 32:16, 33:1, 33:3, 33:4, 33:5, 33:6, 33:7, 33:12, 33:22, 34:3, 34:5, 35:1, 35:24, 36:7, 36:8, 36:13, 36:14, 37:7, 37:10, 37:13, 37:14, 37:16, 37:18, 37:19, 41:22, 41:25, 50:4, 52:16, 53:2, 54:3, 55:3, 60:14, 61:4, 74:24, 90:14, 91:2, 96:9
**inpatient** [1] - 110:18
**input** [1] - 42:14
**insecurities** [1] -

11

85:10
**inside** [8] - 15:5, 37:6, 47:7, 72:23, 81:4, 94:4, 95:20, 107:21
**insisting** [1] - 95:2
**instance** [1] - 107:3
**instances** [1] - 52:1
**instant** [1] - 43:23
**instead** [6] - 73:11, 79:21, 79:23, 80:1, 82:11, 95:1
**instigator** [1] - 103:3
**institution** [1] - 39:19
**institutions** [3] - 73:20, 74:7, 99:22
**instructed** [2] - 14:13, 59:23
**instructions** [2] - 13:9, 29:4
**instructs** [2] - 59:14, 60:5
**instrument** [2] - 54:25, 55:2
**intact** [1] - 93:4
**integrity** [1] - 74:8
**intended** [2] - 52:9, 86:25
**intensely** [2] - 100:6
**intensity** [3] - 106:18, 110:22, 111:3
**intent** [8] - 19:3, 54:2, 54:4, 54:7, 55:2, 57:12, 59:14, 60:8
**interaction** [3] - 73:4, 73:5, 73:6
**interfering** [1] - 19:9
**internal** [1] - 86:10
**interposed** [1] - 9:14
**interpretation** [1] - 10:11
**interpreted** [1] - 45:5
**interrupt** [1] - 44:10
**interruption** [1] - 72:15
**intervention** [2] - 36:17, 69:1
**interview** [1] - 96:20
**intimidating** [1] - 19:9
**intoxicated** [3] - 28:11, 29:6, 69:11
**introduce** [1] - 77:5
**investigation** [8] - 6:17, 7:20, 9:16, 27:3, 27:12, 43:22, 88:22, 111:15
**invitation** [1] - 13:18
**inviting** [2] - 94:14, 95:25
**involve** [6] - 40:19, 40:21, 41:16, 43:2,

43:11, 58:19
**involved** [9] - 36:20, 54:2, 55:2, 60:8, 66:17, 68:20, 69:10, 78:19, 104:5
**involvement** [1] - 39:4
**involving** [4] - 36:14, 40:18, 49:25, 75:6
**irony** [2] - 73:1, 85:8
**irrelevant** [1] - 15:18
**irritated** [1] - 74:11
**Isaiah** [1] - 75:4
**issue** [3] - 38:7, 39:1, 42:21
**issues** [9] - 64:1, 64:2, 64:8, 67:16, 67:22, 97:19, 97:23, 98:18, 114:11
**itemized** [3] - 22:12, 22:17, 23:5
**itself** [2] - 5:11, 28:17

## J

**Jackie** [1] - 80:19
**Jacqueline** [1] - 80:22
**jail** [4] - 64:20, 78:13, 113:22, 113:23
**James** [1] - 75:4
**January** [37] - 12:9, 12:18, 12:22, 13:23, 15:11, 18:22, 19:20, 20:23, 25:23, 37:1, 40:3, 51:1, 51:24, 72:25, 74:7, 75:12, 86:21, 87:9, 88:4, 89:12, 91:11, 91:18, 98:22, 99:2, 99:7, 99:13, 99:19, 100:16, 103:3, 103:8, 103:25, 104:3, 105:12, 105:17, 107:17, 107:19
**Jason** [1] - 106:24
**Jay** [1] - 49:22
**jerking** [1] - 36:20
**Jersey** [2] - 83:3, 84:2
**job** [2] - 65:2, 65:4
**JOHN** [2] - 1:5, 1:19
**John** [29] - 3:3, 3:13, 63:21, 77:7, 77:17, 78:1, 78:6, 81:14, 81:24, 82:2, 82:17, 82:20, 82:24, 83:1, 83:22, 83:24, 84:6, 84:10, 84:11, 84:16, 84:25, 85:3, 85:12, 85:25, 86:2, 86:7, 87:9, 108:25

**John's** [5] - 81:3, 83:9, 84:21, 86:18, 87:9
**join** [2] - 77:18, 77:24
**Joint** [5] - 47:19, 89:8, 89:13, 92:18, 94:19
**journalist** [1] - 96:20
**jovially** [1] - 35:13
**joy** [2] - 87:13, 87:17
**jpierce@ johnpiercelaw.com** [1] - 1:22
**Judge** [1] - 72:25
**judge** [3] - 64:23, 82:14, 113:5
**JUDGE** [1] - 1:8
**judges** [1] - 41:11
**Judgment** [1] - 92:1
**judgment** [2] - 108:25, 112:7
**Julie** [1] - 82:12
**July** [1] - 115:14
**jump** [1] - 47:1
**jury** [21] - 3:21, 11:8, 11:11, 13:3, 13:9, 17:6, 17:10, 19:23, 37:8, 49:22, 51:8, 52:24, 53:6, 54:5, 55:12, 60:9, 74:1, 74:3, 92:3, 100:23, 107:6
**Justice** [1] - 79:6
**justice** [7] - 30:17, 43:22, 46:19, 59:6, 59:20, 60:20, 61:8
**justification** [1] - 50:14
**justify** [1] - 72:21
**justifying** [1] - 48:22

## K

**keep** [6] - 15:3, 25:3, 28:17, 32:7, 48:9, 49:10
**kept** [1] - 37:17
**kicked** [2] - 77:19, 84:15
**kidnapped** [1] - 83:25
**kids** [1] - 84:1
**kill** [1] - 69:12
**kind** [3] - 11:5, 35:6, 105:10
**knives** [2] - 69:8, 69:15
**knocked** [1] - 102:13
**knowingly** [1] - 19:6
**knowledge** [2] - 10:9, 81:13
**known** [4] - 23:6, 28:13, 29:8, 87:21

**knows** [4] - 68:15, 83:13, 87:16
**knuckle** [1] - 37:7
**knuckles** [1] - 36:23
**Kristen** [4] - 77:6, 77:9, 83:22, 84:2
**KRISTEN** [1] - 77:9
**Krol** [1] - 101:17

## L

**lack** [5] - 84:18, 85:12, 87:23, 100:11
**laid** [3] - 10:22, 11:17, 23:11
**LAMBERT** [1] - 2:10
**Lambert** [1] - 3:14
**Langese** [1] - 5:10
**laptop** [1] - 72:12
**large** [3] - 17:18, 17:24, 93:16
**last** [8] - 7:5, 57:6, 85:16, 85:19, 100:2, 102:6, 107:4, 107:6
**late** [2] - 5:5, 14:5
**law** [22] - 12:13, 12:22, 13:21, 17:19, 17:25, 31:17, 34:4, 35:1, 44:9, 51:21, 51:23, 53:9, 73:2, 89:11, 92:6, 95:22, 96:10, 97:6, 98:22, 105:7, 106:21, 108:18
**lawful** [1] - 19:7
**lawfully** [1] - 13:15
**lawyers** [1] - 99:23
**lax** [1] - 25:2
**lay** [1] - 32:23
**leading** [1] - 81:19
**learned** [1] - 85:6
**least** [11] - 8:6, 72:14, 76:2, 83:18, 90:10, 98:4, 98:5, 110:6, 111:23, 112:1, 113:20
**leave** [4] - 48:12, 48:14, 83:6, 91:20, 94:10, 95:13, 95:16, 113:14
**leaving** [2] - 73:11, 86:10
**lectern** [1] - 3:6
**ledge** [1] - 45:2
**left** [4] - 14:17, 19:23, 77:18, 77:19
**legal** [3] - 73:20, 74:6, 94:18
**legitimate** [1] - 95:14
**lengthy** [2] - 106:20, 107:23

**less** [6] - 61:18, 74:20, 85:2, 105:20, 106:4, 107:20
**lesser** [1] - 105:23
**letter** [13] - 5:9, 5:10, 5:11, 22:18, 24:7, 24:14, 76:1, 76:11, 76:14, 76:17, 77:11, 77:12, 82:18
**letters** [9] - 5:6, 5:8, 14:4, 75:24, 76:3, 76:12, 76:19, 76:20, 100:2
**letting** [1] - 48:3
**level** [57] - 30:1, 30:13, 30:16, 30:19, 30:22, 30:24, 31:1, 31:3, 31:7, 31:8, 32:16, 32:24, 38:3, 38:18, 39:22, 40:8, 41:7, 41:18, 44:2, 44:4, 47:9, 50:9, 50:11, 54:21, 55:17, 56:5, 56:9, 56:14, 58:21, 59:5, 59:7, 59:10, 59:13, 59:16, 59:18, 59:21, 59:24, 59:25, 60:2, 60:11, 60:21, 61:1, 61:9, 61:11, 61:13, 61:14, 61:15, 61:16, 61:17, 61:20, 61:22, 61:23, 103:2, 103:23
**levels** [25] - 32:19, 32:21, 32:25, 33:2, 37:11, 38:16, 43:17, 43:19, 44:3, 52:8, 58:23, 59:5, 59:10, 59:19, 60:12, 60:14, 60:15, 60:17, 60:20, 61:2, 61:3, 61:5, 61:6, 61:7, 61:18
**LGBTQ** [1] - 52:21
**Lieutenant** [6] - 20:3, 20:9, 20:17, 20:20, 21:2, 21:8
**life** [12] - 28:8, 80:3, 81:3, 82:22, 82:24, 83:13, 85:24, 86:2, 86:13, 87:9, 88:4, 103:1
**lifetime** [1] - 64:15
**light** [2] - 14:14, 37:8
**like-minded** [1] - 47:5
**likening** [2] - 48:3, 52:19
**limine** [2] - 13:20, 18:23
**limit** [1] - 28:3
**limited** [1] - 85:1

**limiting** [1] - 31:12
**line** [9] - 18:4, 18:10, 18:15, 78:3, 86:3, 93:11, 94:21, 94:22, 94:25
**lines** [1] - 93:4
**list** [3] - 22:18, 29:13, 31:24
**listed** [1] - 27:17
**live** [1] - 78:7
**living** [2] - 69:3, 69:8
**Lobby** [2] - 16:1, 16:2
**local** [1] - 110:2
**location** [2] - 110:22, 111:2
**lodged** [1] - 13:13
**look** [5] - 9:18, 11:10, 74:12, 78:20, 86:1
**looked** [2] - 4:10, 86:13
**looking** [3] - 28:16, 81:25, 82:14
**looks** [2] - 85:13, 86:15
**losing** [2] - 79:14, 82:24
**loss** [2] - 22:1, 91:2
**lost** [1] - 15:23
**LOTH** [1] - 115:3
**Loth** [2] - 2:13, 115:15
**love** [1] - 82:24
**low** [2] - 78:6, 108:11
**lower** [7] - 35:22, 73:13, 96:7, 96:8, 96:10, 96:13, 107:24
**LUSTIG** [1] - 2:8

**M**

**macabre** [1] - 73:1
**machine** [1] - 2:15
**MAGA** [1] - 48:8
**magistrate** [2] - 64:22, 113:4
**maintain** [3] - 31:11, 31:14, 50:2
**maintaining** [1] - 57:21
**majority** [1] - 74:24
**makeshift** [1] - 16:12
**Mall** [1] - 96:19
**man** [5] - 69:9, 82:14, 86:5, 86:7, 86:15
**manager** [1] - 80:19
**mandated** [1] - 89:13
**mandatory** [4] - 90:15, 91:3, 109:21, 110:1
**Mandatory** [1] - 90:23
**manned** [1] - 12:8
**manner** [1] - 115:10

**manual** [1] - 29:4
**march** [3] - 104:6, 104:9, 104:10
**marijuana** [1] - 27:8
**Marine** [7] - 64:5, 64:6, 77:24, 83:10, 86:20, 87:4, 96:22
**Marines** [5] - 79:10, 79:11, 86:10, 97:11, 108:14
**market** [1] - 83:4
**marriage** [1] - 81:11
**married** [1] - 84:9
**marshals** [1] - 113:25
**mask** [1] - 102:14
**material** [2] - 4:21, 19:23
**materials** [2] - 4:10, 8:6
**matter** [4] - 5:4, 8:4, 80:2, 90:16
**Matthew** [1] - 3:9
**MATTHEW** [1] - 1:12
**matthew.beckwith@ usdoj.gov** [1] - 1:16
**maximize** [1] - 40:4
**maximum** [3] - 62:3, 62:8, 62:13
**McGrew** [3] - 75:4, 75:5, 106:19
**mean** [12] - 22:23, 24:1, 25:18, 35:7, 39:10, 60:7, 66:3, 68:11, 76:7, 87:10, 96:4, 99:1, 103:14
**meaning** [1] - 94:18
**meaningfully** [1] - 55:8
**means** [2] - 57:19, 103:18
**meant** [2] - 45:10, 66:23
**mechanism** [3] - 64:13, 64:14, 64:16
**media** [2] - 17:22, 93:2
**medical** [12] - 34:6, 34:9, 34:23, 35:3, 35:5, 35:15, 36:9, 36:16, 37:16, 74:23, 85:20, 90:13
**Medical** [1] - 35:16
**medically** [1] - 85:13
**medicating** [1] - 97:14
**medication** [2] - 78:21, 85:17
**medications** [3] - 87:23, 87:24, 111:4
**medicine** [1] - 88:1
**medicines** [1] - 87:19
**meet** [1] - 113:19

**meeting** [1] - 65:6
**meets** [1] - 65:19
**member** [4] - 36:15, 67:21, 79:7, 92:17
**members** [8] - 12:13, 14:10, 14:21, 15:2, 15:20, 79:3, 79:12, 80:15
**memo** [8] - 4:14, 4:18, 5:1, 8:16, 23:4, 31:6, 31:13, 53:1
**memoranda** [2] - 4:14, 88:20
**memorandum** [3] - 19:20, 23:12, 105:12
**memory** [1] - 46:17
**men** [1] - 83:12
**mental** [34] - 36:16, 63:10, 64:1, 65:11, 65:18, 66:5, 66:7, 66:9, 67:16, 68:2, 68:6, 68:7, 68:10, 68:22, 68:24, 69:13, 69:22, 70:7, 79:1, 85:13, 97:19, 97:23, 97:25, 98:6, 98:7, 98:15, 108:8, 108:16, 109:17, 109:18, 109:19, 110:23, 111:4
**mentally** [1] - 69:19
**mentioned** [3] - 89:20, 102:8, 107:13
**mentions** [1] - 31:6
**mercy** [2] - 87:4, 88:2
**merely** [7] - 21:18, 39:16, 44:11, 48:21, 54:3, 66:20, 92:15
**message** [1] - 19:14
**messages** [1] - 78:25
**met** [3] - 81:6, 81:14, 82:10
**methods** [1] - 110:17
**Metropolitan** [3] - 19:10, 71:2, 92:9
**MICHAEL** [1] - 1:13
**Michael** [2] - 3:9, 24:23
**michael.romano@ usdoj.gov** [1] - 1:16
**middle** [1] - 86:15
**middle-aged** [1] - 86:15
**might** [5] - 65:13, 95:5, 103:11, 114:16, 114:17
**military** [6] - 48:4, 72:22, 78:1, 79:3, 79:12, 87:2
**Millard** [10] - 20:3,

20:10, 20:17, 20:20, 21:2, 21:8, 45:8, 45:12, 45:22, 46:4
**Miller** [1] - 5:3
**million** [4] - 22:11, 22:13, 24:19, 91:7
**mind** [6] - 28:17, 69:21, 85:14, 85:21, 98:19, 99:4
**minded** [1] - 47:5
**minds** [1] - 26:4
**minimize** [1] - 15:9
**minimum** [2] - 8:9, 83:14
**minor** [2] - 57:14, 57:24
**minute** [4] - 13:22, 18:22, 63:17
**minutes** [2] - 94:4, 108:2
**mischaracterization s** [1] - 53:1
**mischaracterizes** [1] - 46:24
**misdemeanors** [8] - 51:13, 62:7, 64:21, 99:11, 99:17, 100:9, 107:10
**misrepresentations** [2] - 73:25, 74:2
**miss** [1] - 51:4
**missed** [1] - 37:7
**Missouri** [2] - 27:8, 92:22
**mistake** [2] - 46:16, 74:5
**mistakes** [2] - 50:24, 51:17
**mob** [9] - 15:9, 73:23, 91:22, 94:25, 95:14, 95:15, 96:13, 102:16, 107:24
**modality** [2] - 110:22, 111:2
**modification** [1] - 71:22
**moment** [5] - 22:21, 51:20, 63:15, 67:19, 84:10
**moments** [1] - 64:19
**money** [2] - 82:17, 82:20
**month** [1] - 74:20
**months** [21] - 62:5, 62:13, 70:21, 70:22, 71:18, 74:19, 78:24, 100:21, 101:11, 101:17, 106:10, 106:16, 106:18, 106:19, 107:3,

109:2, 109:3, 109:4, 109:5, 109:6
**months'** [12] - 61:25, 62:5, 70:20, 70:23, 101:13, 102:9, 103:20, 105:21, 106:6, 106:24, 107:11, 108:11
**morning** [9] - 3:6, 3:8, 3:12, 3:16, 3:17, 3:18, 3:19, 4:11, 80:21
**most** [9] - 8:24, 74:11, 74:14, 82:1, 84:8, 96:11, 97:12, 104:12, 106:18
**mostly** [1] - 14:22
**mother** [5] - 5:13, 5:14, 14:6, 77:21, 83:3
**motherfucker** [1] - 94:17
**motion** [10] - 5:2, 13:20, 18:23, 18:24, 19:18, 19:21, 63:9, 63:23, 65:25, 67:3
**motivations** [2] - 19:13, 46:25
**mouth** [1] - 85:4
**Move** [1] - 94:23
**move** [5] - 65:14, 77:2, 78:8, 89:15, 94:8
**moved** [8] - 17:21, 64:22, 67:25, 77:21, 77:23, 78:18, 92:24, 96:7
**moving** [2] - 94:22, 95:2
**MPD** [3] - 49:21, 49:22, 73:5
**MR** [113] - 3:8, 3:12, 4:20, 4:23, 5:14, 5:19, 5:22, 5:25, 8:10, 8:19, 8:24, 9:6, 10:9, 10:14, 10:19, 10:22, 11:9, 11:14, 17:5, 17:13, 22:10, 22:21, 23:1, 23:4, 23:11, 24:21, 24:23, 24:25, 25:4, 25:12, 25:14, 25:24, 26:1, 27:24, 28:2, 28:16, 28:24, 30:7, 31:14, 31:25, 32:10, 33:16, 33:21, 34:1, 34:25, 35:7, 35:11, 35:18, 38:11, 38:17, 38:21, 39:9, 39:16, 39:25, 40:2, 40:9, 44:19, 44:21, 45:22, 46:4,

46:9, 50:20, 51:5, 51:9, 51:13, 51:25, 52:4, 53:15, 53:20, 54:15, 54:19, 55:21, 55:24, 57:12, 57:23, 62:20, 62:24, 63:1, 63:7, 63:15, 63:25, 64:13, 64:25, 65:16, 66:2, 66:7, 66:19, 66:22, 67:4, 67:14, 67:16, 71:9, 71:12, 71:24, 72:11, 72:16, 75:20, 75:21, 76:2, 76:10, 76:18, 77:4, 80:18, 88:11, 102:20, 102:22, 112:20, 112:22, 113:2, 113:17, 113:19, 114:6, 114:18

**MS** [7] - 77:6, 77:9, 77:12, 77:14, 80:21, 81:1, 81:10

**multiple** [3] - 41:5, 61:11, 70:5

**multiple-count** [1] - 61:11

**murky** [2] - 41:4, 42:20

**must** [10] - 88:24, 110:1, 110:3, 110:4, 110:7, 110:14, 110:17, 110:23, 111:3, 112:6

**muster** [1] - 46:3

# N

**name** [8] - 28:12, 29:7, 64:25, 77:5, 77:6, 113:9, 113:10, 113:12

**named** [3] - 5:10, 82:18, 103:19

**names** [1] - 91:20

**National** [1] - 96:19

**nature** [7] - 21:20, 89:24, 92:2, 97:4, 98:16, 98:17, 101:23

**near** [5] - 17:22, 20:7, 35:22, 44:23, 113:9

**nearly** [1] - 94:4

**necessarily** [2] - 26:4, 46:18

**necessary** [6] - 24:3, 47:22, 71:13, 89:2, 96:2

**Nedra** [1] - 82:18

**need** [14] - 38:1, 46:20, 66:16, 68:19,

70:4, 76:5, 89:3, 89:17, 90:1, 90:4, 95:20, 95:21, 97:17, 101:1

**needed** [3] - 34:18, 78:17

**needs** [4] - 65:10, 65:11, 85:2, 114:6

**negotiated** [1] - 23:19

**negotiating** [1] - 45:3

**nephew** [2] - 84:11, 84:15

**Nevada** [1] - 27:7

**never** [14] - 14:20, 14:21, 18:14, 35:12, 48:12, 52:13, 79:17, 79:21, 85:3, 85:12, 86:23, 104:7, 104:8, 107:21

**New** [2] - 83:3, 84:2

**new** [7] - 31:3, 71:21, 74:20, 87:23, 92:19, 93:13, 112:12

**news** [1] - 103:10

**next** [9] - 6:10, 8:14, 9:10, 50:7, 53:11, 54:11, 89:10, 89:15, 110:12

**night** [1] - 100:3

**nine** [4] - 32:12, 37:7, 37:17, 95:10

**Nix** [2] - 105:18

**Noah** [2] - 72:19, 74:16

**nobody** [3] - 83:20, 84:23, 85:24

**noise** [1] - 83:4

**non** [1] - 103:8

**non-January** [1] - 103:8

**none** [3] - 63:7, 78:23, 87:5

**nonetheless** [1] - 106:3

**nonexpressive** [1] - 19:15

**nonpunitive** [1] - 97:13

**nonresidential** [1] - 109:16

**Nonresidential** [1] - 98:14

**normal** [1] - 47:17

**normally** [3] - 34:6, 35:2, 35:5

**north** [2] - 94:2, 94:4

**Northwest** [1] - 111:10

**northwest** [1] - 93:12

**notable** [3] - 55:8,

74:14, 102:6

**notably** [2] - 20:15, 21:11

**notary** [4] - 114:6, 114:9, 114:12, 114:13

**Note** [9] - 28:9, 29:5, 36:11, 46:13, 52:5, 54:23, 56:8, 57:3, 60:9

**note** [5] - 56:13, 74:22, 75:5, 91:13, 105:16

**notebook** [1] - 82:21

**noted** [5] - 62:18, 62:23, 63:6, 70:13, 112:19

**notes** [1] - 115:5

**nothing** [12] - 21:7, 25:23, 52:17, 54:19, 66:2, 66:8, 72:21, 75:12, 89:11, 95:14, 99:12, 114:4

**notice** [3] - 47:5, 65:25, 66:4

**notify** [1] - 111:11

**null** [1] - 115:8

**number** [9] - 9:8, 22:23, 28:7, 34:19, 61:16, 83:9, 83:11, 97:22, 103:8

**numbers** [1] - 103:10

**NW** [1] - 1:14

# O

**object** [2] - 22:11, 91:5

**objecting** [1] - 10:3

**Objection** [2] - 31:8, 32:17

**objection** [59] - 13:14, 13:25, 16:5, 16:9, 16:25, 17:12, 18:1, 18:6, 20:17, 21:14, 21:17, 21:21, 21:22, 22:5, 23:15, 27:23, 29:2, 29:18, 31:19, 31:22, 31:25, 32:4, 32:5, 32:9, 32:15, 32:22, 37:11, 38:2, 38:5, 38:10, 38:19, 40:10, 40:13, 40:16, 42:15, 43:14, 43:16, 46:11, 48:17, 50:5, 53:10, 53:11, 53:22, 54:10, 54:11, 54:15, 55:14, 55:15, 55:20, 55:25, 57:5, 57:6, 57:11, 57:21, 58:4,

58:12, 62:17, 90:18

**objections** [57] - 6:16, 6:17, 6:18, 8:13, 8:17, 9:8, 9:11, 9:14, 9:15, 9:18, 9:21, 9:24, 10:2, 10:5, 10:16, 10:18, 10:21, 11:16, 11:21, 12:1, 13:11, 15:1, 18:19, 20:1, 20:13, 22:5, 22:7, 26:7, 26:8, 26:22, 27:10, 27:13, 29:24, 30:6, 30:9, 30:11, 30:14, 31:6, 31:12, 31:15, 31:21, 31:23, 32:8, 32:13, 32:18, 36:6, 50:3, 50:12, 56:24, 58:14, 62:22, 63:1, 63:2, 63:5, 70:12, 70:14, 112:18

**objective** [2] - 40:22, 43:4

**objects** [8] - 12:3, 13:2, 13:16, 18:10, 21:16, 21:23, 30:16, 50:7

**obligation** [1] - 111:13

**obligations** [1] - 111:8

**observed** [2] - 17:18, 17:24

**obstruct** [4] - 43:21, 46:18, 73:22, 110:16

**obstructed** [1] - 43:20

**obstructing** [2] - 3:22, 56:3

**obstruction** [12] - 30:17, 41:14, 42:25, 59:6, 59:20, 60:20, 61:8, 101:4, 101:11, 101:14, 106:9, 107:15

**obstructive** [1] - 43:24

**obvious** [5] - 36:9, 45:11, 45:14, 63:25, 64:2

**obviously** [5] - 10:25, 34:8, 72:1, 73:16, 77:14

**occupant** [1] - 14:17

**occupants** [1] - 14:25

**occurred** [6] - 36:20, 59:11, 65:24, 69:14, 71:14, 97:15

**OF** [3] - 1:1, 1:3, 1:7

**offender** [6] - 31:5, 57:7, 57:18, 57:19, 58:4, 58:7

**offense** [118] - 6:21, 6:22, 9:19, 9:25,

13:8, 26:10, 29:9, 30:2, 30:12, 32:24, 32:25, 33:2, 37:11, 38:16, 38:18, 39:22, 40:7, 40:25, 41:6, 41:17, 41:20, 42:3, 42:8, 42:12, 43:9, 43:17, 43:19, 43:23, 43:24, 44:1, 44:2, 47:9, 50:9, 50:10, 51:7, 52:8, 54:12, 54:21, 55:2, 55:17, 56:4, 56:9, 56:14, 57:18, 58:11, 58:21, 58:23, 59:5, 59:7, 59:10, 59:13, 59:14, 59:15, 59:16, 59:18, 59:19, 59:21, 59:22, 59:24, 59:25, 60:2, 60:11, 60:12, 60:13, 60:15, 60:17, 60:19, 60:21, 61:1, 61:2, 61:3, 61:5, 61:6, 61:7, 61:9, 61:11, 61:12, 61:13, 61:14, 61:15, 61:16, 61:17, 61:18, 61:20, 61:22, 61:23, 65:24, 66:15, 66:16, 68:5, 68:8, 68:13, 68:19, 68:20, 69:17, 69:24, 69:25, 70:1, 89:4, 89:6, 89:18, 89:24, 90:5, 91:1, 92:3, 97:4, 97:5, 98:16, 98:17, 99:19, 107:19, 108:7, 112:15

**offenses** [14] - 26:18, 27:18, 28:5, 28:6, 28:12, 28:14, 28:20, 29:7, 29:13, 29:14, 29:17, 38:9, 106:5, 107:10

**offensive** [1] - 102:24

**offer** [1] - 98:1

**offered** [3] - 11:20, 82:7, 101:2

**offers** [4] - 20:15, 21:11, 50:14, 106:1

**Office** [2] - 24:9, 111:16

**office** [11] - 7:21, 7:22, 24:5, 32:20, 70:18, 88:24, 98:9, 109:14, 109:22, 111:14, 111:19

**office's** [2] - 4:12, 29:25

**Officer** [42] - 18:11, 18:17, 19:25, 36:19,

36:21, 36:22, 37:4, 37:12, 37:14, 37:15, 37:23, 38:1, 39:14, 41:19, 42:4, 43:13, 45:8, 45:22, 46:4, 49:1, 49:3, 49:21, 50:3, 52:16, 52:23, 53:2, 55:6, 58:11, 58:21, 72:19, 73:4, 73:5, 73:9, 74:23, 90:13, 94:22, 95:4, 95:7, 102:8, 102:13
**officer** [37] - 19:11, 20:4, 20:7, 21:9, 31:2, 32:2, 34:8, 35:4, 35:15, 42:22, 44:9, 48:8, 49:6, 55:10, 55:16, 55:18, 56:7, 56:10, 56:21, 56:23, 60:18, 61:7, 72:23, 73:2, 74:16, 102:15, 102:18, 102:19, 102:21, 102:22, 102:23, 102:25, 106:25, 108:4, 110:9, 110:20, 110:25
**officer's** [4] - 18:18, 35:11, 42:19, 55:11
**officers** [36] - 3:24, 13:18, 15:3, 15:5, 17:20, 17:25, 20:13, 21:13, 37:10, 44:22, 45:3, 45:23, 47:13, 47:20, 48:13, 49:23, 49:25, 52:15, 53:9, 54:6, 56:4, 69:10, 73:14, 74:18, 93:4, 93:16, 94:10, 94:21, 95:1, 96:3, 96:10, 98:23, 103:1, 106:17, 108:3, 108:18
**officers'** [1] - 18:9
**official** [9] - 3:22, 19:12, 56:10, 56:11, 56:15, 57:4, 89:16, 104:13, 115:16
**Official** [1] - 2:13
**old** [4] - 24:7, 24:14, 77:20, 83:24
**once** [5] - 78:18, 81:18, 84:1, 97:2, 111:24
**One** [1] - 8:2
**one** [42] - 4:15, 11:5, 14:20, 15:6, 22:21, 24:15, 26:25, 27:1, 27:5, 28:7, 29:19, 30:16, 31:23, 39:12,

39:13, 40:20, 40:24, 44:6, 52:23, 63:15, 64:20, 67:17, 68:5, 69:14, 72:7, 74:20, 76:11, 76:24, 77:4, 79:14, 80:14, 82:10, 84:14, 88:17, 101:16, 105:17, 107:1, 107:4, 107:6, 110:1, 110:5
**ones** [3] - 9:20, 32:13, 96:1
**open** [3] - 48:1, 95:9, 95:19
**open-source** [1] - 95:19
**opened** [1] - 47:13
**opening** [1] - 48:3
**opinion** [4] - 11:24, 19:20, 63:12, 105:12
**opportunity** [7] - 7:3, 16:16, 25:18, 25:25, 74:7, 76:23, 82:6
**oppose** [1] - 65:16
**opposed** [1] - 25:2
**opposing** [1] - 19:9
**oppressed** [1] - 84:22
**opted** [1] - 33:4
**Options** [1] - 109:23
**order** [11] - 13:22, 13:24, 16:7, 18:22, 19:21, 25:8, 46:25, 92:1, 105:12, 111:17
**ordered** [1] - 109:8
**orderly** [1] - 19:3
**orders** [1] - 18:9
**ordinarily** [3] - 36:10, 37:17, 54:25
**organ** [1] - 36:15
**organized** [1] - 9:24
**originally** [1] - 99:10
**otherwise** [3] - 22:8, 54:23, 87:2
**Otunyo** [1] - 102:5
**outcome** [1] - 87:8
**outcomes** [1] - 79:4
**outer** [1] - 28:2
**outlined** [1] - 92:4
**outnumbered** [1] - 21:6
**outpatient** [1] - 110:18
**Outreach** [1] - 79:6
**outset** [4] - 11:19, 14:9, 18:21, 41:3
**outside** [5] - 15:5, 28:8, 28:21, 45:1, 114:8
**outweigh** [1] - 98:16
**overnight** [1] - 37:25
**overruled** [26] - 12:2,

13:12, 13:25, 16:10, 18:6, 20:1, 21:14, 21:22, 22:6, 29:18, 36:6, 37:12, 38:4, 40:13, 43:15, 46:12, 48:18, 50:6, 53:10, 53:24, 54:10, 55:14, 55:25, 57:5, 58:4, 58:13
**overrun** [3] - 15:3, 93:5, 96:9
**overrunning** [1] - 45:16
**overseas** [1] - 79:20
**overt** [1] - 19:15
**overwhelmed** [1] - 92:6
**overwhelming** [1] - 83:6
**Owens** [1] - 106:24
**own** [5] - 35:11, 55:11, 69:11, 84:25, 99:12
**Oxnard** [1] - 1:20

## P

**p.m** [2] - 12:11, 114:19
**packed** [1] - 94:5
**page** [10] - 18:1, 37:1, 37:3, 47:16, 48:6, 49:4, 49:5, 49:11, 50:13
**pages** [7] - 9:17, 13:9, 16:3, 18:19, 20:23, 52:18, 104:17
**paid** [2] - 111:13, 112:1
**pain** [3] - 36:14, 37:2, 37:20
**painful** [1] - 36:9
**palm** [1] - 36:23
**papers** [3] - 7:23, 33:19, 36:2
**parading** [1] - 4:7
**paragraph** [21] - 12:10, 13:13, 13:25, 14:1, 14:10, 14:13, 16:5, 16:9, 16:11, 16:25, 17:16, 18:6, 18:8, 18:11, 20:2, 21:15, 21:16, 21:18, 21:21, 21:24, 21:25
**paragraphs** [25] - 9:22, 9:23, 9:25, 10:3, 10:4, 10:6, 10:16, 11:22, 12:2, 12:3, 12:6, 12:14, 12:15, 12:19, 12:20, 13:11, 20:1, 21:23, 22:9, 27:3, 27:6,

27:15, 27:18, 29:10, 29:12
**paralegal** [1] - 3:14
**Paralegal** [2] - 2:9, 2:10
**parenting** [1] - 109:15
**Parenting** [1] - 98:12
**part** [18] - 13:14, 16:22, 24:2, 40:23, 43:5, 65:23, 68:9, 72:23, 73:23, 84:23, 85:25, 86:6, 88:3, 91:21, 93:10, 99:15, 107:23, 114:1
**Part** [1] - 109:22
**participate** [1] - 97:24, 109:13, 110:17, 110:23
**participation** [2] - 110:21, 111:1
**particular** [2] - 32:1, 68:3
**particularly** [5] - 11:25, 12:20, 102:17, 102:24, 107:12
**parties** [5] - 3:5, 44:16, 70:16, 71:6, 88:23
**parts** [2] - 9:11, 10:18
**party** [1] - 115:10
**passive** [1] - 18:14
**past** [1] - 45:13
**patriot** [2] - 86:2, 96:22
**pattern** [3] - 67:6, 67:7, 73:17
**pawn** [1] - 84:6
**pay** [4] - 75:2, 109:8, 111:6, 112:1
**payable** [1] - 111:8
**payment** [1] - 111:21
**payments** [1] - 111:23
**peace** [2] - 86:16, 87:13
**peaceful** [6] - 48:10, 52:17, 53:7, 92:13, 92:19, 103:22
**peacefully** [1] - 53:6
**pecuniary** [1] - 91:2
**pedophiles** [1] - 96:4
**penalized** [1] - 99:24
**penalty** [2] - 103:4, 105:23
**Pence** [1] - 14:12
**pending** [1] - 97:6
**people** [36] - 15:18, 20:12, 24:10, 25:21, 26:2, 34:8, 40:5, 42:20, 45:16, 45:25,

47:5, 47:17, 48:2, 52:19, 57:13, 57:17, 64:15, 64:16, 79:25, 80:13, 82:10, 85:7, 91:17, 93:8, 93:18, 94:7, 94:8, 94:22, 96:5, 96:23, 97:1, 99:1, 100:3, 104:22, 105:2
**people'** [1] - 95:21
**people's** [1] - 48:8
**per** [1] - 111:23
**perceived** [1] - 12:18
**percent** [1] - 86:2
**perfect** [4] - 50:24, 105:15, 107:12, 108:5
**performance** [1] - 19:11
**performing** [1] - 56:10
**perhaps** [4] - 72:9, 97:14, 100:12, 114:15
**period** [12] - 8:9, 37:25, 97:7, 98:19, 100:22, 100:25, 106:20, 107:23, 109:11, 110:13, 111:22, 111:24
**periodic** [1] - 110:6
**perjure** [1] - 46:20
**permanent** [2] - 12:7, 12:9
**permissible** [1] - 102:1
**permission** [1] - 112:8
**persist** [3] - 48:16, 57:11, 57:21
**persisted** [1] - 99:12
**persisting** [2] - 40:16, 42:15
**person** [8] - 5:10, 5:12, 34:5, 69:8, 69:22, 78:10, 99:10, 103:19
**personal** [3] - 55:10, 64:8, 114:8
**personally** [1] - 91:14
**perspective** [1] - 99:1
**persuadable** [1] - 26:2
**petty** [5] - 26:17, 28:5, 28:20, 106:5, 107:10
**phone** [1] - 78:25
**photo** [1] - 18:2
**photocopied** [1] - 115:9
**physical** [13] - 36:14, 36:17, 37:20, 37:21, 41:22, 50:1, 82:23, 86:22, 87:5, 91:2,

94:14, 96:12, 113:24
**physically** [3] - 77:18, 83:23, 107:22
**physician** [1] - 111:5
**pick** [1] - 55:1
**picketing** [1] - 4:7
**picture** [2] - 28:21, 44:24
**pictures** [1] - 47:4
**PIERCE** [4] - 1:19, 3:12, 112:22, 113:2
**pierce** [9] - 4:17, 7:19, 8:22, 8:25, 22:9, 27:16, 50:21, 88:9, 103:16
**Pierce** [1] - 3:13
**Pitts** [1] - 103:19
**place** [12] - 78:13, 84:12, 84:17, 87:13, 92:16, 93:3, 93:18, 93:20, 93:21, 93:25, 95:18, 112:24
**placement** [1] - 110:6
**plainly** [2] - 37:13, 55:5
**Plaintiff** [1] - 1:3
**plan** [2] - 40:23, 43:5
**played** [1] - 35:12
**plaza** [4] - 17:22, 18:3, 93:2, 93:8
**plea** [3] - 23:18, 82:12, 112:15
**plead** [2] - 101:20, 101:21
**pleading** [2] - 99:25, 101:18
**pleadings** [4] - 28:25, 38:11, 53:15, 53:20
**pleas** [2] - 106:7, 106:12
**pled** [7] - 81:17, 105:18, 105:20, 105:25, 106:5, 106:10, 107:4
**plus** [7] - 33:6, 41:22, 41:23, 41:24, 60:13, 61:2
**plus-five** [1] - 33:6
**plywood** [1] - 96:14
**podium** [3] - 24:24, 28:1, 88:17
**point** [24] - 9:10, 16:18, 16:22, 21:5, 27:5, 29:19, 31:5, 49:16, 52:23, 57:6, 57:18, 57:19, 58:4, 58:7, 58:8, 64:22, 69:15, 70:24, 75:3, 75:10, 80:2, 91:7, 108:13

**pointed** [1] - 8:22
**pointing** [2] - 39:16, 103:18
**points** [8] - 27:1, 27:20, 27:21, 29:14, 32:18, 57:19, 58:2, 103:17
**pole** [8] - 16:13, 16:16, 16:21, 95:6, 95:8, 95:9
**police** [45] - 15:3, 15:5, 18:4, 18:10, 18:15, 20:6, 45:17, 47:20, 48:1, 48:8, 69:1, 69:3, 69:12, 72:23, 73:14, 74:16, 91:19, 92:9, 93:3, 93:4, 93:9, 93:11, 93:16, 93:22, 94:8, 94:10, 94:21, 94:25, 95:22, 95:25, 96:12, 96:14, 102:18, 102:19, 102:21, 102:22, 102:23, 102:25, 103:1, 103:20, 104:1, 106:17, 106:25, 108:3
**Police** [9] - 12:8, 13:18, 15:22, 19:10, 20:3, 21:8, 71:2, 92:8, 92:9
**policy** [4] - 63:24, 66:14, 68:3, 89:22
**political** [2] - 19:13, 72:24
**portions** [4] - 6:16, 9:20, 22:8, 26:22
**Portland** [3] - 104:19, 104:22, 105:4
**posed** [1] - 14:23
**position** [3] - 36:6, 50:15, 63:13
**possess** [1] - 110:3
**possessed** [1] - 58:9
**possession** [1] - 27:9
**possibility** [1] - 64:3
**possible** [2] - 25:6, 82:8
**possibly** [1] - 25:22
**postpone** [1] - 90:7
**posts** [1] - 12:8
**potential** [1] - 99:7
**power** [5] - 68:14, 92:13, 103:23, 114:7, 114:10
**practically** [1] - 28:8
**pray** [1] - 82:12
**prayed** [1] - 87:11
**prayer** [1] - 65:7

**prayers** [1] - 82:11
**prays** [1] - 87:15
**precious** [1] - 75:15
**precise** [2] - 42:23, 101:7
**preclude** [3] - 13:21, 18:23, 52:7
**pregnancy** [1] - 81:16
**prepare** [1] - 100:6
**prepared** [6] - 90:19, 90:20, 90:21, 99:16, 100:6
**preposterous** [1] - 33:21
**prescribed** [1] - 111:4
**presence** [1] - 82:2
**present** [3] - 75:9, 76:1, 92:16
**PRESENT** [1] - 2:8
**presentation** [2] - 71:10, 72:3
**presented** [3] - 17:10, 26:12, 66:6
**presentence** [13] - 4:12, 6:16, 7:20, 8:2, 9:5, 9:12, 9:16, 27:2, 27:12, 88:22, 109:23, 111:14, 111:18
**presenting** [3] - 9:1, 26:2, 39:12
**presided** [1] - 6:3
**president** [1] - 14:12
**President** [5] - 14:12, 47:22, 89:10, 92:18, 93:13
**President's** [1] - 92:22
**presidential** [4] - 89:14, 92:20, 99:3, 100:13
**pressing** [1] - 18:10
**presumed** [1] - 105:7
**pretrial** [10] - 12:17, 68:25, 69:5, 70:2, 78:16, 82:17, 97:16, 97:20, 98:2, 113:4
**pretty** [1] - 44:25
**preventing** [1] - 103:22
**previously** [1] - 58:1
**prison** [6] - 53:4, 67:22, 74:19, 79:4, 82:15, 87:22
**Prison's** [1] - 98:11
**prisoner** [2] - 87:21
**Prisons** [7] - 98:1, 98:11, 109:2, 109:12, 109:14, 112:25, 113:7
**Prisons'** [1] - 113:8

**Probation** [2] - 2:8, 111:16
**probation** [25] - 4:11, 7:21, 7:22, 10:11, 29:25, 32:20, 40:9, 42:19, 42:22, 43:18, 70:18, 71:4, 78:16, 88:24, 98:9, 106:6, 108:11, 109:13, 109:22, 110:9, 110:20, 110:25, 111:14, 111:19
**probationary** [1] - 106:3
**probative** [2] - 12:25, 110:16
**problem** [1] - 38:14
**problems** [2] - 79:7, 98:6
**Procedure** [1] - 8:5
**proceed** [4] - 6:8, 8:8, 8:10, 77:13
**proceeding** [4] - 3:23, 73:24, 104:14, 114:19
**Proceedings** [1] - 2:15
**proceedings** [8] - 14:16, 14:24, 20:5, 20:11, 21:10, 44:10, 47:14, 115:6
**process** [4] - 82:8, 89:13, 103:24, 113:4
**produced** [2] - 2:16, 101:6
**produces** [1] - 55:17
**productive** [1] - 79:7
**professionals** [1] - 86:8
**profusely** [1] - 34:22
**program** [9] - 109:15, 109:16, 110:19, 110:20, 110:21, 110:24, 110:25, 111:2
**Program** [10] - 79:6, 98:12, 98:13, 98:14, 109:14, 109:15, 109:17
**programming** [1] - 109:13
**programs** [4] - 79:5, 97:25, 98:10, 109:17
**prolonged** [1] - 67:22
**promote** [3] - 89:11, 89:21, 97:6
**promptly** [1] - 77:3
**proof** [6] - 23:16, 23:24, 52:10, 91:12
**proper** [3] - 64:4,

87:16, 105:7
**properly** [2] - 67:23, 103:12
**property** [2] - 49:10, 55:10
**proposition** [1] - 14:24
**prosecuted** [1] - 105:3
**prosecution** [3] - 43:22, 53:2, 103:11
**prosecutorial** [1] - 105:10
**prosecutors** [1] - 105:6
**protect** [6] - 52:20, 66:16, 68:19, 70:4, 74:8, 89:20
**protected** [1] - 19:16
**protective** [1] - 64:16
**protest** [4] - 52:17, 52:19, 52:20, 104:16
**protesters** [5] - 21:5, 45:12, 45:24, 46:1, 46:5
**protesting** [1] - 53:6
**protests** [3] - 104:18, 105:2, 105:4
**protocol** [1] - 114:1
**protocols** [1] - 114:3
**protracted** [1] - 36:15
**proudly** [2] - 85:25, 86:7
**proven** [1] - 50:19
**provide** [7] - 12:25, 25:15, 61:21, 81:23, 84:17, 89:17, 90:4
**provided** [3] - 23:19, 26:13, 90:12
**Providence** [1] - 2:5
**provider** [3] - 110:21, 111:1, 111:2
**provides** [13] - 32:24, 40:14, 40:17, 44:1, 59:4, 59:10, 59:17, 60:11, 66:12, 68:4, 68:16, 103:13, 104:17
**providing** [4] - 24:7, 57:16, 83:20, 103:10
**provision** [2] - 46:14, 86:16
**provisions** [2] - 86:9, 108:24
**provoked** [1] - 68:24
**PSR** [39] - 8:16, 8:17, 8:25, 9:13, 9:14, 9:17, 9:20, 9:22, 9:23, 10:1, 10:18, 11:17, 11:18, 11:23, 12:2, 12:4, 12:6,

16

12:10, 12:20, 16:6, 16:23, 16:24, 17:15, 17:16, 21:17, 22:8, 26:9, 26:23, 27:5, 29:3, 29:25, 33:4, 38:9, 42:20, 43:18, 56:1, 58:24, 66:8

**PSR's** [6] - 30:4, 30:11, 32:15, 36:6, 39:11, 42:23

**PSR-type** [1] - 8:25

**PTSD** [16] - 64:7, 64:15, 65:22, 66:1, 66:2, 66:4, 68:23, 77:25, 78:3, 79:2, 80:9, 83:2, 84:18, 87:22, 108:16, 109:18

**public** [7] - 25:20, 66:16, 67:10, 68:19, 70:4, 89:20, 107:18

**pull** [4] - 78:9, 91:16, 95:7, 96:15

**pulled** [2] - 49:2, 108:3

**punishing** [1] - 81:25

**punishment** [2] - 89:18, 100:17

**purchased** [1] - 17:6

**purpose** [2] - 32:18, 57:15

**purposes** [3] - 26:11, 89:2, 89:3

**pursuant** [15] - 37:11, 38:3, 39:5, 41:13, 41:21, 42:6, 43:2, 43:7, 58:18, 59:6, 61:12, 63:23, 68:1, 108:23, 112:4

**pursue** [2] - 31:11, 38:10

**push** [1] - 80:1

**pushed** [9] - 18:15, 64:9, 73:10, 79:25, 84:16, 94:5, 95:1, 95:21, 102:14

**pushing** [3] - 17:19, 17:24, 94:5

**put** [9] - 51:9, 65:3, 75:22, 76:7, 76:13, 78:3, 86:2, 87:25, 113:25

**puts** [1] - 52:9

**putting** [1] - 85:2

---

**Q**

**qualifies** [3] - 35:1, 35:24, 55:5

**qualify** [1] - 57:24

---

**quarter** [1] - 111:24

**questioning** [1] - 50:21

**questions** [4] - 7:9, 7:14, 16:5, 75:18

**quickly** [1] - 25:6

**quintessential** [1] - 19:22

**quite** [1] - 38:6

**quote** [16] - 14:14, 16:14, 17:17, 18:8, 36:7, 36:14, 40:18, 40:24, 49:6, 49:10, 50:13, 54:1, 54:22, 54:24, 68:4, 68:17

---

**R**

**raised** [4] - 8:13, 9:7, 9:24, 19:18

**raises** [4] - 16:5, 29:24, 30:11, 90:18

**raising** [2] - 10:17, 38:19

**rally** [2] - 92:22, 92:24

**ram** [1] - 51:17

**rambunctious** [1] - 51:17

**range** [10] - 61:22, 61:25, 62:4, 62:9, 66:14, 68:18, 70:25, 71:19, 71:21, 72:1

**Rathbun** [32] - 18:12, 18:17, 19:25, 36:19, 36:22, 37:4, 37:12, 37:15, 37:23, 38:1, 39:15, 39:20, 41:19, 42:4, 43:13, 49:1, 49:3, 49:21, 52:24, 58:11, 58:21, 72:6, 72:19, 73:4, 73:5, 73:10, 74:16, 94:22, 95:5, 95:7, 102:8, 102:14

**Rathbun's** [8] - 36:22, 37:14, 50:3, 52:16, 53:2, 55:6, 74:23, 90:13

**rather** [4] - 95:13, 95:15, 99:25, 107:14

**rays** [1] - 37:5

**razor** [2] - 69:8, 69:16

**reached** [2] - 93:2, 105:12

**reaction** [1] - 34:16

**read** [7] - 9:4, 9:19, 28:9, 66:21, 66:22, 75:24, 76:11

**reading** [1] - 4:19

**ready** [1] - 57:22

---

**real** [2] - 57:18, 64:3

**reality** [2] - 15:8, 45:18

**really** [16] - 28:6, 33:16, 38:6, 45:19, 57:24, 65:1, 67:20, 76:25, 83:19, 86:22, 98:20, 100:6, 102:25, 108:17, 113:3

**reason** [7] - 61:21, 65:23, 68:14, 72:22, 76:20, 82:23, 106:1

**reasonable** [2] - 100:24, 102:12

**reasoning** [1] - 47:25

**reasons** [6] - 7:5, 13:23, 58:1, 58:12, 103:9, 113:22

**receipt** [1] - 23:5

**receive** [3] - 8:5, 85:15, 109:17

**received** [9] - 37:6, 100:2, 102:9, 103:2, 105:21, 106:19, 106:24, 107:3, 112:14

**recently** [3] - 46:22, 87:18, 102:11

**recess** [2] - 15:13, 63:19

**reckless** [4] - 27:19, 28:17, 28:18, 80:9

**recollection** [1] - 34:15

**recommend** [3] - 97:23, 98:9, 112:25

**recommendation** [10] - 4:12, 7:21, 8:3, 71:22, 74:21, 100:22, 100:25, 108:11, 108:12, 113:7

**recommendations** [2] - 71:7, 88:23

**recommended** [6] - 70:19, 70:23, 71:4, 109:13, 109:22, 112:24

**recommending** [1] - 71:17

**recommends** [2] - 100:22, 109:12

**record** [22] - 3:6, 11:20, 11:24, 12:24, 16:22, 21:7, 22:11, 24:1, 24:22, 26:12, 31:10, 32:8, 45:21, 50:18, 55:13, 62:18, 62:23, 63:6, 70:13, 108:19, 112:19,

---

112:23

**records** [2] - 6:3, 90:2

**redeemable** [2] - 87:8

**reduced** [7] - 65:18, 66:9, 68:6, 68:7, 68:10, 69:22, 85:20

**reduction** [6] - 30:19, 31:3, 50:9, 50:11, 52:8, 57:7

**reductions** [2] - 106:8, 106:13

**reference** [5] - 41:23, 56:18, 59:23, 59:25, 60:24

**referring** [2] - 21:3, 45:15

**reflect** [2] - 46:18, 89:4

**reflected** [1] - 42:19

**reflects** [1] - 97:5

**Reform** [1] - 110:4

**refrain** [1] - 110:4

**refused** [3] - 48:14, 94:25, 95:7

**refusing** [2] - 18:9, 49:9

**refuted** [1] - 16:6

**regard** [1] - 29:8

**regarding** [8] - 78:15, 79:2, 92:2, 97:8, 100:19, 100:1, 110:21, 111:2

**regardless** [2] - 19:13, 56:20

**regimen** [1] - 78:21

**regular** [1] - 78:4

**regulations** [2] - 110:19, 110:24

**rehabilitation** [3] - 36:18, 37:21, 89:21

**reinforced** [1] - 101:19

**reinforcements** [3] - 21:7, 92:7, 92:8

**reinverse** [1] - 85:10

**rejected** [1] - 13:19

**related** [7] - 5:4, 31:23, 41:20, 43:24, 43:25, 56:5, 74:23

**relationship** [3] - 5:11, 77:22, 78:11

**relationships** [1] - 85:9

**relatives** [1] - 6:8

**release** [15] - 62:6, 62:10, 64:22, 68:25, 69:6, 70:3, 71:1, 84:1, 84:12, 97:16, 97:20, 98:2, 109:5, 111:14, 113:4

**released** [1] - 86:14

---

**relevant** [4] - 12:20, 13:14, 43:25, 88:24

**relied** [1] - 29:15

**religious** [1] - 65:7

**relitigate** [1] - 11:8

**rely** [2] - 37:22, 66:19

**relying** [1] - 66:18

**remain** [1] - 13:15

**remained** [1] - 94:4

**remaining** [6] - 4:1, 13:4, 19:6, 19:17, 41:15, 43:1

**remains** [1] - 86:20

**remember** [7] - 37:2, 42:9, 48:9, 64:25, 83:9, 83:11, 88:2

**remind** [1] - 102:18

**remorse** [9] - 52:12, 52:14, 96:20, 96:21, 98:21, 99:14, 99:20, 100:11, 107:17

**remorseful** [1] - 107:5

**repeat** [1] - 62:21

**repeated** [1] - 106:21

**repeatedly** [4] - 20:20, 47:12, 48:24, 52:15

**repeats** [1] - 52:25

**repercussions** [1] - 104:2

**reply** [1] - 67:13

**report** [13] - 4:12, 6:17, 7:20, 8:3, 9:5, 9:12, 9:17, 27:3, 27:12, 88:23, 109:23, 111:15, 111:18

**reported** [2] - 2:15, 103:9

**Reporter** [3] - 2:13, 2:13, 115:16

**reports** [1] - 103:9

**Representatives** [1] - 14:11

**representatives** [1] - 104:12

**representing** [4] - 39:13, 39:14, 58:20, 58:21

**represents** [2] - 43:12, 43:13

**request** [2] - 23:20, 112:8

**requests** [1] - 114:2

**require** [1] - 98:19

**required** [10] - 30:15, 39:18, 59:1, 67:9, 69:1, 74:25, 91:4, 91:8, 99:14, 100:17

**requires** [2] - 75:15, 104:20

17

**requiring** [3] - 36:16, 95:10, 99:9
**rescue** [3] - 84:22, 84:24, 85:5
**residence** [1] - 111:17
**resist** [1] - 96:2
**resistance** [1] - 18:14
**resisted** [1] - 18:9
**resisting** [5] - 19:9, 19:25, 37:9, 49:24, 54:6
**resolve** [1] - 6:18
**Resolve** [2] - 98:14, 109:16
**resolved** [5] - 19:23, 29:3, 58:14, 86:11, 100:9
**resources** [3] - 85:1, 86:6, 86:8
**Respect** [1] - 45:15
**respect** [14] - 19:17, 21:3, 21:24, 43:22, 45:9, 45:10, 46:5, 46:6, 46:14, 59:15, 70:18, 89:11, 97:6, 111:21
**respecting** [1] - 45:11
**respective** [1] - 15:16
**respects** [2] - 41:9, 103:5
**respond** [1] - 36:1
**response** [4] - 12:23, 16:25, 28:22, 36:3
**responses** [1] - 80:12
**responsibility** [21] - 30:20, 50:8, 50:10, 50:14, 50:19, 50:22, 50:25, 51:11, 51:18, 51:19, 75:8, 86:17, 98:21, 99:15, 99:20, 100:12, 100:14, 101:22, 102:3, 106:11, 106:14
**responsible** [2] - 33:7, 75:2
**rest** [5] - 28:25, 33:18, 36:2, 38:11, 53:20
**restitution** [28] - 10:3, 21:24, 21:25, 23:10, 23:11, 23:21, 23:25, 24:4, 25:8, 71:1, 71:5, 74:22, 90:4, 90:6, 90:7, 90:11, 90:15, 90:16, 90:19, 90:23, 91:3, 91:5, 91:13, 91:23, 91:25, 110:9, 110:11, 111:21
**Restitution** [1] - 90:24
**restraint** [2] - 86:23,

87:5
**restricted** [9] - 4:1, 13:3, 13:4, 13:6, 13:8, 19:5, 41:15, 43:1, 59:11
**restricting** [1] - 47:6
**restrictions** [2] - 12:7, 81:19
**restrictive** [1] - 4:3
**result** [2] - 22:1, 46:16
**resulted** [2] - 55:6, 100:8
**resulting** [10] - 29:20, 36:21, 49:2, 59:6, 59:16, 59:20, 59:22, 60:21, 61:8, 96:9
**results** [6] - 58:22, 59:13, 59:24, 61:24, 71:21, 103:14
**resume** [1] - 14:16
**resumed** [1] - 14:24
**resuming** [1] - 63:20
**return** [1] - 111:18
**returned** [1] - 87:10
**returning** [1] - 83:10
**REV** [1] - 77:10
**REVELS** [4] - 77:6, 77:9, 77:12, 77:14
**Revels** [2] - 77:7, 77:9
**review** [5] - 4:9, 8:15, 58:25, 71:13, 88:22
**reviewed** [1] - 11:16
**revisit** [1] - 105:11
**revisited** [1] - 13:24
**revive** [1] - 105:14
**revoke** [1] - 64:22
**RI** [1] - 2:5
**Richard** [3] - 84:9, 84:12, 84:15
**Richard's** [1] - 84:10
**ridiculous** [1] - 33:23
**riot** [6] - 22:1, 72:24, 91:10, 92:6, 93:17, 93:22
**rioter** [2] - 20:4, 20:22
**rioters** [9] - 15:4, 15:6, 17:19, 17:24, 18:5, 20:25, 21:9, 96:13, 107:19
**risk** [1] - 113:25
**rocky** [2] - 97:20, 98:3
**Roger** [1] - 3:13
**ROGER** [2] - 2:3
**role** [2] - 49:8, 49:14
**ROMANO** [10] - 1:13, 24:21, 24:23, 24:25, 25:4, 25:12, 25:14, 25:24, 26:1, 63:15
**Romano** [2] - 3:10, 24:23

**romantically** [1] - 69:9
**root's** [1] - 32:16
**roots** [29] - 4:17, 5:13, 5:20, 7:19, 8:20, 9:3, 22:9, 23:23, 27:16, 33:11, 33:12, 33:20, 34:21, 35:10, 35:25, 39:23, 40:7, 44:20, 45:18, 52:2, 53:14, 62:25, 63:22, 65:22, 67:1, 67:13, 88:10, 103:16, 114:11
**ROOTS** [63] - 2:3, 4:20, 4:23, 5:14, 5:22, 5:25, 8:10, 8:24, 9:6, 10:9, 10:14, 10:19, 10:22, 11:9, 17:5, 22:10, 27:24, 28:2, 28:16, 31:14, 31:25, 32:10, 33:21, 34:1, 34:25, 35:7, 35:11, 35:18, 39:25, 40:2, 40:9, 44:21, 45:22, 46:4, 46:9, 50:20, 51:5, 51:9, 51:13, 51:25, 52:4, 53:15, 54:15, 55:21, 57:12, 57:23, 63:1, 63:7, 63:25, 64:13, 64:25, 67:14, 67:16, 75:21, 76:2, 76:10, 76:18, 77:4, 80:18, 88:11, 113:19, 114:6, 114:18
**Roots** [2] - 3:13, 32:6
**Rotunda** [5] - 75:6, 94:1, 94:3, 94:21, 95:12
**route** [1] - 94:18
**rowdy** [1] - 51:17
**RPR** [3] - 2:13, 115:3, 115:15
**rroots@**
  **johnpiercelaw.com**
  [1] - 2:6
**Rubenacker** [1] - 106:10
**rule** [1] - 57:22
**Rule** [1] - 8:4
**ruled** [1] - 17:14
**rules** [2] - 110:19, 110:24
**ruling** [1] - 57:8
**rulings** [1] - 26:8

---

**S**

---

**sad** [2] - 85:25, 86:6
**safe** [4] - 15:23, 84:3,

84:17, 92:11
**safely** [1] - 93:18
**SAINT** [1] - 115:3
**Saint** [2] - 2:13, 115:15
**SAINT-LOTH** [1] - 115:3
**Saint-Loth** [2] - 2:13, 115:15
**satisfied** [1] - 7:15
**Saturday** [2] - 104:11, 104:12
**save** [2] - 31:20, 32:5
**saw** [8] - 11:4, 36:22, 39:19, 48:7, 53:6, 69:18, 94:5, 94:6
**scaffolding** [1] - 93:12
**scared** [1] - 15:19
**scene** [1] - 69:10
**scheme** [2] - 40:23, 43:5
**school** [1] - 77:23
**Schwager** [3] - 15:10, 16:4, 16:6
**score** [5] - 27:2, 27:11, 29:20, 57:10, 58:3
**scratch** [1] - 87:1
**screen** [1] - 72:10
**search** [1] - 103:15
**seat** [2] - 8:23, 33:19
**seated** [3] - 7:12, 8:1, 112:17
**second** [10] - 6:19, 12:17, 26:14, 42:6, 43:6, 72:7, 73:19, 84:9, 94:3, 103:17
**secretary** [1] - 15:11
**section** [5] - 36:12, 36:25, 47:9, 56:3, 66:23
**Section** [83] - 3:23, 4:2, 4:4, 4:6, 4:8, 7:7, 28:10, 29:5, 29:12, 30:17, 30:19, 30:20, 30:22, 30:24, 31:4, 32:25, 33:2, 36:11, 37:12, 38:3, 39:5, 40:17, 40:23, 41:2, 41:14, 41:21, 42:7, 43:2, 43:8, 43:18, 46:13, 46:21, 46:22, 48:19, 48:23, 50:5, 52:5, 53:25, 54:13, 54:20, 54:24, 55:16, 56:2, 56:6, 56:8, 56:11, 56:14, 56:16, 56:17, 56:18, 56:22, 57:1, 57:2, 57:4, 57:7, 58:6,

58:8, 58:18, 59:1, 59:6, 59:9, 59:12, 59:13, 59:15, 59:23, 60:16, 60:19, 60:23, 61:6, 61:12, 63:10, 63:24, 68:1, 68:16, 70:5, 88:25, 90:24, 91:2, 108:24, 109:9, 110:10, 112:4, 112:10
**Sections** [2] - 3:25, 56:1
**secure** [1] - 92:10
**secured** [1] - 14:18
**security** [3] - 12:8, 47:22, 114:1
**see** [37] - 12:4, 12:16, 13:9, 13:22, 14:4, 16:2, 18:19, 20:13, 20:22, 20:25, 34:17, 34:21, 35:15, 36:10, 36:24, 36:25, 37:2, 40:23, 47:1, 49:3, 52:18, 54:7, 56:7, 71:9, 72:14, 79:1, 81:4, 82:25, 86:1, 87:17, 91:11, 91:24, 93:20, 93:23, 102:5, 105:8, 108:18
**seeing** [1] - 96:24
**seek** [5] - 34:6, 34:9, 35:2, 35:5, 71:24
**seeking** [5] - 23:11, 24:4, 38:24, 38:25, 71:25
**seeks** [1] - 21:25
**sees** [3] - 80:7, 84:22, 86:17
**self** [5] - 18:19, 50:4, 52:16, 53:3, 97:14
**self-inflicted** [4] - 18:19, 50:4, 52:16, 53:3
**self-medicating** [1] - 97:14
**Senate** [5] - 14:11, 14:12, 15:11, 15:13, 15:21
**senior** [1] - 77:23
**sense** [8] - 42:4, 42:13, 42:17, 42:18, 42:24, 47:23, 48:1, 87:3
**sensitive** [1] - 92:16
**sent** [2] - 69:13, 79:22
**sentence** [26] - 7:2, 7:6, 7:8, 16:25, 17:15, 65:12, 70:16, 70:20, 71:18, 72:1, 74:11, 88:18, 88:19,

18

89:1, 89:4, 90:1, 97:5, 101:1, 102:12, 105:21, 108:22, 110:11, 111:17, 112:5, 112:12, 112:18

**sentenced** [15] - 67:22, 74:19, 75:5, 101:3, 101:10, 101:13, 101:17, 103:19, 105:3, 105:22, 105:24, 106:9, 106:15, 107:11, 109:4

**sentences** [4] - 40:5, 90:1, 100:19, 104:20

**Sentencing** [3] - 26:18, 108:23, 109:23

**sentencing** [52] - 3:20, 4:11, 4:12, 4:13, 4:14, 4:18, 5:1, 6:7, 6:12, 7:20, 7:22, 7:23, 8:3, 8:6, 8:11, 8:16, 13:25, 16:14, 17:1, 23:12, 24:3, 25:7, 26:11, 26:15, 28:3, 31:13, 39:17, 43:23, 48:15, 53:1, 57:13, 57:15, 57:17, 61:21, 61:22, 61:25, 62:4, 62:9, 71:7, 71:22, 74:7, 74:21, 76:5, 81:25, 88:20, 88:22, 88:23, 89:3, 100:20, 105:13, 112:16

**SENTENCING** [1] - 1:7

**separate** [4] - 39:6, 43:11, 58:19

**separately** [2] - 30:15, 47:11

**September** [1] - 69:2

**Sergeant** [4] - 39:20, 49:22, 72:6, 72:19

**series** [2] - 101:8, 103:17

**serious** [31] - 28:14, 28:18, 33:3, 33:5, 33:6, 33:12, 33:22, 35:20, 36:13, 37:15, 37:18, 37:21, 41:24, 61:18, 64:1, 66:17, 67:3, 67:10, 68:20, 68:24, 69:16, 89:7, 96:11, 97:3, 97:10, 97:17, 97:19, 98:16, 104:1, 106:2, 107:20

**seriousness** [4] -

34:9, 89:4, 89:6, 97:5

**serve** [2] - 97:10, 109:5

**served** [6] - 15:10, 86:1, 86:4, 86:7, 88:3, 104:25

**serves** [2] - 63:8, 87:15

**service** [3] - 83:15, 97:11, 108:14

**session** [1] - 19:4

**Session** [5] - 47:19, 89:8, 89:14, 92:18, 94:19

**set** [8] - 7:7, 26:23, 27:5, 71:7, 84:5, 88:25, 108:5, 108:17

**setting** [3] - 75:16, 103:20, 104:1

**seven** [16] - 30:11, 30:14, 31:2, 31:12, 32:1, 32:2, 32:12, 34:7, 34:8, 34:19, 35:16, 37:6, 55:7, 76:12, 95:10, 98:4

**several** [4] - 12:3, 41:9, 73:24, 85:15

**severe** [1] - 97:12

**severity** [2] - 71:16, 106:17

**Sexton** [2] - 80:19, 80:22

**SEXTON** [4] - 80:21, 80:24, 81:1, 81:10

**sexual** [4] - 77:22, 78:1, 79:3, 87:21

**sexually** [1] - 83:23

**shaking** [1] - 48:8

**shall** [10] - 40:19, 57:4, 109:20, 110:13, 111:11, 111:14, 111:18, 111:23, 111:25, 115:8

**SHANIQUEA** [1] - 2:9

**Shaniquea** [1] - 3:10

**shelter** [1] - 83:21

**shield** [1] - 108:3

**shields** [3] - 73:14, 95:22, 96:15

**shit** [3] - 73:15, 74:18, 95:24

**shocking** [1] - 83:12

**short** [2] - 94:12, 105:15

**short-tempered** [1] - 94:12

**shorthand** [1] - 2:15

**shortly** [1] - 12:10

**shots** [1] - 15:25

**shouting** [1] - 95:24

**shove** [1] - 95:22

**shoved** [1] - 73:13

**show** [3] - 20:6, 67:10, 86:22

**showed** [7] - 16:8, 16:24, 18:3, 64:10, 74:23, 96:20, 107:17

**showing** [2] - 21:12, 93:24

**shows** [2] - 35:13, 45:22

**shut** [1] - 104:7

**sic** [2] - 85:9, 85:10

**sic]** [2] - 5:10, 93:1

**side** [6] - 17:18, 26:8, 69:6, 70:14, 73:11, 73:12

**sign** [2] - 114:6, 114:9

**signal** [1] - 93:17

**signatory** [1] - 115:10

**significant** [4] - 36:8, 37:16, 67:5, 105:25

**significantly** [9] - 21:6, 65:18, 66:9, 68:6, 68:7, 68:10, 68:12, 69:19, 69:22

**signs** [5] - 11:4, 24:17, 44:7, 47:5, 80:9

**silent** [1] - 85:4

**similar** [9] - 13:19, 27:19, 28:12, 29:7, 29:13, 47:8, 90:2, 90:3, 101:9

**similarities** [1] - 74:14

**similarly** [4] - 101:20, 103:18, 104:21, 104:22

**similarly-situated** [1] - 104:21

**simple** [1] - 107:1

**simply** [3] - 11:21, 20:18, 69:21

**single** [3] - 74:5, 107:2, 107:3

**singled** [1] - 28:17

**sister** [10] - 65:3, 76:25, 77:4, 77:7, 83:22, 83:24, 83:25, 84:1, 84:8, 113:3

**sister's** [2] - 84:14, 113:11

**sit** [3] - 47:14, 74:1, 88:5

**sites** [1] - 81:21

**sitting** [1] - 25:22

**situated** [4] - 101:20, 103:18, 104:21, 104:22

**situation** [4] - 23:18, 65:13, 83:7, 107:1

**six** [11] - 3:21, 15:14, 26:17, 31:1, 52:25, 55:17, 60:17, 61:6, 92:3, 100:24

**six-level** [1] - 31:1

**six-offense-level** [1] - 55:17

**Sixth** [1] - 99:25

**sized** [1] - 65:1

**skateboard** [1] - 106:25

**skills** [2] - 86:23, 87:5

**Slaaten** [1] - 105:8

**sliced** [1] - 95:9

**small** [4] - 16:15, 16:21, 34:19, 87:1

**snapped** [1] - 49:6

**snapping** [1] - 49:3

**society** [1] - 79:8

**sold** [4] - 16:15, 16:21, 17:3, 17:8

**soldier** [1] - 86:22

**solitary** [1] - 87:22

**solve** [1] - 114:12

**someone** [6] - 65:10, 65:11, 73:1, 74:6, 81:12, 86:25

**someplace** [2] - 103:21, 104:1

**sometimes** [3] - 45:19, 46:16, 80:13

**somewhere** [1] - 83:12

**son** [5] - 81:16, 81:18, 81:23, 83:17, 84:17

**sorry** [9] - 7:13, 7:14, 34:14, 62:20, 66:3, 72:15, 86:6, 114:17

**sort** [5] - 23:5, 34:16, 64:10, 80:19, 95:25

**sorts** [1] - 91:20

**sought** [2] - 36:10, 37:17

**sound** [1] - 47:8

**source** [1] - 95:19

**South** [5] - 65:3, 113:2, 113:8, 113:11, 113:13

**Speaker's** [1] - 16:2

**speaking** [3] - 46:4, 78:25, 80:7

**speaks** [2] - 73:17, 82:16

**special** [4] - 62:14, 109:8, 110:14, 111:22

**specific** [15] - 6:21, 12:19, 23:7, 25:9,

30:2, 40:25, 41:20, 42:3, 42:8, 42:11, 43:9, 54:12, 98:18, 99:9, 100:18

**specifically** [1] - 29:13

**speeding** [1] - 27:9

**spell** [1] - 80:23

**spewed** [1] - 99:23

**splintered** [4] - 36:21, 49:6, 95:8, 95:9

**spray** [1] - 96:14

**sprayed** [1] - 94:7

**spreading** [1] - 14:7

**spun** [1] - 15:8

**staff** [1] - 15:19

**stage** [5] - 7:4, 9:10, 93:14

**stairs** [2] - 73:13, 93:12

**stand** [16] - 6:5, 10:23, 17:7, 40:9, 50:20, 51:2, 51:16, 53:15, 55:21, 63:1, 74:2, 85:6, 88:16, 96:23, 98:5, 100:14

**standard** [4] - 34:4, 35:2, 65:19

**standing** [4] - 45:23, 82:14, 104:4, 107:25

**stands** [2] - 6:6, 69:17

**start** [8] - 3:7, 10:15, 26:21, 32:14, 33:22, 71:8, 77:15, 77:22

**started** [1] - 78:21

**starting** [3] - 4:11, 29:23, 59:3

**state** [5] - 12:6, 58:15, 92:10, 108:22, 110:2

**statement** [7] - 17:11, 22:20, 23:14, 50:12, 63:24, 66:14, 68:3

**statements** [10] - 8:17, 9:1, 9:16, 11:18, 12:24, 14:19, 46:16, 46:18, 89:23, 107:18

**States** [7] - 3:3, 14:11, 24:23, 63:21, 72:22, 72:23, 74:12

**STATES** [4] - 1:1, 1:3, 1:8, 1:11

**states** [17] - 11:21, 12:10, 13:14, 14:1, 14:10, 14:14, 16:11, 17:1, 17:16, 18:8, 20:2, 21:19, 21:24, 22:1, 28:10, 29:6, 57:3

**stating** [1] - 56:9

**station** [2] - 103:20, 104:1

19

**statistic** [1] - 80:15
**status** [1] - 56:7
**statute** [4] - 25:10, 35:21, 66:23, 110:11
**stay** [1] - 41:10
**stayed** [1] - 95:17
**staying** [1] - 37:25
**Steal** [1] - 92:24
**steal** [1] - 91:17
**stealing** [1] - 96:14
**stenographic** [1] - 115:5
**Step** [1] - 8:2
**step** [12] - 6:14, 6:19, 6:24, 7:5, 8:15, 24:24, 26:14, 27:25, 67:9, 67:15, 70:15, 98:7
**step-back** [1] - 67:9
**stepdad** [1] - 77:20
**stepfather** [1] - 82:4
**steps** [1] - 6:13
**still** [10] - 10:17, 25:21, 69:5, 78:4, 85:2, 85:6, 93:3, 93:4, 96:25, 99:20
**stitches** [13] - 32:2, 34:7, 34:8, 34:11, 34:19, 35:7, 35:16, 37:6, 55:7, 74:25, 90:14, 95:10
**stolen** [4] - 99:3, 99:6, 100:13, 108:2
**stood** [2] - 45:24, 85:7
**Stop** [1] - 92:24
**stop** [1] - 85:18
**stopped** [1] - 80:5
**stopping** [4] - 89:7, 89:8, 89:13, 103:24
**stormed** [1] - 104:7
**storming** [2] - 47:25, 103:22
**story** [1] - 14:7
**straight** [1] - 32:7
**straightened** [1] - 36:24
**Street** [3] - 1:14, 1:20, 2:4
**stretch** [1] - 53:16
**strike** [1] - 95:5
**string** [1] - 85:9
**strived** [1] - 82:5
**struggle** [5] - 36:19, 78:5, 79:9, 86:11, 87:14
**struggling** [1] - 86:16
**studies** [1] - 79:2
**stuff** [3] - 8:25, 52:20, 52:21
**Sturgeon** [1] - 75:4

**sturgeon** [1] - 101:10
**subject** [5] - 15:13, 26:18, 44:14, 60:4, 62:12
**submit** [8] - 34:25, 35:21, 35:23, 44:24, 76:1, 77:11, 110:5, 110:15
**submitted** [10] - 4:14, 5:17, 5:21, 7:20, 7:23, 14:5, 76:12, 76:14, 77:12, 88:21
**subsequent** [1] - 67:7
**subsequently** [1] - 73:9
**substance** [9] - 66:24, 67:2, 67:3, 80:9, 110:3, 110:5, 110:15, 110:16, 110:18
**substantially** [4] - 40:18, 40:20, 68:8, 69:23
**substantive** [1] - 67:12
**substantively** [1] - 102:12
**succeeded** [1] - 19:4
**sudden** [1] - 80:4
**suffered** [9] - 22:1, 37:13, 37:15, 64:5, 79:20, 80:10, 80:11, 85:8, 91:2
**suffering** [1] - 68:6
**suffers** [2] - 33:1, 33:3
**sufficient** [4] - 23:19, 23:21, 26:10, 89:1
**sufficiently** [2] - 37:16, 97:10
**suggest** [3] - 14:6, 15:1, 26:1
**suggests** [1] - 28:5
**suicidal** [1] - 69:4
**suicide** [4] - 64:19, 67:17, 83:10, 83:14
**Suite** [2] - 1:20, 2:4
**summarizes** [1] - 21:18
**summary** [2] - 26:9, 33:9
**summer** [1] - 105:2
**supersede** [2] - 11:11, 114:2
**superseding** [1] - 19:18
**supervise** [2] - 110:20, 111:1
**supervised** [5] - 62:5, 62:10, 70:25, 109:5, 113:5

**supervision** [5] - 98:4, 109:20, 109:25, 110:6, 110:13
**supplement** [1] - 50:17
**supplemental** [1] - 76:15
**supplemented** [1] - 26:11
**supply** [1] - 23:13
**support** [13] - 5:6, 20:16, 22:15, 22:19, 33:12, 50:11, 51:14, 74:11, 78:17, 79:22, 81:22, 85:12, 90:10
**supported** [3] - 12:24, 81:15, 90:12
**supporting** [1] - 24:12
**supports** [4] - 11:22, 17:23, 21:7, 90:9
**supposed** [3] - 89:9, 93:21, 93:25
**surged** [1] - 93:10
**surgeon** [1] - 37:6
**surgery** [2] - 36:17, 37:21
**survival** [2] - 64:13, 64:14
**surviving** [1] - 86:11
**sustaining** [4] - 30:25, 31:9, 60:14, 61:4
**swear** [1] - 94:16
**symptoms** [2] - 68:23, 80:11
**system** [3] - 78:17, 78:19, 81:22
**systems** [1] - 74:8

## T

**table** [3] - 3:10, 3:15, 72:14
**tamper** [1] - 110:17
**taught** [1] - 85:5
**taxpayer** [1] - 91:8
**teach** [1] - 85:3
**tear** [1] - 93:23
**technical** [1] - 72:8
**tempered** [1] - 94:12
**temporary** [2] - 12:7, 12:9
**tendon** [2] - 34:17, 95:9
**tendons** [1] - 34:22, 36:24
**tent** [1] - 16:13
**term** [7] - 62:3, 62:8, 62:13, 67:22, 101:10, 105:25, 106:4

**termination** [1] - 111:20
**terms** [11] - 11:23, 65:24, 70:20, 98:3, 101:13, 102:9, 103:4, 106:16, 106:21, 109:2, 109:5
**terrace** [8] - 73:13, 93:16, 95:16, 95:18, 96:7, 96:8, 96:10, 107:24
**test** [1] - 110:5
**testified** [20] - 15:12, 15:21, 16:18, 17:6, 20:10, 20:20, 35:17, 36:22, 37:1, 45:8, 47:3, 47:13, 47:24, 48:7, 48:11, 49:5, 52:15, 52:23, 64:8, 94:11
**testify** [4] - 20:24, 37:19, 69:18, 76:19
**testifying** [1] - 48:24
**testimony** [26] - 16:20, 17:9, 21:15, 21:18, 21:19, 21:22, 26:3, 30:18, 34:17, 35:19, 44:6, 44:25, 45:7, 46:10, 46:14, 46:15, 46:17, 47:20, 48:20, 49:4, 49:20, 49:21, 49:23, 50:21, 107:16
**testing** [2] - 110:15, 110:17
**tests** [1] - 110:7
**text** [2] - 5:12, 78:25
**thankfully** [1] - 67:18
**THE** [138] - 1:1, 1:8, 1:11, 1:18, 2:2, 3:2, 3:11, 3:16, 3:18, 3:19, 4:22, 4:24, 5:15, 5:20, 5:23, 6:1, 7:11, 7:12, 7:17, 7:18, 7:25, 8:1, 8:12, 8:20, 9:2, 9:7, 10:12, 10:15, 10:20, 11:7, 11:11, 11:15, 17:9, 17:14, 22:15, 22:23, 23:3, 23:9, 23:15, 24:22, 24:24, 25:1, 25:11, 25:13, 25:18, 25:25, 26:6, 27:25, 28:9, 28:22, 29:1, 30:8, 31:19, 32:4, 32:11, 33:18, 33:24, 34:14, 35:5, 35:10, 35:17, 35:25, 36:4, 38:13, 38:19, 39:2, 39:10, 39:21, 40:1, 40:6, 40:11, 44:20,

45:14, 46:1, 46:8, 46:11, 51:1, 51:7, 51:10, 51:23, 52:2, 52:5, 53:18, 53:22, 54:17, 54:20, 55:23, 55:25, 57:15, 58:1, 62:22, 62:25, 63:2, 63:8, 63:17, 63:20, 63:22, 64:12, 64:24, 65:15, 65:22, 66:4, 66:12, 66:21, 67:1, 67:12, 67:15, 67:25, 71:11, 71:20, 72:7, 72:9, 72:13, 75:19, 75:24, 76:7, 76:11, 77:2, 77:8, 77:11, 77:13, 80:17, 80:24, 81:8, 88:8, 88:13, 88:15, 88:16, 102:21, 102:23, 112:21, 112:24, 113:6, 113:10, 113:12, 113:18, 113:24, 114:11
**therapy** [5] - 65:7, 78:4, 78:14, 78:23
**thereafter** [1] - 110:7
**therefore** [4] - 56:11, 58:3, 61:19, 111:7
**thinking** [3] - 15:9, 20:18, 47:23
**thinks** [1] - 32:17
**Third** [1] - 1:20
**third** [4] - 6:24, 43:10, 70:15, 74:9
**Thomas** [2] - 74:13, 74:15
**threat** [3] - 66:17, 67:10, 68:21
**threatened** [1] - 73:7
**threatening** [5] - 15:4, 53:7, 64:12, 69:1, 70:3
**three** [18] - 14:23, 27:13, 30:24, 31:8, 32:16, 32:18, 32:19, 32:20, 32:25, 41:22, 44:11, 46:2, 60:13, 61:3, 73:20, 78:23, 104:17, 110:3
**three-level** [3] - 30:24, 31:8, 32:16
**throughout** [4] - 15:20, 72:20, 73:3, 80:19
**tied** [1] - 16:13
**tiny** [3] - 17:8, 54:16, 54:17
**today** [12] - 7:24, 8:8, 23:4, 23:6, 25:7,

20

25:17, 47:23, 71:13,
72:2, 99:18, 100:14,
113:16
**today's** [1] - 48:15
**Todd** [39] - 3:4, 3:14,
3:17, 3:20, 6:5, 7:13,
11:4, 13:17, 17:5,
26:24, 31:4, 44:22,
45:1, 45:6, 50:13,
50:20, 52:23, 63:21,
64:1, 64:5, 64:17,
65:2, 69:18, 72:18,
76:23, 88:13, 89:21,
89:25, 103:6,
104:24, 105:24,
107:9, 107:18,
107:23, 107:25,
108:19, 109:1,
113:6, 113:19
**TODD** [1] - 1:5
**Todd's** [10] - 26:16,
28:7, 44:25, 46:10,
68:2, 77:7, 88:21,
107:20, 108:7,
108:14
**together** [5] - 39:3,
39:18, 40:19, 41:4,
77:14
**took** [5] - 50:20, 65:1,
77:17, 78:2, 85:24
**top** [4] - 70:24, 71:23,
82:16, 84:15
**torn** [2] - 24:17, 93:8
**torn-off** [1] - 24:17
**toss** [2] - 73:7, 94:17
**total** [14] - 32:12, 41:6,
58:2, 59:7, 59:13,
59:20, 59:25, 60:2,
60:21, 61:8, 61:11,
61:15, 61:17, 61:23
**totaling** [1] - 62:16
**totally** [11] - 5:3, 15:1,
15:8, 39:13, 91:23,
92:14, 99:23,
103:12, 103:15,
104:14, 114:1
**toward** [1] - 50:20
**towards** [1] - 96:19
**tower** [2] - 17:22, 93:2
**track** [1] - 23:7
**tracks** [1] - 89:8
**traffic** [3] - 28:4, 28:5,
28:6
**traffic-type** [1] - 28:6
**train** [1] - 87:2
**trained** [2] - 86:24,
87:4
**transactions** [2] -
40:21, 43:3
**TRANSCRIPT** [1] - 1:7

**transcript** [15] - 2:16,
16:2, 16:20, 20:16,
20:23, 21:1, 21:12,
36:25, 37:3, 47:16,
48:6, 52:18, 115:5,
115:6, 115:9
**transcription** [1] -
2:16
**transcripts** [1] - 20:18
**transition** [3] - 92:13,
92:19, 103:23
**trash** [1] - 94:13
**trauma** [8] - 64:6,
64:15, 77:16, 78:1,
79:3, 79:20, 80:12
**traumas** [2] - 79:8,
85:11
**traumatized** [1] -
35:19
**traveled** [2] - 47:3,
92:22
**Travis** [2] - 49:21, 73:5
**treat** [1] - 86:9
**treated** [7] - 39:6,
39:7, 40:25, 42:8,
42:11, 43:9, 85:13
**treating** [3] - 31:4,
85:1, 111:4
**treatment** [21] - 38:1,
64:4, 78:3, 78:17,
78:20, 78:21, 79:23,
84:18, 85:15, 85:20,
90:13, 97:17, 97:25,
98:7, 102:1, 109:18,
110:18, 110:23,
111:1, 111:18,
111:20
**trespass** [1] - 59:11
**trespassing** [1] -
92:16
**tri** [1] - 92:10
**tri-state** [1] - 92:10
**trial** [57] - 6:3, 11:1,
12:24, 14:8, 15:12,
16:2, 16:7, 16:8,
16:17, 16:18, 16:19,
16:24, 17:10, 18:2,
18:7, 20:16, 20:22,
21:1, 21:12, 23:23,
24:2, 26:12, 30:18,
31:16, 35:13, 36:25,
37:3, 44:6, 45:19,
47:15, 48:5, 49:4,
50:19, 52:6, 52:10,
52:18, 55:12, 55:13,
64:9, 66:1, 66:6,
66:8, 71:15, 74:1,
81:19, 90:19, 92:23,
97:16, 99:16, 99:25,
100:5, 100:7,

101:12, 101:15,
101:20, 107:7,
107:17
**trick** [2] - 40:2, 40:4
**tried** [5] - 82:9, 84:5,
84:17, 85:15, 95:7
**tries** [1] - 74:6
**triggered** [1] - 62:14
**triggers** [1] - 87:22
**trip** [1] - 55:7
**truck** [1] - 81:21
**true** [2] - 115:4, 115:5
**truly** [1] - 79:17
**truth** [1] - 86:20
**truthful** [1] - 46:24
**try** [6] - 25:5, 74:8,
78:3, 85:17, 104:15,
108:4
**trying** [10] - 32:7,
33:14, 38:22, 41:10,
69:12, 76:13, 79:23,
94:8, 96:1, 96:15
**tunnel** [6] - 96:7, 96:8,
96:10, 96:13, 96:18,
107:24
**turn** [11] - 10:12,
29:22, 30:9, 31:20,
32:9, 38:5, 43:16,
59:17, 70:15, 71:6,
72:10
**turning** [1] - 60:22
**twice** [1] - 97:2
**two** [51] - 14:21, 20:5,
26:25, 27:4, 27:6,
27:17, 28:7, 29:16,
29:24, 30:16, 30:18,
30:19, 31:3, 35:12,
40:21, 40:24, 41:22,
43:3, 43:17, 43:18,
44:3, 44:4, 44:9,
45:23, 46:2, 47:9,
50:9, 50:11, 51:14,
52:8, 57:23, 58:2,
58:8, 59:5, 59:10,
59:19, 60:15, 60:19,
61:4, 61:7, 68:7,
76:18, 81:24, 83:14,
83:18, 83:24, 84:1,
97:9, 101:3, 110:2,
110:6
**two-level** [5] - 30:16,
30:19, 31:3, 44:4,
50:11
**two-offense** [1] - 47:9
**two-offense-level** [1] -
50:9
**two-point** [1] - 58:8
**Tyler** [2] - 84:11, 84:15
**type** [4] - 8:25, 9:1,
28:6, 36:9

**types** [2] - 89:25,
100:19

## U

**U.S** [32] - 2:8, 5:3,
12:6, 12:8, 12:12,
12:21, 13:2, 14:10,
14:15, 14:17, 16:15,
16:21, 17:2, 17:3,
19:2, 19:5, 20:2,
21:8, 24:9, 24:13,
25:23, 26:18, 47:1,
86:20, 92:25,
101:17, 102:3,
102:5, 105:8, 111:9,
111:16, 112:3
**U.S.C** [15] - 3:23, 3:25,
4:2, 4:4, 4:6, 4:8,
7:7, 56:2, 57:2,
88:25, 90:24,
108:24, 109:9,
110:10, 112:4,
112:10
**ultimate** [1] - 40:7
**ultimately** [1] - 41:5
**unable** [1] - 112:7
**unacceptable** [4] -
73:17, 73:18, 75:13,
75:16
**unanimously** [1] -
60:10
**unarmed** [1] - 14:22
**unauthorized** [2] -
14:17, 14:25
**unavailable** [1] -
112:12
**unaware** [1] - 84:16
**unclear** [1] - 21:17
**under** [50] - 8:4, 15:19,
27:7, 28:11, 29:7,
30:1, 30:16, 30:19,
30:22, 30:24, 31:1,
31:3, 32:25, 33:2,
33:23, 34:4, 35:1,
35:21, 43:17, 50:8,
52:8, 56:2, 56:14,
56:16, 57:1, 57:7,
58:8, 59:12, 59:20,
60:8, 60:13, 60:15,
60:16, 60:18, 60:20,
60:24, 61:1, 61:3,
61:6, 61:19, 63:10,
65:17, 66:14, 90:23,
90:25, 91:2, 101:4
**underlying** [1] - 26:10
**undermine** [2] - 73:20,
74:6
**undone** [1] - 87:20
**undoubtedly** [1] -

37:15
**unfortunately** [2] -
79:14, 80:12
**unhelpful** [3] - 103:8,
103:12, 103:16
**unique** [2] - 108:5,
108:7
**unit** [1] - 83:9
**United** [7] - 3:3, 14:11,
24:23, 63:21, 72:22,
72:23, 74:12
**UNITED** [4] - 1:1, 1:3,
1:8, 1:11
**units** [1] - 61:16
**unlawful** [5] - 11:4,
14:15, 92:15, 97:2,
110:4
**unlawfully** [2] - 92:16,
110:3
**unless** [4] - 70:13,
75:17, 79:16, 113:9
**unlike** [2] - 98:5,
108:17
**unwarranted** [4] -
70:19, 90:1, 101:1,
102:2
**up** [24] - 18:9, 24:16,
25:2, 25:10, 45:1,
45:2, 65:2, 69:6,
76:7, 77:14, 79:11,
79:12, 79:13, 79:15,
81:19, 83:5, 84:5,
84:20, 93:11, 93:14,
94:25, 96:23, 108:6,
114:2
**Upadhyaya** [1] - 64:24
**upper** [3] - 93:15,
95:16, 95:18
**urged** [1] - 56:24
**USAO** [2] - 1:14, 2:9
**useless** [1] - 104:14
**usury** [1] - 85:9
**utilized** [1] - 87:4
**utter** [1] - 86:21

## V

**V.A** [1] - 78:19
**variance** [3] - 70:10,
70:19, 108:20
**variety** [4] - 74:13,
75:7, 92:14, 103:7
**various** [5] - 30:4,
88:21, 91:9, 98:10,
107:10
**verbally** [1] - 77:17
**verdict** [3] - 54:8,
55:12, 112:5
**versus** [3] - 3:3, 47:10,
63:21

**veteran** [1] - 72:22
**veterans** [2] - 79:2, 79:6
**Veterans** [1] - 79:5
**via** [1] - 55:7
**Vice** [3] - 14:12, 47:22, 92:18
**victim** [30] - 30:25, 31:2, 31:9, 33:1, 33:2, 39:4, 39:19, 40:21, 41:17, 41:19, 42:2, 42:4, 43:3, 50:1, 55:16, 55:17, 56:5, 56:10, 56:12, 56:15, 56:20, 56:22, 57:4, 60:14, 60:18, 61:4, 61:7, 74:15, 91:1, 102:8
**Victim's** [1] - 90:24
**victim's** [1] - 56:7
**victim-related** [1] - 56:5
**victims** [2] - 39:18, 90:4
**Victor** [1] - 77:10
**video** [5] - 18:2, 20:5, 45:22, 71:14, 96:19
**videos** [3] - 53:6, 82:25, 93:24
**videotape** [1] - 99:13
**videotapes** [1] - 84:5
**view** [6] - 15:7, 41:12, 45:18, 49:8, 99:12, 104:2
**Vincent** [1] - 107:11
**vindictive** [1] - 53:2
**vindictiveness** [1] - 105:10
**violated** [1] - 98:3
**violating** [1] - 107:7
**violation** [9] - 3:23, 3:25, 4:2, 4:4, 4:6, 4:8, 59:3, 59:8, 60:22
**violations** [2] - 106:9, 106:15
**violence** [9] - 58:9, 66:17, 68:20, 68:21, 78:15, 94:6, 96:11, 104:8
**violent** [8] - 67:6, 67:7, 72:18, 73:15, 75:7, 80:8, 107:22, 108:4
**violently** [1] - 72:6
**visceral** [1] - 34:16
**visitations** [1] - 84:4
**visitors** [2] - 113:23
**vitamin** [1] - 85:14
**vitamins** [4] - 78:22,

85:21, 85:22
**vitamins/ medications** [1] - 87:17
**vocal** [1] - 94:12
**void** [1] - 115:8
**voluntarily** [1] - 88:3
**vowed** [1] - 79:19
**vs** [1] - 1:4

**W**

**wait** [2] - 91:24, 93:17
**waiting** [1] - 21:7
**waive** [2] - 8:8, 8:10
**waives** [1] - 111:7
**walk** [1] - 81:21
**walked** [4] - 45:13, 45:24, 95:16, 96:18
**walls** [1] - 91:17
**wants** [1] - 42:14
**warns** [1] - 46:13
**warrant** [1] - 66:8
**warranted** [3] - 30:3, 30:17, 68:5, 102:2
**Washington** [3] - 1:5, 1:15, 111:10
**waste** [1] - 33:25
**watch** [4] - 20:5, 20:10, 21:9, 44:10
**watched** [1] - 85:7
**watching** [2] - 96:17, 107:25
**waving** [1] - 95:4
**ways** [7] - 41:5, 49:11, 82:9, 82:22, 107:20, 107:22
**weapon** [17] - 30:23, 31:7, 41:24, 53:16, 54:2, 54:4, 54:11, 54:16, 54:22, 54:24, 54:25, 55:5, 55:9, 58:10, 60:13, 61:3, 82:4
**wearing** [1] - 48:8
**Webster** [9] - 74:13, 74:16, 74:17, 101:19, 102:4, 102:9, 102:13, 102:18
**webster** [2] - 74:19, 102:25
**week** [1] - 101:19
**weekends** [1] - 104:13
**weekly** [4] - 65:6, 71:5, 78:22
**welcoming** [1] - 48:5
**well-documented** [3] - 64:7, 64:14, 67:17
**west** [16] - 17:18,

17:22, 18:3, 73:12, 73:13, 93:2, 93:7, 93:15, 94:2, 95:16, 95:18, 96:7, 96:8, 96:10, 96:13, 107:24
**whatsoever** [1] - 41:6
**whole** [4] - 47:21, 66:23, 93:9, 97:22
**wife** [10] - 69:2, 69:7, 69:10, 81:6, 81:7, 81:8, 81:14, 81:23, 83:17
**wildly** [1] - 73:16
**willful** [1] - 46:18
**willfully** [1] - 43:20
**willing** [3] - 86:2, 88:4, 114:16
**willingly** [1] - 88:6
**willingness** [1] - 72:5
**window** [2] - 28:8, 28:21
**windows** [4] - 12:12, 24:16, 91:9, 91:15
**wish** [2] - 7:1, 8:8
**wishful** [3] - 15:8, 20:18, 47:23
**withhold** [1] - 90:7
**witness** [1] - 77:1
**witnessed** [1] - 81:3
**witnesses** [4] - 75:21, 75:25, 76:8, 76:14
**woman** [2] - 82:18, 94:6
**women's** [3] - 104:6, 104:9, 104:10
**Woodland** [1] - 1:21
**word** [1] - 90:10
**words** [1] - 94:13
**world** [1] - 80:6
**worldwide** [1] - 104:4
**worn** [1] - 94:15
**worth** [2] - 17:11, 78:7
**wrath** [1] - 84:13
**wreak** [1] - 92:23
**write** [4] - 76:17, 76:19, 76:20, 82:21
**written** [2] - 10:23, 55:22
**wrongful** [1] - 68:15
**wrongfully** [1] - 53:3
**wrongfulness** [3] - 66:10, 68:13, 69:20
**wrote** [1] - 81:2

**X**

**x-rays** [1] - 37:5

**Y**

**year** [8] - 62:8, 62:10, 77:23, 85:16, 85:19, 109:3, 109:7
**years** [12] - 57:23, 62:3, 77:20, 78:2, 81:24, 83:18, 83:24, 84:25, 108:12, 109:2, 109:6
**years'** [2] - 70:25, 71:4
**yelling** [4] - 94:23, 95:1, 95:20
**yesterday** [2] - 5:5, 14:5
**young** [2] - 86:5, 86:7
**yourself** [2] - 24:22, 35:10
**yourselves** [1] - 3:6

**Z**

**zero** [7] - 27:20, 31:5, 57:6, 57:18, 57:19, 58:4, 58:7
**zero-point** [6] - 31:5, 57:6, 57:18, 57:19, 58:4, 58:7