# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOHN GEORGE TODD III,<br><br>Defendant. | Criminal Action No. 22-166 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM AND ORDER</u>

Defendant John George Todd was convicted by jury, on February 7, 2024, of all six counts against him of (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 1); (2) Inflicting Bodily Injury on Certain Officers, in violation of 18 U.S.C. § 111(a)(1), (b) (Count 2); (3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count 3); (4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count 4); (5) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count 5); and (6) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* Verdict Form, ECF No. 214.  For his conduct at the U.S. Capitol on January 6, 2021, he was sentenced, on May 31, 2024, to concurrent terms of 60 months' incarceration on Counts 1 and 2; 12 months' incarceration on Counts 3 and 4; and 6 months' incarceration on Counts 5 and 6.  *See* Judgment at 3, ECF No. 234.  He was further sentenced to concurrent terms of 36 months' supervised release on Counts 1 and 2; and 12 months' supervised release on Counts 3 and 4.  *Id.* at 5.  Defendant was ordered to pay a special assessment of $270 in accordance with 18 U.S.C. § 3013, *id.* at 7, but imposition of restitution was delayed for the government to provide necessary evidence on which to base a restitution

order, in the face of defendant's objection as to lack of evidentiary basis, *see* Statement of Reasons at 5, ECF No. 235.

Upon consideration of the government's Declaration Regarding Restitution ("Gov't's Restitution Mem."), ECF No. 238, accompanied by submissions under seal from the Architect of the Capitol, the Office of the Secretary of the Senate, and the Senate Sergeant at Arms, *see* Gov't's Sealed Exs., ECF No. 240; Gov't's Sealed Supp. Exs., ECF No. 243, and defendant's Response ("Def.'s Restitution Mem."), ECF No. 241, defendant's objections are **OVERRULED**, and defendant is **ORDERED** to make restitution in the amount of $2,000 to the Architect of the Capitol, and $2,514.68 to the Metropolitan Police Department ("MPD").

## I.    DISCUSSION

"The primary goal of restitution is remedial or compensatory," *Paroline v. United States*, 572 U.S. 434, 456 (2014); that is, "to restore a victim, to the extent money can do so, to the position the victim occupied before sustaining injury," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (alteration in original accepted) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)); *see also Dolan v. United States*, 560 U.S. 605, 612 (2010) (explaining that restitution "seeks primarily to ensure that victims of a crime receive full restitution"). "Federal courts do not have inherent authority to order restitution," *Fair*, 699 F.3d at 512, and "may order restitution only when statutes authorize restitution," *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011).

Two statutes are relevant here.  First, the Victim and Witness Protection Act ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248, 1253 (codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes," *Papagno*, 639 F.3d at 1096.  Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L.

No. 104-132 § 204, 110 Stat. 1214, 1227 (codified at 18 U.S.C. § 3663A), makes restitution mandatory for a subset of the crimes covered by the VWPA, *see Papagno*, 639 F.3d at 1096, including, as relevant here, "a crime of violence" "in which an identifiable victim or victims have suffered a physical injury or pecuniary loss," 18 U.S.C. § 3663A(c)(1).

The relevant statutory language in the MVRA and VWPA is nearly identical. Both define "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2), and thus restitution must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); *see also United States v. Clark*, 747 F.3d 890, 897 (D.C. Cir. 2014). The statutes authorize restitution for four categories of costs, including, as relevant here, "the value of lost property" and "the expenses of recovering from bodily injury, such as medical expenses." *Papagno*, 639 F.3d at 1096–97. The government bears the burden of establishing the amount of loss suffered by a victim, *see United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019), and "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence," 18 U.S.C. § 3664(e). A district court has broad discretion in ordering restitution. *See United States v. Monzel*, 930 F.3d 470, 478 (D.C. Cir. 2019) (explaining that the D.C. Circuit "review[s] a restitution for an abuse of discretion" and "examine[s] the factual findings underpinning the order for clear error" (citation omitted)).

Here, the government seeks an order requiring defendant to pay $2,514.68 to MPD, pursuant to the MVRA and VWPA, and $2,000 in restitution to the Architect of the Capitol, pursuant to the VWPA. Gov't Snt'g Mem. at 31, ECF No. 224.[1] Only defendant's objection to

---

[1]    The government seeks restitution, payable to the Architect of the Capitol, for damage incurred by the Architect of the Capitol, the House Chief Administrative Officer, the Secretary of the Senate, the Senate Sergeant at Arms, and the United States Capitol Police Department. *See* Gov't's Restitution Mem. at 1. For ease, these federal agencies will be referred to collectively as the Architect of the Capitol.

the government's request for $2,000 in restitution to the Architect of the Capitol remains, *see generally* Def.'s Restitution Mem., but, for completeness and clarity of the record, the government's request for restitution to both MPD and the Architect of the Capitol are discussed below.

### A.  Metropolitan Police Department

Restitution is mandatory, under the MVRA, for defendant's conviction, in Count 2, of inflicting bodily injury on Officer Rathbun, in violation of 18 U.S.C. § 111(a)(1) and (b), because 18 U.S.C. § 111(b) is "categorically a crime of violence." *United States v. Quaglin*, 851 F. App'x 218, 218–19 (D.C. Cir. 2021) (collecting cases). That defendant caused Officer Rathbun's injury has been established by the jury's finding, beyond a reasonable doubt, based on the evidence at trial, demonstrating that, during a struggle between defendant and Officer Rathbun, defendant "jerk[ed]" a splintered fiberglass flagpole, slicing Officer Rathbun's finger open at the knuckle. Trial Tr. (Jan. 31, 2024) at 39–42, ECF No. 229; *see also* Final Presentence Investigation Rep. ("PSR") ¶¶ 32–33, ECF No. 221. Officer Rathbun testified that he saw blood between his knuckles and in the palm of his hands, and that when he straightened his fingers out, he could "see tendons between the sections of bone." Trial Tr. (Jan. 31, 2024) at 41. Officer Rathbun was taken by ambulance to Howard Hospital, where he received x-rays and seven stitches on the inside of his knuckle. *Id.* at 42. In connection with the assault, Officer Rathbun incurred $905.00 in medical expenses, *see* Gov't's Snt'g Mem., Ex. 2, ECF No. 224-2, and missed nine days of work, costing MPD $1,759.68 in missed service, *see* Gov't's Snt'g Mem., Ex. 1, ECF No. 224-1. Accordingly, the government seeks $2,514.68 in restitution to MPD.[2]

---

[2]     Officer Rathbun's medical expenses included $300.00 for "Office/Outpatient Visit" and $605.00 for "Repair Superficial Woun[d]." Gov't's Snt'g Mem., Ex. 2. The government seeks $755.00 in restitution for Officer Rathbun's medical expenses, comprising of $605.00 for repairing the wound caused by defendant, and half of the

Defendant does not object to the calculation of restitution as it relates to MPD.[3]

Defendant is thus ordered to pay $2,514.68 to MPD to approximate the harm he caused to MPD.

## B.      Architect of the Capitol

Restitution is discretionary, under the VWPA, for defendant's convictions, in Count 3, of

Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C.

§ 1752(a)(1), and, in Count 4, of Disorderly and Disruptive Conduct in a Restricted Building or

Grounds, in violation of 18 U.S.C. § 1752(a)(2).  Restitution is available under the VMPA "only

to the extent the defendant's offense proximately caused a victim's losses," *Paroline*, 572 U.S. at

448, and "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk

created by the predicate conduct," *id.* at 445.[4]  The only question in dispute is how proximate

causation applies to this case, where defendant is one of many individuals who contributed to

damage to the Capitol.

The Supreme Court has instructed that in these "difficult" cases, *id.* at 449, "a court must

assess as best it can from available evidence the significance of the individual defendant's

conduct in light of the broader causal process that produced the victim's losses," *id.* at 459.

Where multiple defendants have "contributed to the loss of a victim," a court "may apportion

liability among the defendants to reflect the level of contribution to the victim's loss and

economic circumstances of each defendant."  18 U.S.C. § 3664(h).  No "precise algorithm"

exists "for determining the proper restitution amount," but "district courts might, as a starting

---

$300.00 amount for "Office/Outpatient Visit" because Officer Rathbun was injured in another assault on January 6, 2021.  Gov't's Restitution Reply at 1 n.2, ECF No. 242; *see also United States v. Webster*, No. 21-cr-208 (APM).

[3]      To the extent defendant attempts to renew his argument that he was wrongly convicted, *see* Def.'s Restitution Mem. at 5, this argument is rejected for the reasons stated on the record at the sentencing hearing.

[4]      Although *Paroline* interprets 18 U.S.C. § 2259, which provides mandatory restitution for victims of child pornography, Section 2259 "shares the same causation language as the VWPA and MVRA."  Def.'s Restitution Mem. at 4 n.1 (quoting Gov't's Restitution Mem. at 4).

point, determine the amount of the victim's losses," and "then set an award of restitution in consideration of factors that bear on the relevant causal significance of the defendant's conduct in producing those losses." *Paroline*, 572 U.S. at 459–60.  Factors to consider "could include" "restitution sought and ordered in other cases" and "other facts relevant to the defendant's relative causal role." *Id.* at 460, 462; *see also Monzel*, 930 F.3d at 476.

Here, the government avers that the Architect of the Capitol suffered approximately $2.9 million in damages as a result of the riot at the Capitol on January 6, 2021, and argues that $2,000 in restitution is appropriate because of defendant's role in contributing as part of the mob to this damage. *See* Gov't's Restitution Mem. at 6; *see also* Gov't's Sealed Exs.; Gov't's Sealed Supp. Exs.[5]  Defendant does not challenge the government's calculation of $2.9 million worth of damages, arguing only that "[r]estitution must be explicitly based upon individualized causation," and that defendant "harmed no property on January 6." Def.'s Restitution Mem. at 2, 5.

Although defendant is not charged with destroying property and thus "it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was part of the overall phenomenon" that caused harm to the Capitol. *Paroline*, 572 U.S. at 456–57. When he first entered the Capitol grounds and arrived on the West Plaza at 2:15 PM, barricades

---

[5]     Defendant objects to this Court's July 2, 2024 Minute Order granting the government's Motion for Leave to File Exhibits Under Seal ("Gov't's Sealing Mot."), ECF No. 239, arguing that "the public has a right to know the government's asserted damages," Def.'s Restitution Mem. at 5.  That objection is overruled.  The exhibits placed under seal "contain information from the Architect of the Capitol, the Senate Sargent [sic] at Arms, and the Secretary of the Senate pertaining to, *inter alia*, government contracting and procurement" and "replacement and repair costs of items that were damaged or stolen on January 6, 2021."  Gov't's Sealing Mot. at 1; *see also* Gov't's Restitution Reply at 5–6 ("These materials contain, *inter alia*, sensitive security information, including descriptions of non-public areas of the Capitol building and of repairs (and associated costs) made to security features.").  Pursuant to the parties' joint Protective Order, ECF No. 15 at 2, these exhibits are classified as "highly sensitive," and defendant has offered no reason why they should not be so classified.  Accordingly, the government's Exhibits, ECF No. 240, shall remain under seal.  Defendant's Response, ECF No. 241, which quotes from confidential information, will be placed under seal, with defendant instructed to file a redacted version of this response.  The government is directed to file on the public docket "the cover letters setting forth the total amount of damage incurred by each [federal agency]," with the name of the Acting Senate Sergeant at Arms redacted.  *See* Gov't's Restitution Reply at 6 n.5 (indicating no opposition to such limited unsealing of the sealed exhibits).

were still in place and the police line was still intact.  PSR ¶ 28.  At 2:29 PM, rioters tore down

the barricades, attacked the police, and surged forward.  *Id.* ¶ 29.  Defendant was part of this

surge in making his way to the Capitol Building.  *Id.*  Defendant entered the Capitol Building

twice, first at 2:44 PM, then at 2:52 PM, despite hearing the blaring alarms and seeing a large

group of police officers in riot gear firing tear gas into the crowd, which should have clearly

warned defendant that his presence was illegal as a trespasser.  *Id.* ¶ 30.  In the Rotunda,

defendant saw a "packed crowd" pushing and being pushed, as well as a plethora of violence,

including a woman "getting hit in the face" with a baton and people "getting sprayed."  Trial Tr.

(Feb. 2, 2024) at 141, 145, ECF No. 231.  Rather than walk away, defendant, who testified that

he was "irritated," "agitated," "vocal," and "short tempered," joined the mob, repeatedly pushed

against police officers, who were directing defendant to leave, "talk[ed] trash," and said words to

the officers that could be construed as "inviting a physical fight."  *Id.* at 134–35, 137–38.

Defendant eventually reached the front of the mob, right by the police line, where he refused to

back up and, instead, pushed against the officers and threatened them, such as by yelling: "I ain't

f****n' moving!"  PSR ¶ 31.  When defendant was finally forcibly removed from the Rotunda at

3:18 PM, he remained on Capitol grounds for over an hour, continuing to antagonize officers and

rally and encourage other members of the mob to help overwhelm the officers, such as by

shouting, "[the rioters at the front] need more people!"  *Id.* ¶ 34.

       In sum, defendant was an active participant in the mob that caused $2.9 million of

damages, thereby directly contributing to the violence that ultimately overpowered the police,

allowed for the Capitol to be breached, and enabled other members of the mob to damage the

building.  Where, as here, "a wrongdoer's conduct, though [perhaps] alone insufficient to cause

the [victim's] harm, is, when combined with conduct by other persons, more than sufficient to

cause the harm," *Paroline*, 572 U.S. at 452 (alterations in original accepted and citation omitted), "[t]reating [defendant] as a cause of a smaller amount of the victim's general losses, taking account of his role in the overall causal process behind those losses," effects the purpose of restitution, "avoids the nonsensical result of turning away victims emptyhanded," and "does so without sacrificing the need for proportionality in sentencing," *id.* at 461; *see also Monzel*, 930 F.3d at 476–77, 485 (affirming $7,500 in restitution toward more than a $3 million total loss, against a defendant who possessed a single pornographic image of the child victim).

Accordingly, defendant owes restitution for his offense, and $2,000, the amount that the government has sought in this case and that has repeatedly been ordered in restitution for defendants convicted of felony offenses in cases stemming from the January 6, 2021 riot, is an appropriate restitution amount.  *See United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013) (explaining that a "reasonable approximation" of loss is sufficient, "especially in cases in which an exact dollar amount is inherently incalculable"); *United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) ("The use of estimation is permitted because it is sometimes impossible to determine an exact restitution amount." (citation omitted)).

## II.     CONCLUSION AND ORDER

Defendant can pay restitution ordered over time without any meaningful adverse impact. *See* 18 U.S.C. § 3572(d)(2).  He has reported relatively steady hourly-wage-based income from when he was discharged from the U.S. Marines in 2013 until the time of his arrest on May 10, 2022.  *See* PSR ¶¶ 132–41.  In addition, the Probation Office discovered a Give Send Go page titled "Support Marine Veteran J6 Defendant John Todd," which campaign was created by the National Constitutional Law Union to cover defendant's legal fees and has raised $6,012.  PSR ¶ 143.  This fund is sufficiently ample to more than cover the restitution amount ordered here.

For the foregoing reasons, based on the record, a restitution payment of $2,000 to the Architect of the Capitol, and $2,514.68 to MPD based on the cost of Officer Rathbun's medical treatment and his nine days off work, is the best available estimate of damage for which this defendant should be held responsible to identifiable victims on the limited record presented in this case.  Accordingly, it is:

**ORDERED** that defendant shall make restitution in the amount of $2,000.00 to the Architect of the Capitol, which restitution payment shall be made to the Clerk of the Court for the United States District Court, District of Columbia, for disbursement to the following victim: Architect of the Capitol, Office of the Chief Financial Officer, Ford House Office Building, Room H2-205B, Washington, DC 20515; it is further

**ORDERED** that defendant shall make restitution in the amount of $2,541.68 to the Metropolitan Police Department; it is further

**ORDERED** that the government shall provide the disbursement information for the Metropolitan Police Department to defendant and his counsel and to the Clerk of the Court for the United States District Court; it is further

**ORDERED** that any interest or penalties that may accrue on the restitution balances are waived; it is further

**ORDERED** that defendant's Response, ECF No. 241, shall be filed under seal; it is further

**ORDERED** that defendant shall file a new version of his Response, ECF No. 241, with any information obtained from the government's Sealed Exhibits, ECF No. 240, redacted; and it is further

**ORDERED** that the government shall file on the public docket the cover letters of each

Sealed Exhibit, ECF No. 240, with the name of the Acting Senate Sergeant at Arms redacted.

**SO ORDERED.**

Date:  July 29, 2024

_____
**BERYL A. HOWELL**
United States District Judge